## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ASTRAZENECA AB, AKTIEBOLAGET HÄSSLE, KBI-E, INC., KBI, INC. and ASTRAZENECA LP, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Civil Action No. 06-358 (SLR) |
| v. | ) ) | |
| DEXCEL LTD., DEXXON LTD., DEXCEL PHARMA TECHNOLOGIES LTD. and DEXCEL PHARMA TECHNOLOGIES, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
## MOTION TO TRANSFER OR DISMISS

Richard D. Kirk (rk0922)
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
(302) 655-5000
rkirk@bayardfirm.com

Counsel for Defendants Dexcel Ltd., Dexxon Ltd.,
Dexcel Pharma Technologies Ltd., and Dexcel
Pharma Technologies

Of Counsel
Robert F. Green
David M. Airan
Saumil S. Mehta
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
Chicago, IL  60601-6780
(312) 616-5600

**TABLE OF CONTENTS**

I.    NATURE AND STAGE OF THE PROCEEDINGS ...................................................1

II.   SUMMARY OF THE ARGUMENT ...........................................................................1

III.  CONCISE STATEMENT OF FACTS .........................................................................2

IV.   ARGUMENT................................................................................................................4

    A.    This Action Should Be Transferred to Virginia...........................................5

    B.    Delaware's Long-Arm Statute Does Not Confer Personal Jurisdiction
        Over the Defendants ....................................................................................7

        1.    Defendants Are Not Subject To This Court's General Jurisdiction.....8

        2.    Defendants Are Not Subject To This Court's Specific Jurisdiction....9

        3.    Exercise of Personal Jurisdiction Over Defendants Would Not
            Comport With The Due Process Clause Of The Constitution ...........12

    C.    Plaintiff's Complaint Fails to State a Claim Against Dexcel Ltd. and
        Dexxon Ltd. ................................................................................................12

    D.    Dexcel Pharma Technologies Lacks Capacity to be Sued.........................14

    E.    The Proceedings Before the Judicial Panel on Multidistrict Litigation
        Should Not Delay Resolution of the Present Motion.................................15

V.    CONCLUSION...........................................................................................................16

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs., v. Mylan Pharm.*, Inc.,
  2006 WL 850916, * 2 (N.D. Ill. 2006) .......................................................................... 11

*Aventis Pharma Deutschland, Gmbh v. Lupin Ltd.*,
  403 F.Supp.2d 484 (E.D. Va. 2005) ......................................................................... 5, 6

*Aventis Pharma Deutschland, Gmbh, v. Lupin Ltd.*,
  Civil Action No. WDQ-05-1936 (D. Md. 2005) ..................................................... 1, 6

*Bell Helicopter Textron, Inc., v. C & C Helicopter Sales, Inc.*,
  295 F.Supp.2d 400, 409-10 (D. Del. 2002) ................................................................ 11

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d at 1558, 1570 (Fed. Cir. 1994).................................................................... 11

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462, 474 (1985)............................................................................................ 12

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408, 414 n. 9 (1984)............................................................................... 8, 12

*ICT Pharm., Inc. v. Boehringer Ingelheim Pharm., Inc.*,
  147 F.Supp.2d 268, 271 (D. Del. 2001)........................................................................ 7

*Intel Corp. v. Broadcom Corp.*,
  167 F.Supp.2d 692, 700 (D. Del. 1999)........................................................................ 8

*Intel Corp. v. Silicon Storage Tech., Inc.*,
  20 F.Supp.2d 690, 698 (D. Del. 1998).......................................................................... 9

*International Shoe Co. v. Washington*,
  326 U.S. 310, 316 (1945)............................................................................................ 12

*LaNuova D & B S.p.A. v. Bowe Co.*,
  513 A.2d 764, 768 (D. Del. 1986) ................................................................................. 9

*Merck & Co., Inc. v. Barr Labs.*,
  179 F.Supp.2d 368, 371 (D. Del. 2002)........................................................................ 8

*Pfizer Inc. v. Ranbaxy Labs., Ltd.*,
  321 F.Supp.2d 612, 616 (D. Del. 2004) (Farnan, J.) ................................................... 13

*Physician Endorsed LLC, v. Clark*,
  314 F.Supp.2d 395, 399 (D. Del. 2005)...................................................................... 12

*Reid v. Kraft Gen. Foods, Inc.*,
  1995 WL 262531, *10, n. 6. (E.D. Pa. 1995) ............................................................. 14

*Reliance Steel Prods. Co. v. Watson, Ess. Marshall & Enggas*,
  675 F.2d 587, 588-89 (3rd Cir. 1982)........................................................................... 9

*Testa v. Janssen*,
  482 F.Supp. 1195, 1200 (W.D. Pa. 1980)................................................................... 14

*VE Holding Corp. v. Johnson Gas Appliance Co.,*
   917 F.2d 1574, 1584 (Fed. Cir. 1990) ........................................................................ 7

*Vikoma Int'l., Ltd. v. Oil Stop, Inc.,*
   1993 WL 14647, * 4 (D. Del. 1993) (Robinson, J.) ................................................ 8, 9

*Virgin Wireless, Inc., v. Virgin Enterprises Ltd.,*
   201 F.Supp.2d 294, 298 (D. Del. 2002) (Robinson, C.J.) .......................................... 5, 7

*Ware v. Ball Plastic Container Corp.,*
   2006 WL 1517403, *3 (D. Del. 2006) ....................................................................... 9

*Zeneca Ltd., v. Mylan Pharm., Inc.,*
   173 F.3d 829, 833 (Fed. Cir. 1999) ......................................................................... 10

### Statutes

10 DEL. CODE § 3104(c) .......................................................................................... 7, 8, 9, 10

28 U.S.C. § 1404 ......................................................................................................... 7

28 U.S.C. § 1406 ......................................................................................................... 7

28 U.S.C. § 1407(a) ................................................................................................... 16

### Rules

FED. R. CIV. P. 12(b)(2) ............................................................................................... 4

FED. R. CIV. P. 12(b)(6) ..................................................................................... 4, 13, 17

FED. R. CIV. P. 17(b) ........................................................................................... 2, 5, 17

JPML Rule 7.4 ..................................................................................................... 2, 4, 15

I.     **NATURE AND STAGE OF THE PROCEEDINGS**

Plaintiffs filed this patent infringement action on May 30, 2006.  Defendants Dexcel Ltd., Dexxon Ltd., Dexcel Pharma Technologies Ltd. ("DPT Ltd."), and Dexcel Pharma Technologies ("DP Tech.") moved for a thirty day extension of time to answer, move or otherwise respond, which the Court granted on June 30, 2006.  *See* D.I. 16.  Defendants now respectfully move the Court to transfer or dismiss this action, and submit this opening brief in support thereof.

II.    **SUMMARY OF THE ARGUMENT**

This action is duplicative of, and parallel to, an action filed by the identical Plaintiffs against the identical Defendants in the U.S. District Court for Eastern District of Virginia, Civil Action No. 1:06-cv-634 ("the Virginia action").  *See* Ex. 1.  Although Plaintiff initiated the Virginia action one day after it initiated the present action, Defendants have filed answers in that action and Plaintiffs have filed an answer to a counterclaim.  Defendants have further requested entry of a scheduling order in the Virginia action and expect that discovery will commence promptly.  As a matter of judicial economy, this action should be transferred to Virginia.  *See* Ex. 2; Transfer Order, *Aventis Pharma Deutschland, Gmbh, v. Lupin Ltd.*, Civil Action No. WDQ-05-1936 (D. Md. 2005) (transferring first-filed duplicative action to the Eastern District of Virginia "in the interest of justice").

In the alternative, the Court should dismiss this action.  Not one of the Defendants has any meaningful contact with Delaware and there is no specific or general personal jurisdiction over the Defendants in Delaware.  In addition, the Court should dismiss Dexcel Ltd. and Dexxon Ltd. as Defendants.  These parties did not engage in the acts

alleged to infringe the patents in suit, and Plaintiffs' Complaint fails to states a claim against them. Finally, the Court should also dismiss the entity identified as "Dexcel Pharma Technologies," which is not a legal entity, conducts no business, and lacks capacity to be sued. *See* FED. R. CIV. P. 17(b).

Defendants anticipate that Plaintiffs may request the Court to defer ruling on this motion out of deference to a Conditional Transfer Order issued by the Clerk of the Judicial Panel on Multidistrict Ligitation ("JPML"). *See* Ex. 3. Defendants, however, have filed a notice of opposition to this clerical order. *See* Ex. 4. The JPML Clerk's order has no effect until the JPML itself rules on Defendants' opposition. *See* JPML Rule 7.4(c). There is no reason to delay ruling on the relief requested in this motion for the expected months that it will take the JPML to rule. Moreover, this Court is in the best position to address the personal jurisdiction issues, which depend from the Delaware long-arm statute, regardless of whether the JPML transfers the action.

## III.    CONCISE STATEMENT OF FACTS

The basis of this action derives from DPT Ltd.'s filing of New Drug Application ("NDA") 22-032 for 20 mg omeprazole delayed-release tablets ("DPT Ltd.'s Tablets"). Plaintiffs, Astrazeneca AB et al., claim to own the patents and NDAs identified in the FDA's Orange Book associated with the product for which Defendants seek approval of a generic version. Pursuant to the requirements of the Hatch-Waxman Act, DPT Ltd. certified on April 17, 2006 that Astrazeneca's patents are invalid or will not be infringed by the manufacture, use, or sale of the new drug for which DPT Ltd.'s NDA 22-032 is submitted. Plaintiffs filed this lawsuit in response to DPT Ltd.'s notice letter.

DPT Ltd., an entity organized under the laws of Israel, maintains a place of business within the Commonwealth of Virginia. *See* Ex. 5; Declaration of Dan Oren ("Oren Decl.") at ¶ 5. DPT Ltd.'s certification letter to Astrazeneca provided notice that DPT Ltd. maintains an office in Norfolk, Virginia and "consents to jurisdiction in the United States District Court for the Eastern District of Virginia."

Dexcel Pharma Technologies, one of the named defendants, is not a legal entity known to the Defendants and it does no business in the United States or anywhere else in the world. Oren Decl. at ¶ 4. The Dexcel Ltd. website (www.dexcel.com) previously misidentified a United States subsidiary of Dexcel Ltd. as Dexcel Pharma Technologies. *Id*. at ¶ 3. This listing is an error inasmuch as the term "Ltd." was inadvertently omitted from the entity's name. *Id*. The proper subsidiary name is Dexcel Pharma Technologies Ltd. *Id*.

DPT Ltd., Dexcel Ltd., Dexxon Ltd., and DP Tech. do not own, lease, operate or maintain any offices, places of business, facilities or other presence in Delaware. Oren Decl. at ¶ 10. Nor have they ever owned, leased, operated, or maintained any such offices, places or business, facilities or presence in Delaware. *Id*. DPT Ltd., Dexcel Ltd., Dexxon Ltd., and DP Tech. have no employees or agents employed in Delaware. *Id.* at ¶¶ 7-8. DPT Ltd., Dexcel Ltd., Dexxon Ltd., and DP Tech. maintain no telephone numbers, post office boxes, mailing addresses or bank accounts in Delaware. *Id*. at ¶ 9. Not one of these parties pay taxes in Delaware. *Id*. at ¶ 9.

Among other things, DPT Ltd. is a pharmaceutical company seeking authorization to market its products in the United States. DPT Ltd., Dexcel Ltd., Dexxon Ltd., and Dexcel Pharma Technologies: (1) are not authorized or certified to do business in

Delaware; (2) do not have an agent for service of process in Delaware; and (3) have not requested registration with the Secretary of State for Delaware for service of process. Oren Decl. at ¶ 7.

By a letter request to the Clerk for the Judicial Panel on Multidistrict Litigation, Plaintiffs sought to transfer this action and the Virginia action. See Ex. 6, Letter to the Clerk of the JPML, attached without enclosures. Plaintiffs' request to the Clerk of the JPML incorrectly represented that these actions are "tag-along" actions. *Id.* Based on this representation, the Clerk of the JPML issued an order on June 26, 2006, conditionally transferring this and the Virginia action to the Southern District of New York. See Ex. 3. Defendants filed a notice of opposition to consolidation of the Virginia and Delaware actions as provided under JPML Rule 7.4(d), *see* Ex. 4, and will file their briefs in support of keeping this case in the Eastern District of Virginia. For the reasons briefly explained below, a transfer and consolidation of this action with prior litigation involving different products sold by different defendants is unwarranted.

## IV.   ARGUMENT

In the interests of judicial economy, Defendants respectfully request that this Court transfer this action for consolidation with a duplicative and more advanced action pending in Virginia. Alternatively, and pursuant to FED. R. CIV. P. 12(b)(2), all Defendants respectfully move that this action be dismissed for lack of personal jurisdiction. Defendants Dexcel Ltd. and Dexxon Ltd. further move to dismiss this action under FED. R. CIV. P. 12(b)(6) because Plaintiffs' Complaint fails to state a claim against them. In addition, Dexcel Pharma Technologies, which is a non-entity that conducts no

business at all, should be dismissed pursuant to FED. R. CIV. P. 17(b) as a party lacking the capacity to be sued.

### A.    This Action Should Be Transferred to Virginia

Plaintiffs unnecessarily entangled two district courts in the subject matter of this lawsuit.  A dismissal or transfer of this action is an appropriate procedural response to Plaintiffs' proliferation of duplicative lawsuits.  *See Virgin Wireless, Inc., v. Virgin Enterprises Ltd.*, 201 F.Supp.2d 294, 298 (D. Del. 2002) (Robinson, C.J.).

The complaint in the Virginia action may well have been filed as a "protective" measure for tactical considerations.  *See Aventis Pharma Deutschland, Gmbh v. Lupin Ltd.*, 403 F.Supp.2d 484 (E.D. Va. 2005).  This possibility, however, does not justify Plaintiffs' duplicative suit in this district.

*Aventis* is strikingly similar to the present facts.  There, as here, the plaintiffs filed identical complaints alleging patent infringement in two different districts:  Maryland and the Eastern District of Virginia.  The defendants disputed personal jurisdiction in Maryland but acknowledged jurisdiction and venue in the Virginia court.  The Virginia court subsequently rejected the plaintiffs' motion for a stay of the Virginia litigation to allow the Maryland case to go forward:

> According to Plaintiffs, "the basis for personal jurisdiction over defendant Lupin India in Maryland is particularly strong," yet a "protective suit" is necessary in the event the Maryland court determines it lacks jurisdiction over Lupin Ltd., the India company.  . . . This Court cannot accept such a contradictory argument.  If the Maryland forum is in any way questionable in order to necessitate a "protective filing" as Plaintiffs maintain, then *this Court* is clearly the better forum, as all of the parties agree that both jurisdiction and venue lie here.
>
> . . .

> As for Plaintiff's concern about duplicative litigation and inconsistent
> ruling, the Court observes this problem is easily remedied. Pursuant to
> Fed. R. Civ. P. 41(1), a voluntary dismissal may be filed by stipulation of
> the parties. Given that Defendants contest jurisdiction in Maryland, the
> Court is inclined to believe they will readily enter into such a stipulation
> with Plaintiffs in order to avoid unnecessary duplicative litigation and
> inconsistent rulings. Moreover, if duplicative litigation and inconsistency
> are Plaintiffs' genuine concern, they can only blame themselves. . .
> Plaintiffs, and no one else, filed two identical lawsuits in two different
> forums. They should not be surprised this lawsuit is proceeding, as that is
> what happens when you file suit in this district. This Court is of the firm
> belief that justice delayed is justice denied.

*Id.*, 403 F.Supp.2d at 490, 491 (emphasis in the original). As in *Aventis*, Plaintiffs here

made the strategic consideration of filing identical complaints in two forums. The parties

are in agreement that jurisdiction and venue are proper in the Eastern District of Virginia,

at least as to DPT Ltd., the party that actually engaged in the alleged acts of infringement,

and this litigation should proceed as expeditiously as possible in that forum.

Most relevant to the present motion is that the Maryland court simply transferred

the duplicative action to the venue of the "protective" action rather than addressing

complicated issues of personal jurisdiction:

> Although motions are pending in this Court, in the Virginia case, Lupin
> Ltd. has consented to personal jurisdiction in Virginia, answered the
> Amended Complaint, filed a counterclaim, and has issued discovery
> requests. The Virginia case is also subject to a scheduling order recently
> issued by the Eastern District of Virginia. The Virginia case is proceeding
> on the merits, thus, in the interest of justice this action should be
> transferred to the Eastern District of Virginia.

*See* Ex. 2; Transfer Order, *Aventis Pharma Deutschland, Gmbh, v. Lupin Ltd.*, Civil

Action No. WDQ-05-1936 (D. Md. 2005). Defendants respectfully urge the same

outcome this action. There is no good reason for the Court to labor over personal

jurisdiction and other issues when the Plaintiffs themselves have already established that

litigation can and should proceed in a different district.

This Court lacks personal jurisdiction over the Defendants in Delaware, and hence, venue is improper in this district. *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990). According to 28 U.S.C. § 1406, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice transfer such case to any district or division in which it could have been brought." *Id.* Thus, this Court may transfer this action to the Eastern District of Virginia for consolidation with the pending action in that district.[1]

### B.    Delaware's Long-Arm Statute Does Not Confer Personal Jurisdiction Over the Defendants

The determination of whether personal jurisdiction exists is a two-step process under Delaware law. *Virgin Wireless,* 201 F.Supp.2d at 298. First, the Court must determine whether it may exercise jurisdiction pursuant to Delaware's long-arm statue, 10 Del. Code § 3104(c).[2] *ICT Pharm., Inc. v. Boehringer Ingelheim Pharm., Inc.*, 147 F.Supp.2d 268, 271 (D. Del. 2001). Second, if the statue applies, the Court must then decide whether such service comports with the traditional notions of fair play and

---

[1] The Court may transfer this action under either 28 U.S.C. § 1404 or 1406.
[2] The Delaware Long-Arm Statue provides:
  (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
    (1) Transacts any business or performs any character of work or service in the State;
    (2) Transacts any business or performs any character of work or service in the State;
    (3) Causes tortious injury in the State by an act or omission in this State;
    (4) Causes tortious injury in the State or outside of the State by an act or omission outside of the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State ....
10 Del. Code § 3104(c)(1-4).

substantial justice under the due process clause. *Intel Corp. v. Broadcom Corp.*, 167 F.Supp.2d 692, 700 (D. Del. 1999).

Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction. *Merck & Co., Inc. v. Barr Labs.*, 179 F.Supp.2d 368, 371 (D. Del. 2002) *citing Provident Nat'l Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d. Cir. 1987). Plaintiffs have not and cannot meet this burden.

### 1.    Defendants Are Not Subject To This Court's General Jurisdiction

General jurisdiction is the exercise of personal jurisdiction over a defendant in an action which does not arise out of defendant's contact with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9 (1984). General jurisdiction can only be asserted where a defendant's contacts with a forum are "continuous and systematic." *Id.* at 415. To meet this standard, a nonresident corporate defendant must have certain "minimum contacts" with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Id.* at 414. Under Delaware's long-arm statute, 10 DEL. CODE § 3104(c)(4), general jurisdiction is based upon the defendant's general activity within Delaware. *Vikoma Int'l., Ltd. v. Oil Stop, Inc.*, 1993 WL 14647, * 4 (D. Del. 1993) (Robinson, J.).

Plaintiffs cannot establish general jurisdiction in this action because, as outlined in the statement of facts above, Defendants' contacts with the forum are not "continuous and systematic." Defendants do not operate now nor have they ever operated any places of business in the Delaware. Oren Decl. at ¶¶ 7-10. Defendants do not maintain

telephone numbers, post office boxes, mailing addresses or bank accounts in Delaware. *Id*. at ¶ 9. Defendants have no sales agents or sales representatives in Delaware. *Id*. at ¶ 8. Defendants do not have an agent for service of process in Delaware and are not registered with the Secretary of the State of Delaware for service of process. *Id*. at ¶ 7. Defendants do not pay taxes in Delaware and are not qualified to do business in Delaware. *Id*. at ¶¶ 7-9. Defendants contacts with Delaware, therefore, cannot fairly be described as "continuous and systematic."

### 2.    **Defendants Are Not Subject To This Court's Specific Jurisdiction**

Specific jurisdiction concerns the exercise of personal jurisdiction over a defendant in an action which arises out of a defendant's contact with a forum. A specific nexus must exist between the activities that support the jurisdictional claim [and] those that form the basis of the plaintiff's substantive claim before specific jurisdiction may be exercised. *Reliance Steel Prods. Co. v. Watson, Ess. Marshall & Enggas*, 675 F.2d 587, 588-89 (3rd Cir. 1982). *See also Ware v. Ball Plastic Container Corp.*, 2006 WL 1517403, *3 (D. Del. 2006).

Sections 3104(c)(1), (2) and (3) of Delaware's long arm statute, by their terms, are applicable only to specific jurisdiction. *LaNuova D & B S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (D. Del. 1986); *Vikoma Int'l.*, 1993 WL 14647, *2; *Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F.Supp.2d 690, 698 (D. Del. 1998). Analysis of the facts of the present case under these sections of Delaware's long-arm statute demonstrates clearly that specific jurisdiction is lacking.

In addition to a complete lack of physical presence in Delaware (i.e., no office, no real or personal property, as discussed supra), Defendants never made, used, sold or

offered for sale DPT Ltd.'s Tablets in Delaware. This fact is fatal to any argument asserting that this Court has specific personal jurisdiction over DPT Ltd., and more so for Defendants Dexcel Ltd., Dexxon Ltd. and DP Tech. in view of their lack of activity related to the Complaint.

Defendants' lack of contact with Delaware clearly rules out application of either the first or second subsection of Delaware's long-arm statute. As indicated above, Defendants do not transact business, perform work, or contract to supply services or things in Delaware. Furthermore, the third subsection of Delaware's long-arm statute does not apply because it requires a Defendant or its agent cause a tortious injury in the State by an act or omission in this State. 10 DEL. CODE § 3104(c)(3).

The activity giving rise to this action and jurisdictional claim by Plaintiffs is DPT Ltd.'s filing of NDA 22-032. DPT filed its NDA with the FDA in Maryland and forwarded the statutorily prescribed certification letters to Plaintiffs in Delaware. The submission of this NDA with letters of certification to the patent/NDA holder is called an act of infringement under 35 U.S.C. §271(e)(2). However, the Supreme Court has stated that such an act of infringement is "highly artificial." *Zeneca Ltd., v. Mylan Pharm., Inc.*, 173 F.3d 829, 833 (Fed. Cir. 1999) *quoting Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 678 (1990). As a result, the court in *Zeneca* held that although the filing of a petition to obtain generic drug approval, such as an ANDA or NDA, is a statutory act of patent infringement, this act alone does not subject a generic drug manufacture to personal jurisdiction in a forum where such acts occurred. *Zeneca*, 173 F.3d at 833. Further, the filing of an ANDA or NDA and the corresponding certification letters, in the context of generic drug approval, does not constitute an injury to Plaintiffs such that

Plaintiffs can assert specific jurisdiction on these grounds. *Abbott Labs., v. Mylan Pharm.*, Inc., 2006 WL 850916, * 2 (N.D. Ill. 2006).

Moreover, Plaintiffs cannot demonstrate any injury caused by Defendants' affirmative acts in Delaware. An "affirmative act" must take place within the state for the purposes of establishing jurisdiction. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d at 1558, 1570 (Fed. Cir. 1994) (Federal Circuit interpreted a similar subsection from Virginia's long-arm statute). Other than DPT Ltd.'s mailing of certification letters to Plaintiffs, which does not constitute an injury to plaintiffs, Defendants have not had any relevant contact with Delaware. Nor have they injured Plaintiffs or committed any allegedly infringing or injurious acts within Delaware.

Further, Plaintiffs cannot demonstrate any tortious conduct expressly aimed at Delaware as required under the "effects test." *Bell Helicopter Textron, Inc., v. C & C Helicopter Sales, Inc.*, 295 F.Supp.2d 400, 409-10 (D. Del. 2002). In *Beverly Hills Fan*, the Federal Circuit considered and rejected an argument that the situs of an "injury" in patent infringement cases is the residence of the patentee. *Beverly Hills Fan*, 21 F.3d at 1571. Consequently, Plaintiffs cannot claim that an injury occurred in Delaware merely because it owns the patents and is incorporated and resides in Delaware. To avail itself of the third subsection of Delaware's long-arm statute, Plaintiffs must show an infringing manufacture, use, offer for sale or sale in Delaware. *Id.* Absent such acts, the Delaware long-arm statute does not apply to any of the Defendants, specifically since Defendants, Dexcel Ltd., Dexxon Ltd., and DP Tech., a non-entity, did not engage in any activities giving rise to this cause of action. Thus, DPT Ltd., Dexcel Ltd., Dexxon Ltd., and DP

Tech. are not subject to specific jurisdiction in Delaware as a result of the filing and certification of NDA 22-032.

### 3.    Exercise of Personal Jurisdiction Over Defendants Would Not Comport With The Due Process Clause Of The Constitution

Even assuming *arguendo* that the Delaware long-arm statute is applicable, Plaintiffs must still show that exercise of jurisdiction would comport with the due process clause of the United States Constitution.  This test requires certain "minimum contacts" between Defendants and this forum such that the maintenance of the suit does not "offend traditional notions of fair play and substantial justice." *Helicopteros*, 466 U.S. at 414 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  In general, to determine whether a defendant has "minimum contacts" with the forum state, it is necessary that the "defendant's conduct and connection with the forum State are such that he should 'reasonably anticipate being haled into court there.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  Plaintiffs have not and cannot allege or establish that any of the defendants purposefully availed themselves of the laws and protections of Delaware. *Physician Endorsed LLC, v. Clark*, 314 F.Supp.2d 395, 399 (D. Del. 2005).  This action should be dismissed.

### C.    Plaintiff's Complaint Fails to State a Claim Against Dexcel Ltd. and Dexxon Ltd.

Dexcel Pharma Technologies Ltd. is the party that filed New Drug Application ("NDA") 22-032 for 20 mg omeprazole delayed-release tablets.  Oren Decl. at ¶ 6. Plaintiffs' Complaint acknowledges that this filing constitutes the alleged acts of infringement of the three patents in suit.  *See* D.I. 1, Complaint, at ¶¶ 23, 34 and 45.

Plaintiffs' Complaint, however, fails to identify any specific act undertaken by either Dexcel Ltd. and Dexxon Ltd. that would subject them to liability in this action. Instead, it improperly lumps together all of the Defendants into a single entity they call "DEXCEL." *See* D.I. 1, Complaint, at ¶ 2. It thereafter charges all Defendants with actions allegedly undertaken by the non-entity "DEXCEL."

DPT Ltd., however, was the *only* party that filed NDA No. 22-032 with the Food & Drug Administration. Oren Decl. at ¶ 6. No other Defendant in this lawsuit participated in the filing of NDA No. 22-032. *Id.* Because they did not directly engage in the activity alleged to infringe the patents in suit, Dexcel Ltd. and Dexxon Ltd. cannot be direct infringers.

Plaintiffs' Complaint, at best, would appear to charge Dexcel Ltd. and Dexxon Ltd. with indirect infringement, *i.e.*, inducing infringement of the patents in suit. *See* D.I. 1, Complaint, at ¶¶ 24, 35 and 46. Under similar circumstances, however, this District Court has held that parents cannot be held liable as indirect infringers under 35 U.S.C. § 271(e). *See Pfizer Inc. v. Ranbaxy Labs., Ltd.*, 321 F.Supp.2d 612, 616 (D. Del. 2004) (Farnan, J.). Dexcel Ltd. and Dexxon Ltd. should therefore be dismissed from this action under FED. R. CIV. P. 12(b)(6).

This Court recognized in *Pfizer* that other courts had reached a contrary conclusion on the same issue of law. *Id.* Nevertheless, Judge Farnan concluded that the proper analysis warranted a judgment of no infringement. Dexcel Ltd. and Dexxon Ltd. respectfully urge this Court to apply the *Pfizer* decision in this action.

**D.      Dexcel Pharma Technologies Lacks Capacity to be Sued**

Plaintiffs' decision to lump together all Defendants under the banner "DEXCEL" masks yet another problem.  The Defendant identified as "Dexcel Pharma Technologies" does not exist.  Oren Decl. at ¶ 4.  Instead, the relevant party is Dexcel Pharma Technologies ***Ltd.***, which is also a named Defendant.

Plaintiffs appear to have filed suit against "Dexcel Pharma Technologies" due to a clerical error on a website (www.dexcel.com) associated with Dexcel Ltd. and Dexxon Ltd.  Oren Decl. at ¶ 3.  More specifically, a page of this website, attached to the Oren Declaration as Exhibit A, identified "Dexcel Pharma Technologies" as an entity having an address of 229 West Bute Street, Suite 407 Norfolk, VA 23510.  *Id.*  Dexcel Pharma Technologies, however, is not a legal entity.  *Id.* at ¶ 4.  This website should have identified Dexcel Pharma Technologies ***Ltd.*** as the entity having an address at the above-identified location.  As the Court itself can take judicial notice, this website has now been corrected to refer to DPT Ltd. as the entity with an office in Virginia.

Because "Dexcel Pharma Technologies" is a non-entity, it lacks the capacity to be sued under FED. R. CIV. P. 17(b).  A fictional party, such as that identified by a trade name, cannot be sued.  *See Reid v. Kraft Gen. Foods, Inc.*, 1995 WL 262531, *10, n. 6. (E.D. Pa. 1995) (dismissing the fictional party "Breyers," a trade name used to identify a source of ice cream, from a lawsuit where Kraft, the owner of the trade name, was named as a defendant.).  At best, "Dexcel Pharma Technologies" is a trade name and not an entity, and this Defendant should be dismissed from this action.  *See also Testa v. Janssen*, 482 F.Supp. 1195, 1200 (W.D. Pa. 1980) (dismissing a fictitious entity even though party seeking its dismissal under Rule 17(b) referred to it during the normal course of its business).

14

**E.    The Proceedings Before the Judicial Panel on Multidistrict Litigation Should Not Delay Resolution of the Present Motion**

Defendants expect that Plaintiffs will oppose this motion, at least in part, based on their request to the Judicial Panel on Multidistrict Litigation to transfer this action to the Southern District of New York. Plaintiff may also point to the Conditional Transfer Order issued by the Clerk of the JPML to support its argument. *See* Ex. 3. Plaintiffs, however, obtained this clerical order as a matter of course simply by declaring that this action and the Delaware action are "tag-along" actions to prior MDL litigation. *See* Ex. 6. This is not true. Neither this action nor the Delaware action qualify as tag-along actions. Moreover, by its terms, the order of the JPML clerk is not effective nor transmitted to this Court nor to the transferee court if a party files a notice of opposition to it. *See* Ex. 3. Defendants have done this. *See* Ex. 4. This action will thus not be transferred unless and until it is ordered by the JPML itself. *See* JPML Rule 7.4(c).

Defendants oppose transfer to the S.D.N.Y. because the issues between the parties to this action are substantially different than those addressed in prior MDL litigation, *In re Omeprazole Patent Litigation*, MDL-1291. There is no factual overlap between this action and prior litigation consolidated by the JPML.

Defendants note that the next JPML session is set for July 27, 2006. Briefing on Dexcel's objections to MDL transfer will not be complete before the next session of oral argument before the Panel. Consequently, there is no assurance the Panel will issue a final order on transfer at any point in the near future. Plaintiffs have previously argued, an argument with which Defendants agree, that this court should not delay the proceedings while the JPML considers Plaintiffs' transfer request:

> This will allow the parties to make early progress in this litigation so that the Southern District [of New York] does not need to begin

15

> from scratch when in due course it assumes responsibility for pre-trial preparation. If, contrary to the Plaintiffs' expectations, the JPML declines to order consolidation, the action proposed will enhance this Court's ability to dispose of the litigation in an efficient manner.

See D.I. 8; Plaintiffs' Motion To Schedule a Rule 16 Conference And Adopt a Case Scheduling Order in the Delaware action, ¶ 4.

The arguments advanced by Plaintiffs to start discovery in this action apply with even greater force to a resolution of the issues in this motion. Even if the JPML transfers this action and the Virginia action for pretrial purposes, both actions will return to their original venues for trial. 28 U.S.C. § 1407(a). As noted above, there is no good reason to have two district courts dealing with the subject matter of this action, now or in the future. This court should thus transfer this action for consolidation *before* the JPML rules, thereby insuring that only one district court will receive the remanded action.

Likewise, and even if this Court decides not to transfer this action to Virginia, Defendants' motion to dismiss for lack of personal jurisdiction must be resolved either here or in the Southern District of New York. This Court, sitting in Delaware and routinely applying Delaware law, is obviously in a better position to resolve Defendants' motion to dismiss than a New York court. There is no reason to delay a resolution of whether this Court may exercise personal jurisdiction over the Defendants.

## V.    CONCLUSION

In the interests of justice and judicial economy, this action should be transferred to the Eastern District of Virginia for consolidation with a duplicative and more advanced action. In the alternative, this action should be dismissed for lack of personal jurisdiction inasmuch as each Defendant lacks sufficient minimum contact with Delaware to satisfy

either the Delaware long-arm statute or the due process clause of the U.S. Constitution.

Dexcel Ltd. and Dexxon Ltd. also should be dismissed under FED. R. CIV. P. 12(b)(6)

because Plaintiffs' Complaint fails to state a claim against them. Finally, Dexcel Pharma

Technologies should be dismissed because it is a fictional entity that lacks capacity to be

sued under FED. R. CIV. P. 17(b).

July 20, 2006                                THE BAYARD FIRM

                                            /s/ Richard D. Kirk
                                            Richard D. Kirk (rk0922)
                                            Ashley B. Stitzer (as3891)
                                            222 Delaware Avenue
                                            Suite 900
                                            P.O. Box 25130
                                            Wilmington, DE 19899
                                            (302) 655-5000
                                            *Attorney for Defendants*

OF COUNSEL:
Robert F. Green
David M. Airan
Saumil S. Mehta
Leydig, Voit & Mayer
Two Prudential Plaza
180 N. Stetson Avenue
Suite 4900
Chicago, IL 60601
(312) 616-5600

# UNREPORTED CASE LAW

Slip Copy, 2006 WL 850916 (N.D.Ill.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.
ABBOTT LABORATORIES, an Illinois Corporation, Plaintiff,
v.
MYLAN PHARMACEUTICALS, INC., a West Virginia Corporation, Defendant.
No. 05 C 6561.
March 28, 2006.

Daniel E. Reidy, James R. Daly, Jason G. Winchester, Melissa Rose Beiting, Jones Day, Chicago, IL, for Plaintiff.
John A. Leja, McGuire Woods LLP, Chicago, IL, Richard S. Meyer, McGuire Woods LLP, McLean, VA, Timothy H. Kratz, McGuire Woods LLP, Atlanta, GA, for Defendant.

*MEMORANDUM OPINION AND ORDER*

KENDALL, J.
**\*1** Plaintiff Abbott Laboratories, Inc. ("Abbott") brings this action against Defendant Mylan Pharmaceuticals, Inc. ("Mylan"), alleging patent infringement under 35 U.S.C. § 271(e)(2). Defendants move to dismiss the complaint for lack of personal jurisdiction or, in the alternative, to transfer the case on the basis of convenience to the Northern District of West Virginia. Because this district has general jurisdiction over Mylan, and because interests of justice and convenience of the parties do not warrant transfer to West Virginia, the Court denies the motion.

*Facts*

On a motion to dismiss under Rule 12(b)(2), the Court takes all well-pled facts in the complaint as true. *Pickrel v. City of Springfield*, 45 F.3d 1115, 1117 (7th Cir.1995). The following facts are drawn from Abbott's complaint ("Complaint at ¶ ___").
Abbott holds two patents for Sodium Hydrogen Divalproate Oligomer, Patent No. 4,988,731 and Patent No. 5,212,326, each of which is set to expire on January 29, 2008. Complaint at ¶ 7-9. On August 4, 2000, the Food and Drug Administration ("FDA") approved Abbott's New Drug Application for Depakote, a trademarked product. *Id.* at ¶ 6. After the FDA approved Depakote, the FDA listed the drug on the "Approved Drug Products with Therapeutic Equivalence Evaluations" list and associated the two patents with Depakote. *Id.* at ¶¶ 6,11.
On April 12, 2005, Mylan notified Abbott that it had filed an Abbreviated New Drug Application ("ANDA") with the FDA to make a generic equivalent of Depakote. *Id.* at ¶ 12-13. On October 5, 2005, Mylan notified Abbott that Mylan had modified its ANDA to include a "Paragraph IV" certification, in which Mylan challenged the validity and/or enforceability of Abbott's two patents for Depakote, as permitted by 21 U.S.C. § 355(j)(2)(A)(vii)(IV). *Id.* at ¶ 14-15.
By statute, filing a Paragraph IV certification as part of an ANDA is an act of patent infringement. *See* 35 U.S.C. § 271(e)(2). Once a patent holder has received notice that a Paragraph IV certification has been filed that implicates one or more of its patents, the patent holder has 45 days in which to file suit for patent infringement or the ANDA will be approved immediately and the patent protection will be lost. *See* 35 U.S.C. § 271(e)(5); 21 U.S.C. 355(j)(5)(B)(iii). On November 18, 2005 Abbott filed two suits for patent infringement: one in the Northern District of West Virginia, where Mylan has its corporate headquarters, and one in the Northern District of Illinois, where Abbott has its corporate headquarters. Mylan has moved this Court to dismiss the case before it for lack of personal jurisdiction or, in the alternative, to transfer the case to West Virginia where the other suit is pending. Abbott has moved the court in West Virginia to stay the proceedings before it pending resolution of the motion before this Court.

*Standard*

The party seeking to establish jurisdiction bears the burden to make a *prima facie* showing that the forum has personal jurisdiction over the defendant. *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F.Supp.2d 824, 833 (N.D.Ill.2000); *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed.Cir.2003). When deciding a matter of jurisdiction, a court may look to affidavits and exhibits submitted by each party. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir.1987), *superceded on other grounds*. Because this case alleges patent infringement, the Court's analysis of personal jurisdiction is guided by Federal Circuit law rather than Seventh Circuit law. *Coolsavings.com, Inc. v. IQ. Commerce Corp.*, 53 F.Supp.2d 1000, 1002 (N.D.Ill.1999) *citing 3D Systems, Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed.Cir.1998).

**\*2** A federal district court applies the personal jurisdiction rules of the forum state. *3D Systems*, 160 F.3d at 1376. The Illinois long-arm statute permits courts to assert personal jurisdiction over a non-resident defendant on any basis permitted by the Illinois and the United States constitutions. *See* 735 ILCS 5/2-209; *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir.2000). When analyzing personal jurisdiction under Illinois law, there is no substantive difference between the due process limitations on personal jurisdiction set forth by the U.S. Constitution and by the Illinois Constitution. *Hyatt Int'l. Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir.2002).[FN1]

> FN1. Although the Seventh Circuit does not hear appeals from cases involving allegations of patent infringement, the Seventh Circuit has addressed the legal parameters of personal jurisdiction in Illinois with far greater frequency than the Federal Circuit. This Court will look to Seventh Circuit law as persuasive authority, particularly in the area of general jurisdiction.

A plaintiff demonstrates personal jurisdiction over a non-resident defendant through a two-part inquiry: (1) the state's long-arm statute permits personal jurisdiction over the defendant, and (2) that jurisdiction complies with due process. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed.Cir.2001). Illinois' long-arm statute permits jurisdiction over a non-resident defendant in two ways. If the defendant's contacts with the forum state are the same contacts as those at issue in the suit, the defendant may be subject to specific jurisdiction. *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.* 148 F.3d 1355, 1359 (Fed.Cir.1998); *Graco, Inc. v. Kremlin, Inc.*, 558 F.Supp. 188, 191-92 (N.D.Ill.1982). If the defendant's contacts with the forum state are not the same contacts as those giving rise to the suit, the plaintiff must meet a higher burden and show that the plaintiff has "continuous, permanent, ongoing and systematic" contact with a forum. *See LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed.Cir.2000); *Milligan v. Soo Line R.R. Co.*, 775 F.Supp. 277, 279 (N.D.Ill.1991). This contact, also known in Illinois as "doing business" in the state of Illinois, will make the defendant amenable to all suits in the state, including suits arising from conduct that did not occur in the forum state. *Milligan*, 775 F.Supp. at 279.

If Illinois has personal jurisdiction over a non-resident defendant, the assertion of jurisdiction must comport with "fair play and substantial justice"-that is, a showing that a suit in the state against the defendant would be fair and reasonable. *Red Wing Shoe*, 148 F.3d at 1358-59. This second stage has also been described as a showing that the defendant's conduct in the forum state is such that the defendant should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

In this case, Abbott does not allege that Illinois has specific jurisdiction over Mylan. The issue giving rise to this suit is Mylan's Paragraph IV ANDA, the filing of which triggered a statutory right to sue for patent infringement. *See* 21 U.S.C. § 355(j)(2)(A)(vii)(IV). Mylan has not yet taken any action that normally would constitute infringement, such as the manufacture or sale of the infringing product; rather, the statute governing ANDAs specifically creates a "highly artificial" statutory act of patent infringement at the moment of Paragraph IV filing. *See* 35 U.S.C. § 271(e)(2); *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 678, 110 S.Ct. 2683, 110 L.Ed.2d 605 (1990) (statute intended to create a "highly artificial" act of patent infringement to allow subject matter jurisdiction prior to the sale of the generic drug). No part of the preparation of the ANDA or the filing the ANDA took place in Illinois, and there has been no other injury to Abbott, so there is no basis for asserting specific jurisdiction over Mylan.

**\*3** Abbott instead has sued Mylan in Illinois under principles of general jurisdiction, providing evidence that Mylan is "doing business" in Illinois to the extent that it has such systematic and continuous contact with Illinois that it may be sued in this forum for any activity, including activities that are not connected to Illinois.

*Doing Business*

There is no all-inclusive test for determining whether a non-resident defendant has such systematic and continuous contact with the forum state as to subject it to general jurisdiction. *See Graco,* 558 F.Supp. at 192. Courts typically have looked to the presence of officers, persons, licenses, or sales activities within Illinois as evidence of systematic contact. *See Milligan,* 775 F.Supp. at 279-80 (discussing test); *Graco,* 558 F.Supp. at 192 (relying on volume of sales). Although courts typically look to these factors, Illinois requires an independent determination in each case of whether, on the basis of all the circumstances, it would be fair to subject the defendant to jurisdiction here. *Alderson v. Southern Co.,* 321 Ill.App.3d 832, 254 Ill.Dec. 514, 747 N.E.2d 926, 941 (Ill.App.Ct.2001). Abbott concedes that Mylan does not have a physical office or agent in Illinois, as verified via affidavit attached to Mylan's Motion to Dismiss. Abbott relies on five different types of contact that Mylan maintains with Illinois: Mylan's volume of sales and percentage of revenue in Illinois, Mylan's ongoing contracts with companies in Illinois, an Illinois distribution license maintained by Mylan, Mylan's informational website presence, and Mylan's amenability to prior litigation in this district.

Abbott's primary evidence that Mylan has systematic and continuous contact with Illinois are figures obtained from Mylan's documents showing that Mylan distributed substantial quantities of pharmaceuticals to wholesalers and retailers in Illinois, and gained substantial revenues from those sales. Abbott provides information about sales revenue both in absolute monetary terms and as a percentage of the overall revenues of the company and of the company's parent.[FN2] The revenue from sales in Illinois is substantial and consistent over the five years prior to the suit. Distribution of a defendant company's products in Illinois in sufficient quantities, and with substantial revenues, may subject a non-resident defendant to general jurisdiction. *See Graco,* 558 F.Supp. at 192 (finding that defendant was "doing business" by shipping a large percentage of its equipment through its Illinois subsidiary); *see also Connelly v. Uniroyal, Inc.,* 75 Ill.2d 393, 27 Ill.Dec. 343, 389 N.E.2d 155, 160 (Ill.1979) (directing products to Illinois "on a regular basis and in substantial numbers" sufficient to create general jurisdiction).

> FN2. As portions of these briefs are subject to an agreed Protective Order and were filed under seal, the Court does not refer to specific information or numbers submitted by the parties. The Court considered all relevant confidential information submitted by the parties, but references the submitted data only generally. *See Pepsico, Inc. v. Redmond,* 46 F.3d 29, 30 (7th Cir.1995) (directing district courts to prepare opinions for general circulation while referencing protected materials indirectly).

Illinois courts have not created a consistent standard as to the necessary showing of volume of sales or revenues before exercising general jurisdiction over a non-resident defendant. Unfortunately, most courts have opted for general descriptions of sufficiency rather than specific data. *See Graco,* 558 F.Supp. at 192 ("large percentage" sufficient to support general jurisdiction); *Connelly,* 329 N.E.2d at 406 (jurisdiction appropriate when product came to Illinois "on a regular basis and in substantial numbers"); *McGill v. Gigantex Technologies Co., Ltd.,* 2005 WL 3436403, \*3 (N.D.Ill.Dec.12, 2005) ("small percentage" not sufficient). In those cases that did provide numerical figures, however, Mylan's volume of sales exceeds the volumes that have been sufficient to support general jurisdiction in the past. *See, e.g., Hubbell,* 232 F.3d at 1375 ("millions of dollars of sales" conducted "over the past several years" and "broad distribution network" sufficient for general jurisdiction); *Milligan,* 775 F.Supp. at 280-81 (Illinois sales totaling 3-5% of annual company revenues sufficient for general jurisdiction). The Court finds that Mylan's volume of sales, and the revenues derived from those sales, constitute substantial and continued contact with Illinois supporting a finding of general jurisdiction in this forum.

**\*4** It is not relevant whether the sales went through a distributor before reaching Illinois; general jurisdiction extends to both direct and indirect sales into the forum state. *See Graco,* 558 F.Supp. at 193 ("Because [defendant] receives substantial economic benefit from its regular activity within the

state, it can be said to be 'doing business' here even though its dealings here are indirect."); *Connelly,* 389 N.E.2d at 405 ("A manufacturer's economic relationship with a state does not necessarily differ in substance, nor should its amenability to jurisdiction necessarily differ, depending on whether it deals directly or indirectly with residents of the state"); *see also Giotis v. Apollo of the Ozarks, Inc.,* 800 F.2d 660, 667 (7th Cir.1986) ("A seller at the head of a distribution network thus satisfies the requisite forseeability of due process where it 'delivers its products into the stream of commerce with the expectation that [these products] will be purchased by consumers in the forum state' "). Abbott has shown sufficiently, via Mylan's own documents, that a substantial percentage of Mylan's revenues come from sales to the state of Illinois.

Mylan does not object to the veracity of Abbott's evidence of sales and revenue. Rather, Mylan argues that Abbott's evidence does not support general jurisdiction, because a showing of general jurisdiction in the absence of specific jurisdiction places a higher burden on the plaintiff. In support of its position, Mylan relies on *Bearry v. Beech Aircraft Corporation,* a case from the Fifth Circuit in which the court denied general jurisdiction over an action in which it did not have specific jurisdiction, despite the plaintiffs' evidence of substantial sales into the forum state. 818 F.2d 370, 374-5 (5th Cir.1987). Mylan draws from *Bearry* the notion that general jurisdiction in the absence of specific jurisdiction requires additional evidence besides sales and revenues, such as contract negotiation within the forum or subsidiaries. The Court finds *Bearry* to be unpersuasive, as binding case precedent within this circuit and this state has found general jurisdiction on the basis of sales and revenues in sufficient quantities, and the Court finds that those quantities have been surpassed by Mylan in this case. Additionally, Abbott has addressed the concerns raised in *Bearry,* and similar concerns raised in cases in this district, by providing supporting evidence of Mylan's other contacts with this forum to supplement its evidence of sales and revenues. Those cases in Illinois that have declined to exercise general jurisdiction in Illinois on the basis of the volume of sales did so because the non-resident defendant had no other contact with the forum state. *See McGill,* 2005 WL 3436403 at *3 (sales totaling less than 3% of defendant's total revenues insufficient to support general jurisdiction without other evidence); *Hot Wax, Inc. v. Stone Soap, Inc.,* 1999 WL 183776, *4 (N.D.Ill. Mar.25, 1999) (where volume of sales small, court will exercise jurisdiction only if defendant also targeted advertisements). As discussed in the following section, Abbott provides additional evidence of other contacts between Mylan and Illinois to bolster its contention that general jurisdiction in this case is appropriate.

*Supporting information*

***5** Abbott supports the evidence of substantial sales and revenues from Illinois with several additional contacts between Mylan and Illinois. While each of these pieces of evidence standing alone might not subject Mylan to general jurisdiction in Illinois, they support the Court's finding that Mylan has conducted business in Illinois to such an extent that the Court may infer that Mylan has availed itself of the laws of Illinois and that it would be fair to permit them to be sued in this state.

1 *License.* Mylan holds two current "Licensed Drug Distributor" licenses from the Illinois Department of Financial and Professional Regulation. Illinois requires any "person, partnership, corporation or business firm engaging in the wholesale distribution of human prescription drugs within [Illinois]" to receive a license from this department. Wholesale Drug Distribution Licensing Act, 225 ILCS 120/5 (defining scope of the act). Mylan has held the public licenses since 1999. Abbott Mot. in Opp., Ex. C. A license from the Illinois Secretary of State, which may then act as an agent for service of process on a defendant, traditionally establishes a state's jurisdiction over the license holder. *See Polansky v. Anderson,* 2005 WL 3557858 at *4 (N.D.Ill.Dec.29, 2005). Although Mylan's licenses come from an Illinois regulatory agency, and do not automatically establish general jurisdiction, they do represent an ongoing contact with the state of Illinois, and support an inference that Mylan intended to do business within the state.

2. *Mylan's Website.* Mylan maintains a national website for informational and advertising purposes only. The website does not sell any of Mylan's products or conduct business transactions. However, the website has interactive components, as customers may submit inquiries to Mylan for additional information about Mylan products. Abbott argues that the website should be viewed in conjunction with the other evidence offered in support of jurisdiction, as supporting evidence that jurisdiction over Mylan in Illinois is proper.

The seminal case discussing the Internet and personal jurisdiction, *Zippo Manufacturing Company v. Zippo Dot Com, Inc.,* held that websites should be examined on a "sliding scale" when determining

personal jurisdiction. *952 F.Supp. 1119, 1124 (W.D.Pa.1997)*. In cases where a defendant clearly does business over the Internet, including entering into contracts, personal jurisdiction is proper. *Id*. On the other side, if the defendant's website is completely passive and allows no interaction with a customer, personal jurisdiction is not proper. *Id*. The "middle ground" set forth in *Zippo*, which best describes Mylan's website, "is occupied by interactive Web sites where a user can exchange information with the host computer" but cannot purchase products; these sites should be evaluated on a case-by-case basis. *Id., see also Neomedia Techs., Inc. v. AirClic, Inc.,* 2004 WL 848181 at *4 (N.D.Ill. Apr.16, 2004) (applying the *Zippo* test to personal jurisdiction analysis in Illinois).

**\*6** A hybrid website alone will not support general jurisdiction over a defendant corporation. *Infosys Inc. v. Billingnetwork.com, Inc.,* 2003 WL 22012687 at *4 (N.D.Ill. Aug.23, 2003). But a website can form part of the basis for general jurisdiction, and two recent cases in this district exercised personal jurisdiction over a non-resident defendant after viewing a hybrid website in connection with the company's other contacts in the state. *See Publications Int'l, Ltd. v. Burke/Triolo, Inc.,* 121 F.Supp.2d 1178, 1183 (N.D.Ill.2000) (finding general jurisdiction on basis of a hybrid interactive website plus extensive distribution of materials within Illinois); *George S. May Int'l. Co. v. Xcentric Ventures, LLC,* 409 F.Supp.2d 1052, 1059-60 (N.D.Ill.2006) (listing sales and solicitations, in addition to a hybrid website, and finding general jurisdiction over non-resident defendant). While Mylan's website alone might not support personal jurisdiction, the presence of the website adds weight to the Court's finding that general jurisdiction in this case is proper.

3. *Contracts in Illinois*. Abbott and Mylan agree that Mylan has pending contracts with approximately twenty separate entities shipping Mylan's products into Illinois, or in some cases repackaging Mylan products at their plants in Illinois. Seven of these companies have their principal places of business in Illinois. Abbott argues that these contracts form an additional basis for finding that Mylan has a continuing relationship with parties in the forum state.

Mylan responds that the contracts do not support personal jurisdiction because defendants are not subject to jurisdiction in a forum based on contracts with out-of-state entities who did business in the forum, citing *Red Wing Shoe*. 148 F.3d 1355. In *Red Wing Shoe*, the state of Minnesota did not have personal jurisdiction over a non-resident defendant that licensed its product to 34 companies doing business in the state. Mylan's reliance on *Red Wing Shoe* is misplaced, however, because the court in *Red Wing Shoe* specifically noted that none of the 34 licensees were incorporated in the forum state or had their principal places of business in the state. *Id*. at 1357-58. Abbott has alleged, and Mylan has conceded, the seven of the main contracts identified by Abbott for distribution in Illinois are companies that have their principal places of business within the forum state.

4. *Prior Litigation within this District*. Finally, Abbott raises Mylan's history as a defendant in this court, and its decisions in the past not to contest personal jurisdiction, as further evidence that general jurisdiction over Mylan is proper. Neither party offers case law on this point. Unlike the evidence offered by Abbott with respect to the sales, the website, the license, and the contracts, prior litigation within the state of Illinois does not support a finding of general jurisdiction. The Court has reviewed the cases in this district in which Mylan is or was a defendant, none contain a finding as to whether Illinois has general jurisdiction over Mylan. This Court will not second-guess the strategy of Mylan's attorneys to accept service in those particular cases. However, as discussed below, the fact that Mylan has litigated cases by consent in this forum in the past, including cases of ANDA patent infringement brought by Abbott, weakens Mylan's argument that litigation in this forum is inconvenient.

*Due Process*

**\*7** Once a movant has shown that a non-resident defendant has systematic and continuous contacts with Illinois to support general jurisdiction, the Court must look to whether the decision to exercise jurisdiction comports with due process. Under the Due Process Clause of the Fourteenth Amendment, an Illinois court may exercise jurisdiction over a non-resident defendant if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted). Once a plaintiff has demonstrated that there are minimum contacts, the burden shifts to the defendant to show "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

In determining the reasonableness of jurisdiction, the Federal Circuit looks to five factors: (1) the

2006 WL 850916

Case 1:06-cv-00358-JJF    Document 22-2    Filed 07/20/2006    Page 7 of 31    Page 6 of 8

burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Electronics For Imaging,* 340 F.3d at 1352. In this case, Mylan has not demonstrated an unreasonable burden from litigating this case in Illinois. The burden on Mylan to litigate in Chicago is greater than it would be if this case remained in West Virginia, but Mylan has litigated other major cases in this district on prior occasions. Illinois has an interest in protecting its citizens from patent infringement, and Abbott certainly has an interest in obtaining relief from patent infringement. Neither the interstate judicial system nor the shared interest of the states will be affected by assertion of jurisdiction in this case, because all states are governed by the same body of patent law. *See id.* (addressing the same five factors in a patent infringement cases).

### Transfer of Venue

As an alternative to dismissal for lack of personal jurisdiction, Mylan requests that this Court transfer the action under 28 U.S.C. § 1404(a) to the Northern District of West Virginia, Mylan's home district and the site of the parallel suit filed by Abbott. Mylan offers two main arguments in support of its request to transfer the instant action to West Virginia: first, it would be more convenient to conduct the litigation in West Virginia; and second, the case before the Court is duplicative of the case before the court in West Virginia. Because the Court does not find that this case merits a transfer for the convenience of the parties, and because the Court respects Mylan's need to file duplicate litigation due to statutory ambiguity, the request to transfer is denied.

A party may request that a court transfer a case to another venue "for the convenience of the parties and witnesses, in the interest of justice."28 U.S.C. § 1404(a). In patent cases, courts normally give great weight to the plaintiff's choice of forum when a defendant requests a transfer of venue. *Hollyanne Corp. v. TFT, Inc.,* 199 F.3d 1304, 1307 n. 2 (Fed.Cir.1999). Mylan argues that it is more convenient to the witnesses to have this case transferred to the Northern District of West Virginia, where another identical action is presently pending. The Court agrees that this action would be more convenient for Mylan if it were pending in West Virginia-Mylan's home district. However, the action would be more convenient for Abbott if it were to proceed before this Court-Abbott's home district, because the evidence supporting the validity of Abbott's patent will involve documents and witnesses from Abbott's corporate headquarters, located in the Chicago area. In arguing for the relative convenience of West Virginia, Mylan relies primarily on the presence of the documents and witnesses pertaining to the preparation of the ANDA at its corporate headquarters. In a case where all of the witnesses of the defendant will be its employees, however, the location is not as important a factor as it would be if the witnesses were not under the control of the defendant. *Id.* at 1307 n. 2.

**\*8** Additionally, Mylan's argument that its convenience outweighs Abbott's convenience loses persuasiveness in light of the fact that Mylan has litigated two different ANDA/patent infringement suits, for different pharmaceuticals, against Abbott in this forum, without contesting personal jurisdiction. The considerations of convenience in this case balance one another; Mylan has not met its burden to show that transfer of the case to West Virginia would be more convenient for the parties and witnesses than litigation here. *See generally Abbott Laboratories v. Zenith Laboratories, Inc.,* 1995 WL 117984 (N.D.Ill. Mar.16, 1995) (denying transfer of venue to defendant's district in patent infringement case arising out of an ANDA).

Second, Mylan requests that this Court dismiss this case on the grounds that Abbott should not be permitted to bring parallel suits in different jurisdictions. While the Court is troubled by the apparently increasing number of "protective" suits filed in ANDA-related patent infringement actions such as this case, the Court cannot fault Abbott for its litigation strategy in the face of an ambiguous statute that remains devoid of court interpretation. Abbott does not seek double recovery or have any desire to litigate parallel suits, and has requested a stay in the suit pending in the Northern District of West Virginia. Patent holders have a strict statutory 45-day window in which to file suit after the patent holder receives notice that a generic company has filed an ANDA. *See* 21 U.S.C. 355(j)(5)(B)(iii). The statute is silent, and the courts have not clarified, whether the patent holder loses its right to sue for patent infringement in the event its suit is dismissed for lack of personal jurisdiction after the 45-day period has expired.

Between service and briefing of a motion to dismiss for lack of personal jurisdiction, it would be nearly impossible for a court to deliver a ruling within 45 days so as to permit a patent holder to file another suit. Indeed, a generic manufacturer defendant in this circumstance will likely make the strategic

http://web2.westlaw.com/result/documenttext.aspx?service=Find&rs=WLW6.06&cnt=DO...    7/20/2006

decision to delay filing a motion for lack of personal jurisdiction as long as possible, in the hopes that the 45-day period will expire before the action is dismissed on personal jurisdiction grounds. Therefore, patent holders are stuck between a jurisdictional rock and hard place: file suit in the forum of choice but risk losing patent protection if the suit is dismissed for personal jurisdiction, or file suit in the only known safe forum and incur all the inconvenience of litigating the matter in a distant location. However, as the Court finds that it has general jurisdiction over the defendant in this case, there is no need to reach this issue.[FN3]

> FN3. It is possible that 28 U.S.C. § 1631 would solve this problem by permitting a court to transfer an action filed by a patent holder such as Abbott for lack of personal jurisdiction. Section 1631 would preserve the original date of filing in the improper jurisdiction, allowing patent holders to preserve their right to sue, while also allowing courts to ensure that the action moved forward in the appropriate forum. However, the circuits have split over whether § 1631 applies to personal jurisdiction (as opposed to subject matter jurisdiction) and neither the Seventh Circuit nor the Federal Circuit have addressed the issue. *See Carpenter-Lenski v. Ramsey,* No. 99-3367, 2000 WL 287651 at *2 (7th Cir.2000) (acknowledging the split in authority over this issue).

*Conclusion*

Abbott has established a *prima facie* case that Mylan maintains systematic and continuous contact with Illinois, through its sales and revenues in Illinois, supported by its contractual connections, Illinois licenses, and interactive website. Mylan has not shown that it would be unreasonable to bring Mylan into court here, or that there it would be more convenient for the parties or witnesses to transfer this case to West Virginia. Therefore, the Court denies the motion to dismiss for lack of personal jurisdiction or, in the alternative, transfer the matter to West Virginia.

**\*9** So ordered.

Copr. (C) West 2006 No Claim to Orig. U.S. Govt. Works N.D.Ill.,2006.

Abbott Laboratories v. Mylan Pharmaceuticals, Inc.

Slip Copy, 2006 WL 850916 (N.D.Ill.)


Motions, Pleadings and Filings (Back to top)

- 2006 WL 1773402 (Trial Pleading) Mylan Pharmaceuticals Inc.'s Answer, Affirmative Defenses and Counterclaims to Complaint (May 11, 2006)
- 2006 WL 1773401 (Trial Motion, Memorandum and Affidavit) Reply in Support of Abbott's Motion to Dismiss Mylan's Second Counterclaim for Lack of Subject Matter Jurisdiction (May 8, 2006)
- 2006 WL 1773400 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Abbott Laboratories' Motion to Dismiss Mylan's Purported Antitrust Counterclaims (Nos. 3 and 4) (May 5, 2006)
- 2006 WL 1773399 (Trial Motion, Memorandum and Affidavit) Mylan Pharmaceuticals Inc.'s Memorandum of Law in Opposition to Abbott's Motion to Dismiss Mylan's Second Counterclaim for Lack of Subject Matter Jurisdiction (May 1, 2006)
- 2006 WL 1437996 (Trial Motion, Memorandum and Affidavit) Abbott Laboratories' Response in Opposition to Mylan's Motion for Reconsideration of March 28, 2006 Order (Apr. 19, 2006) Original Image of this Document (PDF)
- 2006 WL 1437995 (Trial Motion, Memorandum and Affidavit) Abbott Laboratories' Memorandum of Law in Support of its Motion to Dismiss Mylan's Second Counterclaim for Lack of Subject Matter Jurisdiction (Apr. 17, 2006) Original Image of this Document (PDF)
- 2006 WL 1437994 (Trial Motion, Memorandum and Affidavit) Mylan Pharamaceuticals Inc.'s Motion to Reconsider Order Dated March 28, 2006 Denying Motion to Dismiss and Memorandum in Support (Apr. 13, 2006) Original Image of this Document (PDF)
- 2006 WL 1606438 (Trial Pleading) Mylan Pharmaceuticals Inc.'s Answer, Affirmative Defenses and Counterclaims to Complaint (Apr. 12, 2006)
- 2006 WL 428001 (Trial Motion, Memorandum and Affidavit) Mylan Pharmaceuticals Inc.'s Amended

Motion to Dismiss or, in the Alernative Transfer Venue (Jan. 6, 2006) 📄 Original Image of this Document (PDF)
• 2006 WL 428002 (Trial Motion, Memorandum and Affidavit) Mylan Pharmaceuticals Inc.'s Memorandum in Support of Amended Motion to Dismiss for Lack of Personal Jurisdiction (Jan. 6, 2006) 📄 Original Image of this Document (PDF)
• 1:05cv06561 (Docket) (Nov. 18, 2005)
END OF DOCUMENT

(C) 2006 Thomson/West  No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp., 1995 WL 262531 (E.D.Pa.), 67 Fair Empl.Prac.Cas. (BNA) 1367, 66 Empl. Prac. Dec. P 43,521

Motions, Pleadings and Filings

United States District Court,
E.D. Pennsylvania.
Priscilla REID
v.
KRAFT GENERAL FOODS, INC., Breyers Co., Inc., and Unilever U.S.
Civ. A. No. 93-5796.
April 27, 1995.

Avivah R. Z. Pinski, Phila delphia, PA, for plaintiff.
STEVEN R. WAXMAN, Stephen N. Huntington, Cohen & Huntington, P.C., Phila, delphia, PA, Francis X. Dee, Linda B. Celauro, Carpenter, Bennett & Morrissey, Newark, NJ, for defendants.

*MEMORANDUM*

PADOVA, District Judge.

*1 Plaintiff, Priscilla Reid, alleges that Defendants failed to reasonably accommodate her sincerely held religious belief in violation of Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C.A. § 2000e(j) & 2000e-2(a)(1) (West 1994), and the Pennsylvania Human Relations Act, ("PHRA"), 43 Pa. Cons. Stat. Ann. §§ 951-963 (1991 & Supp. 1994).[FN1] Reid seeks partial summary judgment with respect to backpay in the amount of $5,328 that allegedly accrued from April through August 1991. Defendants also seek summary judgment, alleging that they accommodated Reid's religious belief in spite of her failure to cooperate. Alternatively, Defendants seek to strike Reid's demands for relief. For the following reasons, I will deny Reid's motion and grant in part and deny in part Defendants' motion.

I. *FACTS ALLEGED*

The material facts are essentially undisputed, except where noted. Reid is a member of the Church of Our Lord Jesus Christ of the Apostolic Faith. Since 1989, Reid has faithfully observed church doctrine that forbids female members from wearing pants.

On March 14, 1991, Reid attended a job fair and met a representative of Defendant, Kraft General Foods, Inc. ("Kraft"), who interviewed her for an available position as a production worker at the company's plant in Philadelphia. On April 26, 1991, after confirming her interest in a position with the company, Reid attended an orientation meeting, where she was assigned to begin work on May 6, 1991. However, because Reid indicated that she could not work the hours of the second shift due to child care problems, her start date was temporarily delayed while Kraft looked into the possibility of reassigning her to a more convenient work shift. At that time, Reid also learned that she would be required to wear pants as part of the work uniform.

On April 29, 1991, Reid told Kraft of her religious practice of not wearing pants, and asked that the company approve a dress or skirt as a uniform substitute.[FN2] Kraft's employees stated, however, that company policy and safety rules required pants to be a part of the employee uniform. On May 2, 1991, Reid sent Kraft a letter from her Pastor, who confirmed that Reid was a member of the congregation and that church doctrine prevented female members from wearing pants.

Reid engaged an attorney on May 7, 1991. On May 8, 1991, Kraft contacted Reid directly and scheduled a meeting for May 13, 1991.[FN3] On May 13, 1991, however, the scheduled meeting was ended without any discussion between the parties concerning possible accommodation or employment.[FN4] On May 20, 1991, when Kraft insisted that any discussions between them be conducted without Reid's attorney, Reid declined a telephone invitation to discuss possible accommodation and employment. On May 22, 1991, Kraft informed Reid by letter that its offer to discuss possible accommodation and employment remained open so long as negotiations were

conducted without any involvement from Reid's attorney.

*2 On June 6, 1991, with the matter unresolved, Reid filed a complaint with the Pennsylvania Human Relations Commission ("PHRC"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of religion.[FN5] This PHRC complaint came to Kraft's attention sometime in July 1991.

On August 2, 1991, Kraft informed Reid by letter that she would be provided with a uniform dress and that she was to report for work at the Breyer's plant on August 12, 1991. Three weeks after Reid reported to work, however, she was laid off.

In the summer of 1992, Kraft informed Reid that she would not be recalled to work because it had no obligation to rehire employees who had not completed their probationary period under the union contract, and because Reid had not previously received a favorable work evaluation. Reid responded by filing a second claim with the PHRC, which also was cross-filed with the EEOC, alleging that Kraft's refusal to hire her for the 1992 season constituted unlawful retaliation.

In June 1993, although Kraft offered Reid a position on the second shift, she could not accept because of problems securing child care. Reid's request to work on a shift when she could obtain child care was denied because she lacked seniority rights. Reid did not file charges with either the PHRC or the EEOC with respect to this situation.

On November 2, 1993, Plaintiff commenced this action against Kraft, Breyers Co., Inc. ("Breyers"), and Unilever U.S., Inc. ("Unilever"), alleging religious discrimination under Title VII and the PHRA.[FN6]

## II. *Motion To Amend*

### A. *Legal Standard*

Pursuant to Federal Rule of Civil Procedure 15(a), "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."Fed. R. Civ. P. 15(a). The United States Court of Appeals for the Third Circuit, interpreting the factors governing amendment established by the Supreme Court in *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962), has held that:

prejudice to the non-moving party is the touchstone for the denial of an amendment. In the absence of substantial or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency of amendments previously allowed, or futility of amendment.

*Lorenz v. CSX Corp.,* 1 F.3d 1406, 1414 (3d Cir. 1993) (internal quotations and citations omitted).

### B. *Discussion*

Reid concedes that the complaint does not contain claims of retaliation. *See* Plf.'s Mem. of Law In Opposition To Defendants' Motion For Summary Judgment at 2 n.1. She therefore seeks leave to amend her complaint to assert a claim of retaliation under Title VII and the PHRA based on the fact that she was not recalled to work for the 1992 season.[FN7] Kraft asserts that proposed amendments would be futile because of Reid's failure to comply with the exhaustion requirements under both Title VI and the PHRA.[FN8]

#### 1. *Title VII*

*3 Kraft asserts that the proposed amendment to add Reid's 1992 retaliation claim under Title VII would be futile because Reid never received a right-to-sue letter before instituting this action. However, the EEOC issued Reid a right-to-sue letter on February 28, 1994, during the pendency of this lawsuit, which effectively cures the asserted deficiency. *See Perkins v. Silverstein,* 939 F.2d 463, 471 (9th Cir. 1991) ("[T]he receipt of that letter after the complaint had been filed, but before it had been dismissed, effectively cured the deficiency in the original complaint."); *McBride v. Bell of Pennsylvania,* Civil No. 89-0243, 1989 WL 71545 at * 2 (E.D. Pa. June 27, 1989) (granting leave to amend to allege receipt of right-to-sue letter during pendency of federal litigation). Accordingly, I will grant Reid leave to amend the complaint to allege receipt of a right-to-sue letter and state a Title VII claim of retaliation.

## 2. *PHRA*

Kraft also asserts that the proposed amendment to add a retaliation claim under the PHRA would be futile because Reid did not allow the PHRC one full year to act before instituting this action. To present a cognizable PHRA claim, a plaintiff must first exhaust all remedies under the statute. *See Clay v. Advanced Computer Applications, Inc.,* 559 A.2d 917, 919-20 (Pa. 1989). Here, Reid filed an administrative complaint with the PHRC on November 18, 1992, alleging that Kraft retaliated against her by not offering her employment in 1992. Reid did not exhaust her PHRA remedies before instituting this action because the PHRC had not acted and one year had not yet elapsed by November 2, 1993, the date Reid commenced action in this court. Because the one year requirement for PHRA exhaustion has elapsed while this litigation has been pending, however, I will allow amendment of the complaint to allege exhaustion and state a claim of retaliation under the PHRA. *See McBride,* 1989 WL 71545 at * 2 (granting leave to amend to allege exhaustion of remedies when one year period elapses during pendency of federal litigation).

## III. *MOTIONS FOR SUMMARY JUDGMENT*

### A. *Legal Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed. R. Civ. P. 56(c).

An issue is "genuine" only if there is sufficient evidence with which a reasonable jury could find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986). Furthermore, bearing in mind that all uncertainties are to be resolved in favor of the nonmoving party, a factual dispute is only "material" if it might affect the outcome of the case. *See id.* at 248, 106 S. Ct. at 2510.

**\*4** A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial *Celotex* burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S. Ct. at 2554. After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S. Ct. at 2552.

### B. *DISCUSSION*[FN9]

Title VII makes it unlawful for an employer to discriminate against an employee or prospective employee on the basis of religion. *See*42 U.S.C.A. § 2000e-2(a)(1). "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."§ 2000e (j).

In religious accommodation cases, a plaintiff must first establish a *prima facie* case by showing: (1) she has a *bona fide* religious belief that conflicts with an employment requirement; (2) she informed the employer of this belief; and (3) she was disciplined for failure to comply with the conflicting employment requirement. *See Protos v. Volkswagen of America, Inc.,* 797 F.2d 129, 133 (3d Cir.), *cert. denied,*479 U.S. 972, 107 S. Ct. 474 (1986).

Once a plaintiff establishes a *prima facie* case, the employer may defend in two ways: (1) by demonstrating that it has offered a "reasonable accommodation;" or (2) by demonstrating that the accommodation sought cannot be accomplished without undue hardship.[FN10] *See United States v.*

*Board of Ed. for School Dist. of Phila.*, 911 F.2d 882, 886-87 (3d Cir. 1990).

### 1. *Prima Facie Case*

Kraft argues that Reid cannot establish a *prima facie* case of religious discrimination because Reid cannot demonstrate that she was disciplined for failure to comply with the pants uniform requirement.[FN11] Kraft relies on the fact that Reid was hired and allowed to work with a dress in August 1991. Although Reid concedes that she was eventually hired and provided with a dress as a uniform substitute, she asserts that Kraft unlawfully refused to hire her until August 1991, some fifteen weeks after she first informed Kraft of her religious practice, solely because she refused to compromise her religious belief.

In the context of the *prima facie* case, Reid characterizes the "discipline" that she sustained as an unlawful employment delay. Although it is undisputed that Reid did not work from April through August 1991, there are genuine issues of material fact concerning the underlying cause of the "delay" which preclude summary judgment in favor of Reid.

**\*5** The record shows that Kraft gave Reid a start date of May 6, 1991 and assigned her to work the hours of the second shift, but that Reid was unable to begin work because of her own personal problems securing child care. *See* Hall Dep. at 74, 146. Although Kraft told Reid that it would look into the possibility of reassigning her to a more convenient work shift, Reid does not dispute that she never called Kraft as requested to receive a new start date. *See* Hall Dep. at 146; Reid Dep. at 286-87. Nor does Reid claim that she ever resolved her child care problem before August 1991. Because Reid has not demonstrated that she would have actually started work before August 1991, even if the alleged religious discrimination never occurred, it is unclear whether her employment was ever delayed by an unlawful employment decision by Kraft. A rational trier of fact could reasonably conclude that Reid's employment was not delayed by any unlawful action on the part of Kraft because she had unresolved child care problems that precluded her from starting at the Breyer's plant. Reid submits, however, that she had no reason to call Kraft for a new start date because she was told on April 29, 1991 that she would have to wear pants to work at Kraft. *See* Hall Dep. at 49, 51-52, 58, 69; Reid Dep. at 199. A rational trier of fact could reasonably conclude that even if Reid had resolved her child care problems and called for a new start date sometime before August 1991, she would not have received one until she first complied with the company's uniform requirement.

These submissions, when viewed in the light most favorable to the non-moving party, raise genuine issues of material fact as to (1) whether Reid would have started work at the Breyer's plant before August 1991, even if the alleged religious discrimination never arose, because of her own unresolved personal problems securing child care on the shift originally assigned; or (2) whether Kraft failed to hire Reid before August 1991 because she refused to comply with the company dress code. Because triable fact issues remain with respect to whether Reid was ever "disciplined" by an unlawful employment action, Reid's motion will be denied.[FN12]

### 2. *Reasonable Accommodation*

"Whether an employer has met its statutory burden to initiate good faith efforts to accommodate an employee's religious belief is a question of fact." *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1512 (9th Cir. 1989) (citing *TWA v. Hardison*, 432 U.S. 63, 97 S. Ct. 2264, 2273 (1977)). The employer must "show that it undertook 'some initial step to reasonably accommodate the religious belief of that employee'··· [which] requires that 'at a minimum, the employer ··· negotiate with the employee in an effort reasonably to accommodate the employee's religious beliefs.'" *Heller v. EEB Auto Co.*, 8 F.3d 1433, 1440 (9th Cir. 1993) (internal citations omitted).

Here, even if Reid establishes a *prima facie* case of religious discrimination, Kraft asserts that it satisfied its statutory obligation to reasonably accommodate Reid's religious belief by hiring Reid in August 1991, and providing her with a dress as a uniform substitute. Reid asserts, however, that she informed Kraft of her religious practice in April 1991, and that Kraft unlawfully refused to hire her until August 1991 because she refused to compromise her religious belief. Reid suggests, therefore, that Kraft's *initial* obligation to offer a reasonable accommodation arose in late April 1991.

**\*6** The record shows that Reid initially informed Kraft of her religious practice on April 29, 1991 and then again on May 2, 1991. *See* Reid Dep. at 174-82, 197-98. On those same dates, Reid was told that she would have to comply with the company uniform rule if she intended to work at the Breyer's

plant. *See* Hall Dep. 49, 51-52, 58, 69. A rational trier of fact could reasonably conclude that Kraft's initial response unlawfully required Reid to make a Hobson's choice between not accepting a position or compromising a sincerely held religious belief, that Kraft made absolutely no efforts to investigate or accommodate Reid's religious practice, and that whatever subsequent efforts were initiated by Kraft, including the act of hiring Reid at the Breyer's plant with a dress as a uniform substitute in August 1991, bear more properly on the issue of whether Reid mitigated her damages. *See Heller,* 8 F.3d at 1440 (employer's efforts at accommodation *after* unlawfully terminating employee was relevant only to the issue of mitigation of damages) (emphasis added).

Kraft asserts, however, that any delay in reaching this accommodation can be explained by Reid's own recalcitrance and unwillingness to participate in any cooperative effort to resolve the conflict. However, such an assertion presupposes that Kraft first satisfied its own statutory obligation to offer Reid an accommodation. "[T]he statutory burden to accommodate rests with the employer, and the employee's duty to make a good faith attempt to satisfy his needs through means offered by the employer, is irrelevant until the employer satisfies its initial obligation to attempt accommodation." *Cain v. Hyatt,* 734 F. Supp. 671, 684 (E.D. Pa. 1990) (internal quotations and citations omitted). As noted above, because a rational trier of fact could reasonably conclude that Kraft made *no* effort at accommodation, the factfinder could also reasonably conclude that Reid's duty to cooperate was never triggered. *See Toldeo v. Nobel-Sysco, Inc.,* 892 F.2d 1481, 1488 (10th Cir. 1989) (concluding that an employee did not breach his duty to cooperate with employer in reaching a reasonable accommodation because employer's offer of accommodation came after the initial unlawful refusal to hire), *cert. denied,*495 U.S. 948, 110 S. Ct. 2208 (1990).

Because there are genuine issues of material fact as to whether Kraft reasonably accommodated Reid's religious practice, Kraft's motion will be denied.

IV. *Motion To Strike Remedies*

Kraft alternatively argues that as a matter of law: (1) Reid's claims for compensatory and punitive damages should be stricken because such relief is unavailable under Title VII; (2) after-acquired evidence of alleged employment fraud by Reid precludes any right to recovery even if liability were established; and (3) Reid's backpay claim should be completely barred by her failure to mitigate damages. I will address each contention in turn.

A. *Compensatory and Punitive Damages*

**\*7** Kraft argues that Reid cannot recover compensatory and punitive damages under Title VII because her claims accrued before November 21, 1991, the effective date of the 1991 Civil Rights Act (the "Act"). *See Landgraf v. USI Film Products,* 114 S. Ct. 1483, 1505-08 (1994) (holding that the damages and jury trial provisions of the Act do not apply retroactively to cases pending on appeal at the time the Act became effective).

Before Congress passed the Act, a Title VII complainant was limited to equitable relief and was not entitled to a jury trial. The Act now allows a Title VII complainant to pursue compensatory and punitive damages, and also provides for a corresponding right to a jury trial when such damages are sought. *See*42 U.S.C.A. § 1981a(b) & (c) (West 1994). With respect to Reid's Title VII retaliation claim, because *both* the conduct allegedly giving rise to the claim and the filing of the complaint occurred *after* the Act's effective date, Reid may seek compensatory and punitive damages, and obtain a jury trial, on this claim.

Reid's claim of religious discrimination presents a somewhat more refined question of whether the 1991 Civil Rights Act applies retroactively to events that occurred before the Act's effective date, when the complaint was filed after the effective date. Neither party addresses the distinction. In *Landgraf,* the Supreme Court addressed the precise issue of whether the damages and jury trial provisions of the Act applied retroactively when both the alleged unlawful conduct and the filing of the complaint occurred before November 21, 1991. *Id.* at 1488. In holding the Act did not apply retroactively to cases pending on appeal at the time the Act became effective, the Court explained that "[a]pplying the entire Act to cases arising from preenactment *conduct* would have important consequences." *Id.* at 1493 (emphasis added). In this regard, the Supreme Court observed that the "[r] etrospective imposition of punitive damages would raise a serious constitutional question," *id.* at 1505, that the "introduction of a right to compensatory damages" involved "the type of legal change that would have an impact on private parties' planning," *id.* at 1506, and that "the jury trial option

must stand or fall with the attached damages provisions" because jury trial option was available only if compensatory or punitive damages were sought. *Id.* at 1505.

Based on its rationale and focus on preenactment conduct, I conclude that *Landgraf* compels the conclusion that the Act does not apply retroactively to cases where, as here, the alleged discriminatory conduct occurred before November 21, 1991, but the complaint was filed after that date. *See also O'Neal v. Marine Midland Bank, N.A.,* 848 F. Supp. 413, 422 n.6 (W.D.N.Y. 1994) (pre *Landgraf* case holding that Act did not apply retroactively to conduct accruing before effective date of Act even though complaint filed after Act became effective). Accordingly, I will grant Kraft's motion to strike compensatory and punitive damages with respect to Reid's claim of religious discrimination under Title VII because the conduct allegedly giving rise to that claim occurred before November 21, 1991.

**8** Although Kraft does not specifically address the issue of damages under the PHRA, it is clear that Reid may pursue compensatory and punitive damages for claims arising under the PHRA. *See Galeone v. American Packaging Corp.,* 764 F. Supp. 349, 351-52 (E.D. Pa. 1991) (punitive damages available under PHRA); *Welcker v. SmithKline Beckman,* 746 F. Supp. 576, 579-81 (E.D. Pa. 1990) (same). *See also Pennsylvania Human Relations Comm'n v. Zamantakis,* 387 A.2d 70, 73 (Pa. 1978) (PHRA language proving for legal and equitable relief includes damages for humiliation and mental anguish); *Brown Transport Corp. v. Commonwealth of Pa., Pa. Human Relations Comm'n,* 578 A.2d 555, 562 (Pa. Commw. Ct. 1990) (noting that PHRA does not contain limitation on punitive or compensatory damages as expressed in Title VII).

### B. *After-Acquired Evidence*

Kraft also asserts that the discovery of Reid's alleged misrepresentations on her employment application and preemployment medical questionnaire completely bars relief regardless of Kraft's liability.[FN13] Reid responds that the court is free to calculate an award of backpay from at least April 1991, the date Kraft began its course of discrimination, through October 1994, the date Kraft discovered Reid's alleged misrepresentations.[FN14]

The Supreme Court's recent decision in *McKennon v. Nashville Banner Publishing Co.,* 115 S. Ct. 879, 885-87 (1995) controls this issue. As the Court explained:

even though the employer has violated the Act, we must consider how the after-acquired evidence of the employee's wrongdoing bears on the specific remedy to be ordered···. The employee's wrongdoing must be taken into account ··· lest the employer's legitimate concerns be ignored···. In determining appropriate remedial action, the employee's wrongdoing becomes relevant ··· to take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing···. Once an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit. The beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered. In determining the appropriate order for relief, the court can consider taking into further account extraordinary equitable circumstances that affect the legitimate interests of either party. An absolute rule barring any recovery of backpay, however, would undermine the ADEA's objective of forcing employer's to consider and examine their motivations, and of penalizing them for employment decisions that spring from age discrimination.[FN15]

*Id.* at 885-86.

**9** Although the after-acquired evidence rule does not act as an absolute bar to the recovery of an award of backpay for a Title VII violation, *McKennon* does not compel the recovery of an award of backpay to a successful Title VII complainant. Rather, the trial court retains discretion to determine the proper measure of a remedy, if any, upon a showing of "extraordinary equitable circumstances that affect the legitimate interests of either party." Although Reid's alleged employment application and medical history fraud are relevant "on the specific remedy to be ordered," the proper measure of Reid's recover, if any, will await a more fully developed factual record and a balancing of equities in light of Title VII's dual objectives of deterrence and compensation.[FN16] Thus, I will deny Defendant's motion to strike all relief on the basis of after-acquired evidence.

### C. *Failure to Mitigate*

Finally, Kraft asserts that Reid's back pay claim should be completely barred as a matter of law by her failure to mitigate damages. Reid seeks an award of backpay from April 26, 1991 through September 1993, when she became a full-time student. "Plaintiffs have a duty to mitigate damages by seeking suitable employment, and those who fail to carry out this obligation forfeit their right to continuing backpay." *Gallo v. John Powell Chevrolet, Inc.,* 779 F. Supp. 804, 813 (M.D. Pa. 1991). "Although the statutory burden is placed on the Title VII plaintiff, the employer has the burden of proving failure to mitigate." *Robinson v. SEPTA,* 982 F.2d 892, 897 (3d Cir. 1993). "The burden may be satisfied by proving that: (1) substantially equivalent positions were available; and (2) the plaintiff failed to use reasonable care and diligence in seeking such positions." *Gallo,* 779 F. Supp. at 813. *See also Conway v. Hercules Incorporated,* 831 F. Supp. 354, 359 (D. Del. 1993) ("Plaintiff has breached his duty to mitigate if two conditions are present: first, if he has failed to exercise 'reasonable diligence' to reduce his; and second, if there is a 'reasonable likelihood' he would have found comparable work had he exercised such diligence.").

Here, Kraft does not demonstrate as a matter of law that there were substantially equivalent positions available to Reid. Moreover, the record shows that since April 1991 Reid has responded to newspaper advertisements, made job applications, interviewed with prospective employers, and actually took some part-time positions, albeit of a short duration. *See* Reid Dep. at 85, 87-88, 90, 96-98, 100-02, 105, 107; Defs.' Ex. C, Reid's Resp. To Interrog. 13. Although Kraft characterizes such efforts as abysmally poor and a total failure to exercise reasonable diligence, a reasonable factfinder could disagree on this record. *See Conway,* 831 F. Supp. at 359 ("'Reasonable diligence' does not mean 'success.'"). Because sufficient evidence exists showing that Reid took some affirmative action in pursuing employment, I cannot conclude as a matter of law that her efforts were unreasonable.
**\*10** An appropriate Order follows.

### *ORDER*

AND NOW, this 27th day of April, 1995, upon consideration of the following outstanding motions, all submissions made in support thereof and in opposition thereto, and for the reasons stated in the accompanying MEMORANDUM, it is hereby ORDERED that:

1. Defendants' Motion For Summary Judgment And Alternatively To Strike Demands For Relief (Document No. 26) is GRANTED IN PART AND DENIED IN PART as follows:

(a) Defendant Breyers is DISMISSED as a party pursuant to Rule 17(b).

(b) Plaintiff's request for compensatory and punitive damages only on her claim of religious discrimination under Title VII is STRICKEN.

In all other respects, Defendants' Motion is DENIED.

2. Plaintiff's Motion For Summary Judgment (Document No. 27) is DENIED. [FN17]

FN1. Reid has withdrawn her claim of intentional infliction of emotional distress. *See* Pl.'s Mem. Of Law In Opp'n To Defs.' Mot. For Summ J. at 32.

FN2. Reid did not inquire about a new start date and never called the company as instructed regarding a new start date and shift assignment. She states, however, that there was no reason to call after the issue of her religious practice surfaced.

FN3. Kraft claims that it informed Reid that it wanted to discuss possible accommodation and employment with Kraft. Reid claims that Kraft never actually stated that it wanted to discuss a possible accommodation.

FN4. Kraft claims that because Reid refused to negotiate without her attorney present, she was responsible for ending the scheduled session. Reid alleges that she had every right to have counsel present and that Kraft ended the session when it insisted that any discussions be conducted without Reid's attorney.

FN5. On November 18, 1992, the PHRC notified Reid that it had made a finding of

probable cause, however, the record reveals no further action by the state agency.

FN6. Defendants seek to dismiss Breyers and Unilever from this suit. First, Defendants argue that Breyers is not an entity capable of suit under Rule 17(b). Defendants aver that Breyers is merely a trade name, and the name of the manufacturing plant in Philadelphia where Reid sought to work, and not a separate corporate entity. *See* Strickland Aff. at ¶ 2. Because Breyers lacks any independent legal existence apart from Kraft, and because Kraft has already been named a defendant, I will grant Defendants' motion to dismiss Breyers as a party pursuant to Rule 17(b). *See Laxalt v. McClatchy,* 622 F. Supp. 737, 740-41 (D. Nev. 1985) (dismissing under Rule 17(b) wholly owned subsidiary newspapers of party already named as a defendant in libel suit). Second, Defendants seek to dismiss Unilever because: (1) Reid failed to file EEOC charges against Unilever; and (2) Reid testified that Unilever was not her employer. Reid concedes both points, but argues, without citation to authority, that Unilever may be held liable on a theory of vicarious liability, and that this court should therefore allow her leave to amend to allege such a theory. Putting aside its viability, I need not address Reid's proposed amendment to assert such a theory. Because Defendants admit that Unilever purchased Breyers from Kraft on October 25, 1993, and that Unilever has agreed to assume liability, if any, for Reid's claims against Kraft, *see* Strickland Aff. at ¶ 3, Unilever may be held liable on a theory of successor liability. *See Brennan v. National Telephone Directory Corp.,* 850 F. Supp. 331, 339 (E.D. Pa. 1994) (In Pennsylvania, the purchaser of a company's assets may be held liable on a theory of successor liability where there is an express or implied agreement on the purchaser's part to assume seller's obligations); *Brown v. Delaware & Hudson Railway Co.,* Civil No. 91-3203, 1992 WL 330320 at * 6 (E.D. Pa. Nov. 3, 1992) (denying summary judgment because defendant could be held liable as a successor corporation even though not named in EEOC charge and acquired former corporation nearly five months after Plaintiff's termination). Accordingly, I will deny Defendants' motion to dismiss Unilever as a party.

FN7. Reid also claims that her inability to accept employment in 1993 because she lacked seniority rights to work a shift when she could obtain child care constituted a second act of retaliation. However, the record shows that Reid did not file a complaint with either the PHRC or the EEOC. *See* Reid Dep. at 378. Accordingly, I will deny Reid leave to amend her complaint to assert a claim of retaliation for events arising in 1993 because Reid's failure to exhaust her administrative remedies would make the amendment futile. *See Adams v. Gould, Inc.,* 739 F.2d 858, 864 (3d Cir. 1984) (court may refuse to allow an amendment that fails to state a cause of action because it would not survive a motion to dismiss), *cert. denied,* 469 U.S. 1122, 105 S. Ct. 806 (1985).

FN8. Although Kraft raised the alleged exhaustion defects regarding the retaliation claims in its motion for summary judgment before Reid sought leave to amend to assert such claims, I will treat the arguments as responses to Reid's motion for leave to amend.

FN9. Pennsylvania courts have been guided by Title VII in construing the PHRA in religious accommodation cases. *See Pennsylvania State University v. Pennsylvania Human Relations Comm'n,* 505 A.2d 1053, 1055-57 (Pa. Commw. Ct. 1986). Accordingly, Reid's PHRA claims rise or fall with her Title VII claims.

FN10. Kraft concedes that it does not intend to defend this case on the grounds that accommodation would pose an undue hardship. *See* Defs.' Mem. Of Law In Opp'n To Pl.'s Mot. For Partial Summ. J. at 10.

FN11. Kraft does not dispute the sincerity of Reid's religious belief, that Reid's religious belief directly conflicted with articulated company policies and safety rules, and that Reid informed Kraft of her religious practice.

FN12. I do not suggest that a prospective employee who has not received a start date cannot be "disciplined" by an employer who unlawfully delays the commencement of employment. Rather, on this record, I simply cannot conclude as a matter of undisputed fact that the "delay" in Reid's commencing employment was caused by Kraft's unlawful adherence to a conflicting company rule or Reid's own unresolved personal problems.

FN13. Kraft points to the following after-acquired evidence of wrongdoing. First, Reid denied a number of felony convictions on her employment application with Kraft. See Reid Dep. at 26-27, 140. In 1988, however, Reid pled guilty to some one hundred felony counts of theft and forgery. See id. Second, Reid denied that she was involved in any auto accidents on her preemployment medical questionnaire. See Defs.' Ex. B (Document 25) at D-10 ("Physical Exam & Assessment"). However, on October 13, 1987, January 5, 1988, and April 30, 1988, Reid was involved in auto accidents. See Reid Dep. at 27, 29-30, 36, 39, 42-43, 48-49. Moreover, with respect to the auto accidents on October 13, 1987 and April 30, 1988, as well as a slip and fall accident on July 27, 1989, Reid filed complaints in which she verified that she sustained permanent and serious injuries. See Defs.' Ex. B (Document 25) at D-11-13. However, on her medical questionnaire, Reid denied that she had ever suffered any such injury or illness. See Physical Exam & Assessment. As a threshold matter, however, I note that when an employer "seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of discharge." Id. at 886-87. In this case, Kraft has not made the requisite preliminary showing that the severity of Reid's alleged misrepresentations would have prevented employment with Kraft, had the information been known at the time she applied for employment.

FN14. Reid seeks compensatory and punitive damages and an award of backpay from April 26, 1991 through September 1993, when she became a full-time student. Reid does not seek frontpay or reinstatement. In any event, I note the Court's observations that as a general proposition neither reinstatement nor front pay is an appropriate remedy because it would be "inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds." McKennon, 115 S. Ct. at 886.

FN15. Even though the McKennon decision involved an ADEA claim, the Court's holding and reasoning applies with equal force to Title VII claims. McKennon, 115 S. Ct. at 884.

FN16. Although Kraft asserts that Reid's alleged misrepresentations constitute "extraordinary equitable circumstances" that should completely bar any recovery, I note that Kraft does not address the McKennon Court's concern that a complete bar, whether as a general rule or, as here, as a matter of equity, would undermine the objectives of anti-discrimination laws such as Title VII.

FN17. Reid will be granted leave to file an amended complaint to properly allege a claim of retaliation.

Copr. (C) West 2006 No Claim to Orig. U.S. Govt. Works E.D.Pa. 1995
Reid v. Kraft General Foods, Inc.
Not Reported in F.Supp., 1995 WL 262531 (E.D.Pa.), 67 Fair Empl.Prac.Cas. (BNA) 1367, 66 Empl. Prac. Dec. P 43,521


Motions, Pleadings and Filings (Back to top)

• 2:93cv05796 (Docket) (Nov. 02, 1993)
END OF DOCUMENT

Not Reported in F.Supp., 1993 WL 14647 (D.Del.)

<u>Motions, Pleadings and Filings</u>

Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
VIKOMA INTERNATIONAL, LIMITED, Plaintiff,
v.
OIL STOP, INC., Defendant.
Civ. A. No. 92-573-SLR.
Jan. 14, 1993.

Howard M. Handelman, and John H. Newcomer, Jr., Bayard, Handelman & Murdoch, P.A., Wilmington, for plaintiff.
<u>Daniel F. Wolcott, Jr.</u>, Potter Anderson & Corroon, Wilmington, <u>Jeffrey P. Ayres</u>, and Valerie Floyd Portner, Baltimore, MD, for defendant.

MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

I. INTRODUCTION

*1 Plaintiff, Vikoma International Limited ("Vikoma") filed this case against Oil Stop, Inc. ("Oil Stop") seeking a (1) declaratory judgment of patent invalidity or non-infringement concerning defendant's U.S. Patent No. 5,022,785 entitled "Floating Barrier Method and Apparatus" ("the '785 patent") pursuant to <u>28 U.S.C. §§ 2201</u> and <u>2202</u>; and (2) injunctive relief and damages for alleged tortious interference with existing and prospective business relations. (D.I. 1)
Both parties are involved in businesses concerning the oil containment market. Plaintiff Vikoma is a foreign corporation existing under the laws of Great Britain with its principal place of business in England. (D.I. 1 at ¶ 1) Defendant Oil Stop is a Louisiana corporation with its principal place of business in Louisiana. (D.I. 1 at ¶ 2)
Presently before this Court is Oil Stop's motion to dismiss pursuant to <u>Fed.R.Civ.P. 12(b)</u> on the following grounds: (1) lack of personal jurisdiction over defendant; (2) improper venue for trial; and (3) insufficient service. In the alternative, Oil Stop's motion seeks an order to transfer this case to the Eastern District of Louisiana.[FN1]

II. PERSONAL JURISDICTION

"When personal jurisdiction is contested and no evidentiary hearing is held, the plaintiff need only establish a prima facie case with the record viewed in the light most favorable to the plaintiff. Nonetheless, if as here, the parties have taken discovery on the jurisdictional issue, '[t]he Court need not be blind to discovered materials and should look beyond the facade of the pleadings.' " *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F.Supp. 1458, 1462 (D.Del.1991) (citing *Sears, Roebuck & Co. v. Sears*, 744 F.Supp. 1297, 1301 (D.Del.1990)).
The determination of whether personal jurisdiction exists is a two-step process under Delaware law. *Jeffreys v. Exten*, 784 F.Supp. 146, 150 (D.Del.1992). Since federal patent law does not provide for a particular manner of service, the Court must first refer to state law "even when, as here, the underlying legal issues involve federal patent law, because <u>Fed.R.Civ.P. 4(e)</u> directs that in the absence of a federal service of process statute, state law governs." *Applied Biosystems,* 772 F.Supp. at 1462 (citing *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290 (3d Cir.), *cert. denied,* 474 U.S. 980 (1985)).[FN2] Thus, the Court must first determine whether it may exercise jurisdiction pursuant to Delaware's long-arm statute. "Second, if the statute applies, the Court must then decide whether such service comports with traditional notions of fair play and substantial justice under the due process clause." *Jeffreys,* 784 F.Supp. at 150 (citing *U.S. v. Consolidated Rail Corp.,* 674 F.Supp. 138,

142 (D.Del.1987)).

## A. DELAWARE LONG-ARM STATUTE

The Delaware long-arm statute, 10 Del.C. § 3104, provides in pertinent part as follows:
(c) As to a cause of action brought by a person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-resident, or his personal representative, who in person or through an agent:
**\*2** (1) Transacts any business or performs any character of work or service in the State;
(2) Contracts to supply services or things in this State;
(3) Causes tortious injury in the State by an act or omission in this State;
(4) Causes tortious injury in this State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any persistent course of conduct in the State or derives substantial revenue from services or things used or consumed in the State; ⋯
10 Del.C. § 3104. "Delaware courts have construed the statute as conferring jurisdiction to the maximum parameters of the due process clause, *Transportes Aereos De Angola v. Ronair, Inc.*, 544 F.Supp. 858 (D.Del.1982); ⋯ and will liberally interpret the statute in favor of exercising jurisdiction." *Jeffreys*, 784 F.Supp. at 151 (citing *Waters v. Deutz Corp.*, 460 A.2d 1332 (Del.Super.1983)).

## B. DUE PROCESS ANALYSIS

Generally, personal jurisdiction may be either specific or general. Specific jurisdiction would apply if the plaintiff's cause of action arose from the defendant's activities in Delaware. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). "To establish specific jurisdiction a plaintiff must show that the defendant has minimum contacts with the state 'such that [the defendant] should reasonably anticipate being haled into court there.' " *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 690 (3d. Cir.1990) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "Jurisdiction is proper ⋯ where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state." *Burger King Corp.*, 471 U.S. at 475.
"General jurisdiction is implicated where the claim arises from the defendant's non-forum related activities." *Reed v. Staker*, C.A. No. 92-0419, 1992 WL 68272, at \*2 (March 23, 1992 E.D.Pa.) (citing *Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 414 n. 9 (1984)). To assert general jurisdiction, the plaintiff "must show significantly more than mere minimum contacts," *Provident National Bank v. California Federal Savings & Loan Association*, 819 F.2d 434, 437 (3d Cir.1987), establishing that the contacts with Delaware were "continuous and substantial." *Gehling v. St. George's School of Medicine, Ltd*, 773 F.2d 539, 541 (3d Cir.1985).

### III. DISCUSSION

#### A. Personal Jurisdiction

In its complaint, plaintiff alleges that defendant conducts business in Delaware (D.I. 1 at ¶ 2) and specifies more particularly in its answering brief that defendant is subject to personal jurisdiction pursuant to Delaware long-arm statute, 10 Del.C. §§ 3104(c)(1)-(4).

#### 1. Specific Jurisdiction

First, plaintiff Vikoma alleges that defendant Oil Stop's marketing activities are specifically directed to Delaware "by advertising in media distributed in Delaware" so as to constitute "transacting business" in the state of Delaware pursuant to section 3104(c)(1). (D.I. 10 at 15) The Court disagrees and finds that general solicitation in "international media" (D.I. 10 at 6) is an insufficient basis for specific jurisdiction. *See Sears, Roebuck & Co.*, 744 F.Supp. at 1293. A similar issue was raised in *Jennings v. Walt Disney World, Inc.*, C.A. No. 92-2764, 1992 WL 188374 (E.D.Pa. July 27, 1992). In *Jennings* the court noted the following:
**\*3** [A]dvertising by defendant itself, with no other activities in the forum, does not support jurisdiction ⋯ Specifically in *Gehling*, the Third Circuit held that advertising in the New York Times

and Wall Street Journal does not "constitute 'continuous and substantial' contacts with the forum state" as they are nonPennsylvania newspapers and are circulated nationally···· The central concern of personal jurisdiction, predictability and fairness, would be severely undermined if a defendant were to be amenable to suit in every state in which an ad is run.

*Jennings* at *3 (footnotes omitted) (citing *Gehling v. St. George's Sch. of Medicine, Ltd.*, 773 F.2d 539 (3d Cir.1985)). Since plaintiff has failed to set forth evidence of any advertising by defendant in particular Delaware publications, the Court rejects this ground as a sufficient jurisdictional contact. Plaintiff generally alleges that the following activities satisfy either section 3104(c)(1) or (c)(2) of the Delaware long-arm statute: "[P]roviding product warranties for products sold in Delaware, and ··· making sales calls, sales presentations, product demonstrations, and at least one sale in Delaware." (D.I. 10 at 15) Plaintiff asserts that the AUTO BOOM product involved in the sole Delaware sale was covered by defendant's '785 patent, arguing that this patent applies to all of Oil Stop's products. However, plaintiff fails to provide sufficient evidence in support of this bald assertion. Indeed, plaintiff provides *in its own exhibits* a sales brochure from Oil Stop which directly contradicts any such argument. (D.I. 11, Exhibit "B") The brochure clearly differentiates between the AUTO BOOM II model and the AUTO BOOM model which was sold to the single Delaware customer. The information concerning the AUTO BOOM II model is that this model "Employs Our *Patented* Automatic Inflation Technology." (Emphasis added) In contrast, the information in the brochure concerning the other model, AUTO BOOM, which was sold on a single occasion in Delaware, does not include this language. (D.I. 11, Exhibit "B") [FN3] Accordingly, the Court finds that the AUTO BOOM sold on one occasion in Delaware does not provide a sufficient basis for jurisdiction.[FN4]

Finally, plaintiff asserts that defendant conducted "sales presentations" and "industry demonstrations" in Delaware. Specifically, plaintiff states in its brief that "[i]n June 1992, Oil Stop presented its Auto Boom at the open[ing] day organized by the Delaware Bay and River Cooperative ("DBRC") located in Lewes, Delaware." (D.I. 10 at 4) Plaintiff also includes in the appendix a map which purports to demonstrate Oil Stop's contacts with particular states and foreign countries. The map indicates, by way of an arrow pointing to Delaware, that the DBRC June 1992 trade show occurred in Delaware. (D.I. 11, Ex. P) The arrow to Delaware is labeled as "industry presentation" and "infringing threats" on the map. Contrary to plaintiff's representations, however, the trade show actually occurred in Philadelphia, Pennsylvania, not in Delaware. (D.I. 16, Exhibit C, Lazes Affidavit II, ¶ 2 and Charitat Affidavit, ¶ 3) Thus, even if tortious infringing actions were actually made at the DBRC June 1992 trade show presentation, they would have occurred in Pennsylvania and not in Delaware. Accordingly, the Court rejects plaintiff's argument that jurisdiction exists pursuant to section 3104(c)(3).[FN5]

## 2. General Jurisdiction

*4 General jurisdiction pursuant to 10 DelC. 3104(c)(4) is based upon the defendant's general activity within Delaware. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984). Plaintiff Vikoma first argues that Oil Stop's national marketing efforts constitute sufficient contacts since such activity, including a warranty program, might have applied to the state of Delaware.[FN6] Plaintiff's argument that "Vikoma is unaware of any efforts by Oil Stop to exclude Delaware from the reach of its marketing efforts" (D.I. 10 at 18), fails to establish any actual activity in the state of Delaware. Accordingly, jurisdiction cannot be based on this broad assertion.

Plaintiff also argues that defendant's sale of one AUTO BOOM and the provision of a warranty for this product are sufficient to confer general jurisdiction. Delaware courts have previously construed section 3104(c)(4) as requiring more than one sale in the state of Delaware. *See Fischer v. Hilton*, 549 F.Supp. 389, 392 (D.Del.1982) (use of the term "things" in section 3104(c)(4) adds "strength to the conclusion" that one isolated transaction is insufficient). Accordingly, the Court finds that plaintiff has failed to demonstrate sufficient forum contacts which would permit this Court to exercise specific or general jurisdiction.[FN7]

## B. Venue

Traditionally, venue in a patent infringement action was governed by a specific statutory provision, presently codified in 28 U.S.C. § 1400(b): "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." For corporate defendants in patent

infringement actions, the Supreme Court interpreted the term "resides" to mean the state of incorporation only. *Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222 (1957). In 1988, Congress amended the general venue statute as it pertained to corporate defendants by redefining the meaning of the term "resides". 28 U.S.C. § 1391(c). As amended, § 1391(c) provides in relevant part: "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced····" In *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574 (Fed.Cir.1990), *cert. denied,* 111 S.Ct. 1315 (1991), the Federal Circuit addressed the question of whether, "by that amendment to § 1391(c)···, Congress meant to apply that definition to the term [resides] as it is used in § 1400(b)····" The Federal Circuit concluded that Congress did mean to apply § 1391(c)'s definition of "resides" to § 1400(b).[FN8] Consequently, "the first test for venue under § 1400(b) with respect to a defendant that is a corporation ···, is whether the defendant was subject to personal jurisdiction in the district of suit at the time the action was commenced." *Id.* at 1584. *Accord, In Re Regents of University of California,* 964 F.2d 1128, 1132 (Fed.Cir.1992).

***5** Given the Court's conclusion that defendant Oil Stop is not subject to personal jurisdiction in Delaware, neither does it reside in Delaware for purposes of venue under 28 U.S.C. §§ 1391(c) and 1400(b). Accordingly, venue is improper in the state and judicial district of Delaware.

### C. Transfer

As an alternative to dismissing this case, defendant has requested that the case be transferred to the Eastern District of Louisiana pursuant to 28 U.S.C. § 1406(a) which provides as follows:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).[FN9] Accordingly, the Court finds that since venue is improper in the state of Delaware, this case can be transferred to an appropriate forum.

Plaintiff, however, "objects to the transfer of this action to the Eastern District of Louisiana" and states that it does not "consent to the jurisdiction of the Eastern District of Louisiana." [FN10] (D.I. 10 at 22-23) This objection appears to be premised upon its personal jurisdiction and venue arguments. Since the Court finds that this case is subject to dismissal based on lack of jurisdiction and improper venue, it will provide the plaintiff with the opportunity to reconsider its objection to transfer.

### IV. CONCLUSION

The Court finds that defendant is not subject to personal jurisdiction, nor is venue proper in this district. Consistent with the Order issued this same date, plaintiff will be given ten days to reconsider its objection to transfer. In the event that plaintiff agrees to transfer within this time period, the case will be transferred to the Eastern District of Louisiana. In the event that plaintiff continues to object to transfer, defendant's motion to dismiss will be granted.

FN1. Plaintiff, in a letter dated December 18, 1992, requested that the Court hear oral argument on this issue. The Court is satisfied that the briefs submitted by both parties provide a sufficient basis for deciding defendant's motion to dismiss or in the alternative to transfer. Accordingly, plaintiff's request for oral argument is hereby denied.

FN2. "As a result, personal jurisdiction may not be based on an alien defendant's aggregated contacts with the United States as a whole." *Applied Biosystems,* 772 F.Supp. at 1462. In *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290 (3d Cir.), *cert. denied,* 474 U.S. 980 (1985), the Third Circuit rejected a national contacts theory as an appropriate basis for obtaining in personam jurisdiction. *Id.* at 300.

FN3. It is interesting to note that the particular sale at issue was consummated approximately "eight months before the June 1992 trade show or any alleged infringement representations" which are the basis of the present dispute. (D.I. 16 at 10)

FN4. Plaintiff Vikoma challenges that since it disagrees with defendant as to whether products involved in the single Delaware sale and two Delaware sales calls were covered by the '785 patent, "such disagreements must be construed in favor of [it] Vikoma." (D.I. 10 at 15 n. 44) However, for the reasons stated in text, the Court disagrees that a genuine dispute exists. Even if the AUTO BOOM was covered by the patent in the present case, the Court finds that the single sale and two sales contacts are insufficient contacts so as to satisfy the Delaware long-arm statute sections 3104(c)(1) and/or 3104(c)(2). As to the one sale, plaintiff is unable to give a definite monetary value of the product, but rather estimates that "such sales are usually between $100,000 and $200,000." (D.I. 10 at 7) Defendant Oil Stop counters that this sale was actually "substantially less than the $100,000-$200,000 figure postulated by Plaintiff···· Moreover, $100,000 represents less than one and one-half of a percent of Oil Stop's revenues as shown on the Dun & Bradstreet report (Plaintiff's Exhibit A)." (D.I. 16 at 3 n. 2)

FN5. Moreover, it appears questionable whether defendant Oil Stop actually asserted to any Delaware customers that Vikoma's Hi-Sprint oil boom infringed defendant's '785 patent. With respect to this, defendant persuasively argues the following:

As sole support for this allegation, Plaintiff points to the declaration of David Cook who, without stating that he personally heard those assertions by Oil Stop's representatives (unnamed of course), *swears* that these statements "to Delaware Bay" were a "barrier" to Vikoma's sales to potential Delaware customers. Plaintiff's Exhibit K, ¶ 10.

Not one of Plaintiff's sixteen exhibits establishes that Oil Stop made any statements about patent infringement in Delaware or to any Delaware companies. The two letters Plaintiff attaches to its brief (Exhibits N and O) are addressed to companies in Washington and Alaska····

Vikoma's hearsay is contrary to Oil Stop's uncontradicted evidence that no infringement threats were made by Oil Stop-either at the DBRC mini-trade show in Philadelphia or anywhere in Delaware. Thus, Oil Stop's only sales representative who attended the DBRC trade show has stated, under oath, that he never discussed patent issues with anyone at the meeting-much less specifically targeting Vikoma's "potential Delaware customers."

(D.I. 16 at 6-7)

FN6. Defendant's national advertising activities are discussed *supra*.

FN7. In light of this Court's conclusion that plaintiff has not satisfied any provision of the Delaware long-arm statute, it is unnecessary to reach the constitutional issue as to whether jurisdiction over defendant would comport with traditional notions of fair play and substantial justice. Nonetheless, the Court concludes that plaintiff's assertions of personal jurisdiction fail to comport with due process standards.

Furthermore, given the above conclusion and plaintiff's failure to comply with Fed.R.Civ.P. 4(c), service of process was insufficient in the present case.

FN8. Arguably, § 1400(b) is inapplicable to the case at bar since this action does not involve a patent infringement claim, but rather involves a declaratory judgment for patent invalidity. "Venue in a declaratory judgment action for patent invalidity is governed by the general venue statute at 28 U.S.C. § 1391[ ], rather than the specific venue statute for patent infringement actions, 28 U.S.C. § 1400(b)." *Millipore Corp. v. University Patents, Inc.*, 682 F.Supp. 227, 234 (D.Del.1987). Thus, § 1391(c)'s definition of "resides" is applicable in any event.

FN9. Even if venue were proper, it appears that transfer would nonetheless be appropriate pursuant to 28 U.S.C. § 1404. Although defendant does not request transfer

pursuant to this section in its motion to dismiss (D.I. 8), it does address this transfer provision in its opening and reply briefs. (D.I. 9, 16) Section 1404(a) provides as follows:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The Eastern District of Louisiana would be a more convenient forum and a transfer to this court would serve the interests of justice in light of the following facts:

Plaintiff's ties to Delaware are limited, and are no greater than its ties to Louisiana. Moreover, Plaintiff's principal attorneys are located in Texas-much closer to Louisiana than Delaware.

Defendant's records and documentation are located in Louisiana. Similarly, corporate and third party witnesses are located in Louisiana ... [T]he costs associated with maintaining this action in Delaware would be significantly higher, to both the Defendant and witnesses, than litigating this action in Louisiana

* * *

(D.I. 16 at 18-19) Furthermore, a "related action between these parties is now pending in the Eastern District of Louisiana. This action could be consolidated with the Louisiana lawsuit-thereby maximizing the efficient use of judicial resources." (D.I. 16 at 19 n. 12)

FN10. Plaintiff relies on *Carteret Savings Bank, FA v. Shushan,* 919 F.2d 225 (3d Cir.1990) which held that defendant could not invoke a transfer pursuant to 1406(a) over the objection of plaintiff. *Id.* at 232 ( cited in *Carteret Savings Bank, FA v. Shushan,* 954 F.2d 141, 144 (3rd Cir.1992)). Defendant, in its reply brief, distinguishes this case from the present facts on the basis that in *Carteret,* venue was in fact proper.

It appears that *Carteret* would not apply to cases in which venue was improper. The language of section 1406 clearly states on its face that a court may, "in the interest of justice," transfer a case when venue is improper. However, in the present case, the Court finds that the interest of justice would be best served by allowing plaintiff to reconsider its objection to transfer when faced with the alternative of dismissal of its case.

Copr. (C) West 2006 No Claim to Orig. U.S. Govt. Works D.Del.,1993.
Vikoma Intern., Ltd. v. Oil Stop, Inc.
Not Reported in F.Supp., 1993 WL 14647 (D.Del.)

Motions, Pleadings and Filings (Back to top)

• 1:92cv00573 (Docket) (Sep. 28, 1992)
END OF DOCUMENT

(C) 2006 Thomson/West No Claim to Orig U S Govt Works

--- F.Supp.2d ----, 2006 WL 1517403 (D.Del.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Anthony Lewis WARE, Plaintiff,
v.
BALL PLASTIC CONTAINER CORP., Defendant.
No. CIV.05-362-SLR.
June 2, 2006.

**Background:** African-American tractor trailer driver, whose employer contracted to pick up and deliver bottles manufactured at Colorado owner's New Jersey plant, filed racial discrimination complaint under Title VII, alleging that owner banned him from its premises on account of his race. Plant owner filed motion to dismiss for lack of personal jurisdiction and improper venue.

**Holdings:** The District Court, Sue L. Robinson, Chief Judge, held that:
(1) Delaware court lacked general personal jurisdiction over Colorado owner of New Jersey bottling plant;
(2) venue for employment discrimination action was improper in Delaware; and
(3) driver was not an employee of plant owner entitled to sue for discriminatory practices under Title VII.

Motion granted.

[1] KeyCite Notes 

⇐170B Federal Courts
  ⇐170BII Venue
    ⇐170BII(A) In General
      ⇐170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
        ⇐170Bk76.5 k. Contacts with Forum State. Most Cited Cases

General jurisdiction exists when a nonresident defendant's contacts with the forum state are so continuous and systematic that exercise of personal jurisdiction would be reasonable and just. U.S.C.A. Const.Amend. 14.

[2] KeyCite Notes

⇐170B Federal Courts
  ⇐170BII Venue
    ⇐170BII(A) In General
      ⇐170Bk77 Corporations, Actions by or Against
        ⇐170Bk79 k. Corporate Activities and Contacts Within District; Doing Business in General.
Most Cited Cases

Delaware court lacked general personal jurisdiction over Colorado owner of New Jersey bottling plant, which had no facilities located in Delaware, kept all of its records in New Jersey, and had no employees who worked in Delaware; owner had not maintained continuous and substantial affiliations with the forum state. U.S.C.A. Const.Amend. 14.

[3] KeyCite Notes 

⇐170B Federal Courts
  ⇐170BII Venue
    ⇐170BII(A) In General
      ⇐170Bk87 District Where Claim Arose
        ⇐170Bk88 k. Wrongful Acts in General. Most Cited Cases

Venue for employment discrimination action was improper in Delaware because the employment discrimination took place in New Jersey, the employment records were kept in New Jersey, and plaintiff never had applied to work for the defendant in Delaware. Civil Rights Act of 1964, § 706(f)(3), 42 U.S.C.A. § 2000e-5(f)(3).

[4] KeyCite Notes 

⇐78 Civil Rights
  ⇐78II Employment Practices
    ⇐78k1108 Employers and Employees Affected
      ⇐78k1112 k. Multiple Entities; Third Parties. Most Cited Cases

A Title VII defendant need not be the plaintiff's employer to interfere impermissibly with plaintiff's employment opportunities. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[5] KeyCite Notes 

⇐78 Civil Rights
  ⇐78II Employment Practices
    ⇐78k1108 Employers and Employees Affected
      ⇐78k1110 k. Nature and Existence of Employment Relationship. Most Cited Cases

Factors considered in determining an employment relationship for Title VII purposes include: the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[6] KeyCite Notes 

⇐78 Civil Rights
  ⇐78II Employment Practices
    ⇐78k1108 Employers and Employees Affected
      ⇐78k1112 k. Multiple Entities; Third Parties. Most Cited Cases

Driver, who was employed by a third party contractor to deliver bottles for plant owner, was not an employee of plant owner entitled to sue for discriminatory practices under Title VII; driver alleged no facts to show that owner ever controlled or supervised his daily activities other than making driver wait to load his truck and banning driver from the owner's plant. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

Anthony Lewis Ware, Wilmington, DE, Plaintiff, Pro se.
David G. Culley, Esquire and Timothy S. Martin, Esquire of Tybout, Redfearn & Pell, Wilmington, DE, for Defendant. Of Counsel: Bradley E. Strawn, Esquire of Littler Mendelson, PC, Philadelphia, PA.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

## I. INTRODUCTION

*1 On June 6, 2005, Anthony L. Ware ("plaintiff") filed a pro se complaint alleging racial discrimination under Title VII of the Civil Rights Act of 1964. [FN1] 42 U.S.C. § 2000e (2000). Plaintiff claims that Ball Plastics Corporation ("defendant") discriminated against him when it banned plaintiff from its premises on account of his race. The court possesses subject matter jurisdiction under 28 U.S.C. § 1331 (2000). Currently before the court is defendant's motion to dismiss for lack of personal jurisdiction and improper venue pursuant to Fed.R.Civ.P. 12(b)(2) and (3). Because defendant relies upon an affidavit in support of the motion, the averments of fact in the affidavit shall be accepted as true, pursuant to Fed.R.Civ.P. 56(e), unless plaintiff files a counter-affidavit. Plaintiff has not filed a responsive brief. For the following reasons, the court will grant defendant's motion.

## II. BACKGROUND

Plaintiff, an African-American, was employed by National Freight, Inc. as a tractor trailer driver. (D.I. 2 at 6) Defendant contracted with National Freight to pick up and deliver soft drink and water bottles manufactured at defendant's Delran plant in Cinnaminson, New Jersey. (D.I. 7 at 2) Plaintiff made daily runs to defendant's plant to pick up empty bottles and deliver them to Cott Beverage, defendant's customer. (D.I. 2 at 6)

Defendant is a Colorado corporation authorized to do business in several states, including New Jersey and Pennsylvania, but not Delaware. (D.I. 7 at 2) Defendant's Delran plant manufactures approximately 1.5 billion bottles per year. (D.I. 8 at A-29) Of these, about 42-45 million bottles, 3% of the plant's total annual production, are shipped to Pepsi Bottling Co., a Delaware customer, by a common carrier. (D.I. 8 at A-30) Defendant's employees do not deliver the products in Delaware; delivery is accomplished only through independent trucking contractors. (D.I. 7 at 3) Defendant's shipping records are maintained in New Jersey, and defendant has no manufacturing facilities in the State of Delaware. *Id.*

On February 16, 2004, plaintiff made a trip to defendant's Delran plant where he was delayed three times at two and one-half hours each. [FN2] (D.I. 2 at 6) Plaintiff complained about the delay because he was paid per load rather than hourly. *Id.* He was told to back his truck up to the dock, where he proceeded to wait an additional forty-five minutes. (D.I. 2 at 7) Plaintiff asked another African-American worker as to the cause of the delay when Joe Dugan, a plant supervisor, began to "smart mouth" plaintiff. *Id.* Plaintiff admits, "there were words said between both of us," but alleges that Dugan did not hear phrases muttered under plaintiff's breath. *Id.* The truck was finally loaded two and one-half hours later. (D.I. 2 at 8)

Defendant contends that plaintiff acted in an abusive, vulgar and threatening manner toward Dugan. (D.I. 7 at 4) Dugan discussed the incident with William Gallagher, the warehouse manager, later that evening. *Id.* As a result of the incident, Gallagher banned plaintiff from the Delran plant and contacted plaintiff's supervisor. *Id.* Gallagher contends that he did not know of plaintiff's race until he read plaintiff's complaint filed with the EEOC in September 2004. (D.I. 8 at A-26-A-27) Plaintiff, however, contends that he was described to Gallagher as "the big black guy with the beard" when Gallagher inquired as to the identity of the driver who caused the incident. (D.I. 2 at 11)

*2 Plaintiff alleges that when he returned to work the next morning, he discovered that he had been banned from the Delran plant. (D.I. 2 at 8) Defendant counters that Gallagher did not ban plaintiff until one week following the incident. (D.I. 8 at A-27) Plaintiff argues that he is the only black truck driver banned from the plant and that white drivers "say a lot worse," but are not banned from the premises. (D.I. 2 at 9)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(c). The moving party bears the burden to demonstrate that no genuine issue as to any material fact is present. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995).

This standard provides that the mere existence of some alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment; the function of this motion is to weigh the evidence and determine if a genuine issue is present for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court's role with respect to summary judgment motions in discrimination cases is " 'to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff.' " *Revis v. Slocomb Indus.,* 814 F.Supp. 1209, 1215 (D.Del.1993) (quoting *Hankins v. Temple Univ.,* 829 F.2d 437, 440 (3d Cir.1987)).

## IV. DISCUSSION

## A. Motion to Dismiss for Lack of Personal Jurisdiction

**\*3 [1]**    The Due Process Clause of the Fourteenth Amendment limits the power of the courts in exercising personal jurisdiction over nonresident defendants. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (citing *Pennoyer v. Neff,* 95 U.S. 714, 5 Otto 714, 24 L.Ed. 565 (1878)). Personal jurisdiction may be established either through general or specific jurisdiction.[FN3] General jurisdiction exists when a nonresident defendant's contacts with the forum state are so continuous and systematic that exercise of personal jurisdiction would be reasonable and just. *Helicopteros,* 466 U.S. at 415, 104 S.Ct. 1868, (citing *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952)). Once a defendant raises a jurisdictional defense, plaintiff bears the burden of establishing sufficient contacts with the forum state. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987) (citing *Gehling v. St. George's School of Medicine, Ltd.,* 773 F.2d 539, 542 (3d Cir.1985)). Defendant's contacts with Delaware include the sale of bottles to Pepsi Bottling Co., which accounts for 3% of its total bottle production per year. Defendant is a Colorado corporation authorized to conduct business in New Jersey and Pennsylvania, with no facilities located in Delaware. Defendant keeps all of its records in New Jersey. None of defendant's employees work in Delaware because delivery of defendant's products is achieved through a common carrier.

[2]    Although the proper test for determining whether personal jurisdiction exists is not based on a pure percentage of business test, the standard for establishing general jurisdiction is fairly high. *Neogen Corp. v. Neo Gen Screening Inc.,* 282 F.3d 883, 891-892 (6th Cir.2002). Plaintiff must establish, through "extensive and persuasive facts," that defendant has "maintained 'continuous and

substantial' affiliations" with the forum state. *Reliance Steel Prods. Co. v. Watson, Ess. Marshall, & Enggas*, 675 F.2d 587, 588-89 (3d Cir.1982) (citations omitted). Plaintiff has failed to do so. *See also Romann v. Geissenberger Mfg. Corp.*, 865 F.Supp. 255, 261 (E.D.Pa.1994) (finding no general jurisdiction where defendant's contacts with the forum state constituted two to four percent of total sales).

## B. Motion to dismiss for improper venue

[3] Title VII contains specific venue provisions. Venue is proper in any judicial district in which the unlawful employment practice is alleged to have been committed, ···in which the employment records relevant to such practice are maintained and administered, or···in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3)(2000). Venue is improper in the State of Delaware because the employment discrimination took place in New Jersey, the employment records are kept in New Jersey, and plaintiff never has applied to work for the defendant in Delaware. Moreover, defendant does not have any offices in Delaware. The plain language of the Title VII provision does not permit the District of Delaware as a proper venue.

## C. Title VII Claim

*\*4* [4] Although this case may be transferred pursuant to 28 U.S.C. § 1406 to a proper forum, the court questions whether plaintiff may sue under Title VII because of his non-employee status. Title VII prohibits certain employer practices, including, "[D]iscriminat[ing] against **any individual** with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race···"42 U.S.C. § 2000e-2(a)(1) (2000) (emphasis added). The statute prohibits discrimination of "any individual" and, therefore, Title VII may protect, in certain limited circumstances, an employee of a third party from the discriminatory acts of an employer not his own. *Kemether v. Pennsylvania Athletic Assoc.*, 15 F.Supp.2d 740, 762 (E.D.Pa.1998). In other words, "a Title VII defendant need not be the plaintiff's employer to interfere impermissibly with plaintiff's employment opportunities." *Id.See also Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 200 (3d Cir.1994) (adopting a broad reading of the term "employee" under Title VII so as not to undercut the remedial purposes of the statute and allowing exemployee to file a retaliation claim under Title VII); *Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338, 1342 (D.C.Cir.1973) (male private-duty nurse protected under Title VII when hospital interfered with employment opportunities by refusing to refer him to female patients).

[5] If not an employee in fact, recovery is only permissible where the plaintiff meets the common-law test of an employment relationship. *Kemether*, 15 F.Supp.2d at 762. Factors include traditional agency law criteria for determining an employment relationship, i.e., the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the hiring party is in business; the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-324, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992).

[6] Plaintiff was employed by a third party contractor, National Freight, which delivered bottles for defendant. Plaintiff alleged no facts to show that defendant ever controlled or supervised his daily activities other than making plaintiff wait to load his truck and banning plaintiff from the Delran plant. While plaintiff may have suffered economic losses as a result of the ban and the constant delays, these incidents do not demonstrate defendant's control or responsibility for the performance of

2006 WL 1517403

plaintiff's work. Moreover, it is unlikely that defendant compensated plaintiff for his work. Thus, plaintiff is not an employee entitled to sue for discriminatory practices under Title VII.

## V. CONCLUSION

**\*5** For the reasons stated above, the motion to dismiss for lack of personal jurisdiction and improper venue is granted. An appropriate order shall issue.

## ORDER

At Wilmington this 2d day of June, consistent with the memorandum opinion issued this same date; IT IS ORDERED that defendant's motion to dismiss for lack of personal jurisdiction and improper venue (D.I. 6) is granted.

FN1. Plaintiff filed the instant litigation after an Equal Employment Opportunity Commission ("EEOC") investigation and dismissal. The EEOC stated it was unable to conclude, based on its investigation, that violations of the statute occurred. (D.I. 2 at 4)

FN2. The complaint is unclear concerning when or how these delays occurred.

FN3. Specific jurisdiction requires that the defendant's contacts within the state arise out of or relate to the plaintiff's claim. *International Shoe Co. v. Washington,* 326 U.S. 310, 317, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Plaintiff fails to prove specific jurisdiction exists over the defendant because defendant's contacts in Delaware, delivering bottles to Pepsi Bottling Co., are unrelated to plaintiff's discrimination claim occurring in New Jersey.

Copr. (C) West 2006 No Claim to Orig. U.S. Govt. Works D.Del.,2006.
Ware v. Ball Plastic Container Corp.
--- F.Supp.2d ----, 2006 WL 1517403 (D.Del.)

Motions, Pleadings and Filings (Back to top)

• 1:05cv00362 (Docket) (Jun. 6, 2005)
END OF DOCUMENT

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on July 20, 2006, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:

Jack B. Blumenfeld, Esq.
Karen Jacobs Louden, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19801

The undersigned counsel further certifies that, on July 20, 2006, copies of the foregoing document were sent by email and hand to the above local counsel and by email and first class mail to the following non-registered participant:

Errol B. Taylor, Esq.
Robert J. Koch, Esq.
Jay I. Alexander, Esq.
Enrique D. Longton, Esq.
Milbank, Tweed, Hadley & McCloy LLP
1850 K Street NW
Washington, DC 20006

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk

627464v1

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2006 MAY 31  P 3: 37

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

--------------------------------------------------X

ASTRAZENECA AB,                              :
AKTIEBOLAGET HÄSSLE,                         :
KBI-E, INC.,                                 :
KBI INC., and                                :
ASTRAZENECA LP,                              :
                                             :
                    Plaintiffs,              :
                                             :        C.A. No. 1:06cv634
                                             :                CMH/BRP
             v.                              :
                                             :
DEXCEL, LTD.,                                :
DEXXON, LTD.,                                :
DEXCEL PHARMA TECHNOLOGIES LTD., and         :
DEXCEL PHARMA TECHNOLOGIES                   :
                                             :
                    Defendants.              :

--------------------------------------------------X

## COMPLAINT
### JURISDICTION AND VENUE

1.     This is an action for patent infringement arising under the Patent
and Food and Drug laws of the United States, Titles 35 and 21, United States Code.  Jurisdiction
and venue are based on 28 U.S.C. §§ 1331, 1338(a), 1391(b), 1391(c), 1400(b), 2201, 2202 and
35 U.S.C. § 271.

2.     On information and belief, Dexcel, Ltd., Dexxon, Ltd., Dexcel
Pharma Technologies Ltd., and Dexcel Pharma Technologies (jointly and severally "DEXCEL")
have infringed and are engaging in activities directed toward the further infringement of United
States Patent Nos. 6,150,380 (the "'380 patent"); 4,786,505 (the "'505 patent"); and 4,853,230

(the "'230 patent"), by, *inter alia*, submitting a New Drug Application ("NDA") designated NDA No. 22-032 seeking approval from the United States Food and Drug Administration ("FDA") to commercially manufacture, use, and sell its proposed 20 mg omeprazole delayed-release tablets ("DEXCEL's Tablets").

3.     DEXCEL indicated in its notification letter dated April 17, 2006, entitled "Omeprazole Delayed Release Tablets, 20 mg" ("First Notice of Certification"), and in a supplemental letter of the same title dated May 4, 2006 ( "Second Notice of Certification"), that it intends to market DEXCEL's Tablets before the expiration of the '380, '505, and '230 patents.

4.     DEXCEL's submission of NDA No. 22-032, and its service of the First and Second Notices of Certification, indicates that DEXCEL intends to continue its current course of action.

5.     There has been and is now an actual controversy between DEXCEL and Plaintiffs as to whether DEXCEL has infringed and will infringe the '380, '505, and '230 patents.

## THE PARTIES

6.     Plaintiff AstraZeneca AB is a company organized and existing under the laws of Sweden, having its principal place of business at Södertälje, Sweden. AstraZeneca AB is the assignee of the '380 patent.

- 2 -

7.    Plaintiff Aktiebolaget Hässle ("Hässle") is a company organized and existing under the laws of Sweden, having its principal place of business at Mölndal, Sweden. Hässle is the assignee of the '505 and '230 patents.

8.    Plaintiff AstraZeneca LP is a limited partnership organized under the laws of Delaware, having its principal place of business at Wilmington, Delaware. AstraZeneca LP holds an approved NDA from the FDA for an omeprazole formulation which it sold under the name PRILOSEC®. AstraZeneca LP also holds an approved NDA from the FDA for an omeprazole formulation which is sold under the name PRILOSEC OTC®. AstraZeneca gives notice to the public that PRILOSEC® and PRILOSEC OTC® are protected by patents listed, *inter alia*, in the FDA Orange Book, by appropriately marking the patented products.

9.    Plaintiff KBI Inc. ("KBI") is a Delaware corporation having its principal place of business at Whitehouse Station, New Jersey.

10.    Plaintiff KBI-E Inc. ("KBI-E") is a Delaware corporation having its principal place of business at Wilmington, Delaware.

11.    On information and belief, defendant DEXCEL, LTD. is an Israeli entity, having its headquarters and principal place of business at Southern Industrial Zone, Or Akiva, Israel 30600. On information and belief, DEXCEL, LTD., has developed, manufactures and distributes DEXCEL's Tablets through its affiliates.

12.    On information and belief, defendant DEXXON, LTD. is an Israeli entity, having its headquarters and principal place of business at Southern Industrial Zone, Or

- 3 -

Akiva, Israel 30600.   On information and belief, DEXXON, LTD. has developed and manufactures DEXCEL's Tablets.

13.   On information and belief, defendant DEXCEL PHARMA TECHNOLOGIES LTD. is an Israeli entity having a principal place of business at Southern Industrial Zone, Or Akiva, Israel, 30600.   On information and belief, DEXCEL PHARMA TECHNOLOGIES LTD. is the owner and applicant of NDA No. 22-032.

14.   On information and belief, defendant DEXCEL PHARMA TECHNOLOGIES is a United States entity having a principal place of business at Wainwright Building, 229 West Bute Street, Suite 407, Norfolk, VA 23510.   On information and belief, DEXCEL PHARMA TECHNOLOGIES acts as an agent for DEXCEL PHARMA TECHNOLOGIES LTD. in the United States.

15.   DEXCEL has consented to jurisdiction and venue in the Eastern District of Virginia.

## FIRST CLAIM FOR RELIEF: '380 PATENT

16.   AstraZeneca AB, Aktiebolaget Hässle, KBI, KBI-E and AstraZeneca LP (collectively, "Plaintiffs") reallege paragraphs 1-15, above, as if set forth specifically here.

17.   The '380 patent (Exhibit A), entitled "Crystalline Form of Omeprazole", issued on November 21, 2000 to Astra Aktiebolaget upon assignment from the inventors Karin Lövqvist, Gunnel Sundén, David Noreland, and Ingvar Ymén.  The patent was

subsequently assigned to AstraZeneca AB. The '380 patent claims, *inter alia*, a novel crystalline form of omeprazole, pharmaceutical compositions of this novel crystalline form of omeprazole, and methods of using omeprazole for the treatment of gastrointestinal disorders.

18.    Plaintiff AstraZeneca AB has been and is still the owner of the '380 patent. The '380 patent will expire on November 10, 2018, and pediatric exclusivity relating to the '380 patent expires on May 10, 2019.

19.    By the First Notice of Certification, DEXCEL notified Plaintiffs that it had submitted a NDA under 21 U.S.C. §355(b), seeking FDA approval to manufacture, use, and sell DEXCEL's Tablets and identifying 20 mg tablets of PRILOSEC OTC® and 10 mg, 20 mg, and 40 mg capsules of PRILOSEC® products in its NDA.

20.    DEXCEL's First Notice of Certification fails to comply with the law, as specified in 21 U.S.C. § 355(b), and FDA rules and regulations, as specified in 21 C.F.R. § 314.52(c).

21.    DEXCEL's First Notice of Certification does not allege and does not address non-infringement of claims 1-4 of the '380 patent. DEXCEL thus concedes that DEXCEL's Tablets meet all limitations of claims 1-4 of the '380 patent.

22.    DEXCEL's First Notice of Certification does not address the validity or enforceability of claims 5 or 6 of the '380 patent. DEXCEL thus concedes that these claims are valid and enforceable.

23.    DEXCEL has infringed the '380 patent under 35 U.S.C. §271(e)(2) by filing its NDA, seeking approval from the FDA to engage in the commercial manufacture,

use, or sale of a drug claimed in this patent, or the use of which is claimed in the this patent, prior to the expiration of the '380 patent.

24. On information and belief, DEXCEL's Tablets, if approved, will be administered to human patients in a therapeutically effective amount for the treatment of gastrointestinal disorders. On information and belief, this administration will occur at DEXCEL's active behest and with its intent, knowledge, and encouragement. On information and belief, DEXCEL will actively encourage, aid, and abet this administration with knowledge that it is in contravention of Plaintiffs' rights under the '380 patent.

25. On information and belief, DEXCEL's Tablets are especially made or especially adapted for use in the treatment of gastrointestinal disorders via the administration of a therapeutically effective amount of a pharmaceutical formulation containing the claimed omeprazole. On information and belief, DEXCEL is aware that DEXCEL's Tablets are so made or so adapted. On information and belief, DEXCEL is aware that DEXCEL's Tablets, if approved, will be used in contravention of Plaintiffs' rights under the '380 patent.

26. On information and belief, the manufacture, use and sale of DEXCEL's Tablets, if approved, will infringe one or more claims of the '380 patent.

## SECOND CLAIM FOR RELIEF: '505 PATENT

27. Plaintiffs reallege paragraphs 1-15, above, as if set forth specifically here.

28.     The     '505 patent (Exhibit B), entitled "New Pharmaceutical Preparation For Oral Use," issued on November 22, 1988 to Hässle upon assignment from the inventors Kurt I. Lövgren, Åke G. Pilbrant, Mitsuru Yasumura, Satoshi Morigaki, Minoru Oda and Naohiro Ohishi. The '505 patent claims, *inter alia*, pharmaceutical preparations of omeprazole.

29.     Plaintiff Hässle has been and is still the owner of the '505 patent. The '505 patent will expire on April 20, 2007, and pediatric exclusivity relating to the '505 patent expires on October 20, 2007.

30.     By the Second Notice of Certification, DEXCEL notified Plaintiffs that it had submitted a NDA under 21 U.S.C. §355(b), seeking FDA approval to manufacture, use, and sell DEXCEL's Tablets and identifying 20 mg tablets of PRILOSEC OTC® and 10 mg, 20 mg, and 40 mg capsules of PRILOSEC® products in its NDA.

31.     DEXCEL's Second Notice of Certification fails to comply with the law, as specified in 21 U.S.C. § 355(b), and FDA rules and regulations, as specified in 21 C.F.R. § 314.52(c).

32.     DEXCEL alleged in the Second Notice of Certification that the '505 patent is not infringed by DEXCEL's Tablets.

33.     DEXCEL's Second Notice of Certification does not address the validity or enforceability of any claim of the '505 patent. DEXCEL thus concedes that these claims are valid and enforceable.

34.     DEXCEL has infringed the '505 patent under 35 U.S.C. §271(e)(2) by filing its NDA, seeking approval from the FDA to engage in the commercial manufacture, use, or sale of a drug claimed in this patent or the use of which is claimed in this patent, prior to the expiration of the '505 patent.

35.     On information and belief, DEXCEL's Tablets, if approved, will be administered to human patients in a therapeutically effective amount for the treatment of gastrointestinal disease. On information and belief, this administration will occur at DEXCEL's active behest and with its intent, knowledge and encouragement. On information and belief, DEXCEL will actively encourage, aid, and abet this administration with knowledge that it is in contravention of Plaintiffs' rights under the '505 patent.

36.     On information and belief, DEXCEL's Tablets are especially made or especially adapted for use in the treatment of gastrointestinal disease via the administration of a therapeutically effective amount of a pharmaceutical formulation containing the claimed omeprazole. On information and belief, DEXCEL is aware that DEXCEL's Tablets are so made or so adapted. On information and belief, DEXCEL is aware that DEXCEL's Tablets, if approved, will be used in contravention of Plaintiffs' rights under the '505 patent.

37.     On information and belief, the manufacture, use, or sale of DEXCEL's Tablets, if approved, will infringe one or more claims of the '505 patent.

## THIRD CLAIM FOR RELIEF: '230 PATENT

38.     Plaintiffs reallege paragraphs 1-15, above, as if set forth specifically here.

- 8 -

39.    The '230 patent (Exhibit C), entitled "Pharmaceutical Formulations of Acid Labile Substances For Oral Use," issued on August 1, 1989 to Hässle, upon assignment from the inventors Kurt I. Lövgren, Åke G. Pilbrant, Mitsuru Yasumura, Satoshi Morigaki, Minoru Oda and Naohiro Ohishi. The '230 patent claims, *inter alia*, pharmaceutical preparations of acid labile pharmaceutically active substances, including omeprazole.

40.    Plaintiff Hässle has been and still is the owner of the '230 patent. The '230 patent will expire on April 20, 2007, and pediatric exclusivity relating to the '230 patent expires on October 20, 2007.

41.    By the Second Notice of Certification, DEXCEL notified Plaintiffs that it had submitted a NDA under 21 U.S.C. §355(b), seeking FDA approval to manufacture, use, and sell DEXCEL's Tablets and identifying 20 mg tablets of PRILOSEC OTC® and 10 mg, 20 mg, and 40 mg capsules of PRILOSEC® products in its NDA.

42.    DEXCEL's Second Notice of Certification fails to comply with the law, as specified in 21 U.S.C. § 355(b), and FDA rules and regulations, as specified in 21 C.F.R. § 314.52(c).

43.    DEXCEL alleged in the Second Notice of Certification that the '230 patent is not infringed by DEXCEL's Tablets.

44.    DEXCEL's Second Notice of Certification does not address the validity or unenforceability of any claim of the '230 patent. DEXCEL thus concedes that these claims are valid and enforceable.

45.     DEXCEL has infringed the '230 patent under 35 U.S.C. §271(e)(2) by filing its NDA, seeking approval from the FDA to engage in the commercial manufacture, use or sale of a drug claimed in this patent or the use of which is claimed in this patent, prior to the expiration of the '230 patent.

46.     On information and belief, DEXCEL's Tablets, if approved, will be administered to human patients in a therapeutically effective amount for the treatment of gastrointestinal disorders.   On information and belief, this administration will occur at DEXCEL's active behest and with its intent, knowledge, and encouragement. On information and belief, DEXCEL will actively encourage, aid, and abet this administration with knowledge that it is in contravention of Plaintiffs' rights under the '230 patent.

47.     On information and belief, DEXCEL's Tablets are especially made or especially adapted for use in the treatment of gastrointestinal disorders via the administration of a therapeutically effective amount of a pharmaceutical formulation containing the claimed omeprazole.  On information and belief, DEXCEL is aware that DEXCEL's Tablets are so made or so adapted.   On information and belief, DEXCEL is aware that DEXCEL's Tablets, if approved, will be used in contravention of Plaintiffs' rights under the '230 patent.

48.     On information and belief, the manufacture, use, or sale of DEXCEL's Tablets, if approved, will infringe one or more claims of the '230 patent.

WHEREFORE, Plaintiffs respectfully request the following relief:

(a)     A judgment declaring that the effective date of any approval of DEXCEL's NDA under Section 505(b) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C.

§ 355(b)) for DEXCEL's Tablets must be no earlier than the latest expiration date of the infringed patents-in-suit, including pediatric exclusivity;

(b)     A judgment declaring that the '380, '505, and '230 patents will be infringed by defendant DEXCEL if DEXCEL's Tablets are made, used, offered for sale or sold in the United States prior to the expiration of said patents;

(c)     A judgment declaring that DEXCEL has not complied with the requirements of 35 U.S.C. § 271(e)(2), 21 U.S.C. §355(b)(2)(A)(iv), 21 U.S.C. §355(b)(3)(D)(ii), 21 C.F.R. §314.50 and 21 U.S.C. §314.52;

(d)     A permanent injunction against any infringement by DEXCEL of the '380, '505, and '230 patents;

(e)     A judgment that DEXCEL's conduct is exceptional;

(f)     Attorneys' fees in this action under 35 U.S.C. § 285;

(g)     Costs and expenses in this action; and

(h)     Such other relief as this Court may deem proper.

MILBANK, TWEED, HADLEY
& McCLOY LLP

Robert J. Koch (VSB 13676)
Jay I. Alexander
Enrique D. Longton
1850 K Street NW
Washington, DC 20006
(202) 835-7500

*Attorneys for Plaintiffs*
ASTRAZENECA AB,
AKTIEBOLAGET HÄSSLE,
KBI-E, INC., KBI INC., and
ASTRAZENECA LP

Of Counsel:
Errol B. Taylor
MILBANK, TWEED, HADLEY
& McCLOY LLP
1 Chase Manhattan Plaza
New York, New York  10005-1413
(212) 530-5000

Dated: May 31, 2006

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

AVENTIS PHARMA DEUTSCHLAND GMBH     *
and KING PHARMACEUTICALS, INC.,
                                    *
        Plaintiffs,
                                    *
v.                                           CIVIL NO: WDQ-05-1936
                                    *
LUPIN LTD. and
LUPIN PHARMACEUTICALS, INC.,        *

        Defendants.                 *

*       *       *       *       *       *       *       *       *       *       *       *       *       *

ORDER

Plaintiffs filed identical actions in this Court and the
United States District Court for the Eastern District of Virginia
(Civil Action No. 2:05cv421) (the "Virginia case"). In this Court,
Lupin Ltd. filed a motion to dismiss the amended complaint for lack
of personal jurisdiction and Lupin Pharmaceuticals, Inc. filed a
motion to dismiss the amended complaint. Both Defendants have
filed a motion to transfer this action to the Eastern District of
Virginia where the Virginia case is pending. Although motions are
pending in this Court, in the Virginia case, Lupin Ltd. has
consented to personal jurisdiction in Virginia, answered the
Amended Complaint, filed a counterclaim, and has issued discovery
requests. The Virginia case is also subject to a scheduling order
recently issued by the Eastern District of Virginia. The Virginia
case is proceeding on the merits, thus, in the interest of justice
this action should be transferred to the Eastern District of
Virginia.

Upon consideration of Defendants' motion to transfer and Plaintiffs' opposition, it is, this 13th day of December 2005, ORDERED that:

1.   Defendants' motion to transfer BE, and HEREBY IS, GRANTED;

2.   The Clerk of the Court shall send copies of this Order to counsel for the parties.

_____/s/_____
William D. Quarles, Jr.
United States District Judge

2

# UNITED STATES OF AMERICA
# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Judge Anthony J. Scirica
United States Court of Appeals
Third Circuit

**DIRECT REPLY TO:**
Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:          [202] 502-2888

http://www.jpml.uscourts.gov

June 26, 2006

TO INVOLVED COUNSEL

Re:  MDL-1291 -- In re Omeprazole Patent Litigation

(See Attached CTO-8)

Dear Counsel:

Attached hereto is a copy of a conditional transfer order filed today by the Panel involving the above-captioned matter. This matter is transferred pursuant to Rule 7.4 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, 199 F.R.D. 425, 435-36 (2001). Copies of Rule 5.2, dealing with service, and Rules 7.4 and 7.5, regarding "tag-along" actions, are attached for your convenience.

Inasmuch as there is an unavoidable time lag between notification of the pendency of the tag-along action and the filing of a conditional transfer order, counsel are required by Rule 7.4(b) to notify this office **BY FACSIMILE**, at (202) 502-2888, of any official changes in the status of the tag-along action. These changes could involve dismissal of the action, remand to state court, transfer to another federal court, etc., as indicated by an order filed by the district court. Your cooperation would be appreciated.

**NOTICE OF OPPOSITION DUE ON OR BEFORE:  <u>July 11, 2006</u>  (4 p.m. EST)**
(Facsimile transmission is suggested.)

If you are considering opposing this conditional transfer order, please review Rules 7.4 and 7.5 of the Panel <u>Rules</u> before filing your Notice of Opposition.

A list of involved counsel is attached.

Very truly,

RECEIVED
JUN 29 2006
ASHLEY B. STITZER

Jeffery N. Lüthi
Clerk of the Panel

By *Dana L. Stewart*
Deputy Clerk

Attachments                                                                                   JPML Form 39

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 2 6 2006

FILED
CLERK'S OFFICE

*DOCKET NO. 1291*

*BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

*IN RE OMEPRAZOLE PATENT LITIGATION*

*AstraZeneca AB, et al., v. Dexcel, Ltd., et al.,* D. Delaware, C.A. No. 1:06-358
*AstraZeneca AB, et al. v. Dexcel, Ltd., et al.,* E.D. Virginia, C.A. No. 1:06-634

*CONDITIONAL TRANSFER ORDER (CTO-8)*

On August 12, 1999, the Panel transferred three civil actions to the United States District Court for the Southern District of New York for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Since that time, ten additional actions have been transferred to the Southern District of New York. With the consent of that court, all such actions have been assigned to the Honorable Barbara S. Jones.

It appears that the actions on this conditional transfer order involve questions of fact which are common to the actions previously transferred to the Southern District of New York and assigned to Judge Jones.

Pursuant to Rule 7.4 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation,</u> 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Southern District of New York for the reasons stated in the order of August 12, 1999, and, with the consent of that court, assigned to the Honorable Barbara S. Jones.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Southern District of New York. The transmittal of this order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

# INVOLVED COUNSEL LIST (CTO-8)
## DOCKET NO. 1291
## IN RE OMEPRAZOLE PATENT LITIGATION

Robert J. Koch
Milbank, Tweed, Hadley & McCloy L.L.P.
1825 Eye Street, NW
Suite 1100
Washington, DC 20006

Karen Jacobs Louden
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

Ashley Blake Stitzer
The Bayard Firm
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE 19899

(a)     Upon learning of the pendency of a potential "tag-along action," as defined in Rule 1.1 of these Rules, an order may be entered by the Clerk of the Panel transferring that action to the previously designated transferee district court on the basis of the prior hearing session(s) and for the reasons expressed in previous opinions and orders of the Panel in the litigation.  The Clerk of the Panel shall serve this order on each party to the litigation but, in order to afford all parties the opportunity to oppose transfer, shall not send the order to the clerk of the transferee district court for fifteen days from the entry thereof.

(b)     Parties to an action subject to a conditional transfer order shall notify the Clerk of the Panel within the fifteen-day period if that action is no longer pending in its transferor district court.

(c)     Any party opposing the transfer shall file a notice of opposition with the Clerk of the Panel within the fifteen-day period.  If a notice of opposition is received by the Clerk of the Panel within this fifteen-day period, the Clerk of the Panel shall not transmit said order to the clerk of the transferee district court until further order of the Panel.  The Clerk of the Panel shall notify the parties of the briefing schedule.

(d)     Within fifteen days of the filing of its notice of opposition, the party opposing transfer shall file a motion to vacate the conditional transfer order and brief in support thereof.  The Chairman of the Panel shall set the motion for the next appropriate hearing session of the Panel.  Failure to file and serve a motion and brief shall be treated as withdrawal of the opposition and the Clerk of the Panel shall forthwith transmit the order to the clerk of the transferee district court.

(e)     Conditional transfer orders do not become effective unless and until they are filed with the clerk of the transferee district court.

(f)     Notices of opposition and motions to vacate such orders of the Panel and responses thereto shall be governed by Rules 5.12, 5.2, 7.1 and 7.2 of these Rules.

RULE 7.5:     MISCELLANEOUS PROVISIONS CONCERNING "TAG-ALONG ACTIONS"

(a)     Potential "tag-along actions" filed in the transferee district require no action on the part of the Panel and requests for assignment of such actions to the Section 1407 transferee judge should be made in accordance with local rules for the assignment of related actions.

(b)     Upon learning of the pendency of a potential "tag-along action" and having reasonable anticipation of opposition to transfer of that action, the Panel may direct the Clerk of the Panel to file a show cause order, in accordance with Rule 7.3 of these Rules, instead of a conditional transfer order.

(c)     Failure to serve one or more of the defendants in a potential "tag-along action" with the complaint and summons as required by Rule 4 of the Federal Rules of Civil Procedure does not preclude transfer of such action under Section 1407.  Such failure, however, may be submitted by such a defendant as a basis for opposing the proposed transfer if prejudice can be shown.  The inability of the Clerk of the Panel to serve a conditional transfer order on all plaintiffs or defendants or their counsel shall not render the transfer of the action void but can be submitted by such a party as a basis for moving to remand as to such party if prejudice can be shown.

(d)     A civil action apparently involving common questions of fact with actions under consideration by the Panel for transfer under Section 1407, which was either not included in a motion under Rule 7.2 of these Rules, or was included in such a motion that was filed too late to be included in the initial hearing session, will ordinarily be treated by the Panel as a potential "tag-along action."

(e)     Any party or counsel in actions previously transferred under Section 1407 or under consideration by the Panel for transfer under Section 1407 shall promptly notify the Clerk of the Panel of any potential "tag-along actions" in which that party is also named or in which that counsel appears.

LAW OFFICES

# LEYDIG, VOIT & MAYER, LTD.

A PROFESSIONAL CORPORATION

JAMES B. MUSKAL
DENNIS R. SCHLEMMER
GORDON R. COONS
JOHN W. KOZAK
MARK E. PHELPS
H. MICHAEL HARTMANN
BRUCE M. GAGALA
CHARLES H. MOTTIER
JOHN KILYK, JR.
ROBERT F. GREEN
JOHN B. CONKLIN
JAMES D. ZALEWA
MARK J. LISS
JOHN M. BELZ*
BRETT A. HESTERBERG
JEFFREY A. WYAND*
PAUL J. KORNICZKY
PAMELA J. RUSCHAU
STEVEN P. PETERSEN
JOHN M. AUGUSTYN
CHRISTOPHER T. GRIFFITH
WESLEY O. MUELLER
JEREMY M. JAY*
LYNN A. SULLIVAN
JEFFREY B. BURGAN
ELEY O. THOMPSON
MARK JOY
DAVID M. AIRAN
XAVIER PILLAI
Y. KURT CHANG
GREGORY C. BAYS
STEVEN H. SKLAR
TAMARA A. MILLER
M. DANIEL HEFNER
SALIM A. HASAN
ROGER D. WYLIE***
KENNETH P. SPINA
PHILLIP M. PIPPENGER

JOHN E. ROSENQUIST
ROBERT V. JAMBOR**
LI-CHUNG DANIEL HO
ANNE E. NAFFZIGER***
CLAUDIA W. STANGLE
PAUL J. FILBIN
JOHN L. GASE
JEREMY C. LOWE
JOHN T. BRETSCHER**
ROBERT T. WITTMANN
J. KARL GROSS
SETH A. ROSE
SAUMIL S. MEHTA
JASON T. MURATA
AARON R. FEIGELSON
L. SCOTT BEALL
LISA K. KELLY
MARK A. HINDS
CAROLINE L. STEVENS
DOUGLAS A. ROBINSON
NANCY J. GETTEL
PETER H. DOMER
JEFFREY N. TURNER
SUSAN L. STEELE
STEPHANIE M. LAWLEY*
KURT T. BUECHLE
KEVIN C. PARKS
THOMAS K. McBRIDE, JR.
JENNIFER M. DUK
MARCOS P. RIVAS
CHRISTINE M. COCHRAN
JOHN P. SNOW
JEFFREY S. DAVID
DIMITRY KAPMAR
EDWARD M. SIEGEL
BRYAN D. MURPHY
BRIAN A. GARCIA

TWO PRUDENTIAL PLAZA, SUITE 4900

CHICAGO, ILLINOIS 60601-6780

———

(312) 616-5600

FACSIMILE: (312) 616-5700

WWW.LEYDIG.COM

July 11, 2006

*Via Facsimile*

WASHINGTON OFFICE
700 THIRTEENTH STREET, N.W., SUITE 300
WASHINGTON, D.C. 20005-3960
(202) 737-6770
FACSIMILE: (202) 737-6776

ROCKFORD OFFICE
6815 WEAVER ROAD, SUITE 300
ROCKFORD, ILLINOIS 61114-8018
(815) 963-7661
FACSIMILE: (815) 963-7664

SEATTLE OFFICE
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WASHINGTON 98101-1346
(206) 521-5985
FACSIMILE: (206) 224-3557

OF COUNSEL

C. FREDERICK LEYDIG          CHARLES S. OSLAKOVIC**
THEODORE W. ANDERSON       JOHN D. FOSTER*
BERTON SCOTT SHEPPARD

TECHNICAL ADVISORS

KRISTEN J. HARRELL          KATHLEEN M. HELM-BYCHOWSKI
MELISSA E. KOLOM            FRANCIS J. KOSZYK
CARYN C. BORG-BREEN         ELIZABETH M. CROMPTON
RACHEL J. MEJDRICH          JASON A. MILLER
JULIE J. HONG               ELIZABETH A. LITZINGER
DEREK W. BARNETT

ALL RESIDENT IN CHICAGO EXCEPT AS NOTED
*RESIDENT IN WASHINGTON OFFICE   ***RESIDENT IN SEATTLE OFFICE
**RESIDENT IN ROCKFORD OFFICE

Mr. Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

**Re:**   In re Omeprazole Patent Litigation – MDL Docket No. 1291

Dear Mr. Lüthi:

I represent Defendants Dexcel Pharma Technologies Ltd., Dexcel, Ltd., Dexxon, Ltd., and Dexcel Pharma Technologies ("Defendants") in the above-captioned matter. The Judicial Panel on Multidistrict Litigation's letter of June 26, 2006, notified Defendants of the Conditional Transfer Order (CTO-8) transferring Civil Case No. 1:06-358 in the United States District Court for the District of Delaware and Civil Case No. 1:06-634 in the United States District Court for the Eastern District of Virginia to the above-captioned multidistrict litigation now pending in the United States District Court for the Southern District of New York before the Honorable Barbara S. Jones.

Attached is Defendants' Notice of Opposition to Conditional Transfer Order (CTO-8). In accordance with the instructions on the Conditional Transfer Order (CTO-8), Panel Rules 7.4 and 7.5, and pursuant to our conversation with Teresa Bishop (July 10, 2006) from

Mr. Jeffery N. Lüthi
July 11, 2006
Page 2

the Panel's Office, Defendants are submitting their Notice of Opposition to Conditional Transfer Order (CTO-8) *via facsimile* as a preferred means of filing.

Very truly yours,

LEYDIG, VOIT & MAYER, LTD.

Robert F. Green

RFG/SSM
Enclosure

cc:    Robert J. Koch, Esq. (with enclosure)

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
| IN RE OMEPRAZOLE | ) | |
| PATENT LITIGATION | ) | MDL Docket No. 1291 |
|  | ) | |

**NOTICE OF OPPOSITION TO CONDITIONAL TRANSFER ORDER (CTO-8) BY
DEXCEL LTD. DEXXON LTD., DEXCEL PHARMA TECHNOLOGIES LTD., AND
DEXCEL PHARMA TECHNOLOGIES**

PLEASE TAKE NOTICE that pursuant to R.P.J.P.M.L. 7.4(c), Dexcel Ltd., Dexxon

Ltd., Dexcel Pharma Technologies Ltd., and Dexcel Pharma Technologies, each of which is

named as a defendant in the two actions identified below, hereby object to and oppose a transfer

under the Conditional Transfer Order (CTO-8), transferring the following cases:

> Civil Case No. 1:06-358; Astrazeneca AB et al. v. Dexcel, Ltd. et al.;
> In the United States District Court for the District of Delaware;

and

> Civil Case No. 1:06-634; Astrazeneca AB et al. v. Dexcel, Ltd. et al.;
> In the United States District Court for the Eastern District of Virginia

to the multidistrict litigation now pending in the United States District Court for the Southern

District of New York before the Honorable Barbara S. Jones, In Re: Omeprazole Patent

Litigation, MDL No. 1291.

The parties opposing transfer will, as required by R.P.J.P.M.L. 7.4(d), file a motion to

vacate the conditional transfer order and a brief in support thereof on or by July 26, 2006.


Date: July 11, 2006

Respectfully submitted,

LEYDIG, VOIT & MAYER, LTD.

By: _____

Robert F. Green
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza
180 N. Stetson Avenue
Suite 4900
Chicago, IL 60601
(312) 616-5600
Attorneys for Defendants

LAW OFFICES
## LEYDIG, VOIT & MAYER, LTD.
TWO PRUDENTIAL PLAZA, SUITE 4900
CHICAGO, ILLINOIS 60601-6780

TELEPHONE: (312) 616-5600

TELECOPY: (312) 616-5700 (G3)
(312) 849-0495 (G4)

## FACSIMILE COVER SHEET

DATE: JULY 11, 2006

TIME: 1:49 PM U.S. CDT

YOUR REFERENCE: MDL - 1291

NUMBER OF PAGES (INCLUDING THIS TRANSMITTAL COVER SHEET): 5

OUR REFERENCE: 236869

**To:**

| | |
|---|---|
| Mr. Jeffery N. Lüthi<br>Clerk of the Panel<br>One Columbus Circle, NE<br>Thurgood Marshall Federal<br>Judiciary Building<br>Room G-255, North Lobby<br>Washington, DC 20002<br>Fax: 202-502-2888 | Robert J. Koch<br>Milbank, Tweed, Hadley & McCloy LLP<br>International Square Building<br>1850 K Street, NW. Suite 1100<br>Washington, DC 20008<br>Fax: 202-835-7586 |

**FROM:** SAUMIL S. MEHTA

DIRECT LINE: 312-616-5663

**MESSAGE:**
ATTACHED IS A NOTICE OF OPPOSITION TO CONDITIONAL TRANSFER ORDER (CTO-8) FOR MDL 1291 – IN RE OMEPRAZOLE PATENT LITIGATION.

**REGARDS,**

**SAUMIL MEHTA**

A confirmation copy of the transmitted document will:
☒ Not be sent. This will be the only form of delivery of the transmitted document.
☐ Be sent via First Class/Air Mail.
☐ Be sent via Overnight Courier

The information contained in this facsimile transmission is intended only for the use of the individual or entity named above and those properly entitled to access to the information and may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law. If the reader of this transmission is not the intended or an authorized recipient, you are hereby notified that any unauthorized distribution, dissemination, or duplication of this transmission is prohibited. If you have received this transmission in error, please immediately notify us by telephone or facsimile. Thank you.

```
*  *  *  COMMUNICATION RESULT REPORT ( JUL. 11. 2006  1:56PM )  *  *  *
```

TTI  LVM 312 616 5700

```
TRANSMITTED/STORED  JUL. 11. 2006   1:52PM
FILE MODE          OPTION                  ADDRESS                        RESULT        PAGE
-------------------------------------------------------------------------------------------
2416 MEMORY TX                             G3-AT:8236869912025022888      OK            5/5
                                           G3-AT:8236869912028357586      OK            5/5
```

```
---------------------------------------------------------------------------------------------
REASON FOR ERROR
E-1) HANG UP OR LINE FAIL                        E-2) BUSY
E-3) NO ANSWER                                   E-4) NO FACSIMILE CONNECTION
```

LAW OFFICES
## LEYDIG, VOIT & MAYER, LTD.
TWO PRUDENTIAL PLAZA, SUITE 4900
CHICAGO, ILLINOIS 60601-6780

TELEPHONE: (312) 616-5600               TELECOPY: (312) 616-5700 (G3)
                                                  (312) 849-0495 (G4)

## FACSIMILE COVER SHEET

DATE: JULY 11, 2006                  NUMBER OF PAGES (INCLUDING
                                     THIS TRANSMITTAL COVER SHEET): 5
TIME: 1:49 PM U.S. CDT

YOUR REFERENCE: MDL - 1291           OUR REFERENCE: 236869

TO:

| | |
|---|---|
| Mr. Jeffery N. Lüthi<br>Clerk of the Panel<br>One Columbus Circle, NE<br>Thurgood Marshall Federal<br>Judiciary Building<br>Room G-255, North Lobby<br>Washington, DC 20002<br>Fax: 202-502-2888 | Robert J. Koch<br>Milbank, Tweed, Hadley & McCloy LLP<br>International Square Building<br>1850 K Street, NW, Suite 1100<br>Washington, DC 20008<br>Fax: 202-835-7586 |

FROM: SAUMIL S. MEHTA                DIRECT LINE: 312-616-5663

MESSAGE:
ATTACHED IS A NOTICE OF OPPOSITION TO CONDITIONAL TRANSFER ORDER (CTO-8)
FOR MDL 1291 — IN RE OMEPRAZOLE PATENT LITIGATION.

REGARDS,

SAUMIL MEHTA

A confirmation copy of the transmitted document will:
☒  Not be sent.  This will be the only form of delivery of the transmitted document.
☐  Be sent via First Class/Air Mail.
☐  Be sent via Overnight Courier

The information contained in this facsimile transmission is intended only for the use of the individual or entity named above and those properly entitled to access to the information and may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law.  If the reader of this transmission is not the intended or an authorized recipient, you are hereby notified that any unauthorized distribution, dissemination, or duplication of this transmission is prohibited.  If you have received this transmission in error, please immediately notify us by telephone or facsimile.  Thank you.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ASTRAZENECA AB, AKTIEBOLAGET HÄSSLE, KBI-E, INC., KBI, INC. and ASTRAZENECA LP, | ) ) ) | |
| | ) | Civil Action No. 06-358 (SLR) |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| DEXCEL, LTD., DEXXON, LTD., DEXCEL PHARMA TECHNOLOGIES LTD. and DEXCEL PHARMA TECHNOLOGIES, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF DAN OREN

I, Dan Oren, hereby declare as follows:

1.      My name is Dan Oren.  I am over 18 years of age, competent to make this declaration on the basis of my personal knowledge and understand that this declaration will be used in the above-captioned litigation

2.      I am the President and CEO of Dexcel Ltd.  I am familiar with the records, operations and structure of Dexcel Ltd., Dexxon Ltd., and Dexcel Pharma Technologies Ltd.

3.      I am aware that a website associated with Dexcel Ltd. and Dexxon Ltd., www.dexcel.com, includes an identification of locations of various facilities worldwide that are affiliated with Dexcel Ltd. and Dexxon Ltd.  I am also aware that a page of this website, attached to this declaration as Exhibit A, identified "Dexcel Pharma Technologies" as an entity having an address of 229 West Bute Street, Suite 407 Norfolk, VA 23510.  Dexcel Pharma Technologies, however, is not a legal entity.  Rather, this

$\mathcal{P}. \mathcal{O}$

website should have identified Dexcel Pharma Technologies, Ltd. ("DPT, Ltd.") as the entity having an address at the above-identified location.

4.    To the best of my knowledge, information and belief, Dexcel Pharma Technologies is not a legal entity and it does no business in the United States or anywhere else in the world.

5.    DPT Ltd. is a business entity organized and existing.  DPT Ltd. has its headquarters and principal place of business in Or Akiva, Israel.  Among other things, DPT Ltd. is a pharmaceutical company seeking authorization to market its products in the United States.  DPT Ltd. maintains an office in the United States at 229 West Bute Street, Suite 407 Norfolk, VA 23510.

6.    DPT Ltd. filed a New Drug Application ("NDA"), NDA No. 22-032, with the Food & Drug Administration ("FDA").  No other Defendant to this lawsuit participated in the filing of NDA No. 22-032.

7.    DPT Ltd., Dexcel, Ltd., Dexxon, Ltd. and Dexcel Pharma Technologies (1) have never requested for a Certification to do business in Delaware; (2) do not have an agent for service of process in Delaware; and (3) to the best of my knowledge, are not registered with the Secretary of State for Delaware for service of process.

8.    DPT Ltd., Dexcel, Ltd., Dexxon, Ltd. and Dexcel Pharma Technologies have no employees, sales agents or representatives employed in Delaware.

9.    DPT Ltd., Dexcel, Ltd., Dexxon, Ltd. and Dexcel Pharma Technologies do not own, lease or maintain any real or personal property in Delaware.  None of these parties maintain telephone numbers, post office boxes, mailing addresses or bank accounts in Delaware.  Nor do any of these parties pay taxes in Delaware.

2

10.     DPT Ltd., Dexcel, Ltd., Dexxon, Ltd. and Dexcel Pharma Technologies do not own, lease, operate or maintain any offices, places of business, facilities or other presence in Delaware. Nor have the aforementioned parties ever owned, leased, operated, or maintained any such offices, places of business, facilities or presence in Delaware.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _18_ day of July, 2006.

_D. Oren_

DAN OREN

# EXHIBIT A



Search          Home          About Us          Research          Products          Careers          **[ Contact Us ]**

Israel

United Kingdom

Germany

**[ United States ]**

▶ **DEXCEL**® Worldwide

## United States

**List of Products**

## Dexcel Pharma Technologies

Wainwright Building
229 West Bute Street
Suite 407
Norfolk, VA 23510
USA

**Tel**: +1-757- 627- 0066

Updated June 7, 2006 - © 2004 Dexcel Pharma - All
Rights Reserved - Legal Terms.

## MILBANK, TWEED, HADLEY & McCLOY LLP

INTERNATIONAL SQUARE BUILDING

1850 K STREET, NW, SUITE 1100

WASHINGTON, D.C. 20006

———

202-835-7500

FAX: 202-835-7586

ROBERT J. KOCH
PARTNER
DIRECT DIAL NUMBER
202-835-7520
FAX
202-263-7520
E-MAIL: rkoch@milbank.com

NEW YORK
212-530-5000
FAX: 212-530-5219

LOS ANGELES
213-892-4000
FAX: 213-629-5063

PALO ALTO
650-739-7000
FAX: 650-739-7100

LONDON
44-207-448-3000
FAX: 44-207-448-3029

MUNICH
49-89-25559-3600
FAX: 49-89-25559-3700

FRANKFURT
49-69-7593-7170
FAX: 49-69-7593-8303

TOKYO
813-3504-1050
FAX: 813-3595-2790

HONG KONG
852-2971-4888
FAX: 852-2840-0792

SINGAPORE
65-6428-2400
FAX: 65-6428-2500

June 5, 2006

<u>VIA HAND-DELIVERY</u>

Mr. Michael J. Beck
Clerk of the Panel
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E. Room G-255, North Lobby
Washington, D.C. 20002-8004

Re: <u>In re Omeprazole Patent Litigation, MDL Docket No. 1291</u>

Dear Mr. Beck:

I represent Plaintiffs AstraZeneca AB, Aktiebolaget Hässle, KBI-Inc., KBI Inc. and AstraZeneca LP in the above-captioned matter. I write to notify the Panel, in accordance with Rule 7.5(e), of a tag-along action filed in the United States District Court for the District of Delaware, Civil Action No.06-358, against Dexcel, Ltd., Dexxon, Ltd., Dexcel Pharma Technologies Ltd., and Dexcel Pharma Technologies (together "Dexcel").

The Dexcel Complaint alleges infringement of United States Patent Nos. 6,150,380, 4,786,505 and 4,853,230 based on Dexcel's submission to the Food & Drug Administration of a New Drug Application seeking approval to engage in the commercial manufacture, use or sale of 20 mg omeprazole delayed-release tablets. The Dexcel action involves two of the same patents at issue and common questions of fact with the In re Omeprazole Patent Litigation proceedings, M-21-81, MDL Docket No. 1291, a multidistrict litigation that has previously been transferred by the Panel under Section 1407 and is proceeding in the Southern District of New York before the Honorable Barbara S. Jones.

Mr. Michael J. Beck
June 5, 2006
Page 2

The Dexcel case is a "tag-along action" to the existing Multidistrict Litigation (MDL) proceedings. See Rule 1.1 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation. In particular, the 4,786,505 and 4,853,230 patents, at issue in this action, are also at issue in 22 other actions before the Honorable Barbara S. Jones, thirteen of which were previously transferred to the Southern District of New York and eight of which were originally filed in the Southern District of New York and assigned to Judge Jones. Eight of these actions are still pending.

Of the eight pending actions, seven are currently being tried before Judge Jones in the "Second Wave" trial. The other pending action, Astrazeneca AB et al., v. Teva Pharmaceutical Industries Ltd., et al., Civil Action No. 1:05cv621, was stayed prior to the initiation of discovery. The Teva action also involves the 4,786,505 and 4,853,230 patents at issue in this action and the other actions, as well as additional common questions of fact. Accordingly, Plaintiffs respectfully request that this matter be transferred to the Southern District of New York for inclusion in the In re Omeprazole Patent Litigation, M-21-81, MDL Docket No. 1291.

Copies of the filed complaint and the Panel's transfer orders in the thirteen previously transferred cases are attached to this letter.

Respectfully submitted,

Robert J. Koch

JRH/RJK

Enclosures:    As-Filed Complaints and Transfer Orders