IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ASTRAZENECA AB,<br>AKTIEBOLAGET HÄSSLE,<br>KBI-E, INC.,<br>KBI INC., and<br>ASTRAZENECA LP,<br>        *Plaintiffs*,<br><br>       v.<br><br>DEXCEL, LTD.,<br>DEXXON, LTD.,<br>DEXCEL PHARMA TECHNOLOGIES, LTD., and<br>DEXCEL PHARMA TECHNOLOGIES<br>        *Defendants*. | Civil Action No. 06-358 (SLR)<br><br>**REDACTED VERSION** |

**PLAINTIFF ASTRAZENECA'S ANSWERING BRIEF
IN OPPOSITION TO DEFENDANTS'
MOTION TO TRANSFER OR DISMISS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Leslie A. Polizoti (#4299)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
lpolizoti@mnat.com
    *Attorneys for Plaintiffs*

OF COUNSEL

Errol B. Taylor
Robert J. Koch
Jay I. Alexander
Enrique D. Longton
MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street NW
Washington, DC 20006
(202) 835-7500

Originally Filed: November 22, 2006
Redacted Version Filed: November 30, 2006

**TABLE OF CONTENTS**

I.     NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.    INTRODUCTION AND SUMMARY OF THE ARGUMENT ....................................... 1

III.   STATEMENT OF FACTS ............................................................................................. 4

IV.    ARGUMENT ............................................................................................................... 14

      A.     Dexcel is Amenable to Service Under the Delaware Long Arm
           Statute. ................................................................................................................. 15

           1.     Dexcel Derives "Substantial Revenue" from the
                 Continuous Sales of its Dental Products in Delaware. ............................ 18

           2.     Dexcel Has Continuously Maintained a Delaware
                 Corporation. .............................................................................................. 23

           3.     Dexcel Advertises its Products Through Literature
                 Distributed to Delaware Dentists and on Web Sites
                 Accessible from Delaware. ....................................................................... 26

      B.     Dexcel Has the Constitutionally Required Minimum Contacts With
           Delaware. ............................................................................................................. 28

      C.     Dexcel, Ltd. and Dexxon, Ltd. are Appropriate Parties to This
           Action.................................................................................................................. 33

      D.     This Court Should Not Transfer this Action......................................................... 35

           1.     Delaware is the First-Filed Action and Plaintiffs' Choice of
                 Forum. ...................................................................................................... 36

           2.     The Interests of Justice Weigh Against Transfer. .................................... 37

           3.     Dexcel Has Failed to Show that Virginia is a More
                 Convenient Forum. .................................................................................. 40

V.     CONCLUSION............................................................................................................. 40

## TABLE OF AUTHORITIES

**CASES**

*Abbott Labs. v. Mylan Pharm., Inc.,*
 2006 WL 850916 (N.D. Ill. 2006) ..................................................................... passim

*Acrison, Inc. v. Control & Metering, Ltd.,*
 730 F. Supp. 1445 (N.D. Ill. 1990) ............................................................................ 31

*Ajax Realty Corp. v. J.F. Zook, Inc.,*
 493 F.2d 818 (4th Cir. 1972) ............................................................................ 20, 23

*Akbar v. New York Magazine Co.,*
 490 F. Supp. 60 (D.D.C. 1980) .................................................................................. 23

*Akro Corp. v. Luker,*
 45 F.3d 1541 (Fed. Cir. 1995)..................................................................................... 15

*Allergan, Inc. v. Alcon Laboratories, Inc.,*
 324 F.3d 1322 (Fed. Cir. 2003)................................................................................... 35

*Apotex, Inc. v. Thompson,*
 347 F.3d 1335 (Fed. Cir. 2003)................................................................................... 14

*Asahi Metal Indus. v. Superior Court,*
 480 U.S. 102, 107 S.Ct. 1026 (1987).......................................................................... 30

*Aventis Pharma Deutschland, GmbH v. Lupin,*
 403 F. Supp. 2d 484 (E.D. Va. 2005) ......................................................................... 37

*Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.,*
 295 F. Supp. 400 (D. Del. 2002).................................................................................. 20

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
 21 F.3d 1558 (Fed. Cir. 1994)............................................................................. passim

*Boone v. Oy Partek AB,*
 724 A.2d 1150 (Del. Super. 1997)............................................................................... 16

*Burger King Corp. v. Rudzewicz,*
 471 U.S. 462, 105 S.Ct. 2174 (1985)..................................................................... 29, 31

*C.R. Bard, Inc. v. Guidant Corp.,*
 997 F. Supp. 556 (D. Del. 1998)............................................................................ 27, 37

*Calder v. Jones,*
 465 U.S. 783, 104 S.Ct. 1482 (1984).......................................................................... 31

*Commissariat A L'Energie Atomique v.Chi Mei Optoelectronics Corp.,*
 395 F.3d 1315 (Fed. Cir. 2005)...................................................................... 15, 16, 29

*Curtis Publishing. Co. v. Golino*,
    383 F.2d 586 (5th Cir. 1967) ............................................................... 22, 23-24

*Datex-Ohmeda Inc. v. Hill-Rom Services Inc.*,
    185 F. Supp. 2d 407 (D. Del. 2002).......................................................... 38

*Delahanty v. Hinckley*,
    686 F. Supp. 920 (D.D.C. 1986) .............................................................. 23

*Electronics for Imaging Inc. v. Coyle*,
    394 F.3d 1341 (Fed. Cir. 2005)................................................................ 37

*Forest Labs., Inc. v. Ivax Pharm., Inc.*,
    Civil Action No. 03-891/04-1244 (D. Del. Mar. 23, 2005) ........................ 35

*Genentech, Inc. v. Eli Lilly and Co.*,
    998 F.2d 931 (Fed. Cir. 1993).................................................................. 37

*Glaxo Inc. v. Novopharm Ltd.*,
    110 F.3d 1562 (Fed. Cir 1997)................................................................. 35

*Hanson v. Denckla*,
    357 U.S. 235, 78 S.Ct. 1228 (1958) ......................................................... 29

*Honeywell, Inc. v. Metz Apparatewerke*,
    509 F.2d 1137 (7th Cir. 1975) ................................................................. 31

*In re Elonex Phase II Power Mgmt. Lit.*,
    2003 WL 21026758 (D. Del. 2003) .......................................................... 16

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310, 66 S.Ct. 154 (1945) ........................................................... 29

*Jackson v. National Linen Corp.*,
    248 F. Supp. 962 (W.D.Va. 1965) ........................................................... 20

*Jeffreys v. Exten*,
    784 F. Supp. 146 (D. Del. 1992) ......................................................... 16, 27

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d. Cir. 1995).......................................................... 36, 38, 40

*Lang v. Pacific Marine and Supply Co.*,
    895 F.2d 761 (Fed. Cir. 1990).................................................................. 35

*LaNuova D&B S.p.A. v. Bowe Co.*,
    512 A.2d 764, 768 (Del. 1986) ................................................................ 16

*Magid v. Marcal Paper Mills, Inc.*,
    517 F. Supp. 1125 (D. Del. 1981) ................................................. 17, 20, 24

*Mobil Oil Corp. v. Linear Films, Inc.*,
    718 F. Supp. 260 (D. Del. 1989).............................................................. 27

iii

*Motorola Inc. v. Pad-Tel, Inc.*,
  58 F.Supp.2d 349 (D. Del. 1999) ........................................................................... 29, 30

*Mullins v. Equifax Information Serv. LLC*,
  2006 WL 1214024 (E.D. Va. 2006) .......................................................................... 38

*Provident Nat. Bank v. California Federal Sav. & Loan Ass'n*,
  819 F.2d 434 (3d. Cir. 1987) ..................................................................................... 27

*Purdue Pharma L.P. v. Impax Labs., Inc.*,
  2003 WL 22070549 (S.D.N.Y. 2003) ................................................................... passim

*Samad S&H Management Corp. v. High Society Magazine*,
  1983 WL 1752 (D.V.I. 1984) ...................................................................................... 22

*Schwegmann Bros. Giant Super Markets, Inc. v. Pharmacy Reports, Inc.*,
  486 F. Supp. 606 (E.D. La. 1980) .............................................................................. 22

*Shutte v. Armco Steel Corp.*,
  431 F.2d 22 (3d Cir. 1970) ......................................................................................... 36

*Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distrib. Pty. Ltd.*,
  647 F.2d 200 (D.C. Cir. 1981) ................................................................................... 21

*Stabler v. New York Times Co.*,
  569 F. Supp. 1131 (S.D. Tex. 1983) ........................................................................... 23

*Takeda Chem. Indus. Ltd. v. Watson Pharm. Inc.*,
  329 F. Supp. 2d 394 (S.D.N.Y. 2004) ........................................................................ 35

*The Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*,
  249 F. Supp. 2d 12 (D. Mass. 2002) ......................................................................... 38

*Transportes Aereos De Angola v. Ronair, Inc.*,
  544 F. Supp. 858 (D. Del. 1982) ................................................................................ 16

*United States v. Consolidated Rail Corp.*,
  764 F. Supp. 138 (D. Del. 1987) ................................................................................ 20

*Viam Corp. v. Iowa Export-Import Trading Co.*,
  84 F.3d 424 (Fed. Cir. 1996) ...................................................................................... 16

*Waste Distillation Tech., Inc. v. Pan American Resources, Inc.*,
  775 F. Supp 759 (D. Del. 1991) ................................................................................. 37

*Zeneca Ltd. v. Mylan Pharmaceuticals, Inc.*,
  173 F.3d 839 (Fed. Cir. 1999) ................................................................................ 1, 18

**STATUTES**

10 Del. C. § 3104(c)(4) ......................................................................................... passim

21 U.S.C. § 355(b)(2)(A)(iv) ............................................................................................. 8

28 U.S.C. § 1404(a) ......................................................................................................... 35

28 U.S.C. § 2201 .............................................................................................................. 35

35 U.S.C. § 271(b) ........................................................................................................... 34

35 U.S.C. § 271(e) ........................................................................................................... 34

**RULES**

Fed. R. Civ. P. 17(b) ........................................................................................................ 33

## I.     NATURE AND STAGE OF THE PROCEEDINGS

AstraZeneca[1] filed this action for patent infringement on May 30, 2006. (D.I. 1). Dexcel[2] filed a motion to transfer or dismiss, in lieu of an answer, on July 20, 2006. (D.I. 21). AstraZeneca has conducted discovery on the issue of jurisdiction and venue and now submits this brief in opposition to Dexcel's motion to transfer or dismiss.

## II.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

This is a Hatch-Waxman case. One consequence of this fact is that the normal rule in patent cases—in which jurisdiction and venue lie in a district into which a defendant has directly or indirectly shipped the accused product[3]—does not apply. That is because the FDA has not yet approved the accused infringing product for sale in the United States. Although the act of filing a New Drug Application is considered to be an "artificial act" of infringement under the Hatch-Waxman Act, the Federal Circuit has held that jurisdiction and venue are not created by virtue of such filing at the FDA's headquarters in Rockville, Maryland. But the Court has not agreed on a rationale for this rule. *See Zeneca Ltd. v. Mylan Pharms., Inc.*, 173 F.3d 839 (Fed. Cir. 1999).[4]

---

[1]    Plaintiffs AstraZeneca AB and Aktiebolaget Hassle are Swedish corporations. Plaintiffs KBI-E Inc., KBI Inc. and AstraZeneca LP are Delaware corporations or partnerships, respectively. Collectively, Plaintiffs are referred to herein as "AstraZeneca."

[2]    Defendants Dexcel, Ltd., Dexxon, Ltd. and Dexcel Pharma Technologies, Ltd. are Israeli entities. Defendant Dexcel Pharma Technologies is said not to be a separate legal entity. *See* (Dexcel Mem., D.I. 22, at 14). Defendants are referred to collectively herein as "Dexcel."

[3]    *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994).

[4]    In *Zeneca*, a plurality of panel members (Judges Rader and Gajarsa) agreed only that jurisdiction did not exist in Maryland, but did not agree as to why. The third panel member, Judge Rich, dissented. Although jurisdiction and venue in patent cases are

This state of jurisprudential affairs would at first blush appear to create a unique opportunity for forum shopping for a party such as Dexcel, which is a foreign entity hoping to gain entry into the generic drug market throughout the United States. To that end, ███████████ its counsel prepared a Paragraph IV certification to the FDA, Dexcel rented a ██████████ office in a low rent district in Norfolk, Virginia, ████ ██████ for the sole purpose of attempting to create jurisdiction in the Eastern District of Virginia, which it perceives as being a more favorable forum. By the time the Complaint was filed in this action, Dexcel did not have a license to do business in Virginia and did not even have permanent signage on its "office." Dexcel's CEO, Mr. Dan Oren (████ ████████████████████████████████████████████████████████████████) admitted that ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████. Moreover, all of the work done in the United States ████████████████████████████████████████████████████████████ ██████████████. Nevertheless, Dexcel announced in its Paragraph IV notification letters to AstraZeneca that it "consents" to suit in the Eastern District of Virginia, but only for purposes of a patent infringement suit directed to the particular product here in issue.

Dexcel's NDA is not its first foray into the U.S. market, however, and Dexcel's singular contact in Virginia is less significant than its contacts in Delaware. Dexcel has sold at least three other products in the United States through regular, established distribution channels, including in Delaware. One such product is PerioChip®, which is sold to dental professionals for treating gum disease in their

---

matters of Federal Circuit, not regional circuit, law, *see Beverly Hills Fan*, 21 F.3d at 1564-65, the Federal Circuit has never revisited this issue.

patients. Dexcel's sales of PerioChip® in Delaware through its distribution channels are substantial in relation to the number of dental professionals who practice in Delaware. In addition, Dexcel maintains an existing Delaware corporate affiliate—Dexcel Pharma, Inc.—which formerly acted as the distributor for the PerioChip® product in the United States. Other contacts with Delaware include Dexcel's provision of advertising materials to its distributors for use in selling its products in Delaware and its maintenance of web sites containing information about these products that are accessible from Delaware. In addition, Dexcel's act of filing a NDA is an act directed purposefully against AstraZeneca, a citizen of Delaware.

Other district courts have faced similar claims of lack of jurisdiction by generic drug manufacturers who have been sued in a district not to their liking. Those courts have examined the defendant's contacts with the forum, especially the defendant's sales of its other products into the forum, and held that jurisdiction and venue lie where the defendant's contacts are sufficient under the applicable long arm statute and consistent with due process. *See, e.g., Abbott Labs. v. Mylan Pharm., Inc.*, 2006 WL 850916 (N.D. Ill. 2006); *Purdue Pharma L.P. v. Impax Labs., Inc.*, 2003 WL 22070549 (S.D.N.Y. 2003). That is the case here, where Dexcel (1) generates substantial revenue in Delaware; (2) distributes its products in Delaware through an established distribution network; (3) has availed itself of use of the Delaware corporate form; (4) advertises its products to Delaware customers through advertising literature and on multiple web sites; and (5) knows the effect of its patent infringement in the United States will fall primarily upon AstraZeneca in Delaware.

3

The Court should therefore deny Dexcel's motion to transfer or dismiss. In addition, the Court should not dismiss the claims against Dexcel, Ltd. and Dexxon, Ltd. because these parties (if they are indeed separate entities) will directly participate in the asserted infringement upon FDA approval or, at least, induce such infringement.

Finally, this Court should not transfer venue to Virginia because this is the first-filed case, Delaware is the Plaintiffs' forum of choice and the forum with the greatest interest in the outcome of the case, and Dexcel has set forth no facts indicating that Virginia is a more convenient forum.

## III.    STATEMENT OF FACTS

The patents-in-suit relate to omeprazole, a drug used to treat gastric acid related diseases. Different forms of omeprazole are sold in the United States under the brand names Prilosec® and Prilosec OTC®. Three AstraZeneca patents listed in the FDA Orange Book for Prilosec® and/or Prilosec OTC® are in issue in this case.[5]

### The AstraZeneca Parties

AstraZeneca does business in the United States through one of the named Plaintiffs, AstraZeneca LP, a Delaware limited partnership and AstraZeneca Pharmaceuticals LP, another Delaware limited partnership. AstraZeneca's U.S. headquarters are in Delaware. AstraZeneca also is the State's fifth largest private employer and operates substantial business campuses in Wilmington and Newark. (Booth-Barbarin Decl. at ¶¶ 3, 4). In addition, Plaintiffs KBI Inc. and KBI-E Inc. are

---

[5]    The patents-in-suit are United States Patents No. 4,786,505 ("the '505 patent"), No. 4,853,230 ("the '230 patent") and No. 6,150,380 ("the '380 patent").

4

Delaware corporations with substantial interests in the patents-in-suit. (D.I. 1 at ¶¶ 9, 10; Exh. 1 at pp. 6-8).[6]

### The Dexcel Parties

The Defendants in this case are part of the "Dexcel Pharma Group" which is headquartered in Israel. (Exh. 2). The Dexcel Pharma Group is "fully owned and operated by its President and CEO, Mr. Dan Oren," who established the group in 1965. (Exh. 3). ████████████████████████████

████████████████████████████████████████

████████ The following diagram shows the relationship of Mr. Oren to each of the entities in the Dexcel Pharma Group:

[REDACTED]

Mr. Oren is ███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[6]   Unless otherwise indicated, all exhibits referred to herein are exhibits to the Declaration of Allison Fulton in Support of Plaintiff AstraZeneca's Opposition to Defendant Dexcel's Motion to Transfer or Dismiss.

[7]   Excerpts from the Oren deposition are included as Exhibit 65 to the Fulton Declaration.

[8]   ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████

Mr. Oren ████████████████████████████████████

████████████████████████████████ exercises the same type of control for each

entity.  (██████████████ Exh. 11 at pp. 17, 18, 20).  ███████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████ ).  ██████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████

Board meetings ████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████  ██████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

6

[REDACTED]

Dexcel's New Drug Application to the FDA

███████████████████████████████

███████████████████████████████████████

By letters dated April 17, 2006 and May 4, 2006, Dexcel purported to give AstraZeneca

the statutorily required notice of its certifications.  (Exhs. 28, 29).  Both letters contained

the statement:

> Dexcel hereby consents to jurisdiction in the United States
> District Court for the Eastern District of Virginia, Norfolk
> Division, solely for purposes of any infringement action
> based upon the aforementioned NDA.  Dexcel maintains an
> office located at Wainwright Building, 229 West Bute
> Street, Suite 407, Norfolk, Virginia 23510.

(Exh. 28 at p. 11; Exh. 29 at p. 4).

<u>Dexcel's Effort to Manufacture Jurisdiction in Virginia</u>

███████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████

However, a visit to the site on June 6, 2006, six days after this lawsuit was filed, revealed

that the office had no permanent signage and no listing in the building's lobby directory.

(Kennedy Decl. ¶¶ 4-10 and Exhs. 1-10 thereto).  Mr. Oren testified that the office █

████████████████████████████████████████

████████████████████████████████████  None of these

tasks are unique to the location in Virginia and could be performed anywhere.  ██

█████████████████████████████████████

---

9    AstraZeneca contends that Dexcel's certification was insufficient under applicable
statutory and regulatory requirements.  (D.I. 1 at ¶¶ 20-22, 31-33, 42-44 ).

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████

<u>Dexcel's Delaware Corporation</u>

As late as April 2006, Dexcel represented on its corporate web site that its United States arm was actually its Delaware corporation, Dexcel Pharma, Inc., which has an address in Edison, New Jersey. (Exh. 32). A progression of images taken from Dexcel's corporate web site indicate that Dexcel transitioned from identifying Dexcel Pharma, Inc. in New Jersey as its U.S. address to Dexcel Pharma Technologies, Ltd. in Virginia in late April or early May 2006. This was approximately the same time that Dexcel sent its letters notifying AstraZeneca of its Paragraph IV certifications and its "consent" to be sued in Virginia. (Exhs. 28, 29).[10]



<u>Dexcel's Sales Activity in the United States</u>

---

[10]    However, another page from this site, captured only weeks ago on October 26, 2006, lists Dexcel Pharma, Inc. as Dexcel's U.S. location. (Exh. 2).

9

Dexcel lists four products on its web site as being available for sale in the United States: PerioChip®, Xantia®, Diclofenac Sodium ER, and ISMN ER. (Exh. 36). Of these, the most significant is PerioChip®, which is a thin antiseptic wafer applied by a dental professional to a patient's gums to treat periodontal disease. (Exh. 37).

[REDACTED]

Since at least 2004, Omnii and Dexcel Pharma, Inc. have continuously solicited orders for Periochip® and Xantia® from dental professionals through web sites, http://www.periochip.com and http://www.myxantia.com (Exhs. 40, 41) [REDACTED]

[REDACTED]

---

[11]     Excerpts from the Jackson deposition are included as Exhibit 66 to the Fulton Declaration.

[12]     [REDACTED]

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

██████████████████████████ Benco Dental is a nationwide

distributor of dental products based in Wilkes-Barre, Pennsylvania.  (Exh. 45).  ████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████

███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████

█████████████████ Some of the advertising literature Omnii uses still bears the name

"Dexcel   Pharma,   Inc."      (Exhs.   37,   43,   44).      In   addition,   the   web   site

11

http://www.myxantia.com indicates that the product is available from Dexcel Pharma, Inc. (Exh. 40). Also, material safety data sheets for Xantia and PerioChip, available on the web site http://www.myxantia.com, identify Dexcel Pharma, Inc. as the distributor of Xantia and PerioChip®. (Exhs. 43, 44). Further, Dexcel Pharma, Inc. is listed on the Xantia use instructions available the same web site (Exh. 48) and on instructions for use of PerioChip available at http://www.myperiochip.com. (Exh. 49).

According to the U.S. Census Bureau, the population of Delaware comprises approximately 0.284% of the population of the United States. (Exh. 50).[13] Moreover, Delaware is home to 0.193% of the licensed dentists in the United States. (Decl. of Naseema Shafi).[14]

---

[13]    The Census Bureau data indicates that as of 2005, Delaware had a population of 843,524 compared to the total United States population of 296,410,404. (Exh. 50).

[14]    This data, compiled from canvassing the relevant authorities in all 50 states and the District of Columbia, indicate that Delaware is home to 420 licensed dentists. There are 217,617 licensed dentists in the entire United States. *See* Declaration of Naseema Shafi in Support of Plaintiffs' Opposition to Defendants' Motion to Transfer or Dismiss.

[15]

███████████████████████████████████████

████████████████████

### Dexcel's Plans to Distribute the NDA Product in the United States

█████████████████████████████████████████

████████████████████████████████████████ Dexcel has

already taken steps to place its NDA product into the U.S. market by signing an exclusive

distribution agreement with Perrigo Company ("Perrigo"), the world's largest

manufacturer of over-the-counter pharmaceuticals. (Exh. 53, 54; ███████████████ ).

Under the terms of the distribution agreement, Perrigo will be the exclusive marketer and

distributor of Dexcel's generic version of Prilosec OTC®. (Exh. 53). Perrigo distributes

store brand generic pharmaceuticals to nationwide mass merchandise retail chains such as

WalMart and Walgreens (d/b/a Happy Harry's), which have stores in Delaware. Perrigo

has agreed to distribute Dexcel's NDA product to all fifty states, without restriction.

(Exhs. 53). ██████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████

### This Lawsuit

AstraZeneca filed this action against Dexcel on May 30, 2006.

AstraZeneca filed a parallel action on May 31, 2006 in the Eastern District of Virginia.

---

[16] ██████████████████████████████████████████████████████

Other than certain averments relating to jurisdiction, the two actions are identical.[17]  The

Virginia court has stayed its case pending the determination of the jurisdictional issues by

this Court.  Discovery on the merits, however, is ongoing in this case.

## IV.    ARGUMENT

Personal jurisdiction and venue in patent cases is decided under Federal

Circuit law.  *Beverly Hills Fan*, 21 F.3d at 1564-65.  The touchstones of personal

jurisdiction are whether the defendant is amenable to service of process under the

applicable long arm statute and whether exercise of jurisdiction would be consistent with

due process.  *Akro Corp. v. Luker*, 45 F.3d 1541, 1543-45 (Fed. Cir. 1995); *Commissariat*

*A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1319 (Fed. Cir.

2005).

---

[17]    In balancing the interests of innovator companies and generic companies in the Hatch-Waxman Act, Congress determined presumptively that 30 months is an adequate period of time in which to resolve patent controversies relating to generic drug applications.  For that reason, Congress provided that if the innovator files suit within 45 days of receiving notice of a Paragraph IV certification, the FDA may not approve the drug for 30 months, unless the case is resolved earlier.  *See generally Apotex, Inc. v. Thompson*, 347 F.3d 1335, 1337-39 (Fed. Cir. 2003).  Although the 30-month stay is an important aspect of the balance of interests struck by Congress, courts have yet to clarify whether the stay would remain in effect if a suit filed within the 45-day deadline were dismissed for want of proper jurisdiction or venue and another case re-filed in the proper district after 45 days.  The better reading is that filing the initial suit within the 45-day deadline is sufficient to give rise to the stay even if the case must be re-filed.  Courts have recognized, however, that given the present uncertainty, patent owners sometimes are forced to file parallel suits in different districts to preserve their rights, even though the patent owner does not desire to litigate in both fora and does not seek duplicative relief.  *See Abbott Labs.*, 2006 WL 850916 at *8 (describing the patent owner as "stuck between a jurisdictional rock and hard place").  For that reason, and to preserve its rights, AstraZeneca filed parallel actions.

A.    **Dexcel is Amenable to Service Under the Delaware Long Arm Statute.**

A nonresident party can be served with process in Delaware where that party, in person or through an agent:

> causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State …

10 Del. C. §3104(c)(4).   The Delaware courts, and this Court, have construed the Delaware long arm statute to confer jurisdiction to the maximum parameters of the due process clause, and will liberally interpret the statute in favor of exercising jurisdiction. *See, e.g., LaNuova D&B S.p.A. v. Bowe Co.*, 512 A.2d 764, 768 (Del. 1986); *Boone v. Oy Partek AB*, 724 A.2d 1150, 1157 (Del. Super. 1997); *Jeffreys v. Exten*, 784 F. Supp. 146, 151 (D. Del. 1992); *In re Elonex Phase II Power Mgmt. Lit.*, 2003 WL 21026758, *3 (D. Del. 2003);   *Transportes Aereos De Angola v. Ronair, Inc.*, 544 F. Supp. 858, 864 (D. Del. 1982).   A finding of amenability to service of process under the long arm statute does not eliminate the need for a due process analysis, however.   *LaNuova*, 512 A.2d at 769; *Commissariat*, 395 F.3d at 1320 n.5.

Both the long arm and due process inquiries are governed by the "stream of commerce" theory under Federal Circuit law.   *Commissariat*, 395 F.3d at 1320 (citing *Boone*, 724 A.2d at 1158).   The stream of commerce theory is well-established as the standard inquiry in patent cases.   *See, e.g., Beverly Hills Fan*, 21 F.3d at 1565-66; *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 427-28 (Fed. Cir. 1996).   Where a defendant regularly places its goods in the stream of commerce through established distribution channels, knowing that they will likely end up in the forum, the defendant

cannot ordinarily be heard to complain about being haled into court in that forum. *Beverly Hills Fan*, 21 F.3d at 1566.

In Hatch-Waxman cases, the generic drug manufacturer has not yet placed the accused infringing product into the stream of commerce. However, courts have found it proper to exercise personal jurisdiction over a generic defendant that has placed other products into the forum through the stream of commerce and where other contacts with the forum state were shown. For example, the courts in both *Abbott Labs.* and *Purdue Pharma* interpreted long arm statutes similar to Delaware's and, of course, applied the same due process principles, to find personal jurisdiction over generic defendants.

The *Abbott Labs.* court applied the Illinois long arm statute, which requires that a defendant be "doing business" in Illinois which, in turn, requires "systematic and continuous contact" with Illinois. *Id.*, 2006 WL 850916 at *3. The "doing business" requirement is similar to the requirements of §3104(c)(4) of the Delaware long arm statute. In fact, the Delaware statute is derived from the Illinois statute and thus Delaware courts have looked to the interpretation of the Illinois act for guidance. *See, e.g., Magid v. Marcal Paper Mills, Inc.*, 517 F. Supp. 1125, 1129-30 (D. Del. 1981).

The *Abbott Labs.* court acknowledged that Mylan, the generic defendant, had not sold the accused product in Illinois because the FDA had not yet approved sale of that product. The court found it proper to exercise jurisdiction over Mylan, however, based on Mylan's consistent sales and distribution of other pharmaceutical products to wholesalers and retailers in Illinois as well as its additional contacts with Illinois. These additional contacts included two state licenses for the distribution of drugs in Illinois, a

16

web site for informational and advertising purposes accessible from Illinois, contracts with various shipping entities that had places of business in Illinois and prior litigation against Mylan in Illinois. *Id.* at *4-6. Moreover, the court noted that, under the stream of commerce theory, it was not relevant that Mylan's sales went through intermediate distributors before reaching Illinois. *Id.* at *4.

Similarly, the New York district court in *Purdue Pharma* exercised jurisdiction over a generic defendant, Impax, based on sales of products other than that accused in the lawsuit. New York's long arm statute contains a "doing business" provision that, similar to Illinois and Delaware, requires "a fair measure of permanence and continuity" as opposed to a presence that is "occasional[] or casual[]." *Purdue Pharma*, 2003 WL 22070549 at *2. At the time of suit, Impax was not authorized to do business in New York and had no offices, bank accounts, or other assets in New York. *Id.* at *1. The *Purdue Pharma* court nevertheless found jurisdiction based on Impax's direct and indirect sales to New York, as well as Impax's additional contacts in New York; namely: a "small number" of sales calls to New York, a web site used to solicit business, advertisement of its products in trade journals circulated in New York, and attempts to secure investment capital in New York. *Id.* at *1-3.

The courts in both of these cases recognized the reality inherent in Hatch-Waxman cases where the "highly artificial act" of infringement created under the statute (the filing of the NDA) does not independently form a basis for asserting jurisdiction at the location of the act. *See Zeneca*, 173 F.3d at 833; *Abbott Labs.*, 2006 WL 850916 at *2. They also recognized that this creates a unique forum shopping opportunity for generic drug companies. Dexcel has attempted to avail itself of this opportunity by

17

renting a "mail drop" in Virginia after its Paragraph IV certification was prepared and announcing this to be its sole jurisdictional point of contact in the United States (albeit only for purposes of this lawsuit).

The courts in *Abbott Labs.* and *Purdue Pharma* rejected the forum shopping attempts of the defendants in those cases because sufficient contacts existed with the forum state to justify the exercise of jurisdiction. This Court can and should do likewise, because Dexcel's contacts with Delaware are similar to those in the prior cases, to wit: Dexcel's (1) regular and continuous distribution of its dental products in Delaware through established distribution networks; (2) maintenance of a business incorporated in Delaware; and (3) advertisement of its dental products through literature distributed in Delaware and on multiple web sites accessible from Delaware. In addition, Dexcel's act of filing a NDA was an act directed purposefully against AstraZeneca, a citizen of Delaware.

### 1. Dexcel Derives "Substantial Revenue" from the Continuous Sales of its Dental Products in Delaware.

The court in *Abbott Labs.* noted that Illinois courts had not created a consistent standard as to the necessary showing of volume of sales or revenues to exercise jurisdiction under the Illinois long arm statute. *Id.*, 2006 WL 850916 at *3. Moreover, the *Abbott Labs.* court viewed total sales volume in the context of other continuous and systematic contacts with the forum state, including licenses to do business in the state and a web site accessible from the state. *Id.* at *4-5. The *Purdue Pharma* court used the same approach. 2003 WL 22070549 at *1-3.

18

This approach is consistent with Federal Circuit precedent.  In *Beverly Hills Fan*, the Federal Circuit noted that the Virginia long arm statute—which is virtually identical to the Delaware statute—did not impose any strict threshold for "substantial" sales.  The Federal Circuit cited Virginia cases holding in one instance that a single sale worth $37,000 and constituting 0.5% of the defendant's total revenues was sufficient to exercise jurisdiction and in another instance that a single sale worth $25,000 was also sufficient.  *Id.*, 21 F.3d at 1571 (citing *Ajax Realty Corp. v. J.F. Zook, Inc.*, 493 F.2d 818 (4th Cir. 1972) and *Jackson v. National Linen Corp.*, 248 F. Supp. 962 (W.D. Va. 1965)).

In this case, 

*See Magid*, 517 F. Supp. at 1130 (regular shipment of goods even to a single Delaware customer satisfies 10 Del. C. §3104(c)(4)), separate from whether there is "substantial revenue").

Although this Court has sometimes declined to exercise jurisdiction in cases where the defendant's sales in Delaware comprised less than 1% of its total revenue, it has acknowledged that the fact that the defendant derives only a small portion of its revenue from Delaware is not conclusive.  *See, e.g., United States v. Consolidated*

19

*Rail Corp.*, 764 F. Supp. 138, 144 n.4 (D. Del. 1987); *Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.*, 295 F. Supp. 400, 405 (D. Del. 2002). To interpret these prior cases as erecting a hard and fast threshold (as Dexcel is likely to argue in reply) would not only be overstating their holdings, it would be wrong from a policy standpoint and also run contrary to precedent in a number of other jurisdictions that have recognized that the appropriate analysis must take into account the relative population of the forum state, as well as other contacts with the state.

It is obvious that, absent special circumstances, a business that sells products nationwide will derive relatively less revenue from smaller states such as Delaware in comparison to larger states such as, for example, New York or California. If courts were to turn a blind eye to this fact, parties would be less susceptible to suit in small states than in large ones (all other factors being equal) by virtue of nothing other than the relative populations of the states. Moreover, in certain circumstances, it may be possible for a foreign defendant to argue that its revenue is not "substantial" in *any* state, and thus evade long arm jurisdiction entirely. Such a rule not only lacks a rational basis, it also harms citizens of small states who wish to litigate in their home forum even though the defendant derives relatively disproportionate revenue from the state.

Courts in other jurisdictions have addressed this issue by considering the defendant's sales in proportion to the relative customer population of the forum state. For example, in *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distrib. Pty. Ltd.*, 647 F.2d 200 (D.C. Cir. 1981), the D.C. Circuit reversed dismissal of a suit against two Australian defendants for lack of personal jurisdiction in the District of Columbia. The court interpreted a provision of the D.C. long arm statute comparable to §3104(c)(4) of

20

the Delaware statute and found that the defendants' sales in the District of Columbia through distributors were sufficient for jurisdictional purposes, even though they comprised a dollar amount of only $747.20 (which amounted to only 1.3% of total revenues) over four years. *Id.* at 206. The court rejected the defendants' argument that their revenue in the District of Columbia was "insubstantial" because the proportion of revenue earned by the defendants exceeded the proportionate population of the District of Columbia, which was approximately 0.5% of the population of the eastern half of the United States. *Id.* Recognizing the potential mischief that could result from a wooden approach, the D.C. Circuit stated, "[w]e believe it more sensible, therefore, to conclude that the 'substantial revenue' test may be satisfied, even when the amount of locally derived revenue is small in absolute and percentage terms, if that revenue exceeds the state's per capita share of substantial nationally derived revenue." *Id.* The Federal Circuit noted this holding, with approval, in *Beverly Hills Fan*, 21 F.3d at 1567 n.17.

Courts in other jurisdictions with relatively small populations have applied a similar analysis to avoid unfair results. For example, in *Curtis Publishing Co. v. Golino*, 383 F.2d 586, 591 (5th Cir. 1967), the Fifth Circuit held that the exercise of jurisdiction in Louisiana was proper where the defendant's percentage of sales in Louisiana (nearly 1%) was commensurate with Louisiana's share of U.S. population (1.5%). According to the Fifth Circuit, "it can hardly be doubted that Curtis considered the nearly 1% circulation in Louisiana to be a significant portion of its business—as much as could be reasonably anticipated from the Louisiana market." *Id.* In a similar case, *Schwegmann Bros. Giant Super Markets, Inc. v. Pharmacy Reports, Inc.*, 486 F. Supp. 606, 611-12 (E.D. La. 1980), the Louisiana district court, relying on *Curtis*

21

*Publishing*, found that magazine sales amounting to 1.75% of the total circulation in the United States was sufficient in light of Louisiana's then 1.8% share of the total U.S. population.

Similarly, in *Samad S&H Management Corp. v. High Society Magazine*, 1983 WL 1752 (D.V.I. 1984), the district court sitting in the U.S. Virgin Islands exercised jurisdiction over a defendant who had sold 275 magazines in the U.S. Virgin Islands for total revenue of $5,841.00 because per capita sales in that territory were "well above the national average." *Id.* at *2-3. The court rejected the defendant's contention that its sales were insubstantial:

> By failing to take into account the limited population of this Territory, the [defendant's] argument proves too much and must fail. A nonresident corporate defendant simply cannot be expected to have contacts with this jurisdiction equivalent to its contacts with highly populous jurisdictions such as New York or California. To deny jurisdiction over such a defendant merely because its local sales constitute a small percentage of its total sales would be to deny a resident plaintiff the protection of the laws and courts of this Territory merely because the population of this Territory is limited. This the Due Process Clause does not require.

*Id.* at *3 (internal footnote omitted). *See also Delahanty v. Hinckley*, 686 F. Supp. 920, 923 (D.D.C. 1986) (finding jurisdiction where 0.5% of defendant's sales occurred in the District of Columbia and additional sales of products occurred in Maryland and Virginia and would be used in the District of Columbia); *Akbar v. New York Magazine Co.*, 490 F. Supp. 60, 65 (D.D.C. 1980) (jurisdiction based on 0.7% of defendant's sales occurring in District of Columbia); *Stabler v. New York Times Co.*, 569 F. Supp. 1131, 1134 (S.D. Tex. 1983) (finding jurisdiction and relying, in combination with other factors, on .0046% of sales even where sales were made to a large state, Texas); *Ajax Realty*, 493

F.2d at 821-22 (finding "substantial revenue" based on single sale worth $37,000 and comprising 0.5% of defendant's sales).

Dexcel's sales of its PerioChip® product in Delaware, made through distributors in the ordinary channels of the stream of commerce, is clearly "as much as could be reasonably anticipated from the [Delaware] market." *Curtis Publishing*, 383 F.2d at 591. ███████████████████████████████

███████████████████████████████████████████████

████████████████████████ Moreover, the regular and continuous shipment to repeat customers in Delaware is the type of activity that has been held to satisfy the Delaware long arm statute. *Magid*, 517 F. Supp. at 1130. *See* 10 Del. C. § 3104(c)(4) (exercise of jurisdiction is proper "if the person regularly does or solicits business, engages in any other persistent course of conduct in the State *or* derives substantial revenue" in the State) (emphasis added).

Under the foregoing authority, these sales comprise "regular" and "persistent" activity in Delaware that creates "substantial revenue" under the Delaware long arm statute. Dexcel is therefore amenable to service of process in Delaware. This is true especially given Dexcel's other systematic and continuous contacts with Delaware, including its use of the Delaware corporate form and the persistent advertising of its products and other solicitation of business in Delaware.

### 2. Dexcel Has Continuously Maintained a Delaware Corporation.

In addition to deriving substantial revenue in Delaware, Dexcel has also engaged in "persistent conduct" by purposefully availing itself of the protections of the

23

laws of Delaware.  It has done so by maintaining a Delaware corporation, Dexcel Pharma, Inc., which continues to exist, has an address, and has economic value.  *See* p. 9-10, *supra*.  Although Dexcel will claim otherwise in reply, this entity is every bit as much a part of the "Dexcel Pharma Group" as are the named defendants in the lawsuit.  ███

████████████████████████████████████████████████████

████████████████████████████████

   Dexcel Pharma, Inc. is listed as a "wholly owned subsidiary" of the Dexcel Pharma Group.  (Exh. 2).  Up until April/May 2006, Dexcel Pharma, Inc. was the only United States location of the Dexcel Pharma Group.  (Exhs. 2, 32).  After Dexcel Pharma, Inc. was incorporated in Delaware in 2000 (Exh. 9), it was the legal entity through which Dexcel distributed its PerioChip® and Xantia® products in the United States████████████████████████.  At all times, Dan Oren was president and CEO of the Dexcel Pharma Group, including the named defendant, Dexcel Pharma Technologies, Ltd., the manufacturer of PerioChip® and Xantia®, as well as Dexcel Pharma, Inc., its U.S. distributor up until at least 2004.  (Exh. 55).  ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

            ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████



Dexcel Pharma, Inc. continues to be listed in telephone directories (Exh. 35) and on web sites used to promote Dexcel's products such as http://www.myxantia.com. (Exh. 40). The Dexcel Pharma, Inc. name continues to appear on advertising materials used by Dexcel's distributors in the United States, including in Delaware (███████████████████ Exhs. 37, 43, 44) and on Material Safety Data Sheets required by the FDA. (Exhs. 46, 47). ████████████ ████████████████████████████████████████████████████████████ ████████

These facts warrant the conclusion that the establishment and continuous maintenance of Dexcel Pharma, Inc. is not only the act of "regularly doing business" and/or "persistent conduct" within the meaning of the Delaware long arm statute, it is also a significant availment of the protections and privileges of Delaware law that, together with other facts, supports the exercise of personal jurisdiction in Delaware. Moreover, that availment was an act of the specific Dexcel entities named as defendants in this lawsuit, as well as the individual who owns and controls them all. ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

---

[18]    Perio Products, Ltd. became Dexcel Pharma Technologies, Ltd. in 2001. (Exh. 54).

████████████████████████████████████

████████████████████████████████████

██████████████

Therefore, the Court should consider the formation and continuous use of the Delaware corporate form by the defendants in determining jurisdiction in this case. This act of purposeful availment is no different from acts such as maintaining an office or a bank account in Delaware, or other similar acts of availment of Delaware resources that have historically supported the exercise of personal jurisdiction. *See Jeffreys v. Exten.*, 784 F. Supp. 146, 153 (D. Del. 1992) (mortgage interest in Delaware real estate is sufficient to establish "minimum contacts" with the State of Delaware); *Provident Nat. Bank v. California Federal Sav. & Loan Ass'n.*, 819 F.2d 434, 438 (3d Cir. 1987) (maintenance of a zero-balance bank account constituted substantial, ongoing, and systematic activity to warrant jurisdiction).[19]

### 3. Dexcel Advertises its Products Through Literature Distributed to Delaware Dentists and on Web Sites Accessible from Delaware.

Dexcel also regularly solicits business in Delaware by advertising PerioChip® and Xantia® through sales literature prepared by Dexcel and distributed to Delaware dentists by the Omnii sales representative responsible for the Delaware

---

[19] The Court should note that AstraZeneca's theory does not depend on any notions of agency or "alter ego"/"piercing the corporate veil" such as were discussed in, *e.g.*, *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556 (D. Del. 1998) or *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260 (D. Del. 1989). In those cases, the issue was whether the court could exercise jurisdiction over the parent of the defendant subsidiary that was accused of infringement. In this case, AstraZeneca has shown that the named Dexcel defendants have availed themselves of the protections of Delaware law by forming and continuously maintaining a Delaware corporation for their own benefit, which is analogous to other acts of purposeful availment that have given rise to jurisdiction in past precedent.

territory. (████████████████████ Exhs. 37, 42- 44). ██████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████

In addition, Dexcel advertises its products through web sites that are accessible to Delaware residents:  http://www.periochip.com (the "PerioChip web site") (Exh. 41) and http://www.myxantia.com (the "Xantia web site") (Exh. 40).   On the PerioChip web site, professionals and patients can obtain informational brochures on PerioChip, and safety information such as a Material Safety Data Sheet, which identifies Dexcel Pharma, Inc. as the distributor of the product on behalf of Dexcel Pharma Technologies, Ltd. (Exh. 46).  Internet users can also subscribe to the PerioChip web site, submit their information into a customer database, or contact a local sales representative. (Exh. 55).

The Xantia web site offers similar informational brochures and safety information. (Exhs. 40, 47).  Instructional use brochures are available, as is a toll-free number to contact a local sales representative.  Also, internet users may sign up for "Club Xantia" to become part of a Xantia users community. (Exh. 56).  Despite Dexcel's claims to have discontinued use of the Delaware corporate form, the Xantia web site identifies Dexcel Pharma, Inc. as the source of the Xantia® product. (Exh. 40).   In addition, the PerioChip® and Xantia® products are also promoted on Omnii's web site, http://www.omniipharma.com (Exh. 57) and on Dexcel's main corporate web site, http://www.dexcel.com. (Exh. 36).

Maintenance of web sites accessible from the forum state were contributing factors in the holdings in favor of jurisdiction by the *Abbott Labs.* court, 2006 WL 850916 at *5, and the *Purdue Pharma* court, 2003 WL 22070549 at *1. For the same reasons expressed by those courts, Dexcel's web sites support the exercise of personal jurisdiction in this case. ██████████████████████

████████████████████████████████████████████

██████  This activity has also supported exercise of jurisdiction in prior cases. (*See Motorola Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349, 352 (D. Del. 1999) (finding jurisdiction where defendant maintained an interactive web site and advertised the products nationwide and in Delaware through newspapers, magazines, and catalogs); *Purdue Pharma*, 2003 WL 22070549 at *2 (advertisements in trade catalogs distributed in New York considered in determining jurisdiction).

**B.    Dexcel Has the Constitutionally Required Minimum Contacts With Delaware.**

Due process requires that constitutionally sufficient "minimum contacts" exist between the defendant and the forum state such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154 (1945)). Minimum contacts are established through some act by which the defendant purposefully avails itself of the privilege of conducting activities in the forum state. *Burger King*, 471 U.S. at 475 (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228 (1958)).

The Supreme Court has left unsettled whether additional conduct, beyond a showing of use of established distribution channels in the forum, is required to meet the

28

demands of due process clause under the stream of commerce theory of personal jurisdiction. *See Commissariat*, 395 F.3d at 1322 (discussing Justice O'Connor's and Justice Brennan's conflicting positions in *Asahi Metal Indus. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026 (1987), on whether due process requires more than placing products into the stream of commerce). Delaware courts also have not decided this issue. *Id.*

Applying either theory, the standards of due process have been met in this case. Dexcel has placed its products, especially PerioChip® and Xantia®, into the stream of commerce through an established distribution network knowing that they will reach Delaware. Omnii and Benco Dental regularly and continuously distribute Dexcel's dental products to all fifty states, including Delaware. ██████████████████

████████████████████████████████████████████

████████ In addition, Dexcel has engaged in other conduct directed toward the forum including its choice to create a Delaware corporation to sell its products in the United States. Dexcel also regularly solicits business in Delaware by advertising its products in trade journals that are circulated in Delaware and in trade conferences attended by Delaware dental professionals. Dexcel and its distributors also promote Dexcel's products on their web sites by providing product brochures, product safety literature, and contact information for local sales representatives. It also has entered into a distribution agreement with Perrigo to distribute its generic product throughout the United States, including Delaware.

The combination of these facts supports the exercise of jurisdiction consistent with due process. *See, e.g., Motorola*, 58 F. Supp. 2d at 353-56 (finding due process met where defendant placed its goods in the stream of commerce knowing that

29

they would be sold in Delaware) (citing *Beverly Hills Fan*, 21 F.3d at 1564-67). Moreover, the injury caused by Dexcel's infringement will be felt by AstraZeneca in Delaware, its U.S. headquarters. Courts have held that acts of patent infringement constitute purposefully directed acts toward a patent holder at the situs of its base of operations. *See, e.g., Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1142 (7th Cir. 1975); *Acrison, Inc. v. Control & Metering, Ltd.*, 730 F. Supp. 1445, 1448 (N.D. Ill. 1990). This is consistent with the Supreme Court's holding in *Calder v. Jones*, 465 U.S. 783, 788-90, 104 S. Ct. 1482 (1984), which held that the exercise of jurisdiction comports with due process where the "effects" of the activity complained of are felt in the forum state and the defendant is aware of this fact.[20]

Indeed, the above facts show that it could hardly be "unfair" or "unjust," within the meaning intended by the Supreme Court in *Burger King*, to hale Dexcel into this forum. This is especially true in light of Dexcel's bald attempt to manipulate the jurisdiction of the federal courts to its own advantage. ███████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

New Jersey (the location of the Delaware corporation Dexcel Pharma, Inc.) is home to

---

[20]    In *Beverly Hills Fan*, 21 F.3d at 1570, the Federal Circuit did not limit personal jurisdiction in patent cases to the home forum of the patentee, where the "effect" of the infringement is felt, because such a rule would result in a *too narrow* view of the locus of the patent holder's injury. The Federal Circuit did not eliminate consideration of activities purposefully directed against the patent holder in its home state from the jurisdictional analysis, especially in Hatch-Waxman cases where the product accused of infringement is not being sold.

the headquarters of many of the world's most significant pharmaceutical companies ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████

       ████████████████████████████████████████████████

████████████████████████████████████████████████████████

The office had no permanent signage in June, 2006, even though the lease was purportedly executed as of January, 2006. (Kennedy Decl., at ¶¶ 4-10 and Exhs. 1-10 thereto). Dexcel did not receive a license to do business in Virginia until July 26, 2006, nearly two months after this lawsuit was filed. ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████

It is clear that the timing and location of Dexcel's lease ████████████

████████████████████ in Virginia was motivated by a desire that this lawsuit proceed in

Virginia. ███████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████

When a party has purposefully attempted to manipulate the jurisdiction of

the federal courts as Dexcel has, it would be especially unbecoming to argue that

exercising jurisdiction in Delaware would be "unfair" particularly where, as here, Dexcel

is well aware that the effects of its infringing conduct in the United States will fall upon

AstraZeneca in Delaware.   Indeed, the record reflects that Dexcel's contacts with

Delaware are at least as significant, if not more so, than its contacts with Virginia.  For

these reasons, the exercise of jurisdiction in Delaware would not offend principles of due

process.

---

21  ████████████████████████████████████████████████
    ██████████

**C.**    **Dexcel, Ltd. and Dexxon, Ltd. are Parties to This Action.**[22]

Dexcel, Ltd. and Dexxon, Ltd., if cognizable as separate corporate entities at all, are proper parties to this lawsuit because both have been and will continue to be actively involved in the research, development and manufacture of the generic omperazole product that is the subject of NDA 22-032.

In addition, Dexcel admits that Dexxon partially funds the operations of Dexcel Pharma Technologies, Ltd. (███████ Exh. 11 at p. 24). ████

---

[22] Dexcel claims that the named defendant, Dexcel Pharma Technologies, is not a different entity from Dexcel Pharma Technologies Ltd. and has no independent capacity to be sued. AstraZeneca has no information to the contrary and therefore does not contest dismissal of Dexcel Pharma Technologies under Fed. R. Civ. P. 17(b).

███████████████████ Dexcel Pharma Technologies, Ltd. has also conducted activities relating to NDA 22-032 at the offices or other facilities of Dexxon, Ltd. (Exh. 11 at p. 29).

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████ Once in the United States, the product will be distributed for Dexcel by Perrigo, the self-proclaimed world's largest purveyor of over-the-counter pharmaceuticals, including in Delaware. (Exhs. 53, 54).

It is therefore apparent that Dexcel, Ltd. and Dexxon, Ltd. have engaged in substantial activities that comprise direct infringement under 35 U.S.C. §271(e) as well as aided and abetted infringing activities under 35 U.S.C. §271(b). This court has held that subject matter jurisdiction exists over parties whose conduct will constitute direct infringement, or inducement of infringement, once the NDA product is approved. *See, e.g., Forest Labs., Inc. v. Ivax Pharm., Inc.*, No. 03-891/04-1244- JJF (D. Del. Mar. 23, 2005) (Exhibit A attached hereto); *Allergan, Inc. v. Alcon Labs., Inc.*, 324 F.3d 1322, 1330 -1331 (Fed. Cir. 2003) (claims for induced infringement are cognizable under 35 U.S.C. §271(e)(2)).

In addition, all of the Defendants are clearly making substantial preparations to embark on an infringing course of conduct that they claim is imminent.

████████████████████████████████████████████████████

████████████████████████████████████████████████ If this belief is true, the commencement of infringement is proximate enough to create an actual controversy for direct infringement and inducement of infringement against all of the

Defendants that is cognizable under the Declaratory Judgment Act, 28 U.S.C. §2201 et.

seq. *See Lang v. Pacific Marine and Supply Co.*, 895 F.2d 761, 764-65 (Fed. Cir. 1990);

*Glaxo Inc. v. Novopharm Ltd.*, 110 F.3d 1562 (Fed. Cir 1997) (jurisdiction proper where

ANDA approval was imminent and where ANDA product was in a form intended for

sale); *Takeda Chem. Indus. Ltd. v. Watson Pharm. Inc.*, 329 F. Supp. 2d 394 (S.D.N.Y.

2004) (case or controversy existed where generic manufacturer was in a position to

market its product as soon as its ANDA was approved).

Therefore, on the facts of this record, the Court has both subject matter

and personal jurisdiction over Dexcel, Ltd. and Dexxon, Ltd., and they are, therefore,

proper parties to this suit.[23]

**D.     This Court Should Not Transfer this Action.**

In considering a motion to transfer under 28 U.S.C. §1404(a), the court

considers the plaintiff's choice of venue, convenience of the parties and witnesses, and

the interests of justice. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d. Cir. 1995).

In this case, the Delaware action is the first-filed action and is the Plaintiffs' choice of

forum.  The convenience of the parties and witnesses does not favor a transfer to

Virginia, and the interests of justice counsel in favor of keeping this action in Delaware.

---

[23]     In addition, it appears that Dexcel is attempting to evade discovery based on its position
that Dexcel, Ltd. is not a proper party to the case.

### 1. Delaware is the First-Filed Action and Plaintiffs' Choice of Forum.

In considering motions to transfer, the plaintiff's choice of forum is a "paramount consideration" in any determination of transfer and should be abandoned only if the defendant can show that it is clearly outweighed by other factors. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Ordinarily, the forum in which the first-filed of two identical lawsuits is brought is the favored forum in which the case should be adjudicated. *See, e.g., Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) ("[t]here must be sound reason that would make it unjust or inefficient to continue the first-filed action"); *Electronics for Imaging Inc. v. Coyle*, 394 F.3d 1341 (Fed. Cir. 2005) (general rule favors first-filed case unless the just and effective disposition of a dispute requires otherwise).

In addition, a plaintiff's choice of forum should be given deference where a nexus exists between the forum and the cause of action. *See C.R. Bard Inc. v. Guidant Corp.*, 997 F. Supp. 556, 562 (D. Del. 1998) (a court should specifically give deference to plaintiff's choice when it is due to "legitimate, rational concerns") (citing *Waste Distillation Tech., Inc. v. Pan American Resources, Inc.*, 775 F. Supp 759, 764 (D. Del. 1991)).

AstraZeneca first filed this action in Delaware and Dexcel has not shown that it would be unjust to continue this action in Delaware. Dexcel argues that this court should follow the actions of the Maryland district court in *Aventis Pharma Deutschland, GmbH v. Lupin*, 403 F. Supp. 2d 484 (E.D. Va. 2005). In that case, the Maryland court transferred a Hatch-Waxman case to the Eastern District of Virginia, where an identical case was pending after the Virginia court refused to enter a stay in its proceedings. *Id.* In

36

this case, however, the Virginia court has chosen to stay its case in favor of allowing this Court to resolve the jurisdictional issues raised by Dexcel.  (Exh. 64).  Also, unlike the Maryland case in *Aventis*, discovery in this case is proceeding, and this Court has already taken substantive actions, such as entering a Scheduling Order and scheduling a pre-trial mediation conference.  (*See* D.I. 31; 47).

In addition, there is a clear nexus between AstraZeneca's choice of forum and the cause of action.  The three United States-based AstraZeneca plaintiffs are Delaware entities.  AstraZeneca LP, a Delaware partnership, is the entity approved by the FDA to sell Prilosec® and Prilosec OTC® in the United States and is the party that most directly benefits from the exclusive rights conferred by the patents-in-suit.[24]  AstraZeneca LP also has a substantial presence in Delaware in terms of facilities, employees and community ties.  (Booth-Barbarin Decl. at ¶¶ 3-6).  In addition, Plaintiffs KBI Inc. and KBI-E Inc. are Delaware corporations that have beneficial interests under the patents-in-suit.  (Exh. 1 at pp. 6-8).  Thus, a significant nexus exists between the Plaintiffs and their choice of forum.

## 2.  The Interests of Justice Weigh Against Transfer.

A party seeking a transfer must show that a balancing of the interests tips strongly in favor of a transfer.  *See Datex-Ohmeda Inc. v. Hill-Rom Services Inc.*, 185 F. Supp. 2d 407, 412 (D. Del. 2002).  The district court must consider both public and private interests in determining a transfer motion including, *inter alia*, the relative interests of the two fora in deciding controversies with local impact, the court's familiarity with the applicable law, and the parties' choice of forum.  *Id.* (citing *Jumara,*

---

[24]    Pursuant to its rights under its approval from the FDA, AstraZeneca LP has licensed The Procter & Gamble Company to market Prilosec OTC® in the United States.

55 F.3d at 883.  The interest of justice also encompasses public interest factors aimed at "systemic integrity and fairness" such as a party's attempt to game the federal courts through forum manipulation.  *Mullins v. Equifax Information Serv. LLC*, 2006 WL 1214024, *8 (E.D. Va. 2006) (citing *The Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 15 (D. Mass. 2002)).

In this case, Dexcel is the party engaged in forum manipulation as discussed above.  *See* pp. 30-32, *supra*. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Dexcel's presence in Virginia is trivial in comparison to AstraZeneca's presence in Delaware.   AstraZeneca conducts research, quality assurance, sales and operations management and administration, regulatory, marketing, corporate executive, legal, finance, and other administrative activities in buildings occupying more than two million square feet on a 163-acre campus in Wilmington, Delaware that has been in operation since 1971. AstraZeneca also has a 145-acre pharmaceutical manufacturing and packaging facility in Newark, Delaware. (Booth-Barbarin Decl. at ¶ 3).  AstraZeneca employs approximately 4,770 employees at these sites, making it the 5th largest private employer in the State of Delaware and the 7th largest employer overall in the state.  (*Id.* at ¶ 4). In addition, AstraZeneca contributes substantially to the local community by contributing funds to more than 130 non-profit organizations in the Wilmington, Delaware area and has received awards for its support of National Guard and Reserve units in Delaware.  (*Id.* at ¶¶ 5-6).

Given Dexcel's short-lived, trivial and perhaps transitory presence in Virginia as compared to AstraZeneca's long-standing and substantial presence in

Delaware, the Delaware court, not the Virginia court, clearly has the greater interest in the outcome of this matter.  This interest of justice factor therefore counsels strongly in favor maintaining this action in Delaware.

### 3. Dexcel Has Failed to Show that Virginia is a More Convenient Forum.

Transfer may be warranted where it can be shown that another forum would be more convenient for the parties and the witnesses. *Jumara*, 55 F.3d at 879. Dexcel's submission is completely lacking any assertion, much less evidence, that the Eastern District of Virginia is a more convenient forum in which to litigate this action than is the District of Delaware. There is therefore no convenience-based rationale for granting Dexcel's request for transfer.

## V.    CONCLUSION

For all of the reasons stated above, this Court should deny Dexcel's motion to transfer or dismiss.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*

Jack B. Blumenfeld (# 1014)
Karen Jacobs Louden (#2881)
Leslie A. Polizoti (#4299)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
lpolizoti@mnat.com
*Attorneys for Plaintiffs*

OF COUNSEL
Errol B. Taylor
Robert J. Koch
Jay I. Alexander
Enrique D. Longton
MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street NW
Washington, DC 20006
(202) 835-7500

November 22, 2006

40

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2006, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to Richard D. Kirk.

I further certify that I caused to be served copies of the foregoing document on November 30, 2006 upon the following in the manner indicated:

### BY HAND & E-MAIL

Richard D. Kirk (rkirk@bayardfirm.com)
Ashley B. Stitzer (astitzer@bayardfirm.com)
The Bayard Firm
222 Delaware Avenue
Suite 900
Wilmington, DE  19899

### BY FEDERAL EXPRESS & E-MAIL

Robert F. Green (rgreen@leydig.com)
David M. Airan (dairan@leydig.com)
Saumil S. Mehta (smehta@leydig.com)
Leydig, Voit & May
Two Prudential Plaza
180 N. Stetson Avenue, Suite 4900
Chicago, IL  60601

*/s/ Leslie A. Polizoti*
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE  19801
(302) 658-9200
lpolizoti@mnat.com