IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ASTRAZENECA AB, AKTIEBOLAGET          )
HÄSSLE, KBI-E, INC., KBI, INC. and    )
ASTRAZENECA LP,                       )
                                      )    Civil Action No. 06-358 (SLR)
            Plaintiffs,               )
                                      )
v.                                    )
                                      )
DEXCEL LTD., DEXXON LTD.,             )
DEXCEL PHARMA TECHNOLOGIES            )
LTD. and DEXCEL PHARMA                )
TECHNOLOGIES,                         )
                                      )
            Defendants.               )

DECLARATION OF SAUMIL S. MEHTA

I, Saumil S. Mehta, declare under the penalty of perjury that the following is true
and correct:

1.    I am an attorney with the law firm of Leydig, Voit & Mayer, Ltd. who is
representing DEFENDANTS in the above-captioned action.

2.    This declaration is submitted in support of "DEFENDANTS' REPLY IN
SUPPORT OF THEIR MOTION TO TRANSFER OR DISMSS"

3.    Attached to this Declaration are what I believe to be true and correct
copies of the following documents:

| Exh. No. | Description |
|----------|-------------|
| 1 | Web Page accessed on August 10, 2006 from the website http://cincinnati.bizjournals.com/cincinnati/stories/2006/07/10/daily6.html commenting on revenues derived from sales of Prilosec® OTC |
| 2 | Scheduling Order from Civil Action No. 1:06cv634 Pending in the Eastern District of Virginia |

Declaration of Saumil S. Mehta, Page 1
AstraZeneca AB et al. v. Dexcel Ltd. et al.
Civil Action No. 06-358(SLR)

| Exh. No. | Description |
|---|---|
| 3 | FDA Orange Book Listing Evidencing Expiration Date of U.S. Patent Nos. 4,786,505 and 4,853,230 from website http://www.accessdata.fda.gov/scripts/cder/ob/docs/patexcln ew.cfm?Appl_No=019810&P Accessed on August 10, 2006 |
| 4 | Excerpts from the Deposition of Dan Oren Dated September 14, 2006 |
| 5 | Excerpts from the Deposition of Charles Jackson Dated November 8, 2006 |
| 6 | Plaintiffs' Deposition Exhibit No. 30 – Sales Revenue from Omnii Pharmaceutical's Sales of Periochip® and Xantia® |
| 7 | Sales Revenue Information from Watson Pharmaceuticals, Inc. - Bates Number WAT0000013 |
| 8 | AstraZeneca's Responses to DPT Ltd.'s First Set of Requests for Admissions Relating to Jurisdiction and Transfer Issues - Civil Action No. 06-358(SLR) |
| 9 | Letter Dated July 7, 2006 from Karen Louden to Judge Hilton Regarding Plaintiffs' Request to Transfer Actions to Multi District Litigation in the Southern District of New York |
| 10 | Sales Revenue Information from Watson Pharmaceuticals, Inc. - Bates Number WAT0000013 |

4.    I hereby declare that all statements made herein of my own knowledge are true, that all statements of opinion or those made on information and belief are believed to be true, that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Title 18 of the United States Code.

DATE:

November 30, 2006

Saumil S. Mehta

Declaration of Saumil S. Mehta, Page 2
AstraZeneca AB et al. v. Dexcel Ltd. et al.
Civil Action No. 06-358(SLR)

# EXHIBIT 1

Prilosec P&G's alone until at least 2008 - Cincinnati Business Courier:

**Cincinnati Business Courier - July 10, 2006**
http://cincinnati.bizjournals.com/cincinnati/stories/2006/07/10/daily6.html



New benefit for print subscribers! Click here to learn more...

BUSINESS PULSE SURVEY:  Young Professionals: Give your opinion about Cincinna

# Prilosec P&G's alone until at least 2008

Cincinnati Business Courier - July 10, 2006

A U.S. District Court decision has postponed private-label distribution of **Procter & Gamble Co.**'s over-the-counter heartburn drug, Prilosec OTC.

According to Ad Age magazine, a court-ordered stay will prevent manufacturer **Perrigo Co.** from rolling out store-brand versions of the drug. Cincinnati-based Procter (NYSE:PG) now will likely get until mid- to late 2008 to exclusively market Prilosec. This extends the period two years past the cutoff date initially set by the Food and Drug Administration

P&G has a licensing agreement with AstraZeneca Plc to sell Prilosec without a prescription. In May, AstraZeneca filed a patent-infringement lawsuit in U.S. District Court in Delaware and Eastern Virginia against Perrigo's partner, **Dexcel Pharma Technologies**, an Israeli company that has developed a generic version of Prilosec. The court in June issued a 30-month stay blocking Dexcel or Perrigo (NYSE: PRGO) from marketing their private-label version, according to Ad Age.

A representative from Perrigo told Ad Age that the company expects to begin shipping a private-label version no sooner than 2008.

Prilosec OTC has U.S. retail sales of more than $800 million.

| Contact the Editor | Need Assistance? | More Latest News → |

**Subscribe or renew online**

*All contents of this site © American City Business Journals Inc. All rights reserved.*

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Astrazeneca Ab, et al.,

                    Plaintiff,

v.                                                    Civil Action No. 1:06cv634

Dexcel, Ltd,

                    Defendant.

## ORDER

A Fed. R. Civ. P. 16(b) PRETRIAL CONFERENCE will be held on Wednesday, <u>August 30, 2006</u> at 10:00 a.m. before a Magistrate Judge.

The parties shall confer prior to this conference to consider the claims, defenses, possibilities of a prompt settlement or resolution of the case, trial before a Magistrate Judge, to arrange for the disclosures required by Rule 26(a)(1), and develop a discovery plan which will complete discovery by Friday, <u>December 15, 2006</u>. The parties must file their discovery plan by the Friday preceding the Rule 16(b) conference.

All parties shall file an answer within twenty (20) days. Discovery may begin upon receipt of this order. A party may not exceed five (5) non-party, non-expert witness depositions nor serve on any other party more than thirty (30) interrogatories, including parts and subparts, without leave of court.

The FINAL PRETRIAL CONFERENCE will be held on Thursday, <u>December 21, 2006</u> at 10:00 a.m.

The parties must bring to the final pretrial conference the Rule 26(a)(3) disclosures and a list of the exhibits to be used at trial, a list of the witnesses to be called at trial and a written stipulation of uncontested facts. The exhibits themselves or a copy should be exchanged with opposing counsel before the conference. Objections to exhibits must be filed within 10 days after the conference; otherwise the exhibits shall stand admitted in evidence. The original exhibits shall be delivered to the clerk as provided by Local Rule 79(A). <u>Non-expert witnesses and exhibits not so disclosed and listed will not be permitted at trial except for impeachment or rebuttal, and no person may testify whose identity, being subject to disclosure or timely requested in discovery, was not disclosed in time to be deposed or to permit the substance of his knowledge and opinions to be ascertained.</u>

The trial of this case will be set for a day certain, within 4-8 weeks of the final pretrial conference.

_Claude M. Hilton_
UNITED STATES DISTRICT JUDGE

August 10 , 2006
Alexandria, Virginia
This order is being mailed to local counsel only.



# NOTICE

# INITIAL AND FINAL PRETRIAL FILINGS

In accordance with Rules 5 and 73, Federal Rules of Civil Procedure, the following procedures are to be followed:

## Initial Pretrial

Counsel should confer with their clients prior to the initial pretrial conference and be prepared to respond to inquiry by the judge regarding consent to exercise of jurisdiction by a United States Magistrate Judge for trial and entry of final judgment.

## Final Pretrial

Witness lists and exhibit lists, signed by local counsel, accompanied by a certification of service are to be filed at the final pretrial conference.

Original exhibits, labeled consistent with the exhibit list, bound and tabbed, to be filed one (1) business day before trial. A copy of the exhibits should be exchanged with opposing counsel before the final pretrial conference.

Fernando Galindo
Acting Clerk of the Court

# UNITED STATES DISTRICT COURT
### FOR THE
### EASTERN DISTRICT OF VIRGINIA
Alexandria Division

_____, Plaintiff

V.

Case Number: _____

_____, Defendant

## NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE
## TO EXERCISE JURISDICTION

In accordance with the provisions of 28 U.S.C. §636(c), and Fed.R.Civ.P. 73, you are notified that a United States magistrate judge of this district court is available to conduct any or all proceedings in this case including a jury or nonjury trial, and to order the entry of a final judgment. Exercise of this jurisdiction by a magistrate judge is, however, permitted only if all parties voluntarily consent.

You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's jurisdiction from being exercised by a magistrate judge. If any party withholds consent, the identity of the parties consenting or withholding consent will not be communicated to any magistrate judge or to the district judge to whom the case has been assigned.

An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.

## CONSENT TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE

In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.

| Party | Signature of Counsel or *Pro Se* Party | Date |
|-------|----------------------------------------|------|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

## ORDER OF REFERENCE

IT IS ORDERED that this case be referred to a United States Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. §636(c) and Fed.R.Civ.P. 73.

_____                    _____
Date                                                         United States District Judge

NOTE: RETURN THIS FORM TO THE CLERK OF THE COURT ONLY IF ALL PARTIES HAVE CONSENTED
TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE.

# EXHIBIT 3

**Patent and Exclusivity Search Results from query on Appl No 019810 Product 001 in the OB_Rx list.**

## Patent Data

| Appl No | Prod No | Patent No | Patent Expiration | Drug Substance Claim | Drug Product Claim | Patent Use Code |
|---------|---------|-----------|-------------------|----------------------|--------------------|-----------------|
| 019810 | 001 | 4786505 | APR 20,2007 | | | U-108 |
| 019810 | 001 | 4786505*PED | OCT 20,2007 | | | U-108 |
| 019810 | 001 | 4853230 | APR 20,2007 | | | U-108 |
| 019810 | 001 | 4853230*PED | OCT 20,2007 | | | U-108 |
| 019810 | 001 | 6147103 | OCT 09,2018 | | | |
| 019810 | 001 | 6147103*PED | APR 09,2019 | | | |
| 019810 | 001 | 6150380 | NOV 10,2018 | | | |
| 019810 | 001 | 6150380*PED | MAY 10,2019 | | | |
| 019810 | 001 | 6166213 | OCT 09,2018 | | | |
| 019810 | 001 | 6166213*PED | APR 09,2019 | | | |
| 019810 | 001 | 6191148 | OCT 09,2018 | | | |
| 019810 | 001 | 6191148*PED | APR 09,2019 | | | |

## Exclusivity Data

| Appl No | Prod No | Exclusivity Code | Exclusivity Expiration |
|---------|---------|------------------|------------------------|
| 019810 | 001 | PED | JAN 12,2006 |
| 019810 | 001 | M-19 | JUL 12,2005 |

Additional information:

1. Patents are published upon receipt by the Orange Book Staff and may not reflect the official receipt date as described in 21 CFR 314.53(d)(5).
2. Patents submitted on FDA Form 3542 and listed after August 18, 2003 will have one to three patent codes indicating specific patent claims as submitted by the sponsor and are detailed in the above table.
3. Patents listed prior to August 18, 2003 are flagged with method of use claims only as applicable and submitted by the sponsor. These patents may not be flagged with respect to other claims which may apply
4. *PED and PED represent pediatric exclusivity. Patents with pediatric exclusivity granted after August 18, 2003 will be indicated with *PED as was done prior to August 18, 2003. Patents with *PED added after August 18, 2003 will not contain any information relative to the patent itself other than the *PED extension. Information related specifically to the patent will be conveyed on the original patent only.
5. U.S. Patent Nos. RE36481 and RE36520 are being relisted for Zocor (NDA 19-766) pursuant to the decision and related order in Ranbaxy Labs. v. Leavitt, No. 05-1838 (D.D.C. April 30, 2006). The '481 and '520 patents will remain listed in Approved Drug Products with Therapeutic Equivalence Evaluations until any applicable periods of exclusivity pursuant to section 505(j)(5)(B)(iv) of the Federal Food, Drug, and Cosmetic Act have been triggered and run, unless the agency's appeal of the decision to the U.S. Court of Appeals for the District of Columbia is decided in the agency's favor before the exclusivity periods have

expired. While the patents remain listed, any new or pending ANDA referencing Zocor must contain patent certifications to these patents. For additional information on this matter, please refer to Docket Nos. 2005P-0008 and 2005P-0046.

View a list of all patent use codes
View a list of all exclusivity codes

Return to Electronic Orange Book Home Page

FDA/Center for Drug Evaluation and Research
Office of Generic Drugs
Division of Labeling and Program Support
Update Frequency:

    Orange Book Data - **Monthly**

    Generic Drug Product Information & Patent Information - **Daily**

    Orange Book Data Updated Through July, 2006

    Patent and Generic Drug Product Data Last Updated: August 10, 2006

# EXHIBIT 4

Page 1

1    UNITED STATES DISTRICT COURT

2    DISTRICT OF DELAWARE

3    (CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY)

4    ------------------------------x

5    ASTRAZENECA AB,                    :

6    AKTIEBOLAGET HÄSSLE,                 :

7    KBI-E, INC., KBI INC., and    :

8    ASTRAZENECA LP, Plaintiffs,    :

9         vs.                    :   Civil Action No.

10   DEXCEL LTD., DEXXON LTD.,    :    06-358(SLR)

11   DEXCEL PHARMA TECHNOLOGIES    :

12   LTD., and DEXCEL PHARMA        :

13   TECHNOLOGIES, Defendants.        :

14   ------------------------------x

15

16    VIDEOTAPED DEPOSITION OF:  DAN OREN

17       Thursday, September 14, 2006

18       Commencing at 9:25 a.m.

19       New York, New York  10005

20

21

22

Page 27

```
 1    the shares of Perio Products, Limited?

 2            A.    We were interested in that company

 3    in its drug delivery technologies.

 4            Q.    Is another owner of Dexcel Pharma

 5    Technologies, Limited Sheery Oren?

 6            A.    Yeah.  Practically all the shares

 7    are under the bank and the old product at this

 8    time that we changed its name to Dexcel Pharma

 9    Technology was a public company and a public

10    company needed minimum seven shareholders.

11            Q.    Uh-huh.

12            A.    So one share of one less than a

13    cent was given to each of the shareholders which

14    are me personally, my wife Sheery, my brother

15    Tanhum, Discotrade affiliate of Dexcel, Limited

16    and Dexcel, Limited which is also affiliate of

17    Dexxon, Limited.

18            Q.    I see.

19                  And did there come a point in time

20    when Perio Products, Limited was taken private,

21    no longer a public company?

22            A.    No, it was change of the law.
```

1          Q.     Change of the law?

2          A.     Of the company law and

3     automatically it turned to be private --

4          Q.     I see.

5          A.     -- company.

6          Q.     So that was by a corporate

7     resolution or --

8          A.     Change of law.  Change of law.

9          Q.     Okay.

10               Was that executed by the Board of

11    Directors of the company?

12         A.     No, no, we didn't have to do that.

13    It was by law.  Those companies that were not

14    actually public turned to be private companies.

15         Q.     Okay.

16               Did the company become private at

17    the time you acquired it in 1999?

18         A.     No, no, no.  It was three, four

19    years ago.

20         Q.     Okay.

21               And at the time the company became

22    private was its name changed to Dexcel Pharma

```
 1                    And are certain of those rooms

 2    designated for DPT products that will then be

 3    exported?

 4         A.      No.

 5         Q.      No.

 6                 Do the DPT products -- well, let

 7    me perhaps clarify.

 8                 Does DPT do any manufacturing of

 9    its own?

10         A.      Of course.

11         Q.      Okay.

12                 And where is that manufacturing

13    done?

14         A.      In Jerusalem.

15         Q.      Jerusalem, okay.

16                 What is the address of that

17    facility?

18         A.      It is Hamarpeh 7, Har Hotzvim,

19    Jerusalem.

20         Q.      Okay.

21                 So again can you -- spell it in

22    English if you can.
```

Page 59

1          Q.       Uh-huh.

2          A.       Dexcel Pharma, Inc. couldn't pay

3    for the product sold by DPT to DPI to them and we

4    decided to discontinue and I mentioned to our

5    counsel that if you find a company that would buy

6    a company with a loss for half of those losses

7    we're willing because we don't plan to make any

8    future use of that company.

9          Q.       Uh-huh.

10                   The company still exists as a

11   corporate form, however?

12         A.       If there is a buyer and you find

13   for us a buyer we'll be happy.  If not we shall

14   just neglect the company completely.

15         Q.       Does the company currently have

16   any employees?

17         A.       No.

18         Q.       DPI?

19         A.       No.

20         Q.       Does it have any facilities?

21         A.       No.

22         Q.       It used to have a location in

Page 67

1    BY MR. ALEXANDER:

2         Q.      Exhibit 5 is a Web page that we

3    were able to retrieve from Google's cache.

4                Do you understand what Google's

5    cache is?

6         A.      Just a minute.

7         Q.      That's this one.

8         A.      Yeah.

9         Q.      Okay.

10                And if you look on the second page

11   it says it was updated April 25th, 2006.

12        A.      (Reviews.)

13        Q.      And you see that the Web page has

14   changed in that Dexcel Pharma Technologies has

15   been added.

16                Do you see that?

17        A.      Yeah.

18        Q.      Okay.

19                Why was Dexcel Pharma Technologies

20   added to the website sometime between April 20th

21   and April 25th, 2006?  Do you know?

22        A.      Because we have a company now in

Page 68

1    New Brunswick -- in Norfolk.

2             Q.    Uh-huh.  Okay.

3                   Did you direct that this change be

4    made?

5             A.    No, no.  It was someone that

6    noticed.

7             Q.    Uh-huh.

8             A.    I am not in charge of the Web.

9             Q.    Uh-huh.

10            A.    So I see here it's a mistake.

11   It's without the limited.

12            Q.    Uh-huh.

13            A.    There is no creature like Dexcel

14   Pharma Technologies without limited.

15            Q.    Uh-huh.  Okay.

16                  So why is there still a North

17   Brunswick address for Dexcel Pharma, Inc. if the

18   company had moved to Norfolk?

19            A.    It must be deleted.

20            Q.    Okay.

21                  Do you know whether there are

22   still any facilities in North Brunswick, New

Oren, Dan

New York, NY

September 14, 2006

Page 69

1    Jersey associated with Dexcel?

2           A.      No, we don't pay for any.

3           Q.      You don't pay for any.

4                   Are there any employees who live

5    in North Brunswick?

6                   MR. GREEN:  Objection to form.

7                   MR. ALEXANDER:  Uh-huh.

8                   THE WITNESS:  Pardon me?

9                   MR. GREEN:  I just objected to the

10   form of the question.

11                  MR. ALEXANDER:  Yeah.

12                  MR. GREEN:  You can still answer.

13

14   BY MR. ALEXANDER:

15          Q.      Let me change the question.

16                  Are there any Dexcel entity

17   employees who live in North Brunswick that you

18   know of?

19          A.      Our employee in Norfolk was our

20   employee in Edison, New Jersey and she moved to

21   Norfolk to work for the company over there.

22          Q.      All right.

```
 1           A.      Yeah.

 2           Q.      Okay.

 3                   But I think you said before there

 4   are no records of those meetings?

 5           A.      These are operational meetings as

 6   articles of the board are these type of document

 7   that you showed me as well as other that reflect

 8   transactions with banks, signature rights, the

 9   financial support and so on.

10           Q.      Uh-huh.

11           A.      For the routine business we just

12   meet and discuss and proceed according to the

13   majority --

14           Q.      Uh-huh.

15           A.      -- usually.  Because they all see

16   same thing, the benefit of the company.

17           Q.      Well, do you have board meetings

18   for Dexcel, Dexxon and Discotrade at the same

19   time that you have board meetings for DPT?

20           A.      Again, if it's for the formal,

21   each formal meeting is separate.  When we discuss

22   business matters we discuss according to the
```

Page 150

```
 1              Q.      Uh-huh.

 2              A.      And the prices are reflected in

 3     sales invoices.  There was no change throughout

 4     the period.

 5              Q.      Uh-huh.

 6              A.      It doesn't matter what were the

 7     price because we didn't receive a penny.

 8              Q.      Uh-huh.

 9                      Do the Dexcel entities all have

10     separate financial statements?

11              A.      Yes.

12              Q.      Does that include the holding

13     companies as well?  Are there financial

14     statements for holding companies?

15              A.      No, we don't do that.

16              Q.      Okay.

17                      Does money -- do the holding

18     companies have bank accounts?

19              A.      No.

20              Q.      No.  Okay.

21                      Are -- do you receive dividends

22     from any of the Dexcel companies?
```

Page 155

```
 1    millions.  It should be now eleven or so million

 2    dollars.

 3             Q.      About eleven million dollars?

 4             A.      Approximately.

 5             Q.      Okay.

 6                     When was this loan made?

 7             A.      It started during the acquisition.

 8             Q.      Oh, okay.  So --

 9             A.      And partially it is for services

10    between the companies or its commercial, but the

11    major part is the loan that was granted upon the

12    acquisition in order to have working capital.

13             Q.      Uh-huh.  I see.

14                     And does DPT make payments to

15    Dexxon on a regular basis?

16             A.      Whenever -- there is not pay back

17    date.  Whenever they can afford paying back, they

18    do.

19             Q.      I see.  Okay.

20                     Were the -- what other sources of

21    working capital were there for DPT other than

22    this Dexxon loan?
```

Page 156

1          A.     It's Internet sales.  That's all.

2          Q.     Okay.

3                 So have you put any of your own

4     money into DPT?

5          A.     No, no, no.

6                 They also have some bank loan.

7          Q.     DPT does?

8          A.     DPT.

9          Q.     Okay.

10          A.     Yeah.

11          Q.     Okay.

12                 Now, request Number 74 says admit

13     that work underlying NDA number 22-032 -- now,

14     you understand that NDA Number 22-032 is the New

15     Drug Application submitted to the U.S. FDA for

16     omeprazole?

17          A.     Yes.

18          Q.     Okay.

19                 So the request says admit that

20     work underlying NDA Number 22-032 was at least

21     partially supported by Dexcel and that request is

22     admitted.

Page 165

```
 1              A.      It states Or-Akiva and for the

 2    U.S. it is planned to supply from Jerusalem.

 3              Q.      Okay.

 4                      So you'll have two different

 5    plants making omeprazole at the same time then?

 6              A.      Yeah.  We might decide let's

 7    finish the plant and then we decide how to

 8    rational manufacturing.  We might transfer

 9    everything to Jerusalem.

10              Q.      Okay.

11                      Is your plan to phase out Dexcel

12    as a company?

13              A.      No.

14              Q.      No.  Okay.

15                      So why not simply have Dexcel open

16    a new facility?  Why is it DPT?

17              A.      Simple reason.  In Jerusalem we

18    got ten years income tax-free.

19              Q.      For a new plant?

20              A.      Yeah.

21              Q.      Well, but if Dexcel opened a new

22    plant in Jerusalem wouldn't they get the tax
```

Page 166

1    break?

2            A.      It's not that easy today and they

3    received it long ago.

4            Q.      Oh, okay.

5                    So it has to be a new company that

6    opens a new plant to get the tax break?

7            A.      No, no.  Today it's more difficult

8    to get what they received in the past.

9            Q.      Uh-huh.

10           A.      The law and everything is changed

11   and we received -- we're talking about ten years

12   from the first year profitable year taxable.

13           Q.      Uh-huh.

14           A.      That means that it's nice break.

15           Q.      So I'm trying to understand why

16   DPT is able to take advantage of that break, but

17   not Dexcel.

18           A.      Because it was plan that started

19   before the acquisition.

20           Q.      The plant was planned?

21           A.      The expansion.

22           Q.      The expansion was planned.

Page 234

1          A.      (Complies.)

2          Q.      Do you recall you were asked a few

3    questions with respect to Paragraph 6?

4          A.      6, yeah.

5          Q.      For clarification purposes who

6    owns NDA 22-032?

7          A.      DPT.

8          Q.      Do you know who is considered to

9    be the applicant with respect to NDA 22-032?

10         A.      I believe it's Dexcel, but I don't

11   know.

12         Q.      Dexcel?

13         A.      The manufacturer, but I don't know

14   what is in the application.

15         Q.      But the owner is --

16         A.      The owner is DPT.

17         Q.      And you don't as you sit here

18   today know who is designated as the applicant?

19         A.      No.

20         Q.      Do you know who actually

21   physically submitted NDA 22-032 to the FDA?

22         A.      I -- I don't know, but I think

Page 235

1      it's Lachman the consultant, but I cannot be sure

2      about that.

3            Q.      Do you know what entity instructed

4      the application that became NDA 22-032 to

5      actually be filed with the FDA?

6                  MR. ALEXANDER:   Objection to form.

7                  You can answer.

8            A.      Could you repeat the question?

9            Q.      Yes.

10                  Do you know what entity, if any

11      instructed the submission of NDA 22-032 to the

12      FDA?

13                  MR. ALEXANDER:   Object.

14            A.      Instructed, it should be DPT

15      because it was relatively long plan that DPT

16      proceed with that application.

17            Q.      Did any other entity designated as

18      a Defendant in this case to your knowledge

19      instruct the submission of NDA 22-032 to the FDA?

20                  MR. ALEXANDER:   Objection to form.

21            A.      Dexcel Pharma Technology without

22      the limited it's not a company, so of course not.

```
 1    Dexxon, of course not and maybe there was by

 2    mistake letter by Dexcel, Limited, but I doubt

 3    because it was always by DPT.

 4             Q.     I'd like you to look at Paragraph

 5    6 again on Exhibit 22 in front of you.

 6             A.     This one?

 7             Q.     Yes.

 8             A.     Yeah.

 9             Q.     And the last sentence reads no

10    other Defendant to this lawsuit participated in

11    the filing of NDA Number 22-032.

12             A.     (Reviews.)

13             Q.     Is that correct, that no other

14    Defendant in the lawsuit participated in the

15    filing of the NDA?

16             A.     In the filing, no.  It's just DPT.

17                    MR. GREEN:  No further questions.

18                    We will reserve reading and

19    signature and the entire transcript is to be

20    designated as attorneys' eyes only.

21                    MR. ALEXANDER:  I just have one

22    follow-up along the same subject matter, just a
```

# EXHIBIT 5

Page 1

1    UNITED STATES DISTRICT COURT

2    DISTRICT OF DELAWARE

3    (CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY)

4    --------------------------------x

5    ASTRAZENECA AB,

6    AKTIEBOLAGET HASSLE,

7    KBI-E, INC., KBI INC. and

8    ASTRAZENECA LP,

9                 Plaintiffs,

10        vs.                              Civil Action No.

11    DEXCEL LTD., DEXXON LTD.,                06-358(SLR)

12    DEXCEL PHARMA TECHNOLOGIES

13    LTD., and DEXCEL PHARMA

14    TECHNOLOGIES,

15                 Defendants.

16    ---------------------------x

17             DEPOSITION OF CHARLES E. JACKSON

18             Wednesday, November 8, 2006

19                 1:10 p.m.- 2:40 p.m.

20                 340 Poinciana Way

21                    Suite 321

22               Palm Beach, Florida

Jackson, Charles E.                    CONFIDENTIAL - ATTORNEYS' EYES ONLY                    November 8, 2006
                                              Palm Beach, FL.

Page 22

```
 1    product as it relates to our product, if it's a

 2    direct selling competitive product.

 3              That would generally be the context of

 4    his comments.

 5       Q.    When he is selling product does he use

 6    literature or advertising material that's been

 7    prepared for him?

 8       A.    Yes.

 9       Q.    Typically is that kind of material

10    prepared by Omnii or somebody else?

11       A.    Both.

12       Q.    Let's get specific.  How many Dexcel

13    products does Omnii sell?

14              MR. MEHTA:  Objection to form.

15       A.    Two.

16       Q.    And those are the PerioChip and Xantia?

17       A.    That's right.

18       Q.    Does Mr. Murrill sell those two

19    products?

20       A.    Yes.

21       Q.    And he sells them in his territory?

22       A.    Yes.
```

Page 25

```
 1          Q.    But neither product is made by Omnii,

 2     correct?

 3          A.    That's right, neither is.

 4          Q.    So does Omnii purchase the Dexcel

 5     products from Dexcel?

 6          A.    Yes.

 7                MR. MEHTA:   Objection to form.

 8          Q.    And how does that process work, can you

 9     explain that?

10          A.    A traditional purchasing process.  We

11     issue purchase orders to Dexcel, they fulfill that

12     purchase order, we receive it, and then they

13     invoice us for the product purchased.

14          Q.    And then you pay them subsequently?

15          A.    Yes.  And then we pay them.

16          Q.    How does Dexcel ship the product to you?

17                MR. MEHTA:   Objection to form.

18          A.    I'm not sure.

19          Q.    Does it go to the Arkansas warehouse?

20          A.    Yes.  We receive it into the Arkansas

21     warehouse.

22          Q.    Does it sometimes go directly to the
```

Page 36

```
 1        Q.    I'm sorry.   The percentage of sales per

 2   particular location.

 3        A.    No.

 4        Q.    So Mr. Weisman calculated that 0.3

 5   percent of the units of PerioChip sold in the

 6   United States were sold in Delaware?

 7        A.    Right.

 8        Q.    Is that the way to interpret that?

 9        A.    Yes.

10        Q.    And the next set of columns, I take it

11   that reflects the fact that 0.2 percent of the

12   dollar revenues attributable to sales of PerioChip

13   in the United States are attributable to sales in

14   Delaware, correct?

15        A.    Correct.

16        Q.    Does this data include sales by Benco

17   Dental?

18        A.    No.

19        Q.    So to the extent Benco Dental made sales

20   in Delaware they would not be reflected in this

21   data, correct?

22        A.    That's correct.
```

Page 26

1    customer?

2         A.    No.

3         Q.    You are sure of that?

4         A.    I'm fairly sure of that, yeah.

5         Q.    What makes you sure of that?

6         A.    We have distribution rights in the U.S.

7    for the product.  So I'm not aware of any

8    distribution outside of our own.

9         Q.    Would it go to any facility other than

10   the Arkansas warehouse?

11        A.    No.

12        Q.    So how does it get from the Arkansas

13   warehouse to the dentist who ordered it?

14        A.    We ship it directly to the office that's

15   ordered the product.

16        Q.    And normally how do you ship it?  Is it

17   Fed Ex?  Mail?

18        A.    Yes, typically Fed Ex, UPS.

19        Q.    And explain the ordering process when

20   your sales rep makes a sale of a Dexcel product,

21   how is that information recorded at the company?

22             MR. MEHTA:  Objection to norm.

Page 63

```
 1        A.    Not that I'm aware of, no.

 2        Q.    No person acting on behalf of Dexcel

 3   Limited instructed Omnii to do business or make

 4   sales in Delaware, correct?

 5              MR. ALEXANDER:   Objection.

 6        A.    Specifically in Delaware?

 7        Q.    Yes.

 8        A.    No.

 9        Q.    To the best of Omnii's knowledge no

10   person acting on behalf of any Dexcel party named

11   as a defendant ever made direct sales of product

12   to customers in Delaware, correct?

13        A.    Could you repeat that.

14        Q.    To the best of Omnii's knowledge, did

15   anyone acting on behalf of any of the named

16   defendants ever make direct sales of product to

17   customers in Delaware?

18        A.    No, I'm not aware of any.

19        Q.    To the best of Omnii's knowledge the

20   Xantia product is a brush-on tooth whitener,

21   correct?

22        A.    Correct.
```

Page 65

1    the treatment of frequent heartburn?

2         A.    No.

3         Q.    To the best of your knowledge Omnii

4    controlled decisions related to its sales

5    strategy, correct?

6         A.    Correct.

7         Q.    And specifically the territory of its

8    sales?

9         A.    We would direct all activity of our

10   sales.

11        Q.    You said Dan Murrill -- is that his

12   name?

13        A.    Yes.

14        Q.    -- is the salesperson in charge of the

15   territory including Delaware, correct?

16        A.    Correct.

17        Q.    He also sells other products besides the

18   Dexcel Pharma Technology Limited products,

19   correct?

20        A.    Correct.

21        Q.    Do you know what percentage of his total

22   sales are from the Dexcel Pharma Technology

# EXHIBIT 6

- 3 -

**Item 6.**

OMNII Products of Palm Beach, Inc. and Benco Dental have the right to sell PerioChip in Delaware.

Confidential

OMN0000150

7 + 8

**Sales of Dexcel Products - US and Delaware**
**2/2004 through 8/2006**

| | PerioChip Units | | | PerioChip Dollars | | | Xantia Units | | | Xantia Dollars | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | US | DE | % | US | DE | % | US | DE | % | US | DE | % |
| Feb-2004 | 462 | 1 | 0.2% | 132,010 | 300 | 0.2% | 34 | 0 | 0.0% | 2,700 | 0 | 0.0% |
| Mar-2004 | 598 | 0 | 0.0% | 167,266 | 0 | 0.0% | 66 | 0 | 0.0% | 5,500 | 0 | 0.0% |
| Apr-2004 | 556 | 1 | 0.1% | 159,640 | 140 | 0.1% | 103 | 1 | 1.0% | 9,900 | 100 | 1.1% |
| May-2004 | 530 | 1 | 0.2% | 153,227 | 280 | 0.2% | 103 | 0 | 0.0% | 9,390 | 0 | 0.0% |
| Jun-2004 | 622 | 4 | 0.6% | 177,362 | 1,125 | 0.6% | 123 | 0 | 0.0% | 11,666 | 0 | 0.0% |
| Jul-2004 | 608 | 0 | 0.0% | 174,971 | 0 | 0.0% | 83 | 0 | 0.0% | 7,631 | 0 | 0.0% |
| Aug-2004 | 621 | 1 | 0.2% | 177,626 | 275 | 0.2% | 76 | 0 | 0.0% | 6,647 | 0 | 0.0% |
| Sep-2004 | 652 | 9 | 1.4% | 179,494 | 2,225 | 1.2% | 75 | 0 | 0.0% | 5,142 | 0 | 0.0% |
| Oct-2004 | 659 | 3 | 0.5% | 180,661 | 825 | 0.5% | 53 | 1 | 1.9% | 4,997 | 90 | 1.8% |
| Nov-2004 | 678 | 1 | 0.1% | 188,986 | 275 | 0.1% | 61 | 0 | 0.0% | 5,572 | 0 | 0.0% |
| Dec-2004 | 603 | 0 | 0.0% | 164,165 | 0 | 0.0% | 64 | 0 | 0.0% | 5,867 | 0 | 0.0% |
| Jan-2005 | 607 | 0 | 0.0% | 171,957 | 0 | 0.0% | 37 | 0 | 0.0% | 3,543 | 0 | 0.0% |
| Feb-2005 | 575 | 5 | 0.9% | 159,500 | 1,100 | 0.7% | 54 | 0 | 0.0% | 4,867 | 0 | 0.0% |
| Mar-2005 | 927 | 0 | 0.0% | 240,511 | 0 | 0.0% | 58 | 0 | 0.0% | 5,442 | 0 | 0.0% |
| Apr-2005 | 655 | 0 | 0.0% | 181,158 | 300 | 0.0% | 50 | 0 | 0.0% | 3,013 | 0 | 0.0% |
| May-2005 | 710 | 1 | 0.1% | 198,038 | 0 | 0.2% | 97 | 0 | 0.0% | 6,103 | 0 | 0.0% |
| Jun-2005 | 632 | 0 | 0.0% | 173,892 | 825 | 0.0% | 29 | 0 | 0.0% | 2,642 | 0 | 0.0% |
| Jul-2005 | 596 | 3 | 0.5% | 160,506 | 1,375 | 0.5% | 70 | 0 | 0.0% | 5,247 | 0 | 0.0% |
| Aug-2005 | 1,072 | 6 | 0.6% | 269,372 | 0 | 0.5% | 65 | 0 | 0.0% | 3,263 | 0 | 0.0% |
| Sep-2005 | 795 | 0 | 0.0% | 217,627 | 1,100.00 | 0.0% | 145 | 0 | 0.0% | 8,625 | 0 | 0.0% |
| Oct-2005 | 687 | 4 | 0.6% | 186,315 | 1,100 | 0.6% | 26 | 0 | 0.0% | 2,476 | 0 | 0.0% |
| Nov-2005 | 723 | 5 | 0.7% | 193,255 | 0 | 0.6% | 40 | 0 | 0.0% | 2,838 | 0 | 0.0% |
| Dec-2005 | 507 | 0 | 0.0% | 137,242 | 470 | 0.0% | 80 | 0 | 0.0% | 7,008 | 0 | 0.0% |
| Jan-2006 | 592 | 2 | 0.3% | 159,108 | 570 | 0.3% | 30 | 0 | 0.0% | 3,439 | 0 | 0.0% |
| Feb-2006 | 562 | 2 | 0.4% | 153,675 | 0 | 0.4% | 46 | 0 | 0.0% | 4,201 | 0 | 0.0% |
| Mar-2006 | 593 | 0 | 0.0% | 160,773 | 0 | 0.0% | 52 | 0 | 0.0% | 5,334 | 0 | 0.0% |
| Apr-2006 | 519 | 0 | 0.0% | 142,234 | 275 | 0.0% | 74 | 0 | 0.0% | 7,493 | 0 | 0.0% |
| May-2006 | 554 | 1 | 0.2% | 150,544 | 300 | 0.2% | 49 | 0 | 0.0% | 5,349 | 0 | 0.0% |
| Jun-2006 | 497 | 0 | 0.0% | 134,743 | 0 | 0.0% | 80 | 0 | 0.0% | 7,367 | 0 | 0.0% |
| Jul-2006 | 384 | 0 | 0.0% | 101,285 | 300 | 0.0% | 19 | 0 | 0.0% | 1,933 | 0 | 0.0% |
| Aug-2006 | 805 | 1 | 0.1% | 196,442 | 300 | 0.2% | 72 | 0 | 0.0% | 6,133 | 0 | 0.0% |
| | 19,580 | 52 | 0.3% | 5,343,583 | 13,158 | 0.2% | 2,014 | 2 | 0.1% | 171,329 | 190 | 0.1% |

OMN0000151

```
09/26/2006                              OMNII ORAL PHARMACEUTICALS           7a        PAGE   1
8:40 AM                                    Detail History Report
                                              By Sales Rep ID

        Cust  Rep.    Description      Loc./  Sls. Invoice  Invoice   Quantity  Units            Sales/
        ID    FS IS                    Chk. # Cat. Number   Date                             Check Amount
------------------------------------------------------------------------------------------------------------------
        BE7781 001 001 963100020       GRA001 CH   00457939 03/18/05  200.00000 EACH             39600.00
        BE7781 001 001 963100020       GRA001 CH   00493196 08/01/05  200.00000 EACH             39600.00
        BE7781 001 001 963100020       GRA001 CH   00541746 01/31/06  100.00000 EACH             19800.00
        BE7781 001 001 963100020     _ GRA001 CH   00597857 08/18/06  100.00000 EACH             19800.00

                                                                                               118,800.00
```

Confidential

# EXHIBIT 7

**WATSON** Pharmaceuticals, Inc.

RE ↴ E ↴ ... ↴

OCT ↴ ↴ 2006

Matthew O. Brady
**Intellectual Property Counsel**
LEGAL DEPARTMENT
Telephone: (951) 493-5936
Facsimile: (951) 493-5813
mbrady@watson.com

October 12, 2006

**VIA FEDEX®**

Jay I. Alexander
Milbank, Tweed, Hadley & McCloy LLP
1850 K Street, NW, Suite 1100
Washington, DC 20006

     **RE:**   **AstraZeneca v. Dexcel (D. Del 06-358)**

Dear Jay,

Enclosed please find documents relating to the subpoena Watson Laboratories, Inc. received related to the above-referenced lawsuit. The enclosed documents are confidential and are for counsel for AstraZeneca's sole use in jurisdiction over Dexcel in the state of Delaware.

Additionally, this correspondence shall memorialize our agreement whereby counsel for AstraZeneca agrees not to notice the deposition of any Watson personnel without first requesting additional information/documentation from Watson and counsel for Watson agrees to readily search for and provide any and all information relating to its sale and distribution of Dexcel's Diclofenac sodium product upon AstraZeneca's request.

If you should have any questions or comments regarding the enclosures, please let us know.

          Regards,

          Matthew O. Brady

MOB:dw
cc:   Amy L. Hulina (without enclosures)
Enclosures

311 Bonnie Circle, Corona, CA 92880 ○ Tel: 951/493-5300 ○ Website: www.watsonpharm.com

Indirect Sales by State by Year

| State | Bottles | | | | Dollars | | | |
|---|---|---|---|---|---|---|---|---|
| | 2003 | 2004 | 2005 | 2006 | 2003 | 2004 | 2005 | 2006 |
| AK | | 24 | 118 | 67 | | $1,194 | $5,633 | $2,687 |
| AL | 2 | 25 | 278 | 280 | $98 | $1,193 | $12,505 | $12,471 |
| AR | 1 | 87 | 408 | 431 | $49 | $4,226 | $19,675 | $20,698 |
| AZ | 8 | 138 | 523 | 504 | $392 | $6,555 | $25,326 | $22,452 |
| CA | 18 | 563 | 3,135 | 2,582 | $882 | $27,015 | $142,215 | $112,072 |
| CO | 6 | 160 | 450 | 334 | $294 | $7,796 | $21,563 | $14,517 |
| CT | 4 | 141 | 346 | 406 | $196 | $6,677 | $16,781 | $19,510 |
| DC | | 20 | 92 | 83 | | $1,005 | $4,482 | $3,493 |
| DE | | 14 | 65 | 53 | | $709 | $3,160 | $2,572 |
| FL | 25 | 550 | 2,531 | 2,429 | $1,225 | $26,805 | $114,496 | $109,735 |
| GA | 9 | 563 | 1,732 | 1,475 | $441 | $29,889 | $87,888 | $72,003 |
| GU | | | 7 | 3 | | | $297 | $124 |
| HI | | 46 | 249 | 171 | | $2,172 | $11,393 | $7,372 |
| IA | 19 | 541 | 888 | 718 | $931 | $26,418 | $42,233 | $33,651 |
| ID | 6 | 215 | 399 | 322 | $294 | $10,505 | $18,917 | $14,781 |
| IL | 10 | 400 | 1,536 | 1,188 | $490 | $19,551 | $74,660 | $56,049 |
| IN | 7 | 192 | 716 | 655 | $343 | $9,448 | $34,151 | $30,532 |
| KS | 5 | 223 | 789 | 636 | $245 | $10,981 | $38,055 | $30,299 |
| KY | 4 | 134 | 922 | 881 | $196 | $6,508 | $41,269 | $38,867 |
| LA | 5 | 205 | 515 | 485 | $245 | $10,575 | $26,064 | $24,125 |
| MA | 3 | 108 | 245 | 174 | $147 | $5,263 | $11,751 | $8,263 |
| MD | 10 | 552 | 1,298 | 1,049 | $490 | $27,096 | $62,853 | $46,146 |
| ME | 1 | 23 | 42 | 42 | $49 | $1,183 | $1,947 | $1,955 |
| MI | 29 | 654 | 2,210 | 1,781 | $1,421 | $34,967 | $108,125 | $85,604 |
| MN | 15 | 409 | 664 | 573 | $735 | $19,677 | $32,025 | $27,161 |
| MO | 3 | 223 | 2,410 | 1,875 | $147 | $11,098 | $117,681 | $90,181 |
| MS | 7 | 136 | 526 | 529 | $343 | $6,735 | $23,669 | $23,879 |
| MT | 9 | 104 | 226 | 204 | $441 | $5,042 | $10,827 | $9,433 |
| NC | 13 | 453 | 1,202 | 1,095 | $637 | $23,834 | $58,265 | $50,844 |
| ND | 1 | 73 | 127 | 89 | $49 | $3,820 | $6,457 | $4,508 |
| NE | 14 | 386 | 693 | 475 | $686 | $19,273 | $33,546 | $22,241 |
| NH | | 23 | 36 | 28 | | $1,193 | $1,851 | $1,398 |
| NJ | 4 | 289 | 1,215 | 1,386 | $196 | $14,497 | $57,331 | $64,648 |
| NM | 1 | 25 | 100 | 68 | $49 | $1,214 | $4,584 | $3,017 |
| NV | 2 | 41 | 257 | 257 | $98 | $2,045 | $11,558 | $10,912 |
| NY | 17 | 308 | 937 | 1,053 | $833 | $14,836 | $44,917 | $49,408 |
| OH | 29 | 719 | 2,167 | 1,546 | $1,421 | $35,428 | $102,796 | $72,817 |
| OK | 3 | 275 | 867 | 879 | $147 | $13,347 | $40,571 | $39,625 |
| OR | 9 | 325 | 939 | 893 | $441 | $15,713 | $44,452 | $39,286 |
| PA | 16 | 546 | 1,127 | 937 | $784 | $26,419 | $52,475 | $42,738 |
| PR | | 22 | 531 | 750 | | $1,184 | $26,783 | $37,184 |
| RI | 1 | 28 | 31 | 21 | $49 | $1,288 | $1,479 | $1,005 |
| SC | 2 | 277 | 653 | 654 | $98 | $15,059 | $33,802 | $32,661 |
| SD | | 339 | 80 | 82 | | $16,537 | $3,796 | $3,834 |
| TN | 6 | 285 | 957 | 985 | $294 | $14,636 | $44,183 | $44,259 |
| TX | 18 | 764 | 2,401 | 1,915 | $882 | $37,530 | $113,964 | $87,107 |
| UT | 13 | 292 | 937 | 776 | $637 | $14,321 | $43,536 | $35,516 |
| VA | 25 | 524 | 1,704 | 1,672 | $1,225 | $26,234 | $80,353 | $73,689 |
| VI | | | | 3 | | | | $161 |
| VT | | 48 | 45 | 21 | | $2,487 | $2,271 | $1,025 |
| WA | 37 | 863 | 1,886 | 1,391 | $1,813 | $42,424 | $90,393 | $62,520 |
| WI | 34 | 505 | 959 | 878 | $1,666 | $24,551 | $44,492 | $40,057 |
| WV | 6 | 120 | 521 | 482 | $294 | $5,836 | $23,958 | $21,824 |
| WY | | 5 | 44 | 38 | | $247 | $1,924 | $1,637 |
| Grand Total | 460 | 14,021 | 45,771 | 38,402 | $22,540 | $698,007 | $2,081,702 | $1,770,385 |

WAT0000013

# EXHIBIT 8

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ASTRAZENECA AB, AKTIEBOLAGET HASSLE, KBI-E INC., KBI INC., and ASTRAZENECA LP.<br><br>Plaintiffs,<br><br>v.<br><br>DEXCEL, LTD., DEXXON, LTD., DEXCEL PHARMA TECHNOLOGIES LTD., and DEXCEL PHARMA TECHNOLOGIES,<br><br>Defendants. | Civil Action No. 06-358 (SLR) |

**PLAINTIFF ASTRAZENECA'S RESPONSES TO DEXCEL
PHARMA TECHNOLOGIES LTD.'S FIRST SET OF REQUESTS FOR
<u>ADMISSIONS RELATING TO JURISDICTION AND TRANSFER ISSUES</u>**

Plaintiffs, AstraZeneca AB, Aktiebolaget Hässle, KBI Inc., KBI-E Inc. and

AstraZeneca LP (collectively "AstraZeneca") hereby respond to Defendant Dexcel Pharma

Technologies Ltd.'s ("DPT Ltd.") First Set of Requests for Admissions Relating to Jurisdiction

and Transfer Issues as follows:

<u>**GENERAL OBJECTIONS**</u>

1.      AstraZeneca objects to DPT Ltd.'s definition of "Plaintiffs" to the extent

the definition includes past or present officers, directors, employee, shareholders,

representatives, agents, attorneys and outside consultants.

2.      AstraZeneca objects to each request for admission to the extent that it

seeks information protected by the attorney-client privilege and/or the work product doctrine.  To

the extent that an individual request may be construed as seeking privileged information, AstraZeneca claims that privilege and invokes such protection.

3.    AstraZeneca objects to each and every interrogatory to the extent that it is vague, ambiguous, and unduly burdensome in that it does not clearly define what information is requested or because it is not reasonably limited in scope and time.

4.    Pending entry of a suitable protective order, AstraZeneca objects to each request for admission to the extent it seeks confidential business, scientific and/or technical information, the disclosure of which would result in significant harm to AstraZeneca.

## RESPONSES

### REQUEST NO. 1

Admit that all alleged acts of infringement of the patents in suit by Defendants occurred outside Delaware.

### RESPONSE TO REQUEST NO. 1

Admitted.

### REQUEST NO. 2

Admit that none of Plaintiff's Rule 26(a) Witnesses reside in Delaware.

### RESPONSE TO REQUEST NO. 2

Admitted.

### REQUEST NO. 3

Admit that all of the Defendants in this action are subject to personal jurisdiction in the U.S. District Court for the Eastern District of Virginia in connection with Plaintiff's allegations of infringement of the patents in suit.

2

**RESPONSE TO REQUEST NO. 3**

Admitted.

**REQUEST NO. 4**

Admit that Dexxon Ltd. did not directly infringe the patents in suit.

**RESPONSE TO REQUEST NO. 4**

AstraZeneca objects to this request as premature because discovery is ongoing and has not been completed as to the corporate relationships and overlap in control and ownership, as well as acts of inducement, as among the Defendants. As a result, pending reasonable inquiry, which is ongoing, AstraZeneca is without information sufficient to form a belief as to the truth of the matter asserted and therefore denies the request.

**REQUEST NO. 5**

Admit that Dexcel Ltd. did not directly infringe the patents in suit.

**RESPONSE TO REQUEST NO. 5**

AstraZeneca objects to this request as premature because discovery is ongoing and has not been completed as to the corporate relationships and overlap in control and ownership, as well as acts of inducement, as among the Defendants. As a result, pending reasonable inquiry, which is ongoing, AstraZeneca is without information sufficient to form a belief as to the truth of the matter asserted and therefore denies the request.

**REQUEST NO. 6**

Admit that Dexcel Pharma Technologies is not a legal entity.

3

**RESPONSE TO REQUEST NO. 6**

AstraZeneca objects to this request as premature because discovery is ongoing and has not been completed as to the identity and status of Dexcel Pharma Tehcnologies as alleged by counsel for Defendants. As a result, pending reasonable inquiry, which is ongoing, AstraZeneca is without information sufficient to form a belief as to the truth of the matter asserted and therefore denies the request.

**REQUEST NO. 7**

Admit that Dexcel Pharma Technologies did not directly infringe the patents in suit.

**RESPONSE TO REQUEST NO. 7**

AstraZeneca objects to this request as premature because discovery is ongoing and has not been completed as to the corporate relationships and overlap in control and ownership, as well as acts of inducement, as among the Defendants. As a result, pending reasonable inquiry, which is ongoing, AstraZeneca is without information sufficient to form a belief as to the truth of the matter asserted and therefore denies the request.

**REQUEST NO. 8**

Admit that Dexcel Pharma Technologies did not indirectly infringe the patents in suit.

**RESPONSE TO REQUEST NO. 8**

AstraZeneca objects to this request as premature because discovery is ongoing and has not been completed as to the corporate relationships and overlap in control and ownership, as well as acts of inducement, as among the Defendants. As a result, pending

4

reasonable inquiry, which is ongoing, AstraZeneca is without information sufficient to form a belief as to the truth of the matter asserted and therefore denies the request.

## REQUEST NO. 9

Admit that Defendants' actions relating to the PerioChip, Xantia, Xantia Professional, Diclofena Socium ER, and ISMN ER do not infringe the patents in suit.

## RESPONSE TO REQUEST NO. 9

Admitted.

## REQUEST NO. 10

Admit that Plaintiffs do not allege that Defendants' actions relating to the PerioChip, Xantia, Xantia Professional, Diclofena Socium ER, and ISMN ER infringe the patents in suit.

## RESPONSE TO REQUEST NO. 10

Admitted.

## REQUEST NO. 11

Admit that Plaintiff KBI has no ownership interest in any of the patents in suit.

## RESPONSE TO REQUEST NO. 11

AstraZeneca objects to this request because the term "ownership interest" is vague and undefined in this context. Subject to the foregoing objection, the request is denied.

## REQUEST NO. 12

Admit that Plaintiff KBI has no right to enforce any of the patents in suit.

## RESPONSE TO REQUEST NO. 12

Denied.

**REQUEST NO. 13**

Admit that Plaintiff KBI-E has no ownership interest in any of the patents in suit.

**RESPONSE TO REQUEST NO. 13**

AstraZeneca objects to this request because the term "ownership interest" is vague and undefined in this context. Subject to the foregoing objection, the request is denied.

**REQUEST NO. 14**

Admit that Plaintiff KBI-E has no right to enforce any of the patents in suit.

**RESPONSE TO REQUEST NO. 14**

Denied.

**REQUEST NO. 15**

Admit that Plaintiff KBI is not a holder of New Drug Application Nos. 02-1229 or 01-9810.

**RESPONSE TO REQUEST NO. 15**

AstraZeneca objects to this request because the term "holder" is vague and undefined in this context. Subject to the foregoing objection, the request is denied.

**REQUEST NO. 16**

Admit that Plaintiff KBI-E is not a holder of New Drug Application Nos. 02-1229 or 01-9810.

**RESPONSE TO REQUEST NO. 16**

AstraZeneca objects to this request because the term "holder" is vague and undefined in this context. Subject to the foregoing objection, the request is denied.

**REQUEST NO. 17**

   Admit that each accused infringer in MDL-1291 has sought to manufacture omeprazole in micropellet capsule form.

**RESPONSE TO REQUEST NO. 17**

   AstraZeneca objects to this request as calling for information outside of its possession, custody or control. AstraZeneca further objects to this request as calling for information potentially subject to protective order in *In re Omeprazole Patent Litigation*, MDL No. 1291. As a result, AstraZeneca is without information sufficient to form a belief as to the truth of the matter asserted and therefore the request is denied.

**REQUEST NO. 18**

   Admit that no accused infringer in MDL-1291 has sought to manufacture omeprazole in a tablet form.

**RESPONSE TO REQUEST NO. 18**

   AstraZeneca objects to this request as calling for information outside of its possession, custody or control. AstraZeneca further objects to this request as calling for information potentially subject to protective order in *In re Omeprazole Patent Litigation*, MDL No. 1291. As a result, AstraZeneca is without information sufficient to form a belief as to the truth of the matter asserted and therefore the request is denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
PO Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorneys for Plaintiffs,*
*AstraZeneca AB, Aktiebolaget Hässle, KBI-E, Inc.,*
*KBI Inc., and AstraZeneca LP.*

*Of Counsel*:

Errol B. Taylor
Robert J. Koch
Jay I. Alexander
Enrique D. Longton
MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street, NW
Washington, DC 20006
(202) 835-7520

September 7, 2006

536075

8

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on this 7th day of September, 2006, I caused a true and correct copy of the foregoing PLAINTIFF ASTRAZENECA'S RESPONSES TO DEXCEL PHARMA TECHNOLOGIES LTD'S FIRST SET OF REQUESTS FOR ADMISSIONS RELATING TO JURISDICTION AND TRANSFER ISSUES to be served upon counsel for DPT Ltd. in the following manner:

### BY HAND DELIVERY AND ELECTRONIC MAIL

Richard D. Kirk
Ashley B. Stitzer
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899

### BY FIRST CLASS MAIL AND ELECTRONIC MAIL

Robert F. Green
David M. Airan
Saumil S. Mehta
LEDIG, VOIT & MAYER
Two Prudential Plaza
180 N. Stetson Avenue
Suite 4900
Chicago, IL 60601

Jack B. Blumenfeld

# EXHIBIT 9

# Morris, Nichols, Arsht & Tunnell LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

KAREN JACOBS LOUDEN
(302) 351-9227
(302) 425-4681
klouden@mnat.com

July 7, 2006

By E-Filing

The Honorable Sue L. Robinson
United States District Court
844 King Street
Wilmington, DE 19801

Re:   AstraZeneca AB, et. al v. Dexcel, Ltd. et. al, C.A. No. 06-358 (SLR)

Dear Chief Judge Robinson:

We write on behalf of plaintiffs in furtherance to our June 7, 2006 letter (D.I. 7) to advise the Court that the Judicial Panel On Multidistrict Litigation issued a Conditional Transfer Order on June 26, 2006 (copy attached). The Order transfers this action (as well as the related Virginia action) under 28 U.S.C. §1407 to the United States District Court for the Southern District of New York, for coordinated pre-trial discovery with the remaining actions in the *In Re Omeprazole Patent Litigation*, M-21-81, MDL Docket No. 1291. The transmittal of the Order to the Southern District of New York is stayed for fifteen days to allow any party to file a notice of objection.

Counsel for plaintiffs are available at the Court's convenience should the Court have any questions.

Respectfully,

*/s/ Karen Jacobs Louden*

Karen Jacobs Louden
klouden@mnat.com

/kjl
Enc.
cc:    Peter T. Dalleo, Clerk (By e-filing; w/enc.)
       Robert Koch, Esquire (by telecopy; w/enc.)
       Richard D. Kirk, Esq. (by hand/w/enc.)
527397

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 2 6 2006

FILED
CLERK'S OFFICE

*DOCKET NO. 1291*

*BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

*IN RE OMEPRAZOLE PATENT LITIGATION*

*AstraZeneca AB, et al., v. Dexcel, Ltd., et al.*, D. Delaware, C.A. No. 1:06-358
*AstraZeneca AB, et al. v. Dexcel, Ltd., et al.*, E.D. Virginia, C.A. No. 1:06-634

*CONDITIONAL TRANSFER ORDER (CTO-8)*

On August 12, 1999, the Panel transferred three civil actions to the United States District Court for the Southern District of New York for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Since that time, ten additional actions have been transferred to the Southern District of New York. With the consent of that court, all such actions have been assigned to the Honorable Barbara S. Jones.

It appears that the actions on this conditional transfer order involve questions of fact which are common to the actions previously transferred to the Southern District of New York and assigned to Judge Jones.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Southern District of New York for the reasons stated in the order of August 12, 1999, and, with the consent of that court, assigned to the Honorable Barbara S. Jones.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Southern District of New York. The transmittal of this order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

# EXHIBIT 10

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

ASTRAZENECA AB,
AKTIEBOLAGET HÄSSLE,
KBI-E, INC.,
KBI INC., and
ASTRAZENECA LP,
          *Plaintiffs*,

          v.

DEXCEL, LTD.,
DEXXON, LTD.,
DEXCEL PHARMA TECHNOLOGIES, LTD., and
DEXCEL PHARMA TECHNOLOGIES
          *Defendants.*

Civil Action No. 1:06 cv 634
(CMH/ BRP)

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR STAY OR TRANSFER**

## TABLE OF CONTENTS

Page

I.    BACKGROUND ................................................................................................ 1

II.   ARGUMENT ................................................................................................... 5

      A.    The Court Should Stay This Action ............................................................ 5

            1.    A Stay is Necessary to Avoid Substantial Conflict and Duplication
                  of Effort by the Parties and the Judiciary .............................................. 6

            2.    This Court Should Defer to the First-Filed Delaware Action ................. 8

            3.    A Stay is Necessary to Allow the Delaware Court to Determine
                  That it is an Appropriate Forum ........................................................ 10

            4.    A Stay Will Not Cause Prejudice or Unreasonably Delay
                  Resolution of the Parties' Patent Dispute ........................................... 12

      B.    Alternatively, This Action Should Be Transferred to the District of
            Delaware ............................................................................................... 14

            1.    The Court Should Defer to the First-Filed Delaware Action, Which
                  is in Plaintiffs' Forum of Choice ...................................................... 15

            2.    The Interests of Justice Favor Transfer to Delaware ........................... 15

            3.    The Delaware Court Will Resolve Whether it is an Appropriate
                  Forum ............................................................................................ 18

III.  CONCLUSION ................................................................................................ 18

i

## TABLE OF AUTHORITIES

### CASES

Abbott Labs. v. Mylan Pharm., Inc.,
2006 WL 850916 (N.D. Ill. 2006) .................................................................... 4, 10, 11

Affinity Memory & Micro, Inc. v. K & Q Enterprises, Inc.,
20 F.Supp.2d 948 (E.D. Va. 1998) ...................................................................... 7

Akro Corp. v. Luker,
45 F.3d 1541 (Fed. Cir. 1995).............................................................................. 10

Apotex, Inc. v. Thompson,
347 F.3d 1335 (Fed. Cir. 2003)............................................................................. 3

Aventis Pharma Deutschland GmbH v. Lupin Ltd.,
403 F. Supp. 2d 484 (E.D. Va. 2005) ............................................................... 9, 10

Beverly Hills Fan Co. v. Royal Sovereign Corp.,
21 F.3d 1558 (Fed. Cir. 1994)......................................................................... 3, 10, 11

Cognitronics Imaging Sys., Inc. v. Recognition Research, Inc.,
83 F. Supp. 2d. 689 (E.D. Va. 2000) ................................................................. 13

Collins v. Straight, Inc.,
748 F.2d 916 (4th Cir. 1984) ............................................................................. 15

Commissariat A L'Energie Atomique v.
Chi Mei Optoelectronics Corp.,
395 F.3d 1315 (Fed. Cir. 2005).......................................................................... 12

Eli Lilly & Co. v. Medtronic, Inc.,
496 U.S. 661 (1990).............................................................................................. 3

Ellicott Mach. Corp. v. Modern Welding Co., Inc.,
502 F.2d 178 n.2 (4th Cir. 1974) ...................................................................... 8, 15

Ferens v. John Deere Co.,
494 U.S. 516 (1990).............................................................................................. 14

Genentech, Inc. v. Eli Lilly and Co.,
998 F.2d 931 (Fed. Cir. 1993)............................................................................ 8, 15

GTE Wireless, Inc. v. Qualcomm, Inc.,
71 F. Supp.2d 517 (E.D. Va. 1999) ................................................................. 14, 15

Inline Connection Corp. v. Verizon Internet Servs., Inc.,
402 F. Supp. 2d 695 (E.D. Va. 2005) ............................................................. 13, 17

Katz v. Enterprise Solutions, Inc.,
2005 WL 1871176 (E.D. Va. 2005)..................................................................... 5

Landis v. N. Am. Co.,
  299 U.S. 248 (1936) ................................................................................ 5

Motorola, Inc. v. PC-Tel, Inc.,
  58 F. Supp. 2d 349 (D. Del. 1999) ........................................................ 11

Mullins v. Equifax Information Serv. LLC,
  2006 WL 1214024 (E.D. Va. 2006) ............................................ 15, 16, 18

Original Creatine Patent Co. v. Met-Rx USA, Inc.,
  387 F. Supp. 2d 564 (E.D. Va. 2005) ............................................... 13, 18

Padcom, Inc. v. NetMotion Wireless, Inc.,
  2004 WL 1192641 (D. Del. 2004) ........................................................ 12

Purdue Pharma L.P. v. Impax Labs., Inc.,
  2003 WL 22070549 (S.D.N.Y. 2003) ................................................. 4, 11

Telepharmacy Solutions, Inc. v. Pickpoint Corp.,
  238 F.Supp.2d 741 (E.D. Va. 2003) ................................................... 8, 15

The Christian Broadcasting Network, Inc. v. Busch,
  2006 WL 51190 (E.D. Va. 2006) ........................................... 6, 8, 10, 18

World-Wide Volkswagen Corp. v. Woodson,
  444 U.S. 286 (1980) ............................................................................ 10

Zeneca Ltd. v. Mylan Pharm., Inc.,
  173 F.3d 829 (Fed. Cir. 1999) ............................................................... 3

## STATUTES

28 U.S.C. §1404(a) ................................................................... 5, 14, 18

28 U.S.C. §1407 ............................................................................... 2

35 U.S.C. §271(e)(2) .......................................................................... 2

Del. Code Ann., Tit. 10, §3104(c) ..................................................... 11

## RULES

Fed. R. Civ. P. 16(b) .......................................................................... 5

## OTHER

15 Wright, Miller & Cooper,
  Federal Practice and Procedure: Jurisdiction 2d at §3854 .................... 18

Plaintiffs AstraZeneca[1] move for a stay of this action to enable two other tribunals to determine whether this case should proceed in other courts. The two tribunals to which this Court should defer are: (1) the Judicial Panel on Multidistrict Litigation ("JPML"), which has already issued an order conditionally transferring this case to the United States District Court for the Southern District of New York for coordinated pretrial proceedings, and (2) the United States District Court for the District of Delaware, in which a first-filed parallel action is pending. The Dexcel defendants[2] have challenged the JPML's conditional transfer order to New York and jurisdiction and venue in Delaware. Both of those issues will be decided in the relatively near term. If the JPML determines to make its conditional transfer order final and/or if the Delaware court determines that it is the proper venue for this dispute, any proceedings that occur in this Court would be conflicting, duplicative and unnecessary. To avoid unnecessary duplication of effort and thereby conserve the resources of the parties and the judiciary, this Court should enter a stay at least until both questions are resolved.

Alternatively, if the Court is not inclined to enter a stay, it should transfer venue to the Delaware court in the interests of justice.

## I.    BACKGROUND

This is a patent infringement action brought under the "Hatch-Waxman Act." That Act was intended to balance the interests of innovative pharmaceutical companies that invest the resources necessary to bring new drugs to market, generic pharmaceutical

---

[1] Plaintiffs AstraZeneca AB and Aktiebolaget Hassle are Swedish corporations. Plaintiffs KBI-E, Inc., KBI, Inc. and AstraZeneca LP are Delaware corporations. Collectively, Plaintiffs are referred to herein as "AstraZeneca."

[2] Defendants Dexcel, Ltd., Dexxon, Ltd. and Dexcel Pharma Technologies, Ltd. are Israeli companies. Defendant Dexcel Pharma Technologies is said not to be a separate legal entity. See Exh. 2. Collectively, Defendants are referred to herein as "Dexcel."

manufacturers that make copy cat versions of these drugs, and the public who benefit from the availability of both innovative new drugs and cheaper generics.

In this case, AstraZeneca invented and holds a number of patents to omeprazole, a drug used to treat gastric acid related diseases. Different forms of omeprazole are sold in the United States under the brand names Prilosec® and Prilosec OTC®. Three AstraZeneca patents are in issue in this case.[3] Two of these patents, the '505 and '230 patents, have been involved in 22 other civil actions that were previously consolidated for coordinated pretrial proceedings by the JPML in the United States District Court for the Southern District of New York before the Hon. Barbara S. Jones. In re Omeprazole Patent Litigation, MDL No. 1291. Those cases have involved extensive and complex discovery, including the production of over one million pages of documents, more then one hundred depositions and scores of pretrial motions. On June 26, 2006, the JPML issued an order conditionally transferring this action to New York pursuant to 28 U.S.C. §1407 for coordinated pretrial proceedings because it is a "tag-along" action having common questions of fact with the previous actions. Exh. 1.[4] Dexcel has opposed transfer and the JPML will decide the matter without oral argument when it next convenes on September 28, 2006. Exh. 3.

Dexcel has applied to the United States Food & Drug Administration ("FDA") for approval to market a generic version of omeprazole in the United States. In order to allow the federal district courts to resolve patent disputes over generic drugs, Congress declared it an act of patent infringement to submit an application to the FDA seeking approval to market a generic version of a drug before expiration of the applicable patents. 35 U.S.C. §271(e)(2). The statute

---

[3] The patents-in-suit are United States Patents No. 4,786,505 ("the '505 patent"), No. 4,853,230 ("the '230 patent") and No. 6,150,380 ("the '380 patent").

[4] All exhibits identified herein are attached to the Declaration of Jay I. Alexander in Support of Plaintiffs' Motion for Stay or Transfer, filed herewith in the Appendix of Declarations and Exhibits.

provides a procedure whereby a generic drug maker who seeks such approval must certify in writing to the patent owner that the proposed generic drug would not infringe a valid patent of the owner. If the patent owner initiates a civil action within 45 days of receiving this certification, the FDA may not grant marketing approval for the generic drug for 30 months or until a court issues a final decision holding that the asserted patents are either invalid or not infringed. See generally Apotex, Inc. v. Thompson, 347 F.3d 1335, 1337-39 (Fed. Cir. 2003).

The jurisdiction-creating act of infringement established by Congress has been described as a "highly artificial act" of infringement. Eli Lilly & Co. v. Medtronic, Inc., 496 U.S. 661, 678 (1990). This leads to a number of consequences, not least of which is the ability of a foreign generic drug manufacturer, such as Dexcel, to attempt to manipulate the jurisdiction of the federal courts to force patent infringement suits to be filed in this district to take advantage of its "rocket docket."

In "normal" patent infringement cases, where an infringing product is already being sold, the patent owner ordinarily can initiate legal action wherever an act of actual infringement has occurred. See, e.g., Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1565-67, 1571-72 (Fed. Cir. 1994) (adopting "stream of commerce theory" as Federal Circuit standard for personal jurisdiction in patent cases). However, in Hatch-Waxman cases where no product is being sold, the Federal Circuit has held that the locus of the "artificial act" of infringement (i.e., the place of filing of the application with the FDA) is not a touchstone for jurisdiction or venue. See Zeneca Ltd. v. Mylan Pharm., Inc., 173 F.3d 829 (Fed. Cir. 1999).

Dexcel, a foreign entity, has sought to take advantage of existing jurisdictional doctrine by attempting to require that judicial resolution of patent infringement disputes under Hatch-Waxman take place exclusively in this district simply by establishing an address in

Virginia, which it proclaims to be the only point of "minimum contact" within the United States.[5] However, courts previously have rejected attempts by generic drug makers to manipulate jurisdiction by examining those parties' generalized contacts with the forum of the plaintiff's choosing. These courts have found jurisdiction and venue proper in locations where the generic drug maker has done business in the forum by selling products other than the drug that is the subject of the FDA application. See, e.g., Abbott Labs. v. Mylan Pharm., Inc., 2006 WL 850916 (N.D. Ill. 2006); Purdue Pharma L.P. v. Impax Labs., Inc., 2003 WL 22070549 (S.D.N.Y. 2003).

AstraZeneca filed suit against Dexcel in Delaware—a state in which Dexcel sells a number of products other than the one subject of the FDA application for its generic omeprazole—on May 30, 2006. Exh. 4. AstraZeneca filed this action on May 31, 2006.[6] Exh. 5. Other than certain averments relating to jurisdiction, the two actions are identical. Dexcel has challenged personal jurisdiction and venue in Delaware and moved to transfer that case to this Court. Exh. 6. The Delaware court has indicated that it will allow a limited discovery period after which it will resolve whether jurisdiction and venue are proper in that court. Exh. 7 at p. 2.

---

[5] In its Hatch-Waxman certification letters, Dexcel states that it consents to jurisdiction in this district only for purposes of an infringement action based on its generic omprazole product, and that it maintains an office located in Norfolk, Virginia. Exh. 12 at p. 11; Exh. 13 at p. 4. However, photographs taken of Dexcel's alleged place of business in Norfolk five days after this action was initiated show that the office has all the hallmarks of a sham or "mail drop," including the lack of permanent signage or an entry in the building's lobby directory. Kennedy Declaration at ¶¶ 4-10 and Exhs. 1-10 thereto.

[6] Although the 30-month stay period in the Hatch-Waxman Act is an important aspect of the balance of interests struck by Congress, the courts have yet to clarify whether the stay would remain in effect if a suit filed within the 45-day deadline is dismissed for want of proper jurisdiction or venue and another case re-filed in the proper district after 45 days. The better reading is that filing the initial suit within the 45-day deadline is sufficient to give rise to the stay even if the case must be re-filed. However, courts have recognized that given the present uncertainty, patent owners sometimes may be forced to file parallel suits in different districts to preserve their rights, even though the patent owner does not desire to litigate in both fora and does not seek duplicative relief. Abbott Labs., 2006 WL 850916 at *8 (describing the patent owner as "stuck between a jurisdictional rock and hard place").

AstraZeneca intends that its case against Dexcel should go forward either in coordinated pretrial proceedings in the Southern District of New York as proposed by the JPML or, if not, in Delaware. Delaware is the state of incorporation of three of the AstraZeneca plaintiffs and the site of AstraZeneca LP, which is part of AstraZeneca's United States business that has significant facilities and thousands of employees in Delaware, as well as a substantial presence in that community. Booth-Barbarin Decl. at ¶¶2-6.

The Delaware action is well under way. The Delaware court (Chief Judge Sue L. Robinson) issued a Scheduling Order under Fed. R. Civ. P. 16(b) on August 10, 2006 setting trial for November 5, 2007 and establishing a number of pretrial discovery deadlines. Exh. 7. The parties have now exchanged discovery requests, including requests directed toward the jurisdiction and venue issues raised by Dexcel, and discovery is proceeding apace.

This Court issued an order on August 10, 2006 setting a Rule 16(b) pretrial conference for August 30, 2006 and directing the parties to confer on what would be a conflicting schedule with that set by the Delaware court. Exh. 8. Because proceeding in this, the second-filed action, concurrently with the Delaware and/or New York proceedings would conflict with Plaintiffs' choice of forum and the interests of justice, AstraZeneca moves for a stay of this action or in the alternative, a transfer of venue under 28 U.S.C. §1404(a).

## II.     ARGUMENT

### A.     The Court Should Stay This Action.

This Court may exercise its inherent equitable powers to stay an action "in an effort to 'control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" Katz v. Enterprise Solutions, Inc., 2005 WL 1871176, *2 (E.D. Va. 2005) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)). A stay is warranted as long as the circumstances that justify it outweigh the potential for harm. Id. For example, this

Court recently granted a stay in the second-filed of two parallel actions in order to allow the

court in the first-filed action to determine whether it was the proper venue in which to proceed

because "[i]t is the court in which the first-filed action was brought that should decide[] whether

an exception to the first-filed rule applies." The Christian Broadcasting Network, Inc. v. Busch,

2006 WL 51190, *5 (E.D. Va. 2006).

A similar situation exists here. Dexcel has challenged the Delaware court's

power to proceed in the first-filed action. Dexcel has also challenged the JPML's conditional

transfer order transferring this case and the Delaware case to the Southern District of New York

for coordinated pretrial proceedings. A stay is therefore warranted in this case, and should

remain in effect at least until both of Dexcel's procedural challenges are resolved. If the JPML

makes its conditional transfer order final, this case will be transferred for coordinated

proceedings in the New York court, which will determine an appropriate schedule given its

familiarity with the complexities of this litigation. If the JPML decides not to transfer, the

Delaware court is nonetheless likely to proceed in the first-filed action after resolving Dexcel's

jurisdictional challenge. In either event, if this Court were also to proceed with the case now, it

would set up an irreconcilable conflict in the case schedule and the parties' pretrial obligations.

If it is ultimately decided, however, that the case will not be transferred to New York and the

Delaware action will be transferred here, then this Court can lift the stay and set an appropriate

case schedule.

The pertinent points supporting a stay are discussed in more detail below.

## 1. A Stay is Necessary to Avoid Substantial Conflict and Duplication of Effort by the Parties and the Judiciary.

This Court's August 10, 2006 order setting a Rule 16(b) conference and directing

the parties to confer on a schedule (Exh. 8) creates a significant conflict with the schedule

already established in Delaware and is also certain to conflict with any different schedule that might be set by the Southern District of New York. Most significantly, the putative pretrial conference and discovery deadline dates in this Court vary by several months from the Delaware schedule.

Moreover, this Court's order does not take into account the scheduling views of the Southern District of New York, which has had extensive experience managing pretrial discovery in the omeprazole cases and is thus most familiar with the complex issues that have arisen in managing the 22 previous cases. Discovery in the 22 previous omeprazole cases has been exceedingly complex, involving the production of over one million pages of documents and the taking of more than one hundred depositions. The New York court has made rulings on scores of pretrial motions relating to the admissibility and handling of complex scientific evidence and has established a number of procedures to streamline discovery and thereby avoid unnecessary duplication. See Exh. 9. Congress intended that the multidistrict litigation process implemented by the JPML be used to manage cases where significant efficiencies can be achieved by transfer to another district for coordinated pretrial proceedings.

In the absence of a stay, the parties will be forced to operate under widely disparate schedules and the judiciary will be managing duplicative actions. Nothing in the present circumstances justifies proceeding in such a manner. Only one action should proceed— and that action should be the one of Plaintiffs' choosing. See Affinity Memory & Micro, Inc. v. K & Q Enterprises, Inc., 20 F.Supp.2d 948, 955 (E.D. Va. 1998) ("It is pellucidly clear that two essentially similar federal actions in separate fora should not continue in parallel fashion; only one should go forward.").

## 2.    This Court Should Defer to the First-Filed Delaware Action.

Deference is ordinarily due to the first-filed of parallel actions and to the plaintiff's choice of forum. In this case, AstraZeneca's forum of choice is Delaware, the state of incorporation of the three United States Plaintiff entities: AstraZeneca LP, KBI-E, Inc. and KBI, Inc. Exh. 5 at p.3. For this reason, AstraZeneca chose to file the first action in Delaware. Ordinarily, the forum in which the first-filed of two identical lawsuits is brought is the favored forum in which the case should be adjudicated. See, e.g., Genentech, Inc. v. Eli Lilly and Co., 998 F.2d 931, 937 (Fed. Cir. 1993). "It has long been held in this circuit that, as a principal of sound judicial administration, the first suit should have priority, absent the showing of balance of convenience in favor of the second action." Ellicott Mach. Corp. v. Modern Welding Co., Inc., 502 F.2d 178, 180 n.2 (4th Cir. 1974) (citations omitted). See also, e.g., Christian Broadcasting Network, 2006 WL 51190 at *4 ("The first-filed rule generally gives priority to the first lawsuit filed where there are parallel actions pending in different venues.").

In addition, the plaintiff's choice of forum is entitled to substantial weight as long as a nexus exists between the forum and the cause of action. See, e.g., Telepharmacy Solutions, Inc. v. Pickpoint Corp., 238 F.Supp.2d 741, 743 (E.D. Va. 2003). Such a nexus exists here because Plaintiff AstraZeneca LP, a Delaware corporation, is the entity approved by the FDA to sell Prilosec® and Prilosec OTC® in the United States and is therefore the party who benefits from the exclusive rights conferred by the patents-in-suit.[7] In addition, Plaintiffs KBI Inc. and KBI-E Inc. are Delaware corporations that have beneficial interests under the patents-in-suit. Plaintiffs' choice to proceed in Delaware therefore should be respected absent clear countervailing circumstances.

---

[7] Pursuant to its rights under its approval from the FDA, AstraZeneca LP has licensed The Procter & Gamble Company to market Prilosec OTC® in the United States.

8

Dexcel has alleged in other pleadings that countervailing circumstances are present in this case, relying exclusively on Aventis Pharma Deutschland GmbH v. Lupin Ltd., 403 F. Supp. 2d 484 (E.D. Va. 2005). However, Aventis is readily distinguishable from the present case and therefore is not controlling. In Aventis, the patentee requested that this Court issue a stay in favor of a first-filed case in Maryland. This Court acknowledged that the patentee had "two legitimate options" in the two courts for filing suit. Id. at 490. The Court denied the requested stay, however, because the Maryland court had not taken any action in the case; and in particular had not entered a scheduling order under Rule 16(b) or given any indication that it would soon do so. The "primary concern" voiced by the Aventis court was to avoid unnecessary delay in resolving the controversy between the parties. See Aventis, 403 F. Supp. 2d at 490-91. Because "nothing ha[d] happened in the Maryland case," the Court believed that deference to the Maryland action would unduly delay resolution of the case. The Court thus directed that the parties proceed in Virginia. Id. at 491.

The present case is quite different. Here, the Delaware action has seen substantial activity. The Delaware court has issued a Scheduling Order setting a trial date and several important discovery deadlines. Exh. 7. The parties have exchanged discovery requests and will soon begin the process of exchanging substantive information.

Moreover, unlike the case in Aventis, discovery is likely to be managed in coordinated proceedings after transfer by the JPML to the Southern District of New York, resulting in substantial time and cost-saving efficiencies. Thus, the concern this Court had in Aventis over "justice delayed" by the requested stay, see 403 F. Supp. 2d at 491, is simply not present in this case. Unlike in Aventis, no compelling reason exists for this Court to proceed in

9

this action, especially because to do so would result in significant conflict with the Delaware and New York courts.[8]

### 3.    A Stay is Necessary to Allow the Delaware Court to Determine That it is an Appropriate Forum.

Where two parallel actions exist, the court in the first-filed action should be the first to determine whether it is the proper venue. Christian Broadcasting Network, 2006 WL 51190 at *5. It is appropriate for this Court to enter a stay in order to allow the first-filed court to make that determination. Id. Although Dexcel has raised a challenge on this score, the evidence currently available to AstraZeneca establishes a prima facie case that personal jurisdiction and venue are proper in Delaware. Discovery that is now ongoing in Delaware will put a finer point on the answer to that question. This Court should enter a stay to allow the Delaware court to make a final determination on the issue, which is likely to be resolved in AstraZeneca's favor.

Personal jurisdiction and venue are decided in patent cases as a matter of Federal Circuit law. Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995); Beverly Hills Fan, 21 F.3d at 1564-65. The Federal Circuit has adopted the "stream of commerce" theory of personal jurisdiction under which a defendant is deemed to have "purposeful minimum contacts" with a forum when it purposefully ships its products into the forum through established distribution channels. Beverly Hills Fan, 21 F.3d at 1565-66. Where such sales are not merely isolated incidents but "arise[] from the efforts of defendants to serve, directly or indirectly, the market for its product, it is not unreasonable to subject it to suit" in the forum. Id. at 1566 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). The District of Delaware has

---

[8] The Aventis court also remarked that the plaintiff in that case had not sufficiently explained why the Hatch-Waxman statute required the filing of a duplicative "protective" suit in the first instance. Aventis, 403 F. Supp. 2d at 490. The explanation provided supra at pp. 3-4, which was acknowledged by the Northern District of Illinois in Abbott Labs., 2006 WL 850916 at *8, is intended to provide that explanation to this Court.

acknowledged and applied the rule established by the Federal Circuit in Beverly Hills Fan. See, e.g., Motorola, Inc. v. PC-Tel, Inc., 58 F. Supp. 2d 349, 352-57 (D. Del. 1999).

In Hatch-Waxman cases where the product accused of infringement is not yet on the market, courts have applied the stream of commerce theory to determine whether the defendant's sales of its other products are substantial enough to create minimum contacts under a general jurisdiction theory. See Abbott Labs., 2006 WL 850916 at *3-5 (finding general jurisdiction over defendant generic drug maker because defendant's sales of its other products in Illinois through established distribution channels established that it was "doing business" within the meaning of Illinois long-arm statute); Purdue Pharma, 2003 WL 22070549 at *2- 4 (substantial and continuous "solicitation of business" in New York through sales of generic drug maker defendant's other products created jurisdiction under New York long-arm statute). The existence of intermediate distributors of the products does not nullify these contacts. Abbott Labs., 2006 WL 850916 at *4 ("It is not relevant whether sales went through a distributor before reaching Illinois; general jurisdiction extends to both direct and indirect sales into the forum state.").

Delaware's long-arm statute is similar to the Illinois and New York long-arm statutes applied in Abbott Labs. and Purdue Pharma. Under Del. Code Ann., Tit. 10, §3104(c), a court may exercise jurisdiction over a defendant who "causes injury either inside or outside of [Delaware] . . . by an act or omission outside of [Delaware]" if the defendant "regularly does or solicits business, engages in any other persistent course of conduct in [Delaware], or derives substantial revenue from services or things used or consumed in [Delaware]." See Motorola, 58 F. Supp. 2d at 356. Delaware's long arm statute has been construed "'liberally so as to provide jurisdiction to the maximum extent possible in order 'to provide residents a means of redress

11

against those not subject to personal service within the State.'" <u>Padcom, Inc. v. NetMotion Wireless, Inc.</u>, 2004 WL 1192641, *2 (D. Del. 2004) (quoting <u>Boone v. Oy Partek Ab</u>, 724 A.2d 1150, 1156-57 (Del. Super. 1997)).

Dexcel's web site indicates that it makes at least five products available for purchase and use in the United States. Exh. 14. AstraZeneca believes that discovery in Delaware will reveal that customers regularly purchase and use Dexcel's products in Delaware and that Dexcel derives substantial revenue from these sales. Under similar circumstances, the Federal Circuit has ordered the Delaware court to apply the stream of commerce theory after development of a full record including the opportunity for jurisdictional discovery. <u>Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.</u>, 395 F.3d 1315, 1319-24 (Fed. Cir. 2005). That process is now under way in Delaware. This Court should stay this action to allow that process to play out in Delaware

### 4. A Stay Will Not Cause Prejudice or Unreasonably Delay Resolution of the Parties' Patent Dispute.

Dexcel has previously contended that the earlier trial date contemplated under this Court's unusually compressed procedures will better serve the interests of justice. This argument lacks merit. The Delaware court has set a swift schedule by any ordinary standard. Dexcel's desire for an early determination—a desire shared by AstraZeneca within reasonable bounds—is understandable. However, the reality is that any district court decision is likely to be appealed to the Court of Appeals for the Federal Circuit by one or both parties, and thus a final resolution of this matter will not occur in 2007. Congress understood that final resolution of complex patent disputes in Hatch-Waxman cases takes time, which is why it selected 30 months as the stay period. This is the period over which Congress has presumptively established is reasonable for the public and generic drug manufacturers to wait for resolution of patent disputes. Dexcel has

been selling generic omeprazole outside of the United States for some time. If it wanted to enter the United States market sooner, it could have filed its application with the FDA sooner. Dexcel has no justification for its desire to rush to judgment now.[9]

This case is exceedingly complex. Determination of patent infringement and validity will require complicated scientific testing on proper, representative samples of Dexcel's finished product and the bulk omeprazole material used to make that product. See Exh. 9. The parties are only beginning to identify the proper samples that need to be tested and the tests that need to be performed. Moreover, because Dexcel is an Israeli company, issues relating to foreign discovery are likely to arise. In addition, Dexcel has identified Cipla, Ltd., an Indian corporation, as its supplier of bulk omeprazole. Material supplied by Cipla will need to be obtained for testing in order to determine the infringement and validity issues involving the '380 patent-in-suit. The discovery of Israeli and Indian entities is likely to be time consuming.

Given the foreign discovery required in this case, as well as the complexity of the scientific evidence that will be adduced in this case, the schedule established in Delaware will more realistically allow a fair and accurate determination on the merits. Furthermore, the Southern District of New York is likely to handle pretrial discovery matters with a minimum of duplication and inefficiency, in light of its previous experience with the omeprazole cases.

In light of the considerations outlined above, the most efficient course of action is for this Court to stay this action in favor of the Delaware case and what are likely to be the New

---

[9] Furthermore, this Court has consistently stated that it will not allow relative docket conditions as between this Court and another district to govern whether a case should proceed in this district. See, e.g., Inline Connection Corp. v. Verizon Internet Servs., 402 F. Supp. 2d 695, 702 (E.D. Va. 2005) (docket conditions "cannot be a primary factor for retaining a case in this district"); Original Creatine Patent Co. v. Met-Rx USA, Inc., 387 F. Supp. 2d 564, 572 (E.D. Va. 2005) ("[W]hen docket conditions are the primary reason a party has initiated an action in this court, as may be the situation in the instant case, the interest of justice is not served [by proceeding in this district].") (citing Cognitronics Imaging Sys., Inc. v. Recognition Research, Inc., 83 F. Supp. 2d. 689, 699 (E.D. Va. 2000)).

York MDL proceedings. The stay that AstraZeneca requests need not be indefinite. The stay should last, however, at least until such time as it is determined that (1) the Delaware court will reject Dexcel's challenge to jurisdiction and venue in the first-filed action and (2) the JPML will make final its order transferring both actions to the Southern District of New York for coordinated discovery. Waiting until these determinations are made by the JPML and the Delaware court will promote judicial economy and avoid unnecessary duplication of effort. If it is ultimately determined that the case will not proceed in either New York or Delaware, this Court could then lift the stay and set an appropriate schedule.

**B.    Alternatively, This Action Should Be Transferred to the District of Delaware.**

If the Court is not inclined to grant a stay, it should transfer venue under 28 U.S.C. §1404(a) to Delaware. The Delaware action is the first-filed action and the Plaintiffs' choice of forum. The interests of justice strongly favor transfer. Moreover, as discussed above, Delaware is a proper forum in which to litigate the present dispute and, in any event, will be resolving the questions that Dexcel has raised on that issue in relatively short order.

A plaintiff, as well as a defendant, may move to transfer under Section 1404(a). See generally Ferens v. John Deere Co., 494 U.S. 516 (1990). In considering a motion to transfer under Section 1404(a), the Court considers factors including "plaintiff's choice of venue, which is entitled to substantial weight; convenience of the parties and witnesses; and, the interests of justice, which is intended to encompass all those factors unrelated to witness and party convenience." GTE Wireless, Inc. v. Qualcomm, Inc., 71 F. Supp.2d 517, 519 (E.D. Va. 1999).

14

1.    **The Court Should Defer to the First-Filed Delaware Action, Which is in Plaintiffs' Forum of Choice.**

In considering motions to transfer, "[t]he plaintiff's choice of forum is entitled to substantial weight, and should be abandoned only if the defendant can show that it is clearly outweighed by other factors." GTE Wireless, 71 F. Supp. 2d at 519; Telepharmacy Solutions, 238 F. Supp. 2d at 743; Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984). Moreover, as discussed above, where two parallel actions have been filed, the first-filed action is ordinarily the action that should proceed. Genentech, 998 F.2d at 937; Ellicott Mach. Corp., 502 F.2d at 180 n.2.

In this case, the three United States-based AstraZeneca plaintiffs are Delaware corporations. AstraZeneca LP, the party that holds the right to market Prilosec® and Prilosec OTC® in the United States, has a substantial presence in Delaware in terms of facilities, employees and community ties. Booth-Barbarin Decl. at ¶¶2-6. Thus, a significant nexus exists between the Plaintiffs and their choice of forum. This Court should therefore defer to that choice.

2.    **The Interests of Justice Favor Transfer to Delaware.**

The interest of justice factors generally include, inter alia, the pendency of a related action, the court's familiarity with the applicable law, and the possibility of unfair trial. GTE Wireless, 71 F. Supp. 2d at 519 (internal quotations omitted). Additional considerations include the relative interests of the two fora in deciding controversies with local impact, Telepharmacy Solutions, 238 F. Supp. 2d at 743 (interests of justice include "interest in having local controversies decided at home"); Mullins v. Equifax Information Serv. LLC, 2006 WL 1214024, *8 (E.D. Va. 2006); GTE Wireless, 71 F Supp. 2d at 519, and the presence of forum shopping as a motivation for selecting this district. See Telepharmacy Solutions, 238 F. Supp.

15

2d at 744 ("The interests of justice are not served by . . . blatant forum shopping."); <u>Mullins,</u>

2006 WL 1214024, at *8 (Interest of justice factors such as "systematic integrity [and fairness]

must also necessarily take account of a party's attempt to game the federal courts through forum

manipulation.").

                In this case, Dexcel is the party engaged in "forum manipulation" by establishing

what appears to be a recent and perhaps transient office in Norfolk, Virginia for no apparent

reason other than to create jurisdiction in this district for any Hatch-Waxman suit that

AstraZeneca might bring. Dexcel's Hatch-Waxman letters make crystal clear its intention that it

be sued only in this district. Exh. 12 at p.11; Exh. 13 at p. 4. Two of the three defendants that

Dexcel admits are corporate entities are Israeli companies having the same address in Or-Akiva,

Israel. The third entity has a post office box address in Jersualem, Israel. Exh. 10. An analysis

of the website maintained by Dexcel (at www.dexcel.com) shows that Dexcel's Norfolk location

was established in approximately April 2006. Exh. 11. This was at the very same time that

Dexcel sent the required Hatch-Waxman letters to AstraZeneca certifying that, in its view, it did

not infringe any valid omeprazole patent held by AstraZeneca and stating that it consented to suit

in this district. Exhs. 12 and 13. However, photographs taken of the Norfolk site in early June,

five days after this action was filed, show that the "place of business" that Dexcel says gives rise

to jurisdiction in this district is comprised of a one-room office that had no permanent signage

and no listing in the building's lobby directory. Kennedy Decl. ¶¶ 4-10 and Exhs. 1-10 thereto.

                AstraZeneca, in contrast, has a substantial and long-standing connection to

Delaware. AstraZeneca conducts research, quality assurance, sales and operations management

and administration, regulatory, marketing, corporate executive, legal, finance, and other

administrative activities in buildings occupying more than two million square feet on a 163-acre

campus in Wilmington, Delaware that has been in operation since 1971. AstraZeneca also has a 145-acre pharmaceutical manufacturing and packaging facility in Newark, Delaware. Booth-Barbarin Decl. ¶3. AstraZeneca employs approximately 4,770 employees at these sites, making it the 5th largest private employer in the State of Delaware and the 7th largest employer overall in the state. Id. at ¶4. In addition, AstraZeneca contributes substantially to the local community by contributing funds to more than 130 non-profit organizations in the Wilmington, Delaware area and has received awards for its support of National Guard and Reserve units in Delaware. Id. at ¶¶5-6.

Given Dexcel's short-lived and perhaps transitory presence in Virginia as compared with AstraZeneca's long-standing and substantial presence in Delaware, the Delaware court, not the Virginia court, clearly has the greater interest in the outcome of this matter. That outcome may affect AstraZeneca's ability to derive revenue from its exclusive rights in omeprazole which, in turn, may affect AstraZeneca's ability to continue to invest resources in Delaware. This interest of justice factor therefore counsels strongly in favor of deference to the Delaware action.

The interests of justice also strongly counsels in favor of transfer where, as here, a first-filed parallel action exists in the transferee district that is more advanced. See, e.g., Inline Connection, 402 F. Supp. 2d at 702-03 (transferring patent infringement claims to Delaware where parallel claims were already pending in a more advanced lawsuit). The Delaware action is more advanced because a scheduling order setting trial and discovery deadlines has already been entered and the parties have already exchanged discovery requests. This factor therefore also strongly favors transfer.

17

Finally, although there do not appear to be significant differences in the conveniences of the parties and witnesses as between Delaware and Virginia, it is well-settled that the interests of justice factors may be dispositive even if the convenience of the witnesses and parties do not indicate transfer. <u>Mullins</u>, 2006 WL 1214024, at *5 (citing 15 Wright, Miller & Cooper, <u>Federal Practice and Procedure: Jurisdiction 2d</u> at §3854). In this case, the interest of justice factors outlined above militate strongly in favor of transfer.

### 3. The Delaware Court Will Resolve Whether it is an Appropriate Forum.

Transfer to Delaware would not be appropriate unless the Delaware court is a forum in which the action could originally have been brought. <u>Original Creatine</u>, 387 F. Supp. 2d at 566-67. For the reasons discussed above, that determination is likely to be made in AstraZeneca's favor. It would be more efficient simply to stay this action to allow Delaware to finally resolve the issue, as this Court did recently in <u>Christian Broadcasting Network,</u> 2006 WL 51190 at *5. However, if the Court is not inclined to enter a stay until the Delaware court makes a decision in this regard, it would be appropriate to enter a transfer to Delaware.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court stay the present action at least until (1) the Delaware court decides whether it will exercise jurisdiction in the first-filed action and (2) the JPML decides whether to make final its conditional order transferring this case and the Delaware case to the Southern District of New York for coordinated discovery. Alternatively, Plaintiffs request that the Court transfer this action to Delaware under 28 U.S.C. §1404(a).

18

Dated: August 18, 2006

MILBANK, TWEED, HADLEY
& McCLOY LLP

Robert J. Koch (VSB 13676)
Jay I. Alexander
Enrique D. Longton
1850 K Street NW
Washington, DC 20006
(202) 835-7500

*Attorneys for Plaintiffs*
ASTRAZENECA AB,
AKTIEBOLAGET HÄSSLE,
KBI-E, INC., KBI INC., and
ASTRAZENECA LP

*Of Counsel:*
Errol B. Taylor
MILBANK, TWEED, HADLEY
& McCLOY LLP
1 Chase Manhattan Plaza
New York, New York  10005-1413
(212) 530-5000

## CERTIFICATE OF SERVICE

This is to certify that on this 18th day of August 2006, I caused a true and correct copy of the foregoing **PLAINTIFFS' MOTION FOR STAY OR TRANSFER, MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR STAY OR TRANSFER,** and **APPENDIX OF DECLARATIONS AND EXHIBITS IN SUPPORT OF PLAINTIFFS' MOTION FOR STAY OR TRANSFER** to be served by upon counsel for defendants as follows:

**Via Hand Delivery and Electronic Mail**
Jeremy M. Jay
LEYDIG, VOIT & MAYER, LTD
700 Thirteenth Street, Suite 300
Washington, D.C. 20005-3960

**Via UPS and Electronic Mail**
Paul A. Driscoll
Richard H. Matthews
PENDER & COWARD, P.C.
222 Central Park Avenue, Suite 400
Virginia Beach, VA 23462

Robert F. Green
David M. Airan
Saumil Mehta
LEYDIG, VOIT & MAYER, LTD.
180 North Stetson
Two Prudential Plaza, Suite 4900
Chicago, IL 60601

*Counsel for Defendant*

Jay I. Alexander

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on November 30, 2006, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Jack B. Blumenfeld, Esq.
Karen Jacobs Louden, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19801


The undersigned counsel further certifies that, on November 30, 2006, copies of

the foregoing document were sent by email to the above local counsel and by email to the

following non-registered participant:

Errol B. Taylor, Esq.
Robert J. Koch, Esq.
Jay I. Alexander, Esq.
Enrique D. Longton, Esq.
Milbank, Tweed, Hadley & McCloy LLP
1850 K Street NW
Washington, DC 20006


The undersigned counsel further certifies that, on December 1, 2006, copies of the

foregoing document will be sent to the above local counsel by hand and above non-

registered participant by Federal Express.


/s/ Richard D. Kirk (rk0922)
Richard D. Kirk

22

644693-1