IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ASTRAZENECA AB, AKTIEBOLAGET HÄSSLE, KBI-E, INC., KBI, INC. and ASTRAZENECA LP,<br><br>    Plaintiffs,<br>v.<br><br>DEXCEL, LTD., DEXXON, LTD., DEXCEL PHARMA TECHNOLOGIES, LTD. and DEXCEL PHARMA TECHNOLOGIES LTD,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 06-358 (SLR)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**NOTICE OF FED.R.CIV.P. 30(b)(6) DEPOSITION *DUCES TECUM*
AND FED.R.CIV.P. 45 SERVICE OF SUBPOENA
(MERCK & CO., INC.)**

TO:

Jack B. Blumenfeld, Esquire
Karen Jacobs Louden, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899

Errol B. Taylor, Esquire
Robert J. Koch, Esquire
Jay I. Alexander, Esquire
Milbank, Tweed, Hadley & McCloy L.L.P.
1825 Eye Street, NW,  Suite 1100
Washington, DC  20006

  PLEASE TAKE NOTICE that defendant Dexcel Pharma Technologies, Ltd. will take the deposition *duces tecum* of Merck & Co., Inc. ("Merck") pursuant to Fed. R. Civ. P. 30(b)(6), on March 9, 2007 at 10:00 a.m.  The deposition will take place at the offices of The Bayard Firm, 222 Delaware Avenue, Suite 900, Wilmington, Delaware 19801.  The deposition will be videotaped and taken before a notary public or court reporter, duly authorized to administer oaths and transcribe the testimony of the deponent(s) and may use technology that permits the real time display of the deposition transcript for attendees who bring a compatible computer.  The deposition may continue from day to day until completed if authorized by the Court or stipulated by the parties.

      PLEASE ALSO TAKE NOTICE that defendant is serving Merck with a subpoena (the "Subpoena"), a copy of which is attached hereto. The subjects covered in the deposition will include (but are not limited to) the subjects listed on Attachment A to the Subpoena. Pursuant to Fed. R. Civ. P. 30(b)(6), Merck is required to designate one or more persons to testify at the deposition as to the matters known or reasonably available to Merck concerning all topics listed in Attachment A to the Subpoena. In addition, the Subpoena requires Merck to produce by March 7, 2007 the documents listed in Attachment B to the Subpoena.

      You are invited to attend and cross examine.

February 21, 2007

THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk (#922)
Ashley B. Stitzer (#3891)
222 Delaware Avenue, Suite 900
Wilmington, DE 19899-5130
(302) 655-5000
Counsel for Defendants

OF COUNSEL:
Robert F. Green, Esquire
David M. Airan, Esquire
Saumil S. Mehta, Esquire
Leydig, Voit & Mayer
Two Prudential Plaza
180 N. Stetson Avenue, Suite 4900
Chicago, IL 60601
(312) 616-5000

Edgar H. Haug, Esquire
Dillon Kim, Esquire
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151
(212) 588-0800

Michael F. Brockmeyer, Esquire
Elizabeth A. Leff, Esquire
Frommer Lawrence & Haug LLP
1667 K Street, NW
Washington, D.C. 20006
(202) 292-1530

Issued by the
# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ASTRAZENECA AB, <br> AKTIEBOLAGET HÄSSLE, <br> KBI-E, INC., KBI INC., and <br> ASTRAZENECA LP, <br>                    Plaintiffs, <br>    v. <br><br> DEXCEL LTD., DEXXON LTD., <br> DEXCEL PHARMA TECHNOLOGIES <br> LTD., and CIPLA, LTD., <br>                    Defendants. | SUBPOENA IN A CIVIL CASE <br><br> Case Number: 06-358-SLR |

TO:    Merck & Co., Inc.
          c/o The Corporation Trust Company
          1209 Orange Street
          Wilmington, DE 19801

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. **Pursuant to Fed.R.Civ.P. 30(b)(6), you must designate a witness or witnesses to testify on the subjects set forth in Schedule A attached hereto.**

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| The Bayard Firm <br> 222 Delaware Avenue, Suite 900 <br> Wilmington, DE 19801 | March 9, 2007, 10:00 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of **the documents listed or described in Schedule B attached hereto** at the place, date, and time specified below.

| PLACE OF PRODUCTION | DATE AND TIME |
|---|---|
| The Bayard Firm <br> 222 Delaware Avenue, Suite 900 <br> Wilmington, DE 19801 | March 7, 2007, 10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) <br> /s/ Richard D. Kirk <br> ATTORNEY FOR DEFENDANT DEXCEL PHARMA TECHNOLOGIES, LTD. | DATE <br> February 21, 2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Richard D. Kirk, The Bayard Firm
222 Delaware Avenue, P. O. Box 25130, Wilmington, DE 19899-5130,
(302)429-4208

| PROOF OF SERVICE | | |
|---|---|---|
| **SERVED** | DATE | PLACE |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

**DECLARATION OF SERVER**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                 DATE

_____
SIGNATURE OF SERVER

_____

_____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)  A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing under burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issues shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)  A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless command to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copying the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issues. If objection has been made, the part serving the subpoena may, upon notice of the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a part or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issues shall quash or modify the subpoena if it

(i)  fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transactions business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the part in whose behalf the subpoena is issues shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assurances that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1)  A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspondence with the categories in demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

652323-1

2

# SCHEDULE A

## DEFINITIONS

A. "Plaintiffs" means Plaintiffs, ASTRAZENECA AB, AKTIEBOLAGET HÄSSLE, KBI-E, INC., KBI, INC. and ASTRAZENECA LP, their past or present officers, directors, employees, shareholders, representatives, agents, attorneys and outside consultants, as well as any past or present predecessors, successors, parents, subsidiaries, or affiliates thereof, whether domestic or foreign, whether owned in whole or in part.

B. "Merck" means Merck and Co., Inc. and its past or present officers, directors, employees, shareholders, representatives, agents, attorneys and outside consultants, as well as any past or present predecessors, successors, parents, subsidiaries, or affiliates thereof, whether domestic or foreign, whether owned in whole or in part.

C. "AAIPharma" means AAIPharma Inc. and its past or present officers, directors, employees, shareholders, representatives, agents, attorneys and outside consultants, as well as any past or present predecessors, successors, parents, subsidiaries, or affiliates thereof, whether domestic or foreign, whether owned in whole or in part.

D. "the '380 patent" means U.S. Patent No. 6,150,380.

E. "omeprazole Form A" means a form of omeprazole as defined by claim 1 of the '380 patent.

F. "omeprazole Form B" means a form of omeprazole as described in Col. 1 of the '380 patent.

## DEPOSITION TOPICS

1. All documents produced in response to Document Request Nos. 1-32 in Schedule B attached hereto.

652317-1

2. The identity of each lot of Prilosec™ sold or offered for sale in the United States prior to November 10, 1997.

3. The identity of each lot of omeprazole used to make any Prilosec™ sold or offered for sale in the United States prior to November 10, 1997.

4. The Raman spectra for each lot of omeprazole used to make any Prilosec™ sold or offered for sale in the United States prior to November 10, 1997.

5. The x-ray crystal or powder diffraction data, including but not limited to raw electronic data, diffractograms, and single crystal structures, for each lot of omeprazole used to make any Prilosec™ sold or offered for sale in the United States prior to November 10, 1997.

6. The documents evidencing, referring or otherwise relating to any product or composition containing omeprazole Form A sold or offered for sale in the United States prior to November 10, 1997.

7. The documents evidencing, referring or otherwise relating to any product or composition made from omeprazole containing omeprazole Form A sold or offered for sale in the United States prior to November 10, 1997.

8. The analyses undertaken and intended to determine the presence of omeprazole Form A alone or together with omeprazole Form B in any omeprazole product or composition sold or offered for sale in the United States prior to November 10, 1997.

9. All manufactures or attempts to manufacture omeprazole by a process comprising the steps of (a) dissolving or suspending omeprazole of any form, or a mixture of omeprazole of any form, in a suitable solvent at 15-25° C and (b) allowing the solution to crystallize for at least 2 hours as defined by the '380 patent.

10. The correlation of or attempts by Merck to correlate the presence of 6-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole, or the ratio of 6-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole to 5-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole, with Raman spectra or x-ray crystal or powder diffraction data, including but not limited to raw electronic data, diffractograms, and single crystal structures.

11. All communications referring or otherwise relating to the '380 patent, including but not limited to communications sent by or to Plaintiffs, Merck, and/or AAIPharma.

12. All communications referring or otherwise relating to omeprazole Form A or omeprazole Form B, including but not limited to communications sent by or to Plaintiffs, Merck, and/or AAIPharma.

13. All communications referring or otherwise relating to the analytical characterization of omeprazole Form A and omeprazole Form B, including but not limited to communications sent by or to Plaintiffs, Merck, and/or AAIPharma.

14. All communications referring or otherwise relating to WO 01/13919, U.S. Patents Nos. 6,262,085, 6,262,086, 6,268,385, 6,312,712, 6,312,723, 6,316,020, 6,326,384, 6,369,087, 6,444,689, 6,608,091, 6,653,329, 6,667,321, 6,667,323, 6,667,324, 6,673,936, 6,706,737, 6,780,880, as well as any of the applications upon which they are based, and U.S. Patent Application No. 10/651,225, including but not limited to communications sent by or to Plaintiffs, Merck, and/or AAIPharma.

15. All communications referring or otherwise relating to 6-methoxy-2-{[(4-methoxy-3,5-dimethyl(2-pyridyl))methyl]sulfinyl} benzimidazole in pure form in a solid state, or

pharmaceutically acceptable salts, hydrates, or combinations thereof, including but not limited to communications sent by or to Plaintiffs, Merck, and/or AAIPharma.

16. All communications referring or otherwise relating to a pharmaceutical formulation comprising as active ingredient a non-toxic amount of a composition of 6-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole and, optionally, 5-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole or one or more pharmaceutically acceptable salts, solvates, hydrates, or combinations thereof, and at least one pharmaceutically acceptable carrier, diluent, or excipient, wherein the ratio of said 6-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benz imidazole and 5-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benz imidazole in said composition is essentially the same as the ratio of said 6-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benz imidazole and 5-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benz imidazole in the active pharmaceutical ingredient used in said pharmaceutical formulation, including but not limited to communications sent by or to Plaintiffs, Merck, and/or AAIPharma.

17. All communications referring or otherwise relating to a dry blend pharmaceutical formulation in unit dosage form comprising per dosage unit an amount of active pharmaceutical ingredient within the range of about 5 mg to about 60 mg of 6-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole, or one or more pharmaceutically acceptable salts, solvates, hydrates, or combinations thereof, in pure form, and at least one pharmaceutically acceptable carrier, diluent, or excipient, wherein said 6-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benz imidazole in said pharmaceutical formulation remains pure or is essentially free of 5-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-

pyridinyl)methyl]sulfinyl]-1H-benzimidazole, said pharmaceutical formulation in unit dosage form being adapted for oral administration in the form of a capsule or tablet, including but not limited to communications sent by or to Plaintiffs, Merck, and/or AAIPharma.

18.    All communications referring or otherwise relating to an omeprazole API composition fixed with a ratio of 5-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benz imidazole and 6-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benz imidazole, including but not limited to communications sent by or to Plaintiffs, Merck, and/or AAIPharma.   The nature and identity of analyses undertaken by AAIPharma and intended to determine the presence of 6-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole alone or together with 5-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole in any omeprazole product or composition sold or offered for sale in the United States prior to November 10, 1997.

# SCHEDULE B

## DEFINITIONS

A.      "Plaintiffs" means Plaintiffs, ASTRAZENECA AB, AKTIEBOLAGET HÄSSLE, KBI-E, INC., KBI, INC. and ASTRAZENECA LP, their past or present officers, directors, employees, shareholders, representatives, agents, attorneys and outside consultants, as well as any past or present predecessors, successors, parents, subsidiaries, or affiliates thereof, whether domestic or foreign, whether owned in whole or in part.

B.      "Merck" means Merck and Co., Inc. and its past or present officers, directors, employees, shareholders, representatives, agents, attorneys and outside consultants, as well as any past or present predecessors, successors, parents, subsidiaries, or affiliates thereof, whether domestic or foreign, whether owned in whole or in part.

C.      "AAIPharma" means AAIPharma Inc., AAIPharma LLC and their past or present officers, directors, employees, shareholders, representatives, agents, attorneys and outside consultants, as well as any past or present predecessors, successors, parents, subsidiaries, or affiliates thereof, whether domestic or foreign, whether owned in whole or in part.

D.      "the '380 patent" means U.S. Patent No. 6,150,380.

E.      "omeprazole Form A" means a form of omeprazole as defined by claim 1 of the '380 patent.

F.      "omeprazole Form B" means a form of omeprazole as described in Col. 1 of the '380 patent.

## DOCUMENT REQUESTS

1.      Samples of each lot of Prilosec™ sold or offered for sale in the United States prior to November 10, 1997.

652317-1

2. For each year starting with 1983 and ending in to 2007, a sample taken from a lot of omeprazole used to make Prilosec™ tablets in that year.

3. Representative samples of each lot of omeprazole containing 94% or more 6-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole used to make any Prilosec™ sold or offered for sale in the United States prior to November 10, 1997.

4. All Raman spectra for each sample requested above in Requests 1-3.

5. All x-ray crystal or powder diffraction data, including but not limited to raw electronic data, diffractograms, and single crystal structures, for each sample requested above in Requests 1-3.

6. All documents evidencing, referring or otherwise relating to any product or composition containing omeprazole Form A sold or offered for sale in the United States prior to November 10, 1997.

7. All documents evidencing, referring or otherwise relating to any product or composition made from omeprazole containing omeprazole Form A sold or offered for sale in the United States prior to November 10, 1997.

8. All documents, notebook records, Infrared data, Raman data, x-ray crystal or powder diffraction data, or other analytical or spectroscopic data evidencing, referring or otherwise relating to the '380 patent.

9. All documents, notebook records, Infrared data, Raman data, x-ray crystal or powder diffraction data, or other analytical or spectroscopic data evidencing, referring or otherwise relating to Examples 1, 2, and 3 of the '380 patent.

10. All documents evidencing, referring or otherwise relating to any product or composition comprising omeprazole containing 94% or more 6-methoxy-2-[[4-methoxy-3,5-

dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole sold or offered for sale in the United States prior to November 10, 1997.

11.     All documents evidencing, referring or otherwise relating to any analyses undertaken to determine the presence of omeprazole Form A alone or together with omeprazole Form B in any omeprazole product or composition sold or offered for sale in the United States prior to November 10, 1997.

12.     All documents evidencing, referring or otherwise relating to any analyses undertaken to determine the presence of 6-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole alone or together with 5-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole in any omeprazole product or composition sold or offered for sale in the United States prior to November 10, 1997.

13.     All documents evidencing, referring or otherwise relating to any product or composition containing omeprazole sold or offered for sale in the United States prior to November 10, 1997, wherein the omeprazole was prepared by a process comprising the steps of (a) dissolving or suspending omeprazole of any form, or a mixture of omeprazole of any form, in a suitable solvent at 15-25° C and (b) allowing the solution to crystallize for at least 2 hours as defined by the '380 patent.

14.     All documents evidencing, referring or otherwise relating to tautomerization of omeprazole, including but not limited to identification, characterization, purification, or isolation of 6-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole.

15.     All communications referring or otherwise relating to the '380 patent, including but not limited to communications sent by or to Plaintiffs, Merck, and/or AAIPharma.

16. All communications referring or otherwise relating to omeprazole Form A or omeprazole Form B, including but not limited to communications sent by or to Plaintiffs, Merck, and/or AAIPharma.

17. All communications referring or otherwise relating to the analytical characterization of omeprazole Form A and omeprazole Form B, including but not limited to communications sent by or to Plaintiffs, Merck, and/or AAIPharma.

18. All communications referring or otherwise relating to WO 01/13919, U.S. Patents Nos. 6,262,085, 6,262,086, 6,268,385, 6,312,712, 6,312,723, 6,316,020, 6,326,384, 6,369,087, 6,444,689, 6,608,091, 6,653,329, 6,667,321, 6,667,323, 6,667,324, 6,673,936, 6,706,737, 6,780,880, as well as any of the applications upon which they are based, and U.S. Patent Application No. 10/651,225, including but not limited to communications sent by or to Plaintiffs, Merck, and/or AAIPharma.

19. All communications referring or otherwise relating to 6-methoxy-2-{[(4-methoxy-3,5-dimethyl(2-pyridyl))methyl]sulfinyl} benzimidazole in pure form in a solid state, or pharmaceutically acceptable salts, hydrates, or combinations thereof, including but not limited to communications sent by or to Plaintiffs, Merck, and/or AAIPharma.

20. All communications referring or otherwise relating to a pharmaceutical formulation comprising as active ingredient a non-toxic amount of a composition of 6-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole and, optionally, 5-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole or one or more pharmaceutically acceptable salts, solvates, hydrates, or combinations thereof, and at least one pharmaceutically acceptable carrier, diluent, or excipient, wherein the ratio of said 6-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benz imidazole and 5-

methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benz imidazole in said composition is essentially the same as the ratio of said 6-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benz imidazole and 5-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benz imidazole in the active pharmaceutical ingredient used in said pharmaceutical formulation, including but not limited to communications sent by or to Plaintiffs, Merck, and/or AAIPharma.

  21. All communications referring or otherwise relating to a dry blend pharmaceutical formulation in unit dosage form comprising per dosage unit an amount of active pharmaceutical ingredient within the range of about 5 mg to about 60 mg of 6-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole, or one or more pharmaceutically acceptable salts, solvates, hydrates, or combinations thereof, in pure form, and at least one pharmaceutically acceptable carrier, diluent, or excipient, wherein said 6-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benz imidazole in said pharmaceutical formulation remains pure or is essentially free of 5-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole, said pharmaceutical formulation in unit dosage form being adapted for oral administration in the form of a capsule or tablet, including but not limited to communications sent by or to Plaintiffs, Merck, and/or AAIPharma.

  22. All communications referring or otherwise relating to an omeprazole API composition fixed with a ratio of 5-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benz imidazole and 6-methoxy-2-[[(4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benz imidazole, including but not limited to communications sent by or to Plaintiffs, Merck, and/or AAIPharma.

23. Representative samples of omeprazole Form A, including documents sufficient to establish the chain of custody of said omeprazole Form A.

24. Representative samples of omeprazole Form B, including documents sufficient to establish the chain of custody of said omeprazole Form B.

25. Representative samples of 6-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole, including documents sufficient to establish the chain of custody of 6-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole from the date of manufacture to the date of production; also including documents detailing the proper conditions for storage and transportation of said 6-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole and documents certifying that said 6-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole was stored and transported under said proper conditions from the date of manufacture to the date of production.

26. Representative samples of 5-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole, including documents sufficient to establish the chain of custody of said 5-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole from the date of manufacture to the date of production; also including documents detailing the proper conditions for storage and transportation of said 5-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole and documents certifying that said 5-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole was stored and transported under said proper conditions from the date of manufacture to the date of production.

27.	Representative samples of each U.S. Pharmacopeia reference standards for omeprazole, including but not limited to any of omeprazole lots A-H.

28.	All documents and things evidencing, referring, or otherwise relating to Drug Master File No. 14649, including but not limited to all supplements and amendments thereto.

29.	All documents and things evidencing, referring, or otherwise relating to communications between Merck and the United States Food and Drug Administration concerning NDA No. 14649, including but not limited to all supplements and amendments thereof.

30.	All documents evidencing, referring or otherwise relating to isomeric forms and relative amounts thereof, of omeprazole sold or offered for sale in the United States prior to November 10, 1997.

31.	All documents evidencing, referring or otherwise relating to isomeric forms, and the relative amounts thereof, of omeprazole used to make any product or composition containing omeprazole sold or offered for sale in the United States prior to November 10, 1997.

32.	All documents evidencing, referring or otherwise relating to license agreements, negotiations relating to any such agreements or potential agreements, relating to omeprazole and AAIPharma.

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on February 21, 2007, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:

Jack B. Blumenfeld, Esq.
Karen Jacobs Louden, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19801

The undersigned counsel further certifies that, on February 21, 2007, copies of the foregoing document were sent by email and hand to the above local counsel and by email and first class mail to the following non-registered participant:

Errol B. Taylor, Esq.
Robert J. Koch, Esq.
Jay I. Alexander, Esq.
Enrique D. Longton, Esq.
Milbank, Tweed, Hadley & McCloy LLP
1850 K Street NW
Washington, DC 20006

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk

627464-1