IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ASTRAZENECA AB, AKTIEBOLAGET HÄSSLE, KBI-E, INC., KBI INC., and ASTRAZENECA LP, *Plaintiffs*, v. DEXCEL, LTD., DEXXON, LTD., DEXCEL PHARMA TECHNOLOGIES, LTD., and CIPLA, LTD. *Defendants*. | Civil Action No. 06:358 (SLR) |

**DECLARATION OF ALLISON FULTON IN SUPPORT OF
PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO LIFT STAY**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Leslie A. Polizoti (#4299)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

*Attorneys for Plaintiffs*
ASTRAZENECA AB, AKTIEBOLAGET
HÄSSLE, KBI-E INC., KBI INC., and
ASTRAZENECA LP

*Of Counsel:*
Errol B. Taylor
Robert J. Koch
Jay I. Alexander
Enrique D. Longton
MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street NW
Washington, DC  20006
(202) 835-7500

I, Allison Fulton, declare as follows:

1. I am one of the attorneys for plaintiffs AstraZeneca AB, Aktiebolaget Hässle, KBI-E Inc., KBI Inc., AstraZeneca LP (collectively, "AstraZeneca"). I am a member in good standing of the bars of New York, Virginia, and the District of Columbia and am competent to testify to the matters set forth herein, which are based on my personal knowledge. I submit this Declaration in support of Plaintiffs' Answering Brief in Opposition to Defendants' Motion to Lift Stay.

2. Attached as Exhibit 1 is a true and correct copy of a November 1, 2006 letter from AstraZeneca to Dexcel attaching a draft of a proposed Protective Order.

3. Attached as Exhibit 2 is a true and correct copy of a December 12, 2006 email from AstraZeneca to Dexcel attaching a revised draft of the Protective Order.

4. Attached as Exhibit 3 is a true and correct copy of a January 29, 2007 letter from AstraZeneca to Dexcel asking Dexcel to, among other things, respond to AstraZeneca's December 12 letter that enclosed a draft of the proposed Protective Order.

5. Attached as Exhibit 4 is a true and correct copy of a March 9, 2007 letter from AstraZeneca to Dexcel asking Dexcel to reclassify documents under the terms of the Protective Order.

6. Attached as Exhibit 5 is a true and correct copy of a March 19, 2007 letter from AstraZeneca to Dexcel asking Dexcel to reclassify specific documents under the terms of the Protective Order.

7. Attached as Exhibit 6 is a true and correct copy of a March 29, 2007 letter from AstraZeneca to Dexcel asking Dexcel to reclassify specific documents under the terms of the Protective Order.

8.  Attached as Exhibit 7 are pages excerpted from a true and correct copy of AstraZeneca's First Set of Requests for Production of Documents and Things Directed to Cipla, Ltd., dated February 23, 2007.

9.  Attached as Exhibit 8 is a true and correct copy of a March 26, 2007 letter from AstraZeneca to Dexcel identifying samples, by batch number, that AstraZeneca plans to ship to Dexcel.

10.  Attached as Exhibit 9 is a true and correct copy of a March 29, 2007 letter from AstraZeneca to Dexcel informing Dexcel that the samples responsive to Dexcel's requests are in transit.

11. Attached as Exhibit 10 are pages excerpted from a true and correct copy of Dexcel Pharma Technologies Ltd.'s First Set of Document Requests on the Merits, requesting samples from AstraZeneca and having a certificate of service dated October 24, 2006.

12. Attached as Exhibit 11 are pages excerpted from a true and correct copy of AstraZeneca's Responses to Dexcel Pharma Technologies Ltd.'s First Set of Document Requests, stating, among other things, that AstraZeneca will produce samples if such samples exist.

13. Attached as Exhibit 12 are pages excerpted from a true and correct copy of the transcript of the February 1, 2007 discovery hearing.

14. Attached as Exhibit 13 are pages excerpted from a true and correct copy of the transcript of the January 12, 2007 discovery hearing.

15. Attached as Exhibit 14 are pages excerpted from a true and correct copy of the transcript of the December 6, 2006 discovery hearing.

16. Attached as Exhibit 15 is a true and correct copy of a January 31, 2007 letter from AstraZeneca to Dexcel stating that AstraZeneca has produced documents with Bates range POTC0003186- POTC0004195.

17. Attached as Exhibit 16 is a true and correct copy of a March 22, 2007 letter from AstraZeneca to Dexcel identifying specific Bates ranges produced that contain documents relating to aaiPharma communications.

18. Attached as Exhibit 17 is a true and correct copy of a March 22, 2007 letter from counsel for aaiPharma to Dexcel stating that counsel for Dexcel has mischaracterized aaiPharma's March 21 letter.

19. Attached as Exhibit 18 is a true and correct copy of a March 28, 2007 email from AstraZeneca to Dexcel stating that counsel for AstraZeneca is out of the country and suggesting a meet and confer before the April 2 status conference.

20. Attached as Exhibit 19 is a true and correct copy of a March 26, 2007 email from counsel for White and Case to Dexcel stating that Mr. Genova is unavailable for a deposition on March 30, 2007.

21. Attached as Exhibit 20 is a true and correct copy of a March 30, 2007 letter from AstraZeneca to Dexcel stating that Milbank Tweed Hadley & McCloy will represent Mr. Genova and suggesting a deposition scheduling meeting at a mutually convenient time.

22. Attached as Exhibit 21 is a true and correct copy of a March 29, 2007 letter from AstraZeneca to Dexcel requesting Dexcel to, among other things, produce documents from Cipla's affiliates.

23. Attached as Exhibit 22 is a true and correct copy of a April 5, 2007 letter from AstraZeneca to Dexcel explaining that Cipla's refusal to participate like a party is unreasonable.

24. Attached as Exhibit 23 are pages excerpted from a true and correct copy of AstraZeneca's First Set of Requests for Production of Documents and Things on the Merits to Dexcel requesting, among other things, communications and agreements with Cipla.

25. Attached as Exhibit 24 are pages excerpted from a true and correct copy of AstraZeneca's Third Set of Requests for Production of Documents and Things on the Merits to Dexcel requesting documents relating to testing of omeprazole formulations made, sold or distributed anywhere in the world.

26. Attached as Exhibit 25 is a true and correct copy of a December 20, 2006 letter from AstraZeneca to Dexcel stating that AstraZeneca is entitled to documents relating to Dexcel's design of its new coating system and all analytical testing of Dexcel European and Israeli products.

27. Attached as Exhibit 26 is a true and correct copy of a January 31, 2007 letter from AstraZeneca to the Court identifying Dexcel's non-compliance with the Court's order to provide a list of analytical testing.

28. Attached as Exhibit 27 are pages excerpted from a true and correct copy of AstraZeneca's Second Set of Requests for Production of Documents and Things on the Merits to Dexcel requesting documents relating to communications and agreements with Cipla, Ltd.

29. Attached as Exhibit 28 are pages excerpted from a true and correct copy of Defendants' Opposition to Plaintiffs' Motion for Stay or Transfer filed on August 29, 2006 in the Eastern District of Virginia (Case No. 1:06cv634 (CMH)).  Footnote 2 states that Dexcel's generic version of omeprazole tablets are already on sale in Europe.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 11th day of April, 2007 at Washington, DC.

_____
Allison Fulton

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 11, 2007, I electronically filed the foregoing

with the Clerk of the Court using CM/ECF, which will send notification of such filing to

Richard D. Kirk.

I further certify that I caused to be served copies of the foregoing

document on April 11, 2007 upon the following in the manner indicated:

### <u>BY HAND & E-MAIL</u>

Richard D. Kirk (rkirk@bayardfirm.com)
Ashley B. Stitzer (astitzer@bayardfirm.com)
The Bayard Firm
222 Delaware Avenue
Suite 900
Wilmington, DE  19899

### <u>BY FEDERAL EXPRESS & E-MAIL</u>

Robert F. Green (rgreen@leydig.com)
David M. Airan (dairan@leydig.com)
Saumil S. Mehta (smehta@leydig.com)
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza
180 N. Stetson Avenue, Suite 4900
Chicago, IL  60601

*/s/ Jack B. Blumenfeld*
Jack B. Blumenfeld (#1014)
jblumenfeld@mnat.com

# EXHIBIT 1

| | |
|---|---|
| **From:** | Alexander, Jay I. |
| **Sent:** | Wednesday, November 01, 2006 1:02 PM |
| **To:** | Airan, David |
| **Cc:** | Green, Robert; Mehta, Saumil; Dick Kirk; astitzer@bayardfirm.com; Jack B. Blumenfeld; 'Karen Jacobs Louden'; Koch, Robert; Taylor, Errol |
| **Subject:** | AstraZeneca v Dexcel -- Proposed Protective Order |

David:

Pursuant to some of our previous discussions, we are forwarding to you a proposed protective order for the Delaware case.  This proposal is modeled after orders previously entered in the In re Omeprazole MDL proceeding.  Please provide us with your comments so that we can present the order to the Court.

Best regards

Jay



Protective Order
for Delaware ...

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Jay I. Alexander
Milbank, Tweed, Hadley & McCloy LLP
1850 K Street, N.W.
Washington, D.C. 20006
ph: (202) 835-7591
fx:  (202) 835-7586
jalexander@milbank.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ASTRAZENECA AB,
AKTIEBOLAGET HÄSSLE,
KBI-E INC.,
KBI INC., and
ASTRAZENECA LP,
<em>Plaintiffs,</em>

v.

DEXCEL, LTD.,
DEXXON, LTD.,
DEXCEL PHARMA TECHNOLOGIES, LTD., and
DEXCEL PHARMA TECHNOLOGIES
<em>Defendants.</em>

Civil Action No. 06-358-SLR

## PROTECTIVE ORDER ON CONFIDENTIALITY

Plaintiffs AstraZeneca AB, Aktiebolaget Hassle, KBI-E Inc., KBI Inc. and

AstraZeneca LP. (collectively "AstraZeneca"), defendants Dexcel, Ltd., Dexxon, Ltd., Dexcel

Pharma Technologies Ltd., and Dexcel Pharma Technologies (collectively "Dexcel") by and

through their undersigned counsel, hereby stipulate and agree that the following protective order

("Order" or "Protective Order") shall govern the use and handling of materials containing trade

secrets and other confidential research, development and commercial information, and request

that the Court enter this stipulated Order.

IT IS HEREBY AGREED AND ORDERED:

1.     Designation Of Protected Material

a.     Any party (the "Producing Party") producing documents, things,

information or other materials in this action ("Produced Material") for inspection or

review by another party (the "Receiving Party") may designate as "Confidential" or

"Confidential-Attorneys Eyes Only" pursuant to this Order any Produced Material that

the Producing Party in good faith considers to be, reflect or reveal a trade secret or other

confidential research, development or commercial information in accordance with Fed.

R. Civ. P. 26(c)(7), or other information required by law or agreement to be kept

confidential. Such materials may include, without limitation, all or any part of discovery

materials exchanged by the parties or filed with the Court, including without limitation,

documents and things, pleadings, motions, interrogatory answers, answers to deposition

questions, and responses to requests for admission, which contains sensitive financial,

patent, trademark, copyright, trade secret, marketing, consumer, research, or product

development information, or any other document or thing containing other information of

such a nature as to be protectable under Fed. R. Civ. P. 26(c)(7).

      b.     The Confidential-Attorneys Eyes Only designation shall be limited to the

material identified in Paragraph 1.a. that contains or comprises sensitive financial,

marketing, customer, clinical, regulatory, research, development, scientific or commercial

information. However, for avoidance of doubt, all documents contained in a New Drug

Application or Abbreviated New Drug application filed with the United States Food &

Drug Administration, and all product samples exchanged between the parties, shall be

designated as having no higher level of protection than "Confidential" under this Order.

      c.     All information designated as Confidential or Confidential-Attorneys Eyes

Only, all copies, excerpts and summaries thereof, and all information contained therein or

derived therefrom shall hereinafter be referred to as "Protected Material."

Notwithstanding such designation, Protected Material does not include information that:

      (1)     Was, is, or becomes public knowledge, not in violation of this

Protective Order;

(2)     Is acquired by the Receiving Party in good faith from a third party

not subject to this Protective Order, such third party being lawfully in possession

of it and not under any restriction prohibiting the release of it;

(3)     Was possessed by the Receiving Party in good faith from a source

before receiving the materials designated as Protected Material, such source being

lawfully in possession of it and not under any restriction prohibiting the release of

it;

(4)     Is discovered independently by the Receiving Party by means that

do not constitute a violation of this Protective Order; or

(5)     Was, is, or becomes expressly released from being designated as

Protected Material by the Producing Party or by order of the Court.

2.      <u>Labeling Of Protected Material</u>

a.      The designation of Protected Material for purposes of this Order shall be

made in the following manner:

(1)     With regard to written material (including transcripts of

depositions or other testimony) and electronic images (such as TIFFs), a legend

shall be affixed to each page substantially in the form, "Confidential" or

"Confidential-Attorneys Eyes Only;" and

(2)     With regard to non-written material, such as recordings, magnetic

media, photographs and things, a legend substantially in the above form shall be

affixed to the material in any suitable manner.

b.      Materials described in Paragraphs 2.a(1) and (2) made available by a

Producing Party for inspection without confidentiality legends shall be deemed to be

Confidential-Attorneys Eyes Only until otherwise designated by the Producing Party.

c.    Each transcript of any deposition shall be treated as Confidential-Attorneys Eyes Only in its entirety.  Testimony about Protected Material of a Producing Party shall be deemed Protected Material disclosed by the Producing Party pursuant to this Protective Order.  Within twenty (20) days after the deposition, any party may propose Confidential or Non-Confidential designations by notifying all parties, in writing, of specific pages and lines of the transcript to be either Confidential or Non-Confidential.  The Confidential or Non-Confidential designations shall not take effect until all parties agree to such designations.  In the event of different designations for the same text, the parties will confer to reach agreement on the appropriate designation, as set forth in Paragraph 1 hereof, and may seek Court intervention if necessary to resolve any disagreement.  Until the issue is resolved, the transcript portions at issue shall be treated as the most restrictive designation made by anyone.

3.    <u>Disclosure And Use Of Protected Material</u>  Absent an agreement of the Producing Party or an Order to the contrary by this Court or other court of competent jurisdiction, a Receiving Party shall use Protected Material solely for purposes of this action and not for any other purpose, including, without limitation, any business or commercial purpose.  If a Receiving Party is served with a subpoena, discovery request in another action, or any other request seeking by legal process the production of Protected Material, such Receiving Party shall promptly notify the Producing Party, and inform the persons seeking discovery in writing (with copy to the Producing Party and the Court) that providing the Protected Material would be a violation of this Protective Order.

4.    <u>Qualified Persons</u>  A Receiving Party shall disclose Protected Material only to the following Qualified Persons, their clerical, support and secretarial staffs, patent agents,

paralegals and assistants. All rights, obligations and restrictions in this Protective Order shall apply to such Qualified Persons as if they were the Receiving Party.

a.  U.S. outside counsel who represents a party in this action, and their firm members and associate attorneys (collectively, "Outside Counsel").

b.  For AstraZeneca:

(1)  The following in-house counsel are Qualified Persons for all Protected Material (*i.e.*, Confidential and Confidential-Attorneys Eyes Only):

> Katarina Ageborg
> Glenn Engelmann
> Karl-Erik Falk
> Christer Hallgren
> Marcus Heifetz
> William Krovatin
> Jenny Lidander
> Paul Matukaitis
> Edward Murray
> Jeffrey Pott

(2)  The following are Qualified Persons only for Protected Material designated as Confidential (*i.e.*, not Confidential-Attorneys Eyes Only):

> Frans W. Langkilde
> Magnus Larsson
> Per Lindberg
> Kurt Lövgren
> Sverker von Unge
> Kjell Jarring

c.  For Dexcel:

(1)  The following in-house counsel are Qualified Persons for all Protected Material (*i.e.*, Confidential and Confidential-Attorneys Eyes Only):

**[TO BE FILLED IN BY DEXCEL]**

(2)  The following are Qualified Persons only for Protected Material designated as Confidential (*i.e.*, not Confidential-Attorneys Eyes Only):

**[TO BE FILLED IN BY DEXCEL]**

d.     For The Procter & Gamble Company ("P&G"), in view of P&G's interest in the outcome of this litigation:

(1)     The following in-house counsel are Qualified Persons for all Protected Material (*i.e.*, Confidential and Confidential-Attorneys Eyes Only):

> Patrick Lane
> Kelly McDow-Dunham

e.     Experts and third-party technical service contractors who are not present employees of any party to these actions, who are requested by Outside Counsel of the Receiving Party to furnish technical or expert services in connection with this litigation.

f.     Third-party contractors involved solely in providing litigation support services to Outside Counsel.

g.     The Court and its personnel.

h.     An officer or other person before whom a deposition is taken in these actions, including any stenographic reporter or videographer.

i.     Any other person agreed to by the parties to these actions or allowed by the Court.

5.     <u>Restrictions Not Imposed By This Order</u>

This Order shall not restrict any Producing Party's use, for any purpose, of its own Protected Material.

This Order shall not restrict any counsel who is a Qualified Person from rendering advice to the party he or she represents in these actions, and in the course thereof, from generally relying upon his or her examination of Protected Material. In rendering such advice, the attorney shall not disclose directly or indirectly the specific

content of any Protected Material where such disclosure would not otherwise be permitted under the terms of this Order.

6.    Notice And Acknowledgement Of Order

a.    Every Qualified Person to whom Protected Material or information contained therein is to be disclosed, summarized, described, characterized, or otherwise communicated or made available in whole or in part, first shall be advised that the material or information is being disclosed pursuant and subject to the terms of this Order.

b.    Before any disclosure of Protected Material is made to a Qualified Person pursuant to Paragraphs 4.b-4.d or 4.i, Outside Counsel for the Receiving Party shall: (a) provide the Qualified Person with a copy of this Protective Order; (b) explain its terms; and (c) obtain the Qualified Person's written agreement, in the form of Exhibit A hereto, to comply with and be bound by its terms. All Qualified Persons to whom disclosure of Protected Material is intended shall confirm their understanding and agreement to abide by the terms of this Order by signing a copy of the acknowledgement attached as Exhibit A. Except as modified below in Paragraph 7, copies of all executed acknowledgements shall be retained by the party procuring such acknowledgement and make same available to the other party upon request.

7.    Notification Of Intent To Disclose And Objections

a.    Before Protected Material is disclosed to a Qualified Person under Paragraph 4.b, the Receiving Party shall, at least ten (10) business days prior to such disclosure, notify the Producing Party in writing, of its intent to disclose Protected Material. Such notification shall include the name, current address and employment affiliation (including job title, if any) of the Qualified Person to whom such disclosure is proposed. The notification shall also include a copy of the signed acknowledgement

7

made in conformance with Paragraph 6 of this Order and shall further include a current resume or curriculum vitae from the person.

      b.     The notification and signed acknowledgement shall be delivered by hand, facsimile or electronic mail with confirmation by overnight courier.

Notification to AstraZeneca shall be delivered to:

        Robert J. Koch
        Milbank, Tweed, Hadley & McCloy LLP
        1850 K Street, NW
        Suite 1100
        Washington, DC 20006
        Facsimile: (202) 263-7520
        rkoch@milbank.com

Notification to Dexcel shall be delivered to:

        **[TO BE FILLED IN BY DEXCEL]**.

      c.     If a Producing Party receiving a notification of intent to disclose Protected Material believes in good faith that such disclosure of Protected Material would be injurious or prejudicial, it may object to the proposed disclosure by giving written notice of such objection to the Receiving Party seeking to make the disclosure. Such notice shall include the basis for the objection and shall be delivered in accordance with Paragraph 7.b within ten (10) business days of receipt of the notification of intent to disclose to which objection is made. If the Producing Party objects, the proposed disclosure shall not take place until the objection is resolved by agreement of the Producing Party or order of this Court. Failure to object within the time period set forth above shall be deemed a consent. If the objection cannot be resolved, either party may seek relief from the Court but the Producing Party shall have the burden of proof that the intended disclosure should not occur.

8.    <u>Examination Of Witnesses</u>

    a.    Any current officer, director, employee or expert witness of a party may be examined at trial or upon deposition concerning any Protected Material of such party.

    b.    Any former officer, director or employee of a party may be examined at trial or upon deposition concerning any Protected Material of such party if the Protected Material existed at the time of that person's service or employment with such party or if it appears from the face of such material or from other documents or testimony, that such person had previously lawfully generated or received such Protected Material or had such Protected Material communicated to him or her.

    c.    Any other person may be examined as a witness at trial or upon deposition concerning any Protected Material which that person had lawfully generated, received or which was previously communicated to that witness.  During examination or preparation therefore, any such witness may be shown Protected Material which appears on its face or from other documents or testimony to have been generated or received by that witness or communicated to that witness.

9.    <u>Inadvertent Production Of Privileged Or Protected Material</u>

    a.    If information subject to a claim of attorney-client privilege, attorney work product immunity or any other legal privilege protecting information from discovery is inadvertently produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege, work product immunity or other ground for withholding production to which the Producing Party or other person otherwise would be entitled.  Upon a written claim of inadvertent production, the Receiving Party having custody of the inadvertently produced material shall return to the Producing Party that material and all copies or reproductions thereof of which that

9

Receiving Party is aware in whatever form these materials exist, and that information may not be used for any purpose. The Receiving Party may subsequently move the Court for an Order compelling production of the material, but such motion shall not rely upon in any manner or assert as a ground for entering such an Order the fact or circumstances of the production; nor shall it disclose the substance of the inadvertently produced material except to the extent that an *in camera* inspection of the materials may be requested.

b.    Inadvertent failure to designate any material which a Producing Party claims should be Protected Material will not be deemed a waiver of the right to make that designation. Upon notice of such failure to designate, all Receiving Parties shall cooperate to restore the confidentiality of the inadvertently or unintentionally disclosed Produced Material. No party shall be held in breach of this Order if, prior to notification of such later designation, such Produced Material had been disclosed or used in a manner inconsistent with such later designation. The Producing Party shall provide substitute copies bearing the corrected designation. The Receiving Parties shall return or certify the destruction of the undesignated Produced Material.

10.    Obligations of Outside Counsel  It shall be the responsibility of Outside Counsel to ensure strict compliance with the provisions of this Protective Order and to take reasonable and proper steps to ensure that all provisions thereof are made known to any person who shall examine Protected Material.

11.    Pleadings

a.    All papers, documents and transcripts containing or revealing the substance of Protected Material shall be filed "Under Seal" in accordance with the

applicable rules of the Court and placed in sealed envelopes bearing the caption of the

case and marked:

**CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER IN
CIVIL ACTION NO. 06-358-SLR AND
NOT TO BE OPENED EXCEPT BY ORDER OF THE COURT
OR CONSENT OF THE PARTIES**

or similar markings as may be required by the Court.  Where possible, only those

portions of documents containing Protected Material shall be filed in sealed envelopes.

      b.     The Clerk of this Court is directed to maintain under seal all material filed

in this Court in this litigation which have been marked or designated, in whole or in part,

as "Confidential" or "Confidential-Attorneys Eyes Only" in accordance with this Order.

Copies of all such material filed with the Court prior to trial or received in evidence at the

trial of this action, and any other materials falling within the terms of this Order which

are so designated at trial or at the time of filing, shall be kept by the Clerk of the Court,

until further Order of the Court.

      12.    <u>Conclusion of the Action</u>  Within sixty (60) days after entry of a final judgment or

dismissal with prejudice in these actions (including appeals or petitions for review) or the

execution of a settlement agreement among all the parties finally disposing of all issues raised in

these actions, all Receiving Parties having possession of a Producing Party's Protected Material

shall:  (a) return all Protected Material and any copies thereof to the appropriate Outside Counsel

who produced the Protected Material; or (b) destroy such Protected Material.  Each Receiving

Party shall give written notice of such destruction to Outside Counsel for the Producing Party.

However, Outside Counsel who are trial counsel may retain one copy of all pleadings for

archival purposes.  Further, all notes, summaries, or other documents prepared by Qualified

Persons under Paragraphs 4.b-4.d and 4.i, derived from or containing Protected Material, shall

after the conclusion of the action, be kept within the files of Outside Counsel who are trial counsel for the Receiving Party creating such work product, or be destroyed.

13.    Contested Designations  The good faith designation of material as Protected Material shall, without further proof, entitle such material to the protection of this Order.  A Receiving Party shall not be obligated to challenge the propriety of a Producing Party's designations of any Protected Material at the time such designation is made, and failure to do so shall not preclude a subsequent challenge thereto.  If the Receiving Party disagrees with the designation of any Protected Material, the Receiving Party may, after conferring with the Producing Party, make a request of the Court for an order removing such Protected Material from the restrictions of this Protective Order.

14.    Non-Waiver  The production of Produced Material under the terms of this Order in response to a request by an opposing party shall not be construed to mean that the Producing Party has waived any objection to the production, relevancy or admissibility of said Produced Material.  Nothing contained herein shall preclude any party from opposing any discovery on any basis.  Further, nothing in this Order constitutes an admission by any party that any specific item of Protected Material is a trade secret or otherwise confidential and proprietary to a party.

15.    Additional Parties  If an additional party joins or is joined in these actions, the newly joined party shall not have access to Protected Material until all parties to these actions agree to a supplemental Protective Order governing the protection of Protected Material.

16.    Third Parties  Any third party from whom discovery is sought in these actions may, in accordance with this Order, designate some or all of its production as Protected Material, and each Receiving Party will have the same rights, obligations and restrictions which that Receiving Party has with respect to the Protected Material of any other Producing Party.

12

17.    <u>Attendance At Proceedings</u>  If a deposition concerns Protected Material, the Producing Party shall have the right to exclude from the portion of the deposition concerning such information any person not authorized in accordance with Paragraph 4 hereof to have access to such material.  All persons not authorized in accordance with Paragraph 4 hereof for access to Protected Material may be excluded from the trial and any hearings and conferences in these actions.

18.    <u>Unauthorized Disclosure</u>  In the event of disclosure of any Protected Material to a person not authorized to have access to such material, the party responsible for having made, and any party with knowledge of, such disclosure shall immediately inform Outside Counsel for the party whose Protected Material has thus been disclosed of all known relevant information concerning the nature and circumstances of the disclosure.  The responsible party shall also promptly take all reasonable measures to ensure that no further or greater unauthorized disclosure or use of such information or materials is made.  Each party shall cooperate in good faith in that effort.

19.    <u>Termination Of Access</u>

a.    In the event that any person or party ceases to be engaged in the conduct of these actions, such person's or party's access to Protected Material shall be terminated, and all copies thereof shall be returned or destroyed in accordance with the terms of Paragraph 12 hereof, except that such return or destruction shall take place as soon as practicable after such person or party ceases to be engaged in the conduct of these actions.

b.    The provisions of this Order shall remain in full force and effect as to any person or party who previously had access to Protected Material, except as may be specifically ordered by the Court or consented to by the Producing Party.

20.    <u>Production Prior To This Order</u>  Documents or things produced in these actions prior to entry of this Order shall be considered *nunc pro tunc* to have been produced pursuant to the terms of this Order.

21.    <u>Modification</u>  Stipulations may be made, between Counsel for the respective parties, as to the application of this Order to specific situations, provided that such stipulations are recorded in writing or contained in the record of any oral proceeding.  Nothing contained herein shall preclude any party from seeking an order of the Court modifying or supplementing this Order.

Dated: _____        Dated: _____

By: _____          By: _____
    Jack Blumenfeld, Esq.                        Richard D. Kirk, Esq.
    Karen Jacobs Louden, Esq.                    Ashley B. Stitzer, Esq.
    MORRIS, NICHOLS, ARSHT &                     THE BAYARD FIRM
        TUNNELL                                  222 Delaware Avenue, Suite 900
    1201 N. Market Street                        P.O. Box 25130
    P.O. Box 1347                                Wilmington, DE 19899
    Wilmington, DE 19899                         Telephone: (302) 655-5000
    Telephone: (302) 658-9200                    Facsimile: (302) 658-6395
    Facsimile: (302) 658-3989

    *Of Counsel*                                 *Of Counsel*

    Robert J. Koch                               Robert F. Green
    Jay I. Alexander                             David M. Airan
    Enrique D. Longton                           Saumil S. Mehta
    Allison Fulton                               LEDIG, VOIT & MAYER
    MILBANK, TWEED, HADLEY &                     Two Prudential Plaza
        McCLOY LLP                               180 N. Stetson Avenue, Suite 4900
    1850 K Street, NW, Suite 1100                Chicago, IL 60601
    Washington, DC 20006                         Telephone: (312) 616-5600
    Telephone: (202) 835-7520                    Facsimile: (312) 616-5700
    Facsimile: (202) 835-7586

                                                 *Attorneys for Defendants*,
    Errol B. Taylor                              Dexcel, Ltd., Dexxon, Ltd., Dexcel
    MILBANK, TWEED, HADLEY &                     Pharma Technologies, Ltd. and Dexcel
        McCLOY LLP                               Pharma Technologies.
    1 Chase Manhattan Plaza
    New York, New York  10005-1413
    Telephone: (212) 530-5000
    Facsimile: (212) 530-5219

    *Attorneys for Plaintiffs*,
    AstraZeneca AB, Aktiebolaget Hässle,
    KBI-E Inc., KBI Inc., and AstraZeneca,
    LP.

SO ORDERED:

Dated: _____

                                    _____
                                    Honorable Sue L. Robinson
                                    Chief Judge

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ASTRAZENECA AB,
AKTIEBOLAGET HÄSSLE,
KBI-E INC.,
KBI INC., and
ASTRAZENECA LP,

> *Plaintiffs,*

v.

Civil Action No. 06-358-SLR

DEXCEL, LTD.,
DEXXON, LTD.,
DEXCEL PHARMA TECHNOLOGIES, LTD., and
DEXCEL PHARMA TECHNOLOGIES

> *Defendants.*

## ACKNOWLEDGEMENT TO ABIDE BY THE PROTECTIVE ORDER

I, _____, declare that:

1.      I have read the foregoing Protective Order entered as an Order of the United States District Court for the District of Delaware, in the actions entitled *AstraZeneca AB, et al. v. Dexcel, Ltd., et al.* Civil Action No. 06-358-SLR.

2.      I understand and agree to be bound by the terms of this Protective Order.

3.      I will hold in confidence and will not disclose to anyone who is not a Qualified Person under the Protective Order and will use only for purposes of this action, any Protected Material disclosed to me.

4.      I will return all Protected Material that comes into my possession, and documents or things that I have prepared relating thereto, to counsel for the party by whom I am employed or retained when requested to do so by that counsel.

5.      I hereby submit to the jurisdiction of this Court for the purpose of

enforcement of this Protective Order.

_____
(Signature)

_____
(Printed Name)

_____
(Date)

# EXHIBIT 2

## Fulton, Allison

| | |
|---|---|
| **From:** | Alexander, Jay I. |
| **Sent:** | Tuesday, April 10, 2007 6:15 PM |
| **To:** | Fulton, Allison |
| **Subject:** | Fw: Astra v Dexcel -- protective order |

```
------Original Message------
From: Jay I. Alexander
To: David Airan
Cc: Robert Green
Cc: Richard D. Kirk
Cc: Robert Koch
Cc: Jack B. Blumenfeld
Cc: Karen Louden
Sent: Dec 12, 2006 1:47 PM
Subject: Astra v Dexcel -- protective order

David

Attached is a revised proposed protective order which removes some of the Astra names and
also modifies the provisions regarding P&G in an attempt to asnwer Dexcel's concerns.  As
to the Merck representatives, we reiterate what we told you earlier--these persons are
listed on the protective order in their capacity as counsel to the KBI entities, who are
parties to the suit.  You will have discerned from your review of the documents previously
produced what Merck's relationship is to these entities.

Please call us to discuss further and/or email Dexcel's proposed changes so that we can
present an agreed order to the Court.

Best regards

Jay



  <<Protective Order for Delaware Case (v2).DOC>>


***********************************************
Jay I. Alexander
Milbank, Tweed, Hadley & McCloy LLP
1850 K Street, N.W.
Washington, D.C. 20006
ph: (202) 835-7591
fx:  (202) 835-7586
jalexander@milbank.com




-------------------------
Jay I. Alexander
Milbank, Tweed, Hadley & McCloy LLP
1850 K Street, N.W.
Washington, D.C. 20006
(202) 835-7591
jalexander@milbank.com
```

# EXHIBIT 3

## MILBANK, TWEED, HADLEY & McCLOY LLP

### INTERNATIONAL SQUARE BUILDING

**1850 K STREET, NW, SUITE 1100**

**WASHINGTON, D.C. 20006**

---

202-835-7500

FAX: 202-835-7586

**NEW YORK**
212-530-5000
FAX: 212-530-5219

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**PALO ALTO**
650-739-7000
FAX: 650-739-7100

**LONDON**
44-207-448-3000
FAX: 44-207-448-3029

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**FRANKFURT**
49-69-7593-7170
FAX: 49-69-7593-8303

**TOKYO**
813-3504-1050
FAX: 813-3595-2790

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

ROBERT J. KOCH
PARTNER
DIRECT DIAL NUMBER
202-835-7520
FAX
202-263-7520
E-MAIL: rkoch@milbank.com

January 29, 2007

**VIA ELECTRONIC MAIL**

Robert F. Green, Esq.
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, Illinois 60601-6780

Re: *AstraZeneca AB, et. al v. Dexcel, Ltd. et. al*, C.A. No. 06-358 (SLR)

Dear Bob:

We have reviewed Dexcel's recent document productions in light of Dexcel's responses to Plaintiffs' document requests and the parties' subsequent communications on these issues. We note that Dexcel's production and its responses are still deficient in a number of respects as discussed below and do not comply with the Court Order to "either provide a list, a 30(b)(6) witness or actual documents that relate to the research and development surrounding the reformulated commercial product being sold outside the United States."

As an initial matter, we note that we have not had the courtesy of a response to my letter of January 25, which pointed out that we have not been able to locate the list of testing you stated had been included in Dexcel's most recent production.

You have also failed to inform us whether you will be representing Cipla in this action even though you promised to do this long ago and the Court advised you to do so immediately.

Also, we continue to await your formal response to our proposed stipulated protective order, which we sent to you on December 12. Your failure to address these issues for so long is unacceptable and has hindered our ability to move forward in this lawsuit.

Robert F. Green, Esq.
January 29, 2007
Page Two

The following list details the deficiencies we continue to observe in Dexcel's discovery
responses:

**1. Development of Dexcel's Tablet Formulation (Requests Nos. 57, 92-94):** Dexcel
still has not provided full discovery regarding the development of its omeprazole tablet
formulation even though the Court has ordered it to do so. We received Dexcel's most recent
document production on January 22. While that production contains many documents in Hebrew
that will be translated, there appear to be very few documents that date back to the 1999-2000
time period and no documents that appear to date back any earlier. Moreover, the documents
appear to be limited to routine test results. While these types of test results from this time period
are responsive, the full scope of these requests seek <u>all</u> materials relating to the Dexcel
formulations at issue, including the products described or claimed in Dexcel's patent application[1]
as well as in any related applications. Inasmuch as the research and development project that led
to this patent application apparently represented a departure from Dexcel's previous capsule
formulation, it is difficult to conceive why Dexcel continues to withhold production of all of the
documents relating to this project. We again request production of all of the documents sought
in our document requests.

**2. Documents Relating to Omeprazole Patents/Applications (Request No. 59):**
Dexcel has also not produced any omeprazole patents, patent applications or all the documents
referring or relating thereto as requested, even though it is clear that Dexcel has such patents or
applications. We request that Dexcel produce all documents relating to the WO 2000/78284
application, including drafts, correspondence, invention disclosures, inventor files and
prosecution histories, as well as similar documents for any other patent or patent application that
discloses a similar omeprazole formulation, including the Israeli priority application.

**3. Communications/Agreements With Cipla (Requests Nos. 49, 87-89):** We have not
detected any documents in Dexcel's production that comprise communications with its
supplier(s) of omeprazole, including Cipla. Such communications are clearly relevant where
they discuss the nature and characteristics of the product, or how it was manufactured. If we are
mistaken, please identify where Dexcel has produced such material and let us know whether
Dexcel is withholding any material responsive to these requests and if so, identify the nature of
that material. Moreover, Dexcel has refused to produce its agreement(s) with Cipla, which
would enable us to ascertain what information may have passed between Cipla and Dexcel and
what rights Dexcel may have to obtain information from Cipla. We request again that you
produce them.

**4. Supplements/Amendments to NDA No. 22-032 (Requests Nos. 1-5, 7-9):** Without
limiting the full scope of the requests, these requests seek "all" documents comprising or relating
to supplements or amendments to NDA No. 22-032, as well as "all" communications with the

---

[1] PCT Publication No. WO 2000/78284, which claims priority to an Israeli application identified as IL
130602, filed June 22, 1999.

Robert F. Green, Esq.
January 29, 2007
Page Three

FDA or third parties relating to the NDA or the NDA product. We have reviewed Dexcel's productions and have not found any material that appears to comprise supplements or amendments to NDA No. 22-032 or correspondence with the FDA relating to that NDA. If we are mistaken, please point out where in the production such materials exist. Such material is unquestionably relevant to this action and "all" such material must be produced; not simply "representative" material that Dexcel chooses to produce, as indicated in Dexcel's responses. Please let us know whether Dexcel is withholding any supplements, amendments or correspondence with the FDA relating to NDA No. 22-032.

**5. Likelihood of FDA Approval/Recent Communications With FDA (Requests Nos. 6, 76-78):** Dexcel has made judicial representations that it believes its NDA will be approved within a certain time period. Mr. Oren testified under oath to that belief in his deposition. Under these circumstances, Dexcel's objections to this request—which seeks documents that relate to the "likelihood" of FDA approval—as "vague and indefinite" and calling for "hypothetical speculative responses" is clearly untenable and should be withdrawn. We have not detected any documents responsive to this request in Dexcel's production. If we are mistaken, please identify where Dexcel has produced such material and let us know whether Dexcel is withholding any material responsive to these requests and if so, identify the nature of that material.

**6. Complete Production re Research/Development/Manufacture/Importation (Requests Nos. 11-13, 84-85):** All information relating to the research, development, intended manufacturing and importation into the United States and labeling of the NDA product is relevant to the issues in this lawsuit. This would include in particular documents relating to the evolution of, or modifications to, the product described in the patent application(s) referenced above. These requests also include information relating to intended manufacture and importation that are relevant to the court's jurisdiction. Dexcel's responses indicate that it intends to produce only "representative" information. We do not believe that Dexcel's production contains all of the information requested. If we are mistaken, please identify where Dexcel has produced such material and let us know whether Dexcel is withholding any material responsive to these requests and if so, identify the nature of that material.

**7. DMFs (Requests Nos. 17-23):** These requests relate to the contents of Drug Master Files (DMFs) that Dexcel has relied upon in NDA No. 22-032. NDA No. 22-032 contains only summary references to these DMFs and does not include any of the detailed information contained therein. Even if Dexcel does not have access to the complete DMFs held by third parties, it must have had at least some information in its possession during the development of its product. We have not detected any information from any DMF in Dexcel's productions. If we are mistaken, please identify where Dexcel has produced such material and let us know whether Dexcel is withholding any material responsive to these requests and if so, identify the nature of that material.

**8. Alleged Prior Art (Requests Nos. 26-28):** Please confirm that Dexcel has produced all known documents and samples responsive to these requests, which relate to alleged prior art

Robert F. Green, Esq.
January 29, 2007
Page Four

on-sale activity by Cipla.

**9. Bulk Omeprazole Samples (Request No. 29):** This request seeks samples of the bulk omeprazole in the form that it is received from Dexcel's supplier and documents sufficient to establish the chain of custody of such samples and certification of proper storage and handling. The samples produced should include representatives from all batches received from Cipla. Please confirm that Dexcel intends to produce these samples. We expect that, once a protective order is entered by the Court, we will arrange a method by which the parties can exchange samples in such a manner as to ensure proper handling.

**10. In-process/Excipient Samples (Requests Nos. 30-31):** These requests seek the production of intermediate samples of Dexcel's tablets at each stage of the production and samples of the excipients used in the manufacture of product. Please confirm that Dexcel intends to produce these samples. We expect that, once a protective order is entered by the Court, we will arrange a method by which the parties can exchange samples in such a manner as to ensure proper handling.

**11. Chain of Custody/Certification Regarding Produced Tablets (Request No. 32):** Although Dexcel has produced sample tablets, it has not produced the requested certifications as to chain of custody and storage conditions. Please provide those certifications immediately. If Dexcel is unable to provide certifications for the previously produced samples, please produce additional samples with the requested certifications.

**12. XRPD Data (Request Nos. 36, 88):** We have not detected any X-Ray Powder Diffraction data or other testing for the crystalline form of omeprazole in Dexcel's production. If we are mistaken, please identify where Dexcel has produced such material and let us know whether Dexcel is withholding any material responsive to these requests.

**13. Bioequivalance Data/Comparison testing (Requests Nos. 38, 39, 41-43, 80-83, 86):** We have observed some documents in Dexcel's production relating to bioequivalence studies involving the NDA product. Please represent that Dexcel's production is complete in that regard. However, we have observed very few documents that relate to any testing of Prilosec or Prilosec OTC or comparisons with the NDA product other than that contained in the materials relating to bioequivalence or comparative dissolution studies. For example, we have not observed any material relating to any analytical testing that may have been performed on Prilosec or Prilosec OTC. In addition, we have not observed any material relating to studies involving multiple doses of Dexcel's product. Dexcel's responses indicate that Dexcel is withholding this type of information. If we are mistaken, please identify where Dexcel has produced such material and let us know whether Dexcel is withholding any material responsive to these requests and if so, identify the nature of that material.

**14. Subcoating (Request No. 45):** We have not detected any documents in Dexcel's production that contain or relate to any analysis as to whether Dexcel's product contains a

Robert F. Green, Esq.
January 29, 2007
Page Five

subcoating or whether a subcoating develops under any conditions. If we are mistaken, please
identify where Dexcel has produced such material and let us know whether Dexcel is
withholding any material responsive to these requests and if so, identify the nature of that
material. If Dexcel has performed no such analysis, please so state.

**15. Persons Familiar With Omeprazole (Request No. 65):** This request seeks
documents that reveal the identity of persons familiar with the process used to make the bulk
omeprazole used in Dexcel's NDA product. NDA No. 22-032 does not provide a response to
this request. The patents-in-suit contain claims directed to the process of making omeprazole
and formulations containing omeprazole. If Dexcel has no information responsive to the request,
it should so state. Otherwise, it should produce "all" of the information that is in its possession,
custody or control in connection with this request.

**16. Organizational Charts (Requests Nos. 66-67):** These requests require Dexcel to
produce documents to show the organizational structure of Dexcel and the departments or groups
within Dexcel involved in the research and development of the NDA product. The material
produced by Dexcel to date is inadequate to provide this information. Please provide more
complete information responsive to these requests.

We look forward to your response to the points raised above and we intend to address
these issues at our meet and confer on January 31.

Very truly yours,

Robert J. Koch

cc: Edgar H. Haug, Esq.
    David M. Airan, Esq.
    Richard D. Kirk, Esq.
    Jack B. Blumenfeld, Esq.

# EXHIBIT 4

# MILBANK, TWEED, HADLEY & McCLOY LLP

### INTERNATIONAL SQUARE BUILDING

1850 K STREET, NW, SUITE 1100

WASHINGTON, D.C. 20006

——————

202-835-7500

FAX: 202-835-7586

**NEW YORK**
212-530-5000
FAX: 212-530-5219

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**PALO ALTO**
650-739-7000
FAX: 650-739-7100

**LONDON**
44-207-448-3000
FAX: 44-207-448-3029

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**FRANKFURT**
49-69-7593-7170
FAX: 49-69-7593-8303

**TOKYO**
813-3504-1050
FAX: 813-3595-2790

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

ROBERT J. KOCH
PARTNER
DIRECT DIAL NUMBER
202-835-7620
FAX
202-263-7520
E-MAIL: rkoch@milbank.com

March 9, 2007

**VIA ELECTRONIC MAIL**

David A. Airan, Esq.
Leydig, Voit & Mayer Ltd.
Two Prudential Plaza
180 N. Stetson Ave.
Chicago, IL 60601

  RE: *AstraZeneca AB, et. Al v. Dexcel, Ltd. et. al*, C.A. No. 06-358 (SLR)
     **Deficiencies in Dexcel's Discovery Responses**

Dear David:

   We were disappointed not to have been able to meet and confer with you today on a number of issues in an effort to narrow or eliminate the parties' disputes before the conference with the Court scheduled for March 12. We would still like to meet with you prior to the conference and believe that your suggestion for an in-person conference prior to the hearing with the Court is a good one. Accordingly, we are happy to host a meeting with you at 12:00 noon on Monday, March 12 at Morris, Nichols' offices located at 1201 North Market Street.

   At that meeting, we intend to raise the following items with you:

## 1. Extension of the Discovery Schedule

   It is apparent that the close of fact discovery should be extended in this case. Although the Court's Scheduling Order had set a deadline of December 15, 2006 for completion of document production, and although AstraZeneca as early as October 2006 identified to Dexcel its critical need for discovery as to the development of Dexcel's omeprazole tablet formulation in the mid to late 1990s, we did not receive *any* documents related to that development until early February. Then, we received approximately

David A. Airan, Esq.
March 9, 2007
Page Two

100,000 pages of documents, many in Hebrew. This has seriously prejudiced our ability to complete discovery as to the '505 and '230 patents within the time set by the Court.

In addition, once it became apparent that Dexcel could not, or would not, make complete discovery as to the production of bulk omeprazole to be used in Dexcel's NDA formulation, AstraZeneca amended its complaint—as of right—in January to add Cipla as a defendant. AstraZeneca also served the complaint on Cipla's U.S. agent, Byron Chemical. Cipla's answer was due on February 23, 2007, but Cipla has yet to respond. AstraZeneca also served initial discovery to Cipla on February 23, 2007. Cipla's responses are due Monday, March 26, only one week before the April 2 deadline for the close of fact discovery.

In addition, the parties have only just in the past week come to an agreement on the protective order, which awaits entry by the Court. Until that Order is entered, AstraZeneca will not be able to consult with its technical resources both inside and outside the company.

Given all of this, we will seek to have the Court amend the Scheduling Order to extend the discovery period by a reasonable amount of time. We seek your agreement as to a suitable set of new deadlines.

## 2. Dexcel's Response to AstraZeneca's Interrogatory No. 1

Dexcel has not stated, either in its initial response or supplemental response to Interrogatory No. 1, which claims of the '380 patent are allegedly are invalid. Nor has Dexcel shown how the alleged prior art omeprazole meets each limitation of any claim. Further, the identification of documents in response to Interrogatory No. 1 does not comply with the Federal Rules and is not sufficiently specific with respect to particular sales alleged to meet 35 U.S.C. §102(b). We wish to discuss these deficiencies with you.

## 3. Production of the Agreements between Dexcel and Cipla

Dexcel continues to refuse to produce its agreements with Cipla relating to omeprazole and specifically relating to bulk omeprazole used in Dexcel's NDA 22-032. Those agreements likely contain, at a minimum, provisions directed to the parties' cooperation in the event of litigation.

## 4. Reclassification of Confidential Documents

Once the Protective Order is entered, the parties will have to clarify which documents are to receive which level of confidential protection before they can be shared with qualified in-house technical experts. Toward that end, we ask that you identify which documents, by production numbers, that Dexcel contends should be designated as

David A. Airan, Esq.
March 9, 2007
Page Three

"Confidential- Attorneys' Eyes Only" pursuant to 4(b)(1) of the agreed Protective Order. AstraZeneca will do the same.

Documents not so designated will be assumed to be designated as "Confidential" and may be shared with the persons listed in 4(b)(2) of the Protective Order.

5.    **Cipla's Answer to the Amended Complaint and Response to Discovery**

We served Cipla's U.S. agent with the amended complaint on January 24, 2007. Although you have now indicated that you will represent Cipla in this action, you have not stated whether Cipla will contest this manner of service or whether, alternatively, you are authorized to accept service of the amended complaint on Cipla's behalf.

In addition, you have previously indicated that you would accept service of discovery on Cipla's behalf and we have served discovery to Cipla on your office. Please confirm that Cipla intends to answer discovery fully and completely on or before the end of the 30-day response period on March 26, 2007.

6.    **Sample Handling**

Ms. Borg-Breen's March 6, 2007 letter indicated that you intend to ship the samples that AstraZeneca has requested to my attention. Before doing so, however, we need to receive your instructions as to how such samples must be handled to preserve their integrity in order to be able to ensure that we have the proper equipment and facilities to do so. If you ship samples to us before we are able to ensure their proper storage, a risk may exist as to their integrity and thus the validity of any tests that are performed on such samples. We therefore ask that you provide storage instructions and conditions in advance of any shipment.

We look forward to our meeting. In addition, if you are able to provide us with a list of the items you would like to raise we would appreciate it.

Very truly yours,

Robert J. Koch, Esq.

cc:    Robert F. Green, Esq.
       Richard D. Kirk, Esq.

# EXHIBIT 5

## MILBANK, TWEED, HADLEY & McCLOY LLP

### INTERNATIONAL SQUARE BUILDING

1850 K STREET, NW, SUITE 1100

WASHINGTON, D.C. 20006

———

202-835-7500
FAX: 202-835-7586

**NEW YORK**
212-530-5000
FAX: 212-530-5219

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**PALO ALTO**
650-739-7000
FAX: 650-739-7100

**LONDON**
44-207-448-3000
FAX: 44-207-448-3029

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**FRANKFURT**
49-69-7593-7170
FAX: 49-69-7593-8303

**TOKYO**
813-3504-1050
FAX: 813-3595-2790

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

ROBERT J. KOCH
PARTNER
DIRECT DIAL NUMBER
202-835-7520
FAX
202-263-7520
E-MAIL: rkoch@milbank.com

March 19, 2007

**VIA ELECTRONIC MAIL**

David M. Airan, Esq.
Leydig, Voit & Mayer Ltd.
Two Prudential Plaza
180 N. Stetson Ave.
Chicago, IL 60601

RE:   *AstraZeneca AB, et al. v. Dexcel, Ltd. et al.*, C.A. No. 06-358 (SLR)

Dear David:

As we agreed during our meet and confer conference on Monday, we have identified documents that should be treated as "Confidential" under the protective order.

The protective order reserves the "Confidential-Attorneys Eyes Only" designation for confidential material that also contains sensitive business information such as financial or other commercial information, or sensitive research or other scientific information. The vast majority of Dexcel's production is testing information and other technical records that do not appear to meet these criteria. As such, this material should properly be classified as "Confidential."

If Dexcel believes that any material produced does contain information properly designated as "Confidential-Attorneys Eyes Only," it should not be burdensome for Dexcel to identify the few documents, if any, containing such material. As Dexcel is aware, properly maintaining higher confidentiality designation only prohibits AstraZeneca from sharing information with its in-house experts and further delays fact and expert discovery.

David M. Airan, Esquire
March 19, 2007
Page 2

     In the meantime, we request that you agree that the following specific documents may be treated as "Confidential" under the protective order so that we may show them to AstraZeneca's in-house experts. We may request that additional documents be similarly designated in the future.

| Control Start No. | Control End No. |
| --- | --- |
| DPT000001 | DPT009639 |
| DPT010720 | DPT011605 |
| DPT012014A | DPT012032x |
| DPT012033 | DPT137728 |

Very truly yours,

Robert W Koch

/AF

cc:    Robert F. Green, Esq.
      Richard D. Kirk, Esq.
      Edgar H. Haug, Esq.
      Jack B. Blumenfeld, Esq.

# EXHIBIT 6

# MILBANK, TWEED, HADLEY & McCLOY LLP

### INTERNATIONAL SQUARE BUILDING

**NEW YORK**
212-530-5000
FAX: 212-530-5219

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**PALO ALTO**
650-739-7000
FAX: 650-739-7100

**LONDON**
44-207-448-3000
FAX: 44-207-448-3029

**1850 K STREET, NW, SUITE 1100**

**WASHINGTON, D.C. 20006**

————

202-835-7500

FAX: 202-835-7586

ROBERT J. KOCH
PARTNER
DIRECT DIAL NUMBER
202-835-7520
FAX
202-263-7520
E-MAIL: rkoch@milbank.com

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**FRANKFURT**
49-69-7593-7170
FAX: 49-69-7593-8303

**TOKYO**
813-3504-1050
FAX: 813-3595-2790

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

March 29, 2007

**VIA ELECTRONIC MAIL**

Robert F. Green, Esq.
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza
180 N. Stetson Avenue, Suite 4900
Chicago, Illinois 60601-6780

Re: *AstraZeneca AB, et. al v. Dexcel, Ltd. et. al*, C.A. No. 06-358 (SLR)

Dear Bob:

We have identified the following as outstanding issues that we would like to discuss with you at the meet and confer on Monday, April 2:

## Samples

We understand from the courier that, as of yesterday, the FDA had not yet released Dexcel's samples for delivery to us. Please update us as to the status of these samples and when we can expect delivery. Also, please let us know what you have sent and when the shipments were made. Further to our letter of today, AstraZeneca shipped samples responsive to Dexcel's discovery requests to the Chicago office of Leydig, Voit & Mayer on Thursday, March 29th; to avoid any inconvenience associated with a weekend delivery, we have directed that the shipment be delivered to you on Monday, April 2.

## Discovery from aaiPharma

As we have indicated previously, AstraZeneca has produced all documents in its possession that it agreed to provide as responsive to Dexcel Document Request No. 27. In a letter dated March 22, 2007, AstraZeneca identified specific documents produced responsive to this request.

Robert F. Green, Esq.
March 29, 2007
Page Two

### Discovery from Merck

AstraZeneca is currently working with attorneys from Merck to produce data that Merck agreed to provide as responsive to Dexcel's requests.

### Reclassification of Documents

In letters dated March 9 and 19, AstraZeneca requested that Dexcel reclassify certain material as "Confidential" under the Protective Order. Please state whether you agree to reclassify such material, or in the alternative, to reclassify the documents identified in AstraZeneca's March 19 letter.

### Dexcel's Discovery Responses

Dexcel's responses to AstraZeneca's document requests remain deficient in at least the following ways:

**1. Batch Records (Request Nos. 33-35):** It does not appear that we have received all batch records for Cipla and Dexcel omeprazole batches used in the research and development of NDA 22-032 and/or DMF 12827, including but not limited to batch records for the following Cipla batches: F10035, F11132, F20412, F20976, F21201, F40615, F40618, F50071, F50440, F61332, FX0323, FX1043, FX1066, FX1231, FX1232, FX1233, FX6107, FX6157, FX6311, FX7061, FX7246, FX7268, FX8128, FX9012, FX9311, FX9329, FX9566, FX9593. Please immediately produce these documents, or identify by bates number where they are in the production.

**2. Certificates of Analysis (Request Nos. 33-35, 42):** It does not appear that we have received all certificates of analysis for Cipla and Dexcel omeprazole batches used in the research and development of NDA 22-032 and/or DMF 12827, including but not limited to the Cipla batches identified above. Please immediately produce these documents, or identify by bates number where they are in the production.

**3. XRPD and Raman Data (Request Nos. 36, 40, 88):** We have only detected XRPD and Raman data on Cipla batch FX7061 allegedly sold in March of 1997. It does not appear that we have received all relevant analytical testing, including XRPD, Raman and solid state NMR testing of Cipla and Dexcel batches used in the research and development of NDA 22-032 and/or DMF 12827, including but not limited to the Cipla batches identified above. Please immediately produce these documents, or identify by bates number where they are in the production.

**4. FDA Correspondence (Request Nos. 1-8, 76-78):** Please verify that we have received all communications with the FDA relating to NDA 22-032, including any communications sent or received after December 2006.

Robert F. Green, Esq.
March 29, 2007
Page Three

**5. Importation of NDA Product (Request Nos. 12, 48):** Please verify that we have received all documents relating to the importation into the U.S. of the Dexcel NDA product.

**6. Completeness of Cipla DMF (Request Nos. 17-18):** Please verify that we have received a complete copy of DMF 12827, including any supplements, annual reports or other communications with the FDA regarding the DMF.

**7. Documents Exchanged with Experts (Request Nos. 39-45):** It does not appear that we have received all testing and analyses of the Dexcel NDA product or of Prilosec® or Prilosec OTC® conducted by or on behalf of Dexcel, including any testing and analyses performed by experts, whether or not the testing or analyses are incorporated into any expert report. Please immediately produce these documents, or identify by bates number where they are in the production.

**8. Attempts to Design Around Patents-in-suit (Request No. 57):** It does not appear that we have received all documents surrounding any attempt by Dexcel to design around any patent-in-suit or foreign counterpart to any patent-in-suit. Please immediately produce these documents, or identify by bates number where they are in the production.

**9. Multiple Dosages (Request No. 82):** We have not detected any testing or analyses of the Dexcel NDA product involving application of multiple dosages over a period greater than 24 hours. If Dexcel has performed no such analysis, irrespective of whether such testing was submitted to the FDA or otherwise included in NDA 22-032, please so state.

We look forward to your response to the points raised above and we intend to address these issues at our meet and confer on April 2.

Very truly yours,

*R.J. Koch*                    /AF

Robert J. Koch

cc:    David M. Airan, Esq.
       Edgar H. Haug, Esq.
       Richard D. Kirk, Esq.
       Jack B. Blumenfeld, Esq.

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ASTRAZENECA AB,<br>AKTIEBOLAGET HÄSSLE,<br>KBI-E INC.,<br>KBI INC., and<br>ASTRAZENECA LP,<br>　　　　　*Plaintiffs*,<br><br>　　　　v.<br><br>DEXCEL, LTD.,<br>DEXXON, LTD.,<br>DEXCEL PHARMA TECHNOLOGIES, LTD., and<br>CIPLA, LTD.,<br>　　　　　*Defendants.* | Civil Action No. 06-358 (SLR) |

## ASTRAZENECA'S FIRST SET OF REQUESTS FOR
## <u>PRODUCTION OF DOCUMENTS AND THINGS DIRECTED TO CIPLA, LTD.</u>

Plaintiffs, AstraZeneca AB, Aktiebolaget Hässle, KBI Inc., KBI-E Inc. and

AstraZeneca LP (collectively "AstraZeneca"), in accordance with Rule 34 of the Federal Rules

of Civil Procedure and the Joint Scheduling Order, request that Defendant Cipla, Ltd. ("Cipla")

provide written responses and the appropriate documents and things corresponding to these

Requests and produce documents and things corresponding to these Requests for inspection and

copying by AstraZeneca, within thirty days of service, at the Office of Milbank, Tweed, Hadley

& McCloy LLP, 1850 K Street, N.W., Washington, D.C., 2006.  Documents and things in the

custody or possession of any counsel to Cipla are deemed to be in the custody, possession or

control of Cipla.

**DOCUMENT REQUEST NO. 5:**

All documents and things Relating to communications between Cipla and any third party concerning DMF 12827.

**DOCUMENT REQUEST NO. 6:**

All documents and things Relating to communications between Cipla and Dexcel concerning DMF 12827.

**DOCUMENT REQUEST NO. 7:**

All documents and things Relating to communications between Cipla and Andrx  or Byron Chemical concerning DMF 12827.

**DOCUMENT REQUEST NO. 8:**

All documents and things Relating to Dexcel NDA No. 22-032.

**DOCUMENT REQUEST NO. 9:**

All documents and things Relating to communications between Cipla and Dexcel concerning Dexcel NDA No. 22-032.

**DOCUMENT REQUEST NO. 10:**

All documents and things Relating to communications between Cipla and Dexcel Relating to omeprazole.

**DOCUMENT REQUEST NO. 11:**

All agreements between Cipla and Dexcel concerning omeprazole.

**DOCUMENT REQUEST NO. 12:**

All documents and things Relating to all agreements between Cipla and Dexcel concerning omeprazole.

**DOCUMENT REQUEST NO. 13:**

All documents and things Relating to communications between Cipla and Andrx concerning omeprazole.

## DOCUMENT REQUEST NO. 14:

All documents and things Relating to communications between Cipla and Byron Chemical concerning omeprazole.

## DOCUMENT REQUEST NO. 15:

All agreements between Cipla and Andrx concerning omeprazole.

## DOCUMENT REQUEST NO. 16:

All agreements between Cipla and Byron Chemical concerning omeprazole.

## DOCUMENT REQUEST NO. 17:

All documents and things Relating to any agreements between Cipla and Andrx concerning omeprazole.

## DOCUMENT REQUEST NO. 18:

All documents and things Relating to any agreements between Cipla and Byron Chemical concerning omeprazole.

## DOCUMENT REQUEST NO. 19:

All documents and things Relating to communications between Cipla and any third party concerning omeprazole.

## DOCUMENT REQUEST NO. 20:

All documents and things Relating to the Dexcel NDA product.

## DOCUMENT REQUEST NO. 21:

All documents and things Relating to communications between Cipla and Dexcel concerning the Dexcel NDA product.

**DOCUMENT REQUEST NO. 22:**

All documents and things Relating to communications between or among Cipla employees and/or employees of Cipla parents, subsidiaries or affiliates concerning any Omeprazole Formulation, including but not limited to the Dexcel NDA product.

**DOCUMENT REQUEST NO. 23:**

All documents and things Relating to communications between or among Cipla employees and/or employees of Cipla parents, subsidiaries or affiliates concerning omeprazole.

**DOCUMENT REQUEST NO. 24:**

All documents and things Relating to any Omeprazole Formulation.

**DOCUMENT REQUEST NO. 25:**

All documents and things Relating to the Dexcel Omeprazole Formulation.

**DOCUMENT REQUEST NO. 26:**

All documents and things Relating to the manufacturing process or processes employed by Cipla to make omeprazole.

**DOCUMENT REQUEST NO. 27:**

All documents and things Relating to each step in any process used by Cipla for the manufacture of omeprazole.

**DOCUMENT REQUEST NO. 28:**

All batch records for each batch and lot of omeprazole made by Cipla since 1996.

**DOCUMENT REQUEST NO. 29:**

All documents and things Relating to all batch records for each batch and lot of omeprazole made by Cipla since 1996.

**DOCUMENT REQUEST NO. 66:**

All documents and things Relating to AstraZeneca concerning the Dexcel NDA Product.

**DOCUMENT REQUEST NO. 67:**

Documents and things sufficient to ascertain the identity, position and responsibility of all Cipla personnel involved in interacting with the United States Food and Drug Administration with regard to omeprazole.

**DOCUMENT REQUEST NO. 68:**

Documents and things sufficient to ascertain the identity, position and responsibility of all Cipla personnel involved in interacting with the United States Food and Drug Administration with regard to DMF 12827.

**DOCUMENT REQUEST NO. 69:**

Documents sufficient to ascertain the identity of all persons involved in the research and development Relating to omeprazole including but not limited to organizational charts and documents identifying each such person's position, responsibilities and time period position was held.

**DOCUMENT REQUEST NO. 70:**

Documents sufficient to ascertain the identity of all persons involved in or responsible for the development of any process used to make omeprazole used or contemplated for use in any omeprazole formulation including but not limited to organizational charts and documents identifying each such person's position, responsibilities and time period position was held.

**DOCUMENT REQUEST NO. 71:**

Documents sufficient to ascertain the identity of all persons involved in or responsible for the development, drafting, research or advice directed to Dexcel NDA No. 22-032 including but

19

not limited to organizational charts and documents identifying each such person's position, responsibilities and time period position was held.

**DOCUMENT REQUEST NO. 72:**

Documents sufficient to ascertain the identity of all persons involved in or responsible for the development, drafting, research or advice directed to DMF 12827 including but not limited to organizational charts and documents identifying each such person's position, responsibilities and time period position was held.

**DOCUMENT REQUEST NO. 73:**

Documents sufficient to show the corporate, management and personnel organizational structure of Cipla, including each parent, subsidiary or affiliate.

**DOCUMENT REQUEST NO. 74:**

All documents and things Relating to the licensing or approval of any production facility or plant by any agency of any State or Federal government of the United States for the production of omeprazole.

**DOCUMENT REQUEST NO. 75:**

All documents and things Relating to any business or scientific collaboration between Cipla and any third party Relating to omeprazole.

**DOCUMENT REQUEST NO. 76:**

Electronic copies of all electronic databases owned or controlled by Cipla containing information Relating to omeprazole.

**DOCUMENT REQUEST NO. 77:**

All communications, including electronic mail communications, Relating to the Dexcel NDA product to or from any employee of Cipla, including any corporate parent, subsidiary or affiliate.

**DOCUMENT REQUEST NO. 78:**

All software and instructions necessary to access any of the databases and electronic mail referred to in the previous requests.

**DOCUMENT REQUEST NO. 79:**

All documents Relating to Cipla's policies for maintaining, destroying, updating, or retaining documents or files, whether in its computer system, email system, telephone system, or paper copies.

**DOCUMENT REQUEST NO. 80:**

All documents and things identified, referred to, or relied upon in providing Fed. R. Civ. P. 26(a)(1) disclosure and in responding to AstraZeneca's interrogatories served in this action.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Leslie A. Polizoti (#4299)
1201 N. Market Street
PO Box 1347
Wilmington, DE 19899
(302) 658-9200
  *Attorneys for Plaintiffs,*
  *AstraZeneca AB, Aktiebolaget Hässle,*
  *KBI-E, Inc., KBI Inc., and AstraZeneca LP.*

OF COUNSEL:

Errol B. Taylor
Robert J. Koch
Jay I. Alexander
Enrique D. Longton
MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street, NW
Washington, DC 20006
(202) 835-7520

February 23, 2007
749774.1

# EXHIBIT 8

# MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP

### INTERNATIONAL SQUARE BUILDING

**NEW YORK**
212-530-5000
FAX: 212-530-5219

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**PALO ALTO**
650-739-7000
FAX: 650-739-7100

**LONDON**
44-207-448-3000
FAX: 44-207-448-3029

**1850 K STREET, NW, SUITE 1100**

**WASHINGTON, D.C. 20006**

———

202-835-7500
FAX: 202-835-7586

ROBERT J. KOCH
PARTNER
DIRECT DIAL NUMBER
202-835-7520
FAX
202-263-7520
E-MAIL: rkoch@milbank.com

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**FRANKFURT**
49-69-7593-7170
FAX: 49-69-7593-8303

**TOKYO**
813-3504-1050
FAX: 813-3595-2790

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

March 26, 2007

<u>**VIA ELECTRONIC MAIL**</u>
Caryn C. Borg-Breen, Esq.
Leydig, Voit & Mayer Ltd.
Two Prudential Plaza
180 N. Stetson Ave.
Chicago, IL 60601

RE:   *AstraZeneca AB, et al. v. Dexcel, Ltd. et al.,* C.A. No. 06-358 (SLR)

Dear Caryn:

We write to inform you that we will be shipping samples responsive to Dexcel's discovery requests. Please confirm that you would like us to ship the samples to your attention at your Chicago office.

The following samples, identified in Bates range POTC0000639-646, will be provided: opH86/97; 100/00; 610/96; 302/97; 102/00; AAZ-019; AAZ-021; AAZ-028; AAZ-029; AAZ-030; VAZ-012; WAZ-020; WAZ-029; WAZ-039; AAZ-005; AAZ-010; AAZ-015; AAZ-020; BAZ-005; BAZ-010; BAZ-050; CAZ-050; CAZ-100; DAZ-238; DAZ-250.

Due to the age of the samples, we cannot confirm that the samples have been stored properly from the time they were made up to the date of production. Consequently, we cannot confirm that the samples are representative of any omeprazole product. We look forward to your reply.

Very truly yours,

*Robert J. Koch/2*

Robert J. Koch, Esq.

cc: David M. Airan, Esq.
Saumil S. Mehta, Esq.
Robert F. Green, Esq.
Edgar H. Haug, Esq.

# EXHIBIT 9

# MILBANK, TWEED, HADLEY & McCLOY LLP

### INTERNATIONAL SQUARE BUILDING

**1850 K STREET, NW, SUITE 1100**

**WASHINGTON, D.C. 20006**

———

202-835-7500

FAX: 202-835-7586

**NEW YORK**
212-530-5000
FAX: 212-530-5219

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**PALO ALTO**
650-739-7000
FAX: 650-739-7100

**LONDON**
44-207-448-3000
FAX: 44-207-448-3029

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**FRANKFURT**
49-69-7593-7170
FAX: 49-69-7593-8303

**TOKYO**
813-3504-1050
FAX: 813-3595-2790

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

ROBERT J. KOCH
PARTNER
DIRECT DIAL NUMBER
202-835-7520
FAX
202-263-7520
E-MAIL: rkoch@milbank.com

March 29, 2007

**VIA ELECTRONIC MAIL**
**CONFIRMATION WITH ENCLOSURE**
**BY UPS OVERNIGHT**

Caryn C. Borg-Breen, Esq.
Leydig, Voit & Mayer Ltd.
Two Prudential Plaza
180 N. Stetson Ave.
Chicago, IL 60601

RE:    *AstraZeneca AB, et al. v. Dexcel, Ltd. et al.*, C.A. No. 06-358 (SLR)

Dear Caryn:

We write to inform you that samples responsive to Dexcel's requests are currently in transit. To avoid the inconvenience of a weekend delivery, we have scheduled delivery to your attention at your Chicago office on Monday, April 2, 2007. We request that you please let us know when you have received the shipment.

The shipment includes 25 samples containing approximately 325 mg each of the material listed in the table below. Please label the samples upon receipt with the appropriate Bates number. Pursuant to the Protective Order at paragraph 1(b), each of these samples is designated as "Confidential". For your convenience, we include herewith stickers to be applied to the sample containers with the appropriate Bates number and the "Confidential" designation.

| Sample | Bates Number |
|--------|--------------|
| opH86/97 | POTC00007307 |
| 100/00 | POTC00007308 |
| 610/96 | POTC00007309 |
| 302/97 | POTC00007310 |
| 102/00 | POTC00007311 |
| AAZ-019 | POTC00007312 |
| AAZ-021 | POTC00007313 |
| AAZ-028 | POTC00007314 |
| AAZ-029 | POTC00007315 |
| AAZ-030 | POTC00007316 |

Caryn C. Borg-Breen, Esq.
March 29, 2007
Page 2

| Sample | Bates Number |
|--------|--------------|
| VAZ-012 | POTC00007317 |
| WAZ-020 | POTC00007318 |
| WAZ-029 | POTC00007319 |
| WAZ-039 | POTC00007320 |
| AAZ-005 | POTC00007321 |
| AAZ-010 | POTC00007322 |
| AAZ-015 | POTC00007323 |
| AAZ-020 | POTC00007324 |
| BAZ-005 | POTC00007325 |
| BAZ-010 | POTC00007326 |
| BAZ-050 | POTC00007327 |
| CAZ-050 | POTC00007328 |
| CAZ-100 | POTC00007329 |
| DAZ-238 | POTC00007330 |
| DAZ-250 | POTC00007331 |

Very truly yours,

*Robert J. Koch/EL*

Robert J. Koch, Esq.

Encl.

cc:  David M. Airan, Esq.
     Saumil S. Mehta, Esq.
     Robert F. Green, Esq.
     Edgar H. Haug, Esq.

# EXHIBIT 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ASTRAZENECA AB, AKTIEBOLAGET | ) | |
| HÄSSLE, KBI-E, INC., KBI, INC. and | ) | |
| ASTRAZENECA LP, | ) | |
| | ) | Civil Action No. 06-358 (SLR) |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEXCEL LTD., DEXXON LTD., | ) | |
| DEXCEL PHARMA TECHNOLOGIES | ) | |
| LTD. and DEXCEL PHARMA | ) | |
| TECHNOLOGIES, | ) | |
| | ) | |
| Defendants. | ) | |

**DEXCEL PHARMA TECHNOLOGIES LTD.'S**
**FIRST SET OF DOCUMENT REQUESTS**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Dexcel Pharma Technologies Ltd. ("DPT Ltd."), by and through its attorneys, requests that Plaintiffs Astrazeneca AB, Aktiebolaget Hässle, KBI-E, Inc., KBI, Inc., and Astrazeneca LP, produce the following documents and things.

**INSTRUCTIONS AND DEFINITIONS**

1.      The document requests set forth below is hereby made continuing pursuant to Fed. R. Civ. P. 26(e) so as to require, whenever necessary, continuing production and supplementation of responses between the initial date for production set forth above and the time of trial.

2.      If you claim that the attorney-client privilege or any other privilege is applicable to any document or communication the identification of which and/or production is sought by these interrogatories, the substance of that document or communication need not be disclosed in

## REQUESTS

1.    Documents sufficient to establish the chain of ownership of the patents in suit, including without limitation the chain of ownership of the applications which led to the patents in suit.

2.    All documents evidencing, referring or otherwise relating to the right to enforce any of the patents in suit.

3.    Samples of each lot of Prilosec™ sold or offered for sale in the United States prior to November 10, 1997.

4.    Samples of each lot of omeprazole used to make any Prilosec™ sold or offered for sale in the United States prior to November 10, 1997.

5.    Samples of each omeprazole product within the possession and control of Plaintiffs that was sold or offered for sale in, or imported into, the United States prior to November 10, 1997 by any third party, including but not limited to Cipla and Teva.

6.    Samples of each lot of omeprazole within the possession and control of Plaintiffs that was used to make any omeprazole products sold or offered for sale in, or imported into, the United States prior to November 10, 1997 by any third party, including but not limited to Cipla and Teva.

7.    All Raman spectra for each sample requested above in Requests 3-6.

8.    All x-ray crystal or powder diffraction data, including but not limited to raw electronic data, diffractograms, and single crystal structures, for each sample requested above in Requests 3-6.

9.    Representative samples of pure bulk omeprazole Form A, including documents sufficient to establish the chain of custody of said bulk omeprazole from the date of manufacture

to the date of production; also including documents detailing the proper conditions for storage and transportation of said bulk omeprazole and documents certifying that said bulk omeprazole was stored and transported under said proper conditions from the date of manufacture to the date of production.

10.     Representative samples of pure bulk omeprazole Form B, including documents sufficient to establish the chain of custody of said bulk omeprazole from the date of manufacture to the date of production; also including documents detailing the proper conditions for storage and transportation of said bulk omeprazole and documents certifying that said bulk omeprazole was stored and transported under said proper conditions from the date of manufacture to the date of production.

11.     All documents evidencing, referring or otherwise relating to any product or composition containing omeprazole Form A sold or offered for sale in the United States prior to November 10, 1997.

12.     All documents evidencing, referring or otherwise relating to any product or composition made from omeprazole containing omeprazole Form A sold or offered for sale in the United States prior to November 10, 1997.

13.     All documents, notebook records, Infrared data, Raman data, x-ray crystal or powder diffraction data, or other analytical or spectroscopic data evidencing, referring or otherwise relating to the '380 patent.

14.     All documents, notebook records, Infrared data, Raman data, x-ray crystal or powder diffraction data, or other analytical or spectroscopic data evidencing, referring or otherwise relating to Examples 1, 2, and 3 of the '380 patent.

29.    All documents evidencing, referring or otherwise relating to tautomerization of omeprazole, including but not limited to identification, characterization, purification, or isolation of 6-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole.

30.    All notebook records, Raman spectra, IR spectra, and X-ray crystal or powder diffraction data or diffractograms maintained by, carried out by, or carried out under the direction of, A. Brändström, P. Lindberg, or U. Junggren, which refer to or otherwise relate to Brändström A., Lindberg P., Junggren U., "Structure activity relationship of substituted benzimidazoles," *Scandinavian Journal of Gastroenterology*, 20:Suppl. 108, 15-22 (1985), a copy of which is attached as Exhibit A.

31.    Representative samples of pure bulk 6-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole, including documents sufficient to establish the chain    of    custody    of    said    bulk    6-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole from the date of manufacture to the date of production; also including documents detailing the proper conditions for storage and transportation of said bulk 6-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole and documents certifying that said bulk 6-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole was stored and transported under said proper conditions from the date of manufacture to the date of production.

32.    Representative samples of pure bulk 5-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole, including documents sufficient to establish the chain    of    custody    of    said    bulk    5-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole from the date of manufacture to the date of production; also including documents detailing the proper conditions for storage and

transportation of said bulk 5-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazoleand documents certifying that said bulk 5-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole was stored and transported under said proper conditions from the date of manufacture to the date of production.

33.    All documents evidencing, referring or otherwise relating to isomeric forms and relative amounts thereof, of omeprazole sold or offered for sale in the United States prior to November 10, 1997.

34.    All documents evidencing, referring or otherwise relating to isomeric forms, and the relative amounts thereof, of omeprazole used to make any product or composition containing omeprazole sold or offered for sale in the United States prior to November 10, 1997.

35.    All documents evidencing, referring or otherwise relating to any analyses undertaken by Plaintiffs and intended to determine the presence of 6-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole alone or together with 5-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole in any omeprazole product or composition sold or offered for sale in the United States prior to November 10, 1997.

36.    All documents identified in response to or referenced in Plaintiffs' responses to any interrogatory served by Defendants in this action or in the Virginia action.

October 24, 2006                     THE BAYARD FIRM

                                     /s/ Richard D. Kirk
                                     Richard D. Kirk (rk0922)
                                     Ashley B. Stitzer (as3891)
                                     222 Delaware Avenue, Suite 900
                                     P.O. Box 25130
                                     Wilmington, DE 19899-5130
                                     (302) 655-5000
                                     rkirk@bayardfirm.com
                                     astitzer@bayardfirm.com
                                     *Attorneys for Defendants*

11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ASTRAZENECA AB, AKTIEBOLAGET    )
HÄSSLE, KBI-E, INC., KBI, INC. and    )
ASTRAZENECA LP,    )
     )
       Plaintiffs,    )
v.    )    Civil Action No. 06-358 (SLR)
     )
DEXCEL, LTD., DEXXON, LTD.,    )
DEXCEL PHARMA TECHNOLOGIES,    )
LTD. and DEXCEL PHARMA    )
TECHNOLOGIES LTD,    )
     )
       Defendants.    )

## NOTICE OF SERVICE

PLEASE TAKE NOTICE that, on October 24, 2006, copies of 1) **Dexcel Pharma Technologies Ltd.'s First Set of Document Requests;** 2) **Dexcel Pharma Technologies Ltd.'s Second Set of Interrogatories Relating to the Merits;** and this **Notice of Service** were served on the following counsel in the manner shown:

**By Email and Hand Delivery:**

Jack B. Blumenfeld, Esquire
Karen Jacobs Louden, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899

**By Email and U.S. Mail:**

Errol B. Taylor, Esquire
Robert J. Koch, Esquire
Jay I. Alexander, Esquire
Milbank, Tween, Hadley & McCloy L.L.P.
1825 Eye Street, NW,  Suite 1100
Washington, DC  20006

# EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ASTRAZENECA AB, | ) | |
| AKTIEBOLAGET HÄSSLE, | ) | |
| KBI-E, INC., KBI INC., and | ) | |
| ASTRAZENECA LP, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-358 (SLR) |
| | ) | |
| DEXCEL LTD., DEXXON LTD., | ) | |
| DEXCEL PHARMA TECHNOLOGIES | ) | |
| LTD., and DEXCEL PHARMA | ) | |
| TECHNOLOGIES, | ) | |
| | ) | |
| Defendants. | ) | |

### ASTRAZENECA'S RESPONSES TO DEXCEL PHARMA TECHNOLOGIES LTD.'S FIRST SET OF DOCUMENT REQUESTS (NO. 1- 36)

Plaintiffs AstraZeneca, AB, Aktiebolaget Hässle, KBI-E Inc., KBI Inc. and AstraZeneca, LP (collectively "AstraZeneca") hereby respond to Dexcel Pharma Technologies Ltd.'s First Set of Document Requests (Nos. 1 - 36) served on October 24, 2006, as follows:

### GENERAL OBJECTIONS

1.     AstraZeneca objects to each and every request to the extent that it seeks to impose any obligation beyond those set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court. Subject to and without waiving this objection, AstraZeneca will respond to the request only as required by these rules.

2.     AstraZeneca objects to each and every request to the extent that it appears to require production of information outside the possession, custody, or control of AstraZeneca.

those parties that have sufficient interest in the patents-in-suit such that they may be properly joined as plaintiffs in any action to enforce said patents for purposes of responding to this request.

Subject to and without waiver of the specific and general objections, AstraZeneca has produced non-privileged documents responsive to this request.

## DOCUMENT REQUEST NO. 3

Samples of each lot of Prilosec$^{TM}$ sold or offered for sale in the United States prior to November 10, 1997.

## RESPONSE TO REQUEST NO. 3

AstraZeneca objects to this request as overly broad and unduly burdensome to the extent it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  AstraZeneca also objects to this request to the extent that it appears to require production of information outside the possession, custody, or control of AstraZeneca.

Subject to and without waiver of the general and specific objections, AstraZeneca will produce each lot of Prilosec$^{TM}$ sold or offered for sale in the United States prior to November 10, 1997, if any such samples exist, to the extent such samples are in AstraZeneca's possession and can be located after a reasonable search therefor, in a manner mutually agreed by counsel.

## DOCUMENT REQUEST NO. 4

Samples of each lot of omeprazole used to make any Prilosec$^{TM}$ sold or offered for sale in the United States prior to November 10, 1997.

**RESPONSE TO REQUEST NO. 4**

AstraZeneca objects to this request as overly broad and unduly burdensome to the extent it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. AstraZeneca also objects to this request to the extent that it appears to require production of information outside the possession, custody, or control of AstraZeneca.

Subject to and without waiver of the general and specific objections, AstraZeneca will produce samples of each lot of omeprazole used to make any Prilosec™ sold or offered for sale in the United States prior to November 10, 1997, if any such samples exist, to the extent such samples are in AstraZeneca's possession and can be located after a reasonable search therefor, in a manner mutually agreed by counsel.

**DOCUMENT REQUEST NO. 5**

Samples of each omeprazole product within the possession and control of Plaintiffs that was sold or offered for sale in, or imported into, the United States prior to November 10, 1997 by any third party, including but not limited to Cipla and Teva.

**RESPONSE TO REQUEST NO. 5**

AstraZeneca objects to this request as overly broad and unduly burdensome to the extent it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. AstraZeneca also objects to this request to the extent that it appears to require production of information outside the possession, custody, or control of AstraZeneca. AstraZeneca further objects to this request to the extent the requested samples are subject to protective orders entered in other actions.

Subject to and without waiver of the general and specific objections, AstraZeneca will produce samples of each omeprazole product within the possession and control of

AstraZeneca that was sold or offered for sale in, or imported into, the United States prior

to November 10, 1997 by any third party, including but not limited to Cipla and Teva, if

any such samples exist, to the extent such samples are in AstraZeneca's possession, not

subject to protective order, and can be located after a reasonable search therefor, in a

manner mutually agreed by counsel.

## DOCUMENT REQUEST NO. 6

Samples of each lot of omeprazole within the possession and control of Plaintiffs
that was used to make any omeprazole products sold or offered for sale in, or imported
into, the United States prior to November 10, 1997 by any third party, including but not
limited to Cipla and Teva.

## RESPONSE TO REQUEST NO. 6

AstraZeneca objects to this request as overly broad and unduly burdensome to the

extent it seeks information that is irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence. AstraZeneca also objects to this request to the extent

that it appears to require production of information outside the possession, custody, or

control of AstraZeneca. AstraZeneca further objects to this request to the extent the

requested samples are subject to protective orders entered in other actions.

Subject to and without waiver of the general and specific objections, AstraZeneca

will produce samples of each lot of omeprazole within the possession and control of

AstraZeneca that was used to make any omeprazole products sold or offered for sale in,

or imported into, the United States prior to November 10, 1997 by any third party,

including but not limited to Cipla and Teva, if any such samples exist, to the extent such

samples are in AstraZeneca's possession, not subject to protective order, and can be

located after a reasonable search therefor, in a manner mutually agreed by counsel.

objects to this request to the extent the requested information is subject to protective orders entered in other actions.

Subject to and without waiver of the specific and general objections, AstraZeneca will produce non-privileged documents responsive to this request, if any such documents exist, to the extent such documents are in AstraZeneca's possession, not subject to protective order, and can be located after a reasonable search therefor, in a manner as mutually agreed by counsel.

## DOCUMENT REQUEST NO. 9

Representative samples of pure bulk omeprazole Form A, including documents sufficient to establish the chain of custody of said bulk omeprazole from the date of manufacture to the date of production; also including documents detailing the proper conditions for storage and transportation of said bulk omeprazole and documents certifying that said bulk omeprazole was stored and transported under said proper conditions from the date of manufacture to the date of production.

## RESPONSE TO REQUEST NO. 9

AstraZeneca objects to this request as overly broad and unduly burdensome to the extent it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. AstraZeneca also objects to this request to the extent that it appears to require production of information outside the possession, custody, or control of AstraZeneca. AstraZeneca further objects to the request as vague insofar as "pure bulk omeprazole Form A" is not defined.

Without further definition, AstraZeneca is unable to produce the requested samples.

## DOCUMENT REQUEST NO. 10

Representative samples of pure bulk omeprazole Form B, including documents sufficient to establish the chain of custody of said bulk omeprazole from the date of manufacture to the date of production; also including documents detailing the proper

that it appears to require production of information outside the possession, custody, or control of AstraZeneca.

## DOCUMENT REQUEST NO. 30

All notebook records, Raman spectra, IR spectra, and X-ray crystal or powder diffraction data or diffractograms maintained by, carried out by, or carried out under the direction of, A. Brändström, P. Lindberg, or U. Junggren, which refer to or otherwise relate to Brändström A., Lindberg P., Junggren TJ., "Structure activity relationship of substituted benzimidazoles," *Scandinavian Journal of Gastroenterology*, 20:Suppl. 108, 15-22 (1985), a copy of which is attached as Exhibit A.

## RESPONSE TO REQUEST NO. 30

AstraZeneca objects to this request as overly broad and unduly burdensome to the extent it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. AstraZeneca also objects to this request to the extent that it appears to require production of information outside the possession, custody, or control of AstraZeneca.

Subject to and without waiver of the specific and general objections, AstraZeneca will produce non-privileged documents responsive to this request, if any such documents exist, to the extent such documents are in AstraZeneca's possession and can be located after a reasonable search therefor, in a manner as mutually agreed by counsel.

## DOCUMENT REQUEST NO. 31

Representative samples of pure bulk 6-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-lH-benzimidazole, including documents sufficient to establish the chain of custody of said bulk 6-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole from the date of manufacture to the date of production; also including documents detailing the proper conditions for storage and transportation of said bulk 6-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole and documents certifying that said bulk 6-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-lH-benzimidazole as stored and transported under said proper conditions from the date of manufacture to the date of production.

## RESPONSE TO REQUEST NO. 31

AstraZeneca objects to this request as overly broad and unduly burdensome to the extent it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. AstraZeneca also objects to this request to the extent that it appears to require production of information outside the possession, custody, or control of AstraZeneca.

Subject to and without waiver of the general and specific objections, AstraZeneca will produce representative samples of the requested material and documents responsive to this request, if any such samples and documents exist, to the extent such samples and documents are in AstraZeneca's possession and can be located after a reasonable search therefor, in a manner mutually agreed by counsel.

## DOCUMENT REQUEST NO. 32

Representative samples of pure bulk 5-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole, including documents sufficient to establish the chain of custody of said bulk 5-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole from the date of manufacture to the date of production; also including documents detailing the proper conditions for storage and transportation of said bulk 5-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-1H-benzimidazole and documents certifying that said bulk 5-methoxy-2-[[4-methoxy-3,5-dimethyl-2-pyridinyl)methyl]sulfinyl]-lH-benzimidazole as stored and transported under said proper conditions from the date of manufacture to the date of production.

## RESPONSE TO REQUEST NO. 32

AstraZeneca objects to this request as overly broad and unduly burdensome to the extent it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. AstraZeneca also objects to this request to the extent that it appears to require production of information outside the possession, custody, or control of AstraZeneca.

Subject to and without waiver of the general and specific objections, AstraZeneca will produce representative samples of the requested material and documents responsive to this request, if any such samples and documents exist, to the extent such samples and documents are in AstraZeneca's possession and can be located after a reasonable search therefor, in a manner mutually agreed by counsel.

## DOCUMENT REQUEST NO. 33

All documents evidencing, referring or otherwise relating to isomeric forms and relative amounts thereof, of omeprazole sold or offered for sale in the United States prior to November 10, 1997.

## RESPONSE TO REQUEST NO. 33

AstraZeneca objects to this request as overly broad and unduly burdensome to the extent it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. AstraZeneca also objects to this request to the extent that it appears to require production of information outside the possession, custody, or control of AstraZeneca. AstraZeneca further objects to this request as vague in that the phrase "isomeric forms and relative amounts thereof, of omeprazole" is undefined.

## DOCUMENT REQUEST NO. 34

All documents evidencing, referring or otherwise relating to isomeric forms, and the relative amounts thereof, of omeprazole used to make any product or composition containing omeprazole sold or offered for sale in the United States prior to November 10, 1997.

## RESPONSE TO REQUEST NO. 34

AstraZeneca objects to this request as overly broad and unduly burdensome to the extent it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. AstraZeneca also objects to this request to the extent that it appears to require production of information outside the possession, custody, or

objects to this request to the extent it seeks information protected by the attorney-client privilege or attorney work product doctrine.

Subject to and without waiver of the specific and general objections, AstraZeneca will produce non-privileged documents responsive to this request, if any such documents exist, to the extent such documents are in AstraZeneca's possession and can be located after a reasonable search therefor, in a manner as mutually agreed by counsel.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Leslie A. Polizoti (#4299)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Plaintiffs AstraZeneca AB,*
*Aktiebolaget Hässle, KBI-E, Inc., KBI Inc., and*
*AstraZeneca LP*

OF COUNSEL:

Errol B. Taylor
Robert J. Koch
Jay I. Alexander
Enrique D. Longton
MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street NW
Washington, DC 20006
(202) 835-7500

November 27, 2006

# EXHIBIT 12

Page 1

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

ASTRAZENECA AB,                      :      CIVIL ACTION
AKTIEBOLAGET HASSLE,                 :
KBI-E, INC., KBI INC., and           :
ASTRAZENECA LP,                      :
                                     :
          Plaintiffs                 :
                                     :
     vs.                             :
                                     :
DEXCEL, LTD., DEXXON, LTD.,          :
DEXCEL PHARMA TECHNOLOGIES           :
LTD., and DEXCEL PHARMA              :
TECHNOLOGIES,                        :
                                     :
          Defendants                 :      NO. 06-358 (SLR)

- - -

                         Wilmington, Delaware
                         Thursday, February 1, 2007
                         4:38 o'clock, p.m.

- - -

BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge

- - -

APPEARANCES:

          MORRIS, NICHOLS, ARSHT & TUNNELL
          BY:  JACK B. BLUMENFELD, ESQ.


               -and-




                         Valerie J. Gunning
                         Official Court Reporter

Page 2

1  APPEARANCES (Continued):
2
3      MILBANK, TWEED, HADLEY & McCLOY LLP
       BY:  ROBERT J. KOCH, ESQ.
       JAY I. ALEXANDER, ESQ.
4      (Washington, D.C.)
5
           Counsel for Plaintiffs
6
7
   THE BAYARD FIRM
8  BY:  RICHARD D. KIRK, ESQ.
9
           -and-
10
11 LEYDIG, VOIT & MAYER
   BY:  ROBERT GREEN, ESQ.
12
13         Counsel for Defendants
14
           - - -
15
16
17
18
19
20
21
22
23
24
25

Page 3

1
2            P R O C E E D I N G S
3
4      (Proceedings commenced in the courtroom,
5  beginning at 4:38 p.m.)
6
7      THE COURT:  All right.  I've reviewed all of your
8  letters.  Quite frankly, given the week I've had, I really,
9  truly, am not interested in hearing your versions of what the
10 other party has done over the past month.  All I want is an
11 efficient, clear articulation of what you need to get us to
12 trial, period.  No other elaboration.
13     I'm going to start with defendant tonight, and
14 although you've sent me a long letter, which, you know, how
15 many times have I said I don't want long letters, all I want
16 is the list of things we need to resolve tonight so that we
17 can bring this case to trial.
18     So counsel for defendant, I believe.
19     MR. GREEN:  Good afternoon, your Honor.  Robert
20 Green, from Leydig Voit & Mayer, in Chicago, representing the
21 defendants in this case.
22     Again, we appreciate you taking the time out of
23 your busy schedule for this.  I will try to be succinct.
24     Let me first start with probably the most
25 important set of documents that we do not have from the

Page 4

1  plaintiffs, and we have had a meet and confer on this.
2  That would be the new drug application, the NDA filed by
3  the plaintiffs covering Omeprazole.  We've asked for that.
4  They've objected based on the relevance and we don't have
5  it.
6      It's important.  The Omeprazole product
7  formulation contains the subcoating, that's the subcoating
8  they must allege to be present in the defendants' product
9  here, Dexcel's product, that NDA deals with.  A formulation
10 having a subcoating information in there with respect to the
11 characterization of that subcoating, for example, is going to
12 be extremely relevant from the standpoint of determination of
13 infringement in this case.
14     I, frankly, have never been in a Paragraph 4 case
15 where the NDA has not been produced.
16     There is a second NDA in issue as well.  It
17 covers the related product Nexium.  They've objected to
18 producing that document as well based on relevance.
19     The Nexium NDA is relevant, however, your
20 Honor.  Without going into the chemistry, the active agent
21 in Omeprazole is essentially two molecules.  One molecule is
22 the molecule which is present in the Omeprazole product and
23 in Nexium.
24     Nexium is made with the same subcoating.  The
25 same patents in suit in this litigation are also listed in

Page 5

1  the FDA Orange Book with respect to the Nexium product.
2  Again, characterization of the subcoating must be present in
3  that NDA among other pieces of information.  We feel that
4  those are extremely relevant.
5      The drug master file, the DMF, and actually,
6  there are several DMFs, these deal with the manufacturing
7  process for how you actually make this activation
8  Omeprazole.  This is relevant to the '380 patent, the other
9  patent in suit, your Honor.
10     That deals with a specific form of Omeprazole,
11 as they call it, polymorph.  A specific crystalline form
12 which they have alleged is present in the Dexcel product.
13     How they have made the product over the years
14 and how they have characterized that product with respect
15 to its polymorphic form, was it this form they now allege
16 to be present in the Dexcel product?  Was it another form?
17 How did they make that determination?  That's in the original
18 drug master file by Astra.  They've objected based on
19 relevance.
20     There is a drug master file that's owned by Merck
21 who produces product and has produced product since the
22 mid-80s actually for Astra relevant to the issue of
23 manufacturing of that Omeprazole.  And the characterization
24 of Omeprazole, whether it is or is not this polymorphic form,
25 this claimed composition under the '380 patent, is really the

1  asked them specifically if they have any data on multiple
2  dosages of their product.  What we've seen so far is single
3  dosage or two doses, I guess, not multiple doses.  And we
4  suspect there may be some multiple dosing data that we would
5  like to have.
6       The next thing is the, next-to-last item is
7  the -- any subcoating analysis.  If they've done any analysis
8  of whether -- on their own product of whether they have a
9  subcoat or not.
10      THE COURT:  In other words, whether they've done
11 testing for noninfringement --
12      MR. KOCH:  Yes.
13      THE COURT:  -- is basically what you are asking.
14      MR. KOCH:  Yes.  They could say they have not
15 done any and that's fine.
16      THE COURT:  It seems to me that there has to be
17 some kind of exchange here.  It's a little unfair for you to
18 ask, have you done any testing for noninfringement when you
19 have not given them any testing for infringement when it's
20 your burden of proof.
21      MR. KOCH:  Oh, no.  We've given them a whole
22 list of testing that we've done in response to their
23 interrogatories.
24      Remember, as counsel indicated, this case has
25 been through two waves of trials already.  We tested at least

1  ten different defendants' product and we don't test them all
2  the same way.  So it depends on the product.
3       THE COURT:  Okay.
4       MR. KOCH:  Some of the defendants claim not
5  to have a subcoating, so we test them for the subcoating.
6  Some claim not to have an ACR in the core and we test for
7  that.  It depends on what the defendant is claiming.  But
8  we've given them a list of all the testing we've done.  We
9  haven't said that's the end of the world on testing.  I mean,
10 if they come up with a new tablet, maybe we need a new test
11 to show that it infringes.
12      THE COURT:  So you've tested their product?
13      MR. KOCH:  We haven't tested their product
14 because we haven't -- we have not finished the protective
15 order and we don't test the products until we can tell our
16 testing people what to test for.
17      THE COURT:  All right.  11, then.
18      MR. KOCH:  Okay.  The last item, your Honor, is
19 just very simple:  An organizational chart we asked them so
20 we could have some direction when we start wanting to take
21 depositions.
22      THE COURT:  Now, how about their requests?
23 Forget the master files and NDA for the moment.  How about
24 their requests, the question about whether your product is
25 covered by, I don't know which of the patents, and the

1  samples of form of the active agent.
2       MR. KOCH:  Samples I didn't include because I was
3  just talking about documents.  Samples is another issue and I
4  don't think we have -- we need -- I don't think we need the
5  Court's assistance on samples.
6       We discussed with counsel yesterday that we need
7  to agree upon a protocol for delivering samples to each
8  other.  We have located samples.  We're -- we do not know how
9  many samples we have or what samples we have.  The
10 pre-critical critical date samples they're asking for are at
11 least ten years old, so I don't know how much of those
12 batches will be available.  But we have not refused to
13 produce them, and what we're talking now is we're at the
14 stage of just simply agreeing to a protocol.  And what I
15 would like to suggest on that, and I think we could put it to
16 bed, is that each side should deliver the samples that
17 they're going to deliver to the other side in whatever form
18 and under whatever conditions that that side believes need to
19 be present to preserve the integrity and effectiveness of the
20 sample.
21      THE COURT:  And what are the issues with the
22 protective order?  Why, after all these months, hasn't there
23 been one entered?
24      MR. KOCH:  As we spoke last time, the protective
25 order has been in their court.  Their objection has been to

1  the number of people.  We've tried to make some progress on
2  that.
3       Actually, we just received a proposal from Dexcel
4  this afternoon.  They, for the very first time in their
5  proposal, identified the people that they would like to have
6  on the order.  We would -- we would like to know who those
7  people are, but I don't think we've got a problem.  I don't
8  think there's any technical problems with the order.  It's
9  just the number of people.
10      We still have the issue that we have some people
11 from KBI on the -- on the -- on our proposed list of
12 authorized people and they object to that because those
13 people are also Merck employees, and you indicated last time
14 how you normally resolve that.
15      So what we're trying to do is get it down to a
16 reasonable number of people we can agree on.  If we can't
17 agree on the Merck issue, then perhaps that can be resolved
18 by your Honor questioning the particular KBI representative.
19 But KBI is a party.  They shouldn't be able to have a
20 representative.
21      That's our position.  I think we're almost there
22 on the protective order.  We could probably resolve that in a
23 day or two.
24      THE COURT:  All right.  And assuming that we can
25 work through the document production issues, has anyone

Page 50

1  asked if Merck doesn't want to produce the documents, then
2  they don't have to.
3          We've asked if there has been any written
4  correspondence back and forth with Merck on this issue.
5  They say no, there has been some verbal communications.
6          Our reading of the agreement is Merck should
7  clearly be obligated under the contract to produce the
8  documents. We've also filed a subpoena on Merck. They
9  say, Well, you have subpoenaed them from Merck, go get
10 them from them. If they have them, Judge, then we want
11 them.
12         Can I take the opportunity to correct one
13 factual representation on the record from Astra's
14 counsel?
15         I know you have to run, Judge. Our client
16 insists that I do this and I understand why.
17         There was a statement on the record that the
18 original Israeli product that was in litigation with Astra
19 was found to be infringing. In fact, there's no such holding
20 any place that that product was ever found to be infringing.
21 This was the capsule product that they were selling. It's a
22 capsule product that was actually sold by Dexcel but was
23 under a license agreement from another party. That's the
24 same product that they allege was used as a spring board to
25 make the tablets in this case. But that was -- that was

Page 51

1  another party's product, this capsule.
2          The Dexcel product in this case is a product of
3  their own making. It's a product that Dexcel themselves
4  developed. They developed it independently. There's no
5  subcoating on it.
6          And if I could have a moment, your Honor, to
7  consult with counsel to see if there are any other issues.
8          (Pause.)
9          MR. GREEN: I think the only other issue that was
10 raised, your Honor, was the issue of depositions. We've not
11 had a meet an confer on that and I've not had an opportunity
12 since this was raised just late last night to consult with my
13 client about that. But I'd suggest that I will get back to
14 my client.
15         They, of course, do not work on Fridays, so by,
16 you know, by Monday I'd expect to have an answer back from
17 them.
18         THE COURT: All right. Thank you.
19         All right. Mr. Koch, let's go through this
20 again. Let's kind of start at the end. And that is the
21 AAI Pharma and the Merck documents.
22         I take it you're going to represent on the record
23 that you've -- well, I guess you can tell me what you want to
24 represent.
25         MR. KOCH: Well, we're not withholding

Page 52

1  documents. What we have done with respect to AAI is we
2  just reached agreement with counsel yesterday on, or last
3  week culminating yesterday on what the scope of their request
4  is. And due to that agreement, we now know what documents
5  are responsive. And we have identified documents, certain
6  documents to AAI under the confidentiality and we expect they
7  will get back to us and see whether they have a problem with
8  it or not.
9          I think the whole AAI thing is a non-issue at
10 this point because they've also accepted AAI and AAI will
11 respond to the subpoena however it responds to it. So
12 whether this Court has that or whether the Court where AAI is
13 located has that, I don't know. But I don't think it's an
14 issue yet for any ordering.
15         With respect to Merck, counsel is correct:
16 We certainly don't read the term "cooperation" to mean
17 that we can't effectively get any document we want from
18 Merck having to do with Omeprazole. Cooperation means
19 cooperation.
20         I can tell you historically, there has been,
21 what, 24 litigations on Omeprazole. Historically, Astra has
22 never demanded a document from Merck and Merck has never
23 given a document on Astra's demand to Merck.
24         As far as I understand, Merck has responded to
25 one third-party subpoena and produced some documents after

Page 53

1  determining the proper scope of the request. But of all 24
2  cases, I think it has only happened once.
3          So Merck is cooperating with us. We've asked
4  Merck for the pre-critical date samples, if there are any. I
5  fully expect that if there are any, we will be able to get
6  them and produce them or Merck will produce them.
7          We don't have an issue. We have nothing to argue
8  over yet. And, again --
9          THE COURT: Except timing.
10         MR. KOCH: Pardon?
11         THE COURT: Except timing.
12         MR. KOCH: Well, that's true. And like I said,
13 the AAI focuses, you know, we've argued for several months
14 with Dexcel over the scope of their request. They wanted
15 everything. We finally reached an agreeable scope.
16         We have already produced the scientific and
17 technical data that we have from AAI and except for any
18 that might be covered by the confidentiality agreement, which
19 I suspect will be resolved in a matter of days. I don't know
20 what their position will be on that, what AAI's position will
21 be on that, however.
22         So -- and there are deposition dates. There are
23 document -- document production dates set and deposition
24 dates set. So those issues will ripen. I'm not sure they're
25 going to be a problem.

# EXHIBIT 13

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

```
ASTRAZENECA AB,                 :      CIVIL ACTION
AKTIEBOLAGET HASSLE,            :
KBI-E, INC., KBI INC., and      :
ASTRAZENECA LP,                 :
                                :
          Plaintiffs            :
                                :
       vs.                      :
                                :
DEXCEL, LTD., DEXXON, LTD.,     :
DEXCEL PHARMA TECHNOLOGIES      :
LTD., and DEXCEL PHARMA         :
TECHNOLOGIES,                   :
                                :
          Defendants            :      NO. 06-358 (SLR)
```

- - -

Wilmington, Delaware
Friday, January 12, 2007
12:15 o'clock, p.m.

- - -

BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge

- - -

APPEARANCES:

        MORRIS, NICHOLS, ARSHT & TUNNELL
        BY:  JACK B. BLUMENFELD, ESQ. and
             KAREN JACOBS LOUDEN, ESQ.


             -and-



                    Valerie J. Gunning
                    Official Court Reporter

Page 2

1  APPEARANCES (Continued):
2
3      MILBANK, TWEED, HADLEY & McCLOY LLP
       BY:  ROBERT J. KOCH, ESQ.,
           ERROLL TAYLOR, ESQ. and
4          JAY I. ALEXANDER, ESQ.
           (Washington, D.C.)
5
6          Counsel for Plaintiffs
7
8  THE BAYARD FIRM
   BY:  ASHLEY STITZER, ESQ.
9
10          -and-
11
   LEYDIG VOIT & MAYER
12 BY:  ROBERT F. GREEN, ESQ. and
       DAVID M. AIRAN, ESQ.
13     (Chicago, Illinois)
14
       Counsel for Defendants
15
16
17
18
19
20
21
22
23
24
25

Page 3

1
2          P R O C E E D I N G S
3
4      (Proceedings commenced in the courtroom,
5  beginning at 12:15 p.m.)
6
7      THE COURT:  Good afternoon, counsel.
8      (Counsel respond, "Good afternoon, your Honor.")
9      THE COURT:  I take it there are issues for
10 us to discuss, so I will let plaintiffs' counsel start
11 us out.
12     MR. KOCH:  Thank you, your Honor.  I thought
13 we'd start by just giving you an idea of what has occurred
14 since our last conference on December 6th.
15     Probably the most significant event is that
16 we filed on January 5th an Amended Complaint adding the
17 Indian company that makes the active pharmaceutical
18 ingredient, Omeprazole, to this litigation.  That company
19 is Cipla.
20     We filed the Amended Complaint to bring them
21 in because at the December 6th conference, we asked Dexcel's
22 counsel to provide us with the drug master file that is in
23 the hands of Cipla and they indicated that they did not have
24 it and they could not produce it, and we asked for the
25 agreements that they had with Cipla, to see whether there was

Page 4

1  any possibility for them getting it, and they refused to
2  provide us with those as well.
3      So we felt we had no alternative but to bring
4  Cipla in as a responding party, because Cipla is the
5  manufacturer of the Omeprazole, the bulk product that goes
6  into the final tablets.
7      Now, this pertains directly to only one of the
8  three patents in the suit.  That is the '380 patent, which is
9  the patent on the Form A of Omeprazole.
10     So that is probably the most significant thing
11 that has happened.
12     The second thing that has happened is really a
13 nonevent, and that is at the conference, the we -- and we
14 indicated this in our e-mail, in our response to Dexcel's
15 e-mail request for emergency relief, that we thought this
16 conference was perhaps premature because nothing substantive
17 has happened since December 6th.
18     You may recall at the December 6th conference
19 we had broad discovery complaints that we had articulated
20 to Dexcel in our letter of October 24th, asked for
21 response by November 8th.  When we didn't get a response,
22 we, on November 9th, sent a second letter, asking for a
23 meet and confer.
24     We had our meet and confer on November 14th
25 and were unable to resolve anything prior to the December 6th

Page 5

1  conference.
2      So during the December 6th conference, you
3  asked us to confer with counsel in the courtroom, and in the
4  25-minute break you provided us, we did reach an agreement.
5  And we reached an agreement that, from our side, we were
6  willing to compromise on some of the breadth of our requests
7  for documents, for testing data, and we acknowledged to
8  Dexcel that we were not interested in, for example, the
9  testing on their quality control samples of their commercial
10 batches that they produced in Israel and Europe since 1998,
11 1999, but, rather, we wanted the meaningful testing
12 concerning the changes that they made to their Omeprazole
13 product between the time that their original product, which
14 was on sale in Israel and was found to be infringing Astra's
15 patents, Israeli patents, and the time they put a new product
16 into the market in Israel and Europe.
17     And that's the 1998/1999 time period.  And we
18 think -- I mean, we think it's that because we found on our
19 own discovery searches that Dexcel has a patent that they
20 filed on stable Benzamidazole formulation.  It's a patent
21 they filed in 1999.
22     And that patent states that their intent -- it
23 states that in the prior art, Astra patents and Astra tablets
24 have a core, a subcoating and an enteric coating.  And in the
25 patent application, Dexcel says their intent is to eliminate

Page 6

1 the intermediate coating, and then they proceed to describe
2 how they've done that.
3     Well, in that patent application, the examples,
4 specifically Example 10 in the patent application, looks to
5 be the same formulation as in the NDA product that we've
6 ascertained from the NDA documents that Dexcel has produced
7 to us.
8     There are a few changes. The enteric coating
9 seems to be twice as thick as in the -- in that formula in
10 the patent. And it seems to have substituted a methylamine
11 for sodium hydroxide, and perhaps in the FDA product they're
12 using a final ammonia processing step, which is perhaps the
13 result of taking out the sodium hydroxide.
14     But those are speculations and things that we
15 want to know what testing they did and how they arrived at
16 this formulation that is now in the NDA product and what
17 kinds of analytical testings were performed during this
18 period from, say, 1998 to date for that matter, if they are
19 still doing it.
20     Our -- so we reached a compromise on December 6th
21 that we would get from them a list of all their testing and
22 then we would pick and choose from that list what tests we
23 think were important, because they said there was so much
24 testing, five million pages of documents, perhaps, and we
25 certainly didn't want all of that testing.

Page 7

1     So we go back to our offices December 6th and
2 wait. We received nothing. On December 20th, we send a
3 letter reiterating our request for this test information. We
4 also raise a couple other issues in the letter. Namely, that
5 the protective order is not yet executed. It's in their
6 court and that we would like to get a response.
7     Interestingly enough, we then, the next day,
8 which is the day before the Christmas break, we get a letter
9 from Dexcel concerning their discovery requests. We did not
10 get our list. We did not get anything.
11     We've incidentally responded to their discovery
12 requests and have not had a meet and confer on their
13 discovery complaints, their complaints of our discovery.
14     They did, however, this week provide us with what
15 they called a list of testing, and I must state that it is
16 not what we had in mind, and actually, if your Honor permits,
17 I would like to hand up the testing that they provided. It's
18 essentially one page attached to their letter (handing
19 document to the Court).
20     And I can say, your Honor, that this information,
21 if you look at the second page, it shows that it is the kind
22 of testing the Israeli Ministry of Health requires, so it's
23 almost like Q.C. testing. It is not the kind testing we had
24 in mind. This kind of testing, for example, would say
25 nothing about the kinds of information and tests that we're

Page 8

1 interested in with respect to the Omeprazole, the API. It
2 says nothing about the X-ray powder diffraction patterns,
3 which would be relevant to Claim 1 of the '380 patent. It
4 says nothing about the tri-clinic unit cell parameters, which
5 is called for in Claim 2 of the '380 patent. It says nothing
6 about the parameters, the processing parameters, such as the
7 crystallization times that are set forth in Claim 5 of the
8 '380 patent.
9     And the second half of the document refers to the
10 finished product, the tablets, and there it's interesting to
11 note that that also is not the kind testing we're looking
12 for. It says nothing about the layers, the coatings on the
13 tablet. As you can see, it gives things like the average
14 weight, the average content, the impurity, uniformity of
15 mass, width, length, those kinds of data, while perhaps
16 interesting, would, of course, be the kind of testing that
17 would be listed on the lists that we asked for at the
18 December 6th conference, but it would probably be the last
19 stuff we would pick from the list.
20     Again, the stuff we would really want to see
21 is their research and development testing of how they
22 went from an -- a tablet that was found to be infringing
23 because it had the core intermediate layer, layer, and the
24 enteric layer to what they now are planning to produce in
25 the United States.

Page 9

1     So from our standpoint, your Honor, we are still
2 where we were essentially on December 6th.
3     THE COURT: All right. Let's hear from
4 defendants' counsel.
5     MR. GREEN: Good afternoon, your Honor. Robert
6 Green, Leydig Voit, and representing the defendant.
7     First, your Honor, thanks very much for
8 accommodating our schedules and interrupting your lunch
9 hour. I appreciate that and so does our client.
10     Let me start, I guess, by saying I'm confused.
11 I think what Mr. Koch just referenced in large measure is
12 not the agreement that we had as a result of the conference
13 and the statements made before your Honor last December.
14     In particular, you may recall that the primary
15 issue they had dealt with is what we'll call the Israeli
16 product. This is a commercial product that's manufactured by
17 Dexcel in Israel. It has been sold for years and they wanted
18 information relating to that, and we indicated it was unduly
19 burdensome. This was a product that had been commercially
20 manufactured, again, for years.
21     And your Honor actually asked Mr. Koch with
22 respect to that, and I don't want to read the entire
23 transcript, but, in part, you addressed this question to Mr.
24 Koch. You said, So what you are telling me is that, in order
25 to test infringement, the materials given to the FDA do not

Page 22

1  connection with the product at issue and you have not
2  received anything?
3       MR. KOCH:  That's correct.
4       THE COURT:  So given that, you've gone back to
5  what has been characterized the substantially same product
6  over in Europe and asked for these sorts of products -- asked
7  for these sorts of -- this sort of information, which is
8  research and development information, basically, and the
9  response is the response we got from Mr. Green today, which
10 is, it is essentially irrelevant because your client, in
11 litigation over there, has basically conceded that that new
12 product doesn't infringe?
13      MR. KOCH:  Of course, we don't agree that there
14 was any concession and whatever happened in Israel happened
15 in Israel.  It does not have anything to do with the U.S.
16 patents.  But we told you why those -- that test and that
17 development, why that research and development is important
18 in the United States.
19      THE COURT:  Because there was no independent
20 research and development of the product here in the United
21 States?
22      MR. KOCH:  Right.  I mean, we assumed that they
23 did a design around back in '98, '99.  So how are we going to
24 determine infringement unless we see the design-around
25 information?

Page 23

1       Now, that is the one point.  Okay.  Addressing
2  the protective order, yes, there are two in-house lawyers
3  from P&G listed on the protective order.  We would like to
4  have them on it.  They are lawyers.
5       We do not see any -- and as I mentioned the last
6  time, Procter & Gamble is the -- is Astra's licensee and is
7  the company and entity that is selling the Priolosec OTC
8  product, and that is the market that Dexcel wants to enter
9  into and that has applied for NDA with the FDA.
10      So I --
11      THE COURT:  Well, generally, I allow one in-house
12 person unless the parties agree to more.
13      Now, do you have an in-house person from
14 AstraZeneca and an in-house person --
15      MR. KOCH:  Yes.  We have, I think, 11 in-house
16 people at AstraZeneca.  Again, this is a very complicated
17 case, and I mean it's related to the whole list of other
18 Omeprazole litigations.
19      We took that from, your Honor, not to sound
20 like we've asked for an enormous amount, that protective
21 order was crafted, as Dexcel knows, because we gave them
22 the earlier protective orders, from the protective orders
23 that were present in the In re Omeprazole litigation,
24 the multi-district litigation that has gone to trial
25 twice.

Page 24

1       Those -- the protective order isn't significantly
2  different from that and it has fewer people listed than those
3  involved in that protective order.
4       Now we could probably reduce it by a few people,
5  but Dexcel has had it since December 12th and hasn't come
6  back -- in fact, we sent it to them November 1 and they made
7  that complaint, that they didn't want P&G on it and they did
8  not want so many Astra people on it, so we reduced the number
9  of people and we reduced the P&G people to the in-house
10 counsel, and it has been in their hands since December 12th
11 and we have not heard a peep.
12      So, you know, if there's something to discuss
13 there, we could perhaps discuss it, but --
14      THE COURT:  Well, we will discuss it.
15      MR. KOCH:  And then the third point is with
16 respect to the schedules, I think Dexcel has now -- is now
17 trying to put the cart before the horse.  Summary judgment
18 motions, fine, but we have to have discovery first.
19      If we got a summary judgment motion filed at this
20 point, we would simply look at what was needed and ask for
21 the discovery under Rule 56 (f) to respond to it is my guess
22 what would happen.
23      We needed discovery and that's what we're here
24 for.
25      THE COURT:  All right.  Thank you.

Page 25

1       All right.  Mr. Green, I need you to respond to
2  the fact that there basically was no independent R&D on the
3  product at issue, that the R&D for the product was done in
4  Israel and that is the R&D that we have been been
5  talking about since December and you failed to provide any of
6  that R&D today.
7       Whatever AstraZeneca said then, that's a legal
8  issue about whether somehow they are precluded from going
9  forward with an infringement case here.  I'm interested in
10 discovery.  Your client has failed to provide what was
11 contemplated.
12      MR. GREEN:  I guess the only response I have to
13 that, your Honor, is the one I previously gave, and that is
14 the development of a noninfringing product can't possibly be
15 relevant to this litigation.
16      THE COURT:  Well, there is certainly no way that
17 I can discern, or maybe that I even should discern during
18 discovery, that the product that is substantially the same
19 being commercialized in Europe is noninfringing.
20      So your client, within a week, needs to provide
21 the list of that testing.  I'm going to give you some dates,
22 because we are going to move this forward here, except I need
23 to get into my calendar.
24      All right.  Now, your client is the one who wants
25 to move forward.

Page 38

1    We would also like to know, then, are they
2 withholding documents from AII Pharma relating to Omeprazole
3 on the basis of confidentiality? Do they have documents that
4 are otherwise under the possession or control of Astra from
5 AAI Pharma they're not producing because they are arguing
6 that, indeed, it's not under the possession, custody or
7 control of Astra when we know there's a license agreement
8 between Astra and AII Pharma relating to Omeprazole.
9    And all we're asking for now is: What is
10 the position? Do they have such documents? Have they
11 requested such documents? Are they taking the position
12 that the documents that would otherwise be responsive to our
13 requests can't be requested from especially Merck, because
14 there are contracts between Merck and Astra that deal with
15 this issue.
16    I think those are the two key document production
17 issues, your Honor, because, again, if we are in a situation
18 where we need to pursue documents through third-party action,
19 then we need to do that soon.
20    But, again, with respect to Merck, I don't see
21 how they can possibly take that position, but I think we're
22 entitled to know if there are documents that Merck has that
23 they simply haven't even asked for, because I think we can
24 show that, indeed, Astra has the right to request those
25 documents in response to our document requests.

Page 39

1    THE COURT: All right. Thank you.
2    MR. KOCH: Your Honor, let me just say, first,
3 that we have not had a meet and confer on this. We did
4 respond to their -- Dexcel sent a letter complaining about
5 this to us after the last conference and we responded to it,
6 and we even responded I think further yesterday and we've
7 responded with production as well. I think we've had three
8 productions since then.
9    So I can say that we have not had a meet and
10 confer, so I don't think -- I think this is premature to
11 bring up here, but I can also say that we're not -- that
12 we're not holding back AAI documents if they're responsive
13 to, you know, the requests -- they've got several requests
14 out for testing of Form A and things like that.
15    We're not holding back those documents. We will
16 produce or schedule them, and the objection goes to the one
17 document request No. 27, which is to all communications
18 between AAI and Astra regarding Omeprazole, which is too
19 broad.
20    But, you know, we've made some offers on that
21 and we I think need to do a meet and confer.
22    With respect to the Merck documents, again,
23 we're not holding back documents that are responsive to the
24 request, but Merck is not a party per se. If they're asking
25 for documents from a third party, that is a different animal,

Page 40

1 which we have not had a meet and confer on.
2    MR. GREEN: Your Honor, we asked for a meet and
3 confer on this fact with our December 21st letter. We have
4 not had it. It appears that Astra has not gone to Merck and
5 requested Merck to produce Merck documents in response to our
6 document requests.
7    There is an agreement, your Honor, that involves
8 parties to this suit and Merck and it specifically requires
9 that there be cooperation. In fact, there's an attachment to
10 this document, Principles for Cooperation on Priolosec Patent
11 Issues, and it says there's to be full cooperation and
12 communication specifically directed to Priolosec.
13    So I don't know how they can say that Merck
14 documents, then, can't be obtained. They have an agreement
15 that says there must be cooperation between Merck and
16 AstraZeneca with respect to these Priolosec documents. And
17 we would be pleased to provide a copy of that agreement to
18 your Honor, if you wish.
19    THE COURT: Not at the moment. Thank you.
20    So Merck seems to have kind of an in and out role
21 here.
22    MR. KOCH: Well, no. Merck is not a party and we
23 don't have control over Merck. We have KBI. KBI is a party,
24 and, you know, if they want third-party discovery, I guess we
25 can talk about that, but that's --

Page 41

1    THE COURT: Well, they obviously want Merck
2 documents. Now, if you are telling me that, despite your
3 business relationship with Merck, in this case the defendant
4 has to go through third-party document requests when Merck
5 might have some relevant documents, I take it that's what
6 you are telling me, and that's fine, but I think that instead
7 of waiting until February 9th to have my meeting with you,
8 we'll have my meeting on January 31, because I will presume
9 that the level of cooperation in getting document production
10 done in this case will be heightened and I will be interested
11 to know whether Merck is cooperating in this endeavor or
12 not.
13    So if that is the best we can do, I'm anxious
14 to get document production here. It sounds as though there's
15 work to be done on both sides of the courtroom. And instead
16 of meeting on the 7th, we're going to meet on Thursday,
17 February 1, at 4:30, and at that time I fully expect document
18 production to be done.
19    Now, if it is, or if you're confident you're
20 working through it, then you certainly don't need to travel
21 to Wilmington. I think we will keep the February 7th date on
22 after all -- sorry -- because there's the issue of the
23 contention interrogatories and to make sure that the case is
24 moving forward the way it should, or February 9th -- I'm
25 sorry. And the way my calendar is filling up, I would just

EXHIBIT 14

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

ASTRAZENECA AB,                     :      CIVIL ACTION
AKTIEBOLAGET HASSLE,                :
KBI-E, INC., KBI INC., and          :
ASTRAZENECA LP,                     :
                                    :
          Plaintiffs                :
                                    :
     vs.                            :
                                    :
DEXCEL, LTD., DEXXON, LTD.,         :
DEXCEL PHARMA TECHNOLOGIES          :
LTD., and DEXCEL PHARMA             :
TECHNOLOGIES,                       :
                                    :
          Defendants                :      NO. 06-358 (SLR)

- - -

                         Wilmington, Delaware
                         Wednesday, December 6, 2006
                         4:30 o'clock, p.m.

- - -

BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge

- - -

APPEARANCES:

          MORRIS, NICHOLS, ARSHT & TUNNELL
          BY:  JACK B. BLUMENFELD, ESQ.


               -and-




                         Valerie J. Gunning
                         Official Court Reporter

Page 2

```
1   APPEARANCES (Continued):
2
3     MILBANK, TWEED, HADLEY & McCLOY LLP
      BY:  ROBERT J. KOCH, ESQ.
           JAY I. ALEXANDER, ESQ.
4          (Washington, D.C.)
5
            Counsel for Plaintiffs
6
7
      THE BAYARD FIRM
8     BY:  RICHARD D. KIRK, ESQ.
9
           -and-
10
11    LEYDIG, VOIT & MAYER
      BY:  ROBERT GREEN, ESQ. and
12         DAVID AIRAN, ESQ.
13
            Counsel for Defendants
14
15          - - -
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
1
2            P R O C E E D I N G S
3
4        (Proceedings commenced in the courtroom,
5    beginning at 4:30 p.m.)
6
7        MR. BLUMENFELD:  Good afternoon, your Honor.
8        THE COURT:  Good afternoon.  I take it we have
9    things to talk about since you all are here, so I am let Mr.
10   Blumenfeld begin.
11       MR. BLUMENFELD:  Your Honor, I'm here for the
12   plaintiffs along with Bob Koch and Jay Alexander from
13   Milbank.  We do have a few issues.  Mr. Koch was going to
14   address them for the plaintiffs.
15       THE COURT:  All right.  Thank you.
16       MR. KOCH:  Your Honor, let me just say where
17   we're at right now in the case since the last time we chatted
18   with you.
19       We've had the -- our request to have the
20   litigation transferred to the Mult-District Panel was decided
21   by the panel not to take the case, so it's therefore between
22   Delaware and/or Virginia.
23       The Virginia Court has stayed the Virginia
24   action pending your decision on the jurisdictional motion,
25   on the motion to transfer and dismiss that Dexcel has
```

Page 4

```
1    brought.
2        As you're probably aware, that motion has
3    just -- the briefing on it has been finished and so that
4    is ripe for a decision.
5        In the meantime, however, we've continued
6    discovery on the merits.  Both sides have served discovery
7    requests, interrogatories, requests for admissions on the
8    other side, and we've produced documents to each other, and
9    where we are today, nine days away from the close of written
10   discovery, is that we're both producing documents, it looks
11   to be on a rolling basis, and moving along.
12       A month ago to the day, I believe it was, we had
13   a meet and confer with Dexcel on our discovery requests that
14   we felt were not being responded to properly.  At that time,
15   we reached agreement as to what should be produced.  We
16   weren't a hundred-percent satisfied, but we were at least
17   willing to see what comes, and thus far we just started
18   getting some documents and I don't think we've been satisfied
19   yet, from what I've seen of the documents that we received on
20   Monday and this morning.
21       But let me give you a very short synopsis
22   of what we are still asking for that we have not seen and
23   that we don't think Dexcel intends to give us, and I can
24   say it easiest by just outlining what we have in the case:
25   Three patents in the litigation, the '505, the '230 and
```

Page 5

```
1    the '380.
2        The '505 and '230 patents are the two patents
3    that expire next spring.  They have pediatric exclusion
4    granted on those so they can be extended six months, until
5    next fall.
6        Those patents are the ones that have been the
7    subject matter of all the litigation in the multi-district
8    litigation.  They've been tried two times against a total of
9    ten different generic companies and one decision has been
10   issued by Judge Jones.  It got up to the Federal Circuit and
11   the patents have been upheld.
12       The second trial, which was last spring, is still
13   pending decision.
14       In the Paragraph 4 certification letter that
15   Dexcel filed in February, or served on us in April, they
16   indicated they filed an NDA with the FDA in February.  In the
17   Paragraph 4 certification letter, they indicated that -- they
18   indicated they do not infringe the claims of the '505 and the
19   '230 patents.
20       With respect to the '380 patent, they indicated
21   that they do not infringe Claims 5 and 6, but they did
22   not certify with respect to noninfringement of Claims 1
23   through 4.
24       Claims 5 and 6 are process claims.  Claims 1 --
25   Claim 1 is a fairly narrow claim directed to the X-ray
```

Page 14

1  assume discovery cannot be completed in Virginia because the
2  Virginia judge, for whatever reason, and sometimes we judges
3  talk to each other, but I have not talked to whoever it is in
4  Virginia, has said, we're not doing anything here in
5  Virginia.
6        So I guess I'm a little confused about what
7  it is you want me to do. My job at this point is
8  certainly to address your motion and I will certainly
9  do that.
10        But in the meantime, what we are here to do
11  is to take care of this case, and that's to make sure that
12  we're moving forward and advancing the case here.
13        So I am happy to talk about the motion to
14  transfer, the motion to dismiss, but the first thing on the
15  agenda is to make sure that discovery is being moved forward
16  in a fair and cooperative fashion here.
17        So why don't you address that first, and then if
18  there are some scheduling issues that you wanted to address,
19  we'll take that up. All right?
20        MR. AIRAN: Okay. Fair enough.
21        Responding, as I understood Mr. Koch's
22  complaint here, it was involving some drug master files
23  that are in the -- not in the possession, custody or
24  control of the defendants in this case. These are files
25  contained by a third party that produces the Omeprazole

Page 16

1        So what they are asking for is some documents
2  that are entirely irrelevant, and it would be extremely
3  burdensome for the defendants to have to set aside their
4  businesses and go and produce -- I'm talking about a large
5  volume of analytical data that they've asked for.
6        That's, I think, the main discovery dispute that
7  we have here on the defendants' side, and I just don't think
8  it's fair to ask the defendants to produce and to undertake
9  this enormous effort at production in response to documents
10  that I don't think may have relevance at all to this lawsuit,
11  but even if there was some marginal relevance, the burden
12  certainly of producing these documents is far outweighed by
13  any marginal relevance it may have to the issues in this
14  lawsuit.
15        What we have done and offered, your Honor, on
16  that issue, is, as a compromise position, we've offered to
17  produce the --
18        MR. GREEN: The master file.
19        MR. AIRAN: Not the --
20        MR. GREEN: Master batch records.
21        MR. AIRAN: The master batch records, which is
22  what I understand is what is submitted to the FDA and must be
23  followed by the manufacturers of these products. That's a
24  relatively contained set of documents and we're willing to
25  produce that. I'm not sure if it has already been produced,

Page 15

1  that will be used in the NDA product, and they are just
2  documents we don't have.
3        So they're asking us to produce documents that
4  we can't even request of the third party, demand that they
5  give them to us. They're not legally within our control to
6  do that. It's not a situation where you have a parent or a
7  subsidiary and they say give me the documents and the other
8  party would be obligated to give them to us. We don't have
9  those documents that he's asking for.
10        The other topic that I understood Mr. Koch
11  was requesting was documents involving these products
12  sold abroad, and those products, your Honor, have nothing
13  to do with this NDA case. What they -- this case, this
14  action, has to do with products that are fully described
15  in the NDA that we've produced to them, and it does not
16  have anything to do with products that were sold in Israel
17  or Europe or places abroad, and it would be extremely
18  burdensome for the defendants in this case to produce
19  volumes, reams, thousands, tens of thousands of pages,
20  possibly, of documents relating to products that are not
21  at issue in this lawsuit.
22        I mean, if we proved all day long that the
23  products sold abroad don't infringe the United States patents
24  in this case, that would have no relevance to the trial in
25  this matter.

Page 17

1  but we produced literally thousands of documents in addition
2  to the new drug application, but we are willing to produce
3  that document.
4        What we're not willing to produce, and certainly
5  not without this Court ordering us to do that, is a
6  tremendous volume of documents that have almost no relevance
7  at all to this lawsuit.
8        So I think that addresses at least the dispute as
9  I understood it as raised by Mr. Koch.
10        And, your Honor, I would like to reserve some
11  time for some discovery issues that we have for plaintiffs
12  as well.
13        THE COURT: Certainly.
14        MR. AIRAN: Thank you.
15        THE COURT: All right. Let's hear from
16  plaintiffs again.
17        MR. KOCH: Your Honor, may I clarify one
18  thing? We're not asking for the products they sold in
19  Europe. We're asking -- all of our discovery requests
20  ask for the NDA product or the Omeprazole product that's
21  in the NDA product. It happens to be, according to their own
22  statements, before both the MDL panel and Virginia, it
23  happens to be nearly identical product.
24        So any -- what they are basically trying to say
25  is that they want to give us just the NDA portion of the

Page 18

1  testing. We're saying if it's the same product, we want all
2  the testing. We want to see all the testing. It is just
3  like in any kind of discovery dispute, you are not allowed to
4  give the documents you want to give them and withhold
5  others.
6       THE COURT: But there's always a balancing
7  test, too. I mean, folks who come in and say we're entitled
8  to five million documents, I tell them, no, you're not,
9  you're entitled to what is fair and what is reasonable to be
10  produced so that you've had a fair opportunity to get the
11  information you need to prove your case.
12       Have you all talked about this other file that
13  they just mentioned?
14       MR. KOCH: Oh, the --
15       MR. GREEN: Master batch records.
16       MR. KOCH: Master batch records, it's would be
17  fine to have those, but, again --
18       THE COURT: When you are proving -- I mean, this
19  is to prove infringement?
20       MR. KOCH: Correct.
21       THE COURT: And --
22       MR. KOCH: In other words, we've asked them, for
23  example, for all of their X-ray diffraction spectra. Why?
24  The '380 patent has Claim 1. It has to meet the limitations
25  of this specific X-ray diffraction pattern.

Page 19

1       If they submitted X-ray diffraction information
2  to the FDA and have withheld more of it, we want to see all
3  of it, to see if any of the product that they're -- any of
4  the pure bulk Omeprazole that they're intending to use meets
5  the conditions, the limitations of Claim 1. That's just one
6  example. It's a very simple example.
7       And they have not said they'll give us all the
8  X-ray diffraction patterns. They simply said, anything that
9  has to do with the product they've sold in Europe has nothing
10  to do with the NDA product.
11       THE COURT: Well, see, I don't know what the FDA
12  is interested in when it comes to that particular limitation,
13  for instance.
14       Is the information for this kind of a product
15  submitted to the FDA -- does the product that's ultimately
16  approved by the FDA have to meet whatever limitations are
17  specified there in?
18       MR. KOCH: No. In fact, all the FDA is
19  interested in, and their submission to the FDA is an
20  NDA, it's not an ANDA. So basically, they have to show
21  bioequivalents and efficacy data. They have to show that
22  their product is equivalent to the OTC product.
23       The FDA doesn't care at all about patent claims.
24  It does not care at all. The patents only come in because
25  they're listed in the Orange Book, and to get the

Page 20

1  Hatch-Waxman action started, they had to certify to what
2  their patents -- the patents that are listed in the Orange
3  Book.
4       So they've certified to those patents. We did
5  not sue them on all of the patents, we only brought three
6  patents into the lawsuit. And, you know, it's possible that
7  they don't infringe those patents. It's quite possible that
8  burden of proof is on us, but we have to have the information
9  so we can make that proof, and that information is not given
10  to the FDA.
11       THE COURT: All right. So what you are telling
12  me is that, in order to test infringement, the materials
13  given to the FDA do not contain all of the information that
14  the ultimate -- all the specifications that the ultimate
15  product will have? I mean, is that basically what you are
16  telling me?
17       MR. KOCH: That's correct. What the FDA is
18  interested in is far more limited than what our patent
19  claims -- than what proofs we have to make to meet, to show
20  that there's patent infringement.
21       THE COURT: All right. Now, I don't know what a
22  master drug file entails, but we will assume for a moment
23  that what you are asking for, at least some of it, is
24  relevant.
25       Is there any middle ground? Are there any

Page 21

1  limitations that would make it less burdensome, in other
2  words, to strike a fairer balance between relevant
3  information and the kind of burden that defendants are
4  complaining about?
5       MR. KOCH: Well, I think we've tried to --
6  we're willing to limit it to things that are called for in
7  the claims, like the X-ray diffraction patterns, the
8  spectroscopy, that kind of test information, because that's
9  stuff we need to prove infringement of the claims.
10       So, you know, anything that's involved in the
11  claim language I think would be unquestionable we should be
12  entitled to, unless they say that the product in the U.S. is
13  completely different than the product -- than any of these
14  other products, and they have not said that. They've said
15  just the opposite. They said it is essentially the same
16  product.
17       THE COURT: All right. Let's hear from
18  defendants' counsel.
19       MR. AIRAN: Your Honor, I guess I disagree with
20  Mr. Koch on a few levels.
21       One is that -- let me just make the point
22  here: That the products at issue that they are talking
23  about outside the country have been sold for five years
24  commercially, so we're talking about a tremendous volume
25  of documents here, and you were asking for middle

Page 22

1  ground.
2        If there were such a middle ground that Mr.
3  Koch would be willing to retreat to, we would certainly
4  be willing to consider that.  But his document requests,
5  his demands, have been for everything:  Basically, give
6  us all the analyticals involving this product sold abroad,
7  and my understanding is that's a tremendous volume of
8  documents.
9        We've offered to give him documents that may
10  be necessary and helpful in this case, to the extent that
11  they believe they are, but he has shown no willingness to
12  pare back the request at all.
13        THE COURT:  Well, I will tell you what I'm going
14  to do.  Well, let's set this aside for a moment.
15        Are there any other discovery disputes
16  from plaintiff aside from this fairly large, significant
17  one?
18        MR. KOCH:  No, your Honor.  I think that's
19  it.
20        THE COURT:  Let's hear about defendants'
21  discovery concerns and then I might leave you alone in
22  the courtroom until you work this out, because you know
23  more about it than I do and I'm not confident I know how
24  to draw a line, and I think a line is appropriate some
25  way or other.

Page 23

1        MR. AIRAN:  Okay.
2        THE COURT:  I don't think either side has given
3  me a reason to agree with them in whole.
4        MR. AIRAN:  In several of plaintiffs' responses
5  to our document requests, they've identified protective
6  orders involving third parties and said we have information
7  that is responsive to these document requests, but we're not
8  going to give it to you because we're under protective orders
9  to third parties.
10        I can understand that.  You know, we're going
11  to agree on a protective order in this case, but what I'd
12  like is some type of log of document from the plaintiffs
13  that states, here are the documents we have.  These are
14  responsive, but we can't give them to you because of
15  third-party X, so that we can go to the third party, issue
16  subpoenas, if necessary, work with them, and not have the
17  plaintiff, or the plaintiffs stand in the way or enlist their
18  cooperation, if you will, in producing those.
19        We don't know what the protective orders say
20  in these other cases, and if there's a way in which
21  they can give that information to us or we can sign
22  up to protective orders in other cases, that would be
23  great.
24        So that's one issue.
25        A second issue is, and this is kind of on a

Page 24

1  global scale and then I have a few I'd like to drill down on,
2  is in their interrogatory responses, many of their responses
3  refer to Rule 33(d), and they basically say when we ask for
4  specific pieces of information from the plaintiffs, they say,
5  look at our documents.  We're going to produce some
6  documents.  And, by the way, we received the first batch of
7  documents from Astra, the plaintiffs, this morning as well.
8  But they've basically told you, go look at our document
9  production.
10        Specific inquiries.  For example, who does this
11  test?  Don't tell me about documents and tens of thousands of
12  pages, but please help me find that document that would help
13  me identify a particular individual.  And I see this in their
14  responses to Interrogatories 1 and 6, for example.
15        In Interrogatory 3, to be very specific, the
16  question that was asked simply wasn't answered.  What we
17  suspect, based on the prosecution history in this case, is
18  that plaintiffs were selling products that contained the
19  form of Omeprazole that's claimed in the '380 product or '380
20  patent prior to the critical date, so that's more than one
21  year before they filed for the patent, they were selling
22  product that contained this claimed formulation.  And what
23  we've asked them is, tell us all products that were sold in
24  the United States made with this form of Omeprazole.  The
25  response, after several objections, is:  As presently

Page 25

1  informed, none of the quote, unquote, bulk substance referred
2  to in the information disclosure statement was sold
3  commercially anywhere in the world.  But that wasn't the --
4  that wasn't the request that was asked, which was, identify
5  products sold in the United States that were made from the
6  same batch and production lot of that bulk substance.
7  They're just saying, well, the bulk substance wasn't sold in
8  the United States, but Priolosec was sold in the United
9  States, made by that bulk substance.
10        So their answer to interrogatory three is not
11  responsive like a response to that.
12        Interrogatory 4, they say on that one --
13  Interrogatory 4 goes to the testing that is used to
14  establish the presence or absence of subcoating in the
15  products that are going to be sold under this NDA.  That's
16  a key issue for the two patents that are expiring in April,
17  is there subcoating.
18        They said, well, there are prior decisions that
19  refer to testing and the testing methodologies used to
20  establish the presence or absence of subcoating.  That's not,
21  again, what we've asked.  We've asked:  What is the test used
22  to establish the presence or absence of subcoating in this
23  case in these products, and they said, well, that's a
24  nonexhaustive list.
25        We'd like a concrete answer from them:

Page 26

1  Tell us how you establish the presence or absence of
2  subcoating.
3          And then, on the fifth and final interrogatory,
4  your Honor, on that one -- that's similar to the fourth
5  interrogatory.
6          Finally, on the document requests, we have
7  several issues where the plaintiffs have simply refused to
8  produce any documents at all in response to our various
9  requests, and we believe these documents are indisputably
10 relevant and plaintiffs have several documents and they ought
11 to be produced.
12         In particular, Document Request 27 and 29 request
13 communications to -- to or from a company known as AII
14 Pharma, and in connection with that company, we believe that
15 they have produced the product that's claimed in the '380
16 patent, again, prior to the critical date or at least close
17 enough to the critical date that it's relevant, could be
18 prior art, could have inventorship issues, could have
19 inequitable conduct issues there.
20         We've asked them to give us the documents with
21 that company. They've basically said, those are not
22 relevant. We're not going to give them to you.
23         And there are a few issues of those. And then
24 in -- so that's Request 27 and 29.
25         And Request 33 and 34, again, we've asked them

Page 27

1  for all documents relating to isomeric forms of Omeprazole
2  sold or offered for sale in the United States prior to the
3  critical date of the '380 patent. AstraZeneca and its
4  scientists have written papers on this topic, isomeric
5  forms. They know exactly what we're talking about, but they
6  are basically saying these are undefined terms, so we're not
7  going to give you any documents there.
8          We think they know what they're talking about and
9  they ought to give us documents responsive to those
10 requests.
11         So those are our issues, your Honor.
12         THE COURT: All right.
13         MR. AIRAN: Thank you.
14         THE COURT: Thank you.
15         MR. KOCH: Well, I have a very simple response
16 to all of those. This is the first time I've heard of
17 any of those problems. We did not discuss those during
18 our meet and confer. The meet and confer was strictly
19 at our request and I don't remember any of them being
20 raised by Dexcel.
21         I don't think we have a problem with them.
22 We are in -- our rolling production is giving them a lot of
23 documents and the other issues we can discuss with them, but
24 that hasn't been raised before, so this is the first time
25 I've heard of each one of those points.

Page 28

1          THE COURT: All right. Well, this is what we're
2  going to do. I don't know, because I have not looked at the
3  motion to transfer. Was this the first-filed case?
4          MR. AIRAN: By one day, your Honor.
5          THE COURT: All right. Well, you know,
6  generally, in this court, particularly if we're the
7  first-filed case, we keep it. But I understand your
8  concern.
9          It does not seem to me to make sense to
10 take it to a court where the case has been dead in the
11 water. So this is what we're going to do.
12         MR. AIRAN: Your Honor, may I address this one
13 point?
14         THE COURT: No, because I'm working with you
15 here.
16         MR. AIRAN: Okay.
17         THE COURT: All right? At least let me finish
18 what my thought is.
19         Number one, we are going to have another
20 conference after is the after the first of the year,
21 and if there are any -- and we are going to make sure
22 that you all are moving forward to finish up the discovery
23 process as quickly as possible, and we will make sure that
24 the rest of discovery will be completed as efficiently as
25 possible.

Page 29

1          I generally don't entertain summary judgment
2  with a bench trial, because if there are disputed issues of
3  fact, generally, I want to hear people. I don't want to read
4  affidavits.
5          I guess what I am saying is that I am willing
6  to work with this case to move it more quickly than the
7  schedule, but that means you all need to work hard to
8  get this process of exchange of information moving along
9  at a pace that would make any Court ready and willing to
10 hear the merits. In other words, no Court is going to be
11 able to hear a case where the parties are still exchanging
12 information.
13         So regardless of where you are, you need to work
14 hard on this discovery.
15         With respect to protective orders, we have a
16 default rule in this court that if there's no protective
17 order in place, only outside, or only litigation counsel can
18 see the documents.
19         So it seems to me that if you need to move this
20 process further, and for some reason you can't get your own
21 protective order in place promptly, which seems astounding to
22 me after the months that you've been working at this case,
23 that I will issue an order, saying, we have a default rule.
24 If any third party objects to producing, to the production of
25 these documents, you can come to me and complain.

Page 30

1    So those sorts of issues are easily addressed if
2  you can't work them out.
3    With respect to just referring to documents,
4  I do require there to be some cooperation here. If you
5  refer to documents, you've got to identify what documents
6  are responsive to what discovery requests. I think that
7  is common courtesy, and if you are going to litigate
8  here, you've got to be as efficient as you expect the
9  Court to be.
10    So I guess we're not going to talk about the
11  defendants' specific requests, because the plaintiff
12  indicates, or plaintiff's counsel indicates that you really
13  have not worked through those on a personal basis.
14    So I leave you with two thoughts: Number one,
15  I'm going to help you push discovery forward so that no
16  matter what Court resolves this on the merits, you will be
17  ready.
18    Number two, I will look at the motion to
19  transfer. If the only real reason for transferring is to get
20  a speedier trial date if I deny the motion, I certainly will
21  work with you all as a matter of principle. It would be
22  difficult for me to grant motions like that, because that
23  would be inconsistent with my practice, but I will work with
24  you to try to get this resolved on a speedy basis.
25    With respect to plaintiffs' discovery problem,

Page 31

1  it seems to me there has to be a middle ground, and I'm not
2  confident you have been really talking to each other in a
3  productive way, but because you know more about how these
4  papers are kept and what papers are really essential, I am
5  going to leave you in the courtroom for 15 minutes, and I am
6  going to have you talk about it, and at least present me, at
7  least by the end of that -- if you have not agreed, you need
8  to at least present me with your best thoughts on it so I can
9  choose one or the other.
10    I don't find either of your positions
11  particularly compelling because I think there is always
12  a compromise that can be worked out. So I'm going to leave
13  you alone for 15 minutes. If you happen to work it out
14  before then, you can knock on my door.
15    (Recess taken at 5:10 p.m.)
16    - - -
17    (Proceedings resumed in the courtroom at 5:35
18  p.m.)
19    THE COURT: How are we doing?
20    MR. KOCH: Well, we may have something.
21    MR. AIRAN: Made some progress, I think.
22    MR. KOCH: Our issue is we don't know how much is
23  out there, what kinds of stuff that has been done, so what we
24  suggested is perhaps if Dexcel could give us a list of the
25  kinds of testings that they have done, then we could tell

Page 32

1  them, yes, we're interested in this, no, we're not interested
2  in that. And if they can't do that, as an alternative, maybe
3  we could have a 30(b)(6) deposition of somebody who could do
4  that and then we could make our request. And that seems to
5  be a way we could move this forward, compromise on the
6  breadth of our request.
7    We don't want five million pages of documents and
8  we don't want every analytical test that has been done on
9  every batch, but we don't know what kind of testing they do,
10  so what would be relevant? Maybe it's only the first testing
11  on the development of the particular product after the
12  injunction in Israel.
13    MR. AIRAN: And we're agreeable with that
14  approach. I think that moves us off this problem we have
15  right now.
16    THE COURT: Okay. All right. Why don't we set
17  up another date to meet. Obviously, if you're getting along
18  well and moving forward, you don't need to travel to
19  Wilmington, as beautiful as Wilmington is, but if you need
20  the opportunity to chat in the same courtroom, then you can
21  take advantage of it.
22    When after the first of the year might it be most
23  helpful?
24    MR. KOCH: My Blackberry is down at the desk,
25  your Honor.

Page 33

1    THE COURT: Oh, of course. That's what we hear
2  all the time.
3    Well, let me just tell you that I've had
4  trials that have gone away for one reason or another in
5  the beginning of January, so if you can come up with a
6  few dates, you can chat with my staff, and just set
7  something up. All right?
8    MR. KOCH: Okay.
9    MR. AIRAN: Okay.
10    MR. KOCH: We'll do that.
11    THE COURT: All right. In the meantime, I will
12  take a look at your motion and see how we can accomplish the
13  right thing the easiest way. All right?
14    MR. KOCH: Thank you, your Honor.
15    MR. AIRAN: Thank you, your Honor.
16    THE COURT: Take care, everyone. Have a good
17  holiday season.
18    MR. BLUMENFELD: Thank you. You, too.
19    THE COURT: You can leave while I'm getting out
20  of my old computer.
21    And, Valerie, thank you very much.
22    (Court recessed at 5:40 p.m.)
23    - - -
24
25

EXHIBIT 15

# MILBANK, TWEED, HADLEY & McCLOY LLP

### INTERNATIONAL SQUARE BUILDING

### 1850 K STREET, NW, SUITE 1100

### WASHINGTON, D.C. 20006

202-835-7500

FAX: 202-835-7586

**NEW YORK**
212-530-5000
FAX: 212-530-5219

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**PALO ALTO**
650-739-7000
FAX: 650-739-7100

**LONDON**
44-207-448-3000
FAX: 44-207-448-3029

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**FRANKFURT**
49-69-7593-7170
FAX: 49-69-7593-8303

**TOKYO**
813-3504-1050
FAX: 813-3595-2790

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

ROBERT J. KOCH
PARTNER
DIRECT DIAL NUMBER
202-835-7520
FAX
202-263-7520
E-MAIL: rkoch@milbank.com

January 31, 2007

**VIA UPS DELIVERY**

David M. Airan
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, Illinois  60601-6780

Re: *AstraZeneca AB, et. Al v. Dexcel, Ltd. et. al*, C.A. No. 06-358 (SLR)

Dear David:

Enclosed is a compact disk containing images bearing bates numbered documents POTC0003186 to POTC0004195.  At the present time, the documents produced herewith are for outside counsel only pursuant to United States District Court for the District of Delaware local rule 26.2.

Very truly yours,

Robert J. Koch

Enclosure
cc:  Richard D. Kirk, Esq. (w/o encl.)
     Jack B. Blumenfeld, Esq. (w/o encl.)
     Saumil S. Mehta, Esq. (w/o encl.)
     Robert F. Green, Esq. (w/o encl.)
     Edgar H. Haug, Esq. (w/o encl.)

EXHIBIT 16

# MILBANK, TWEED, HADLEY & McCLOY LLP

### INTERNATIONAL SQUARE BUILDING

### 1850 K STREET, NW, SUITE 1100

### WASHINGTON, D.C. 20006

———

### 202-835-7500

FAX: 202-835-7586

**NEW YORK**
212-530-5000
FAX: 212-530-5219

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**LONDON**
44-207-448-3000
FAX: 44-207-448-3029

**FRANKFURT**
49-69-71914-3400
FAX: 49-69-71914-3500

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**TOKYO**
813-3504-1050
FAX: 813-3595-2790

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

March 22, 2007

**VIA ELECTRONIC MAIL**
David M. Airan, Esquire
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, Illinois 60601-6780

Re: *AstraZeneca AB, et al. v. Dexcel, Ltd. et al.*, C.A. No. 06-358 (SLR)

Dear David:

In its March 21, 2007 letter, Dexcel makes a series of unfounded accusations against AstraZeneca, none of which is correct.

As an initial matter, AstraZeneca's statements to the Court were entirely accurate. AstraZeneca has produced all documents in its possession that it agreed to provide as responsive to Document Request #27. It did not withhold any such documents on confidentiality grounds. We confirmed that AstraZeneca had produced all such documents in our latest meet and confer, before the March 12 discovery conference. These documents bear bates ranges:

> POTC0000639-POTC0000658; POTC0000770-POTC0000815; POTC0000891-
> POTC0000963; POTC0000972-POTC0001003; POTC0001010-POTC0001033;
> POTC0001101-POTC0001109; POTC0001200-POTC0001258; POTC0001261-
> POTC0001262; POTC0001303-POTC0001317; POTC0001372-POTC0001383;
> POTC0001385-POTC0001398; POTC0001433-POTC0001438; POTC0001558-
> POTC0001561; POTC0001638-POTC0001643; POTC0001657-POTC0001675;
> POTC0001777-POTC0001788; POTC0001791-POTC0001795; POTC0002214-
> POTC0002231; POTC0002239-POTC0002252; POTC0002260-POTC0002261;

David M. Airan, Esq.
March 22, 2007
Page 2

POTC0002282-POTC0002314; POTC0002366-POTC0002415; POTC0002507-
POTC0002528; POTC0002910-POTC0002920; POTC0002956-POTC0002960;
POTC0003103-POTC0003172; POTC0003186-POTC0003505; POTC0003551-
POTC0003675; POTC0003676-POTC0003682; POTC0003685-POTC0003690;
POTC0003693-POTC0003766; POTC0003770-POTC0003901; POTC0003949-
POTC0003951; and POTC0004190-POTC0004200.

The issue we have is that Dexcel has attempted to circumvent the parties'
agreement by seeking to obtain directly from AAIPharma the production of agreements and
related non-technical correspondence between non-party AAIPharma and AstraZeneca that
AstraZeneca has consistently opposed. These documents are not relevant to the patent claims
and defenses in this action. We believed that Dexcel understood and accepted AstraZeneca's
position on production of these documents, and Dexcel has not contested AstraZeneca's position
in any of the many discovery conferences before the Court. Dexcel's attempt to now seek these
AstraZeneca documents through a third party is improper.

We now understand that AAIPharma also has responsive technical information in
its possession that is not in AstraZeneca's files. AstraZeneca does not oppose the production of
that information, provided that AstraZeneca has a chance to confirm prior to its production that it
does not include irrelevant AstraZeneca confidential information. Moreover, Dexcel should
provide a suitable amendment to the Protective Order to include AAIPharma, for signature by all
parties, so that these documents can be produced once this review is completed.

Sincerely,

Robert J. Koch

cc:   Robert F. Green, Esq.
      Saumil Mehta, Esq.
      Caryn Borg-Breen, Esq.
      Edgar H. Haug, Esq.
      Richard D. Kirk, Esq.
      Jack Blumenfeld, Esq.
      James C. Gumina, Esq.

EXHIBIT 17

Mar-22-07  05:25pm   From-MCDONNELL BOEHNEN HULBERT & BERGHOFF      +131291300002        T-122   P.02/03   F-180



**mbhb**   **McDonnell Boehnen Hulbert & Berghoff LLP**       300 South Wacker Drive      312 913 0001 phone
                                                              Chicago, Illinois 60606-6709   312 913 0002 fax
                                                              www.mbhb com

March 22, 2007

**Sent Via Facsimile**

David M. Airan
Leydig, Voit & Mayer, LTD.
Two Prudential Plaza
Suite 4900
Chicago, IL 60601-6731

Re:    AstraZeneca AB et al. v. Dexcel Ltd. et al. - Civil Action No. 06-358

Dear David:

         As is obvious from a reading of the letter most of the issues raised therein have
nothing to do with aaiPharma.  We are wholly unaware and not involved in any of the events
you recite with respect to your efforts to obtain "highly relevant documents relating to
aaiPharma."  Indeed, your letter indicates that aaiPharma was invited to appear if it had
confidentiality concerns, yet I am unaware that any such invitation was ever relayed to
aaiPharma.  In any case, aaiPharma has not unreasonably delayed any discovery.
aaiPharma has been diligent in responding to your subpoena in an appropriate fashion.

         Having said that, you have mischaracterized my letter of March 21, 2007.  I have
not refused to produce "any documents due to Plaintiff's confidentiality concerns."  Indeed,
my letter is clear that there are only certain documents – "documents related to the
agreement and any document that may contain Astra confidential information" to which we
have taken the position that we cannot produce without Astra's permission.  As to the other
documents, we stand ready, willing and able to produce them once there are some written
assurances, such as a protective order or a confidentiality agreement, that aaiPharma's
confidential information will be protected.  As I noted in the last sentence of my letter, I
requested that you prepare such an agreement should an appropriate protective order not
exist in the case.  I have not seen any confidentiality agreement from you.

Mar-22-07 05:26pm   From-MCDONNELL BOEHNEN HULBERT & BERGHOFF       +13120I300002        T-122  P.03/03  F-190

I trust this clarifies the situation with respect to aaiPharma. As to your disputes with AstraZeneca and its lawyers, I have no position as I have no knowledge of the underlying facts.

Sincerely,

James C. Gumina
312 913 2116 direct
gumina@mbhb.com

cc:    Robert J. Koch, Esq.
       Jack Griem, Jr.
       Steve Fontana

# EXHIBIT 18

-----Original Message-----
From: Koch, Robert
Sent: Wednesday, March 28, 2007 8:02 AM
To: 'dairan@leydig.com'; 'rgreen@leydig.com'
Cc: Taylor, Errol; Griem, Jack
Subject: Various Issues in Recent Letters

Gentlemen:
I am out of the country this week and suggest a meet and confer Monday in Wilminton before the status conference. In the meantime, if we can work a resolution of any issues, all the better.
Regards,
Bob

# EXHIBIT 19

**From:** Scheibeler, John
**Sent:** Monday, March 26, 2007 6:08 PM
**To:** 'smehta@leydig.com'
**Cc:** Morioka, Leslie
**Subject:** AstraZeneca AB et al. v. Dexcel Ltd. et al., CV 06-358-SLR (D. Del.)

Dear Saumil,

This is to confirm our telephone conversation regarding the subpoenas that your firm has served on John Genova and on White & Case LLP.

Mr. Genova will be represented by Milbank, Tweed, Hadley & McCloy LLP ("Milbank") in connection with this subpoena. Mr. Genova is unavailable for a deposition on March 30, 2007. Please contact Jack Griem or Claire Gilmartin at Milbank regarding the subpoena served on Mr. Genova and the scheduling of his deposition.

Regarding the subpoena served on White & Case LLP, we will need and therefore request an extension to April 13, 2007, to provide our written objections and responses to the subpoena. As I mentioned to you during our call, we propose responding to the deposition topics in writing in lieu of presenting a witness. You agreed to consider this proposal and get back to us.

In the meantime, please contact me if you have any questions.

Sincerely,

John Scheibeler

John Scheibeler
White & Case, LLP
1155 Avenue of the Americas
New York, NY 10036-2787
Phone 212-819-8830
Fax 212-354-8113
Mobile 516-343-4680
Email jscheibeler@whitecase.com

This e-mail communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this e-mail in error by replying to the e-mail or by telephoning (212) 819-8200 during the hours of 9:30am - 5:30pm (EST). Any other time please call (212) 819-7664. Please then delete the e-mail and any copies of it. Thank you.

# EXHIBIT 20

# MILBANK, TWEED, HADLEY & McCLOY LLP

### INTERNATIONAL SQUARE BUILDING

**1850 K STREET, NW, SUITE 1100**

**WASHINGTON, D.C. 20006**

202-835-7500

FAX: 202-835-7586

ROBERT J. KOCH
PARTNER
DIRECT DIAL NUMBER
202-835-7520
FAX
202-263-7520
E-MAIL: rkoch@milbank.com

NEW YORK
212-530-5000
FAX: 212-530-5219

LOS ANGELES
213-892-4000
FAX: 213-629-5063

PALO ALTO
650-739-7000
FAX: 650-739-7100

LONDON
44-207-448-3000
FAX: 44-207-448-3029

MUNICH
49-89-25559-3600
FAX: 49-89-25559-3700

FRANKFURT
49-69-7593-7170
FAX: 49-69-7593-8303

TOKYO
813-3504-1050
FAX: 813-3595-2790

HONG KONG
852-2971-4888
FAX: 852-2840-0792

SINGAPORE
65-6428-2400
FAX: 65-6428-2500

March 30, 2007

**BY ELECTRONIC MAIL**

Robert F. Green
Leydig, Voit & Mayer, Ltd.
180 N. Stetson Avenue
Two Prudential Plaza, Suite 4900
Chicago, Illinois  60601-6780

Re:    <u>AstraZeneca v. Dexcel, Ltd., CA No. 06-358 (SLR)</u>

Dear Bob:

As you were informed by White & Case, LLP, Mr. Genova will be represented by Milbank in regards to Dexcel's subpoena in the above captioned case.  Mr. Genova is unavailable for a deposition on March 30, 2007.  We suggest discussing alternative dates during a deposition scheduling meeting at a mutually convenient time.

We furthermore write to request an extension to April 13, 2007 to provide written objections and responses to the subpoena.

Very truly yours,

Robert J. Koch/En

Robert J. Koch

cc:    David Airan, Esq.
       Saumil Mehta, Esq.
       Caryn Borg-Breen, Esq.
       Richard D. Kirk, Esq.
       Edgar H. Haug, Esq.
       Jack B. Blumenfeld, Esq.

# EXHIBIT 21

# MILBANK, TWEED, HADLEY & McCLOY LLP

## INTERNATIONAL SQUARE BUILDING

**1850 K STREET, NW, SUITE 1100**

**WASHINGTON, D.C. 20006**

---

202-835-7500

FAX: 202-835-7586

**NEW YORK**
212-530-5000
FAX: 212-530-5219

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**PALO ALTO**
650-739-7000
FAX: 650-739-7100

**LONDON**
44-207-448-3000
FAX: 44-207-448-3029

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**FRANKFURT**
49-69-7593-7170
FAX: 49-69-7593-8303

**TOKYO**
813-3504-1050
FAX: 813-3595-2790

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

ROBERT J. KOCH
PARTNER
DIRECT DIAL NUMBER
202-835-7520
FAX
202-263-7520
E-MAIL: rkoch@milbank.com

March 29, 2007

**VIA ELECTRONIC MAIL**

Robert F. Green, Esq.
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza
180 N. Stetson Avenue, Suite 4900
Chicago, Illinois 60601-6780

Re: *AstraZeneca AB, et. al v. Dexcel, Ltd. et. al*, C.A. No. 06-358 (SLR)

Dear Bob:

We have reviewed Cipla's recent document production in light of Cipla's responses to AstraZeneca's document requests and subsequent communications on these issues. We presume you will answer for the completeness of Cipla's responses since the discovery responses were signed by counsel for Dexcel. The following list details the deficiencies we observe in Cipla's responses:

## General Objections

**1. Protective Order:** Cipla states that its confidential documents will be governed by local rule 26.2, but Cipla, like any other third party, should join and abide by the Protective Order in this case. We request that Cipla sign the Protective Order.

**2. Affiliates of Cipla:** Cipla objects to producing any documents from its affiliates. Cipla also objects to providing documents that show its corporate or management structure without further narrowing by AstraZeneca. Since AstraZeneca has no information regarding Cipla's organizational structure, AstraZeneca cannot know the scope of documents shielded by Cipla's responses. We request that you produce documents from Cipla's affiliates, or at least provide information regarding Cipla's organizational structure without further narrowing of the requests.

Robert F. Green, Esq.
March 29, 2007
Page Two

**3. Inducement of Infringement:** Cipla states that discovery regarding the allegation of inducement "has been effectively stayed." Please clarify this statement, as AstraZeneca is not aware of any issues that have been stayed in this case. Indeed, if discovery has been stayed, the entire case should be stayed.

**4. Agreement with Plaintiffs:** Cipla suggests in its general objections, and in multiple responses, that it has an "agreement" with Plaintiffs. AstraZeneca has not made any such agreement with Cipla. Please identify the agreement to which Cipla refers.

Responses

**5. Communications Relating to DMF 12827 (Request Nos. 5-7):** Cipla states that communications with Dexcel and third parties, such as Byron Chemical and Andrx, would not lead to discovery of admissible evidence. Dexcel's invalidity defense, however, is solely based on communications with Byron and Andrx. Communications regarding the bulk material as disclosed in DMF 12827 are relevant and important to issues of infringement and validity of the '380 patent. We request that you produce all documents relevant to these requests.

**6. Communications Relating to Omeprazole (Request No. 10):** Cipla intends to narrow the scope of communications to include communications only concerning omeprazole used in NDA 22-032. Communication regarding any omeprazole is relevant, however, especially since Cipla and Dexcel rely on communications with Andrx and others which are unrelated to NDA 22-032 for its validity defense. We request that you produce all relevant documents without further narrowing of the request.

**7. Agreements/Communications with Byron and Andrx (Request Nos. 14-15):** Cipla intends to narrow its responses to documents "relied upon as prior art to the '380 patent in the context of Cipla's omeprazole." As explained above, however, Dexcel's invalidity defense is solely based on communications with Byron and Andrx. The communications and agreements surrounding the relationship of the parties involved are relevant to the merits of this case. We request that you produce all communications and agreements commensurate with the scope of these requests.

**8. Complete Production re Omeprazole Process (Request Nos. 26-27):** Cipla states that it will only produce documents relating to its manufacturing process described in DMF 12827, and of those documents, Cipla intends to produce only "representative" documents. This narrow selection excludes research and development relating to the determination of 5-methoxy and/or 6-methoxy isomer content or the presence of Form A in Cipla's omeprazole and would exclude documents regarding the alleged prior art omeprazole sent to Andrx. We request that you produce all documents relevant to these requests.

Robert F. Green, Esq.
March 29, 2007
Page Three

**9. Complete Production re Omeprazole Batches (Request Nos. 28-29):** Cipla indicates that it will produce only "representative" documents relating to omeprazole batches made by Cipla since 1996. AstraZeneca is entitled to know, however, whether *any* omeprazole batch infringes the '380 patent. Producing merely "representative" documents necessarily excludes information about potentially infringing omeprazole batches. We request that you produce all documents relevant to these requests.

**10. XRPD Data (Request Nos. 53-55):** Cipla contends that the scope of these requests is overbroad and should be narrowed after consultation with AstraZeneca. The requests, however, seek information critical to the issues of validity, infringement, and willful infringement in this case and as such, AstraZeneca sees no reason to narrow these requests and Cipla has not suggested a reason why they are overly broad. We request that you produce all relevant documents without further narrowing of the requests.

We look forward to your response to the points raised above and we intend to address these issues at our meet and confer on Monday, April 2.

Very truly yours,

Robert J. Koch

/AF

cc:    David M. Airan, Esq.
       Edgar H. Haug, Esq.
       Richard D. Kirk, Esq.
       Jack B. Blumenfeld, Esq.

# EXHIBIT 22

# MILBANK, TWEED, HADLEY & McCLOY LLP

### INTERNATIONAL SQUARE BUILDING

**NEW YORK**
212-530-5000
FAX: 212-530-5219

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**PALO ALTO**
650-739-7000
FAX: 650-739-7100

**LONDON**
44-207-448-3000
FAX: 44-207-448-3029

**1850 K STREET, NW, SUITE 1100**

**WASHINGTON, D.C. 20006**

———

202-835-7500

FAX: 202-835-7586

———

ROBERT J. KOCH
PARTNER
DIRECT DIAL NUMBER
202-835-7520
FAX
202-263-7520
E-MAIL: rkoch@milbank.com

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**FRANKFURT**
49-69-7593-7170
FAX: 49-69-7593-8303

**TOKYO**
813-3504-1050
FAX: 813-3595-2790

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

April 5, 2007

## VIA ELECTRONIC MAIL

Robert F. Green, Esq.
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza
180 N. Stetson Avenue, Suite 4900
Chicago, Illinois 60601-6780

Re: *AstraZeneca AB, et. al v. Dexcel, Ltd. et. al*, C.A. No. 06-358 (SLR)

Dear Bob:

We write to follow up on the meet and confer held April 2, 2007, regarding the problems with Dexcel's and Cipla's discovery responses identified in Astra's letters of March 29, 2007. You agreed to take the steps below and to get back to AstraZeneca as soon as possible. Where the parties reached an agreement to resolve an issue, that agreement is noted below. Otherwise, all of the issues raised on AstraZeneca's March 29 letters remain outstanding.

**Cipla's Role:** Cipla's refusal to participate in discovery in this action like a party is unreasonable. Cipla received the Amended Complaint AstraZeneca filed, and if it is not already a party will become one in due course. In order for AstraZeneca to be sure it has received all of the discovery it is entitled to receive, Cipla's discovery must be subject to Court supervision and the Federal Rules. At the meet and confer, you refused to agree that Cipla would provide document discovery as if it were a party pursuant to Rule 34 of the Federal Rules of Civil Procedure, and you also refused to agree that Cipla would be subject to the Court's jurisdiction for discovery purposes. You further refused to produce Cipla documents under the Protective Order, because you said that Cipla did not want its documents to be accessible to in-house lawyers otherwise entitled to see Confidential – Attorney's Eyes Only material. But Cipla, like any other party or third party, should join and abide by the Protective Order in this case. In addition, your improper limitations prevent us from consulting with experts or conferring with our client with regard to Cipla discovery even though Dexcel's entire validity defense is based

Robert F. Green, Esq.
April 5, 2007
Page Two

on Cipla technical documents. This position effectively precludes us from undertaking any real consideration of the Cipla information.

You did agree to check with your client Cipla on two points: (1) whether, as an interim measure, Cipla would provide discovery at this time like a party subject to the Court's supervision and (2) whether Cipla would agree to let Judge Robinson resolve now whether Cipla must produce and mark documents consistently with the confidentiality designations provided in the agreed Protective Order. We look forward to hearing from you on these two points as soon as possible.

**Batch Records (Dexcel Request Nos. 33-35, Cipla Request Nos. 28-29) and Certificates of Analysis (Dexcel Request Nos. 33-35, 42):** You agreed to produce all batch records and certificates of analysis relating to omeprazole used in Dexcel's U.S. product. You refused to agree to produce all of the batch records and certificates of analysis for Cipla and Dexcel omeprazole batches used in the research and development of NDA 22-032 and/or DMF 12827. We have identified at least the following Cipla batches that were so used: F10035, F11132, F20412, F20976, F21201, F40615, F40618, F50071, F50440, F61332, FX0323, FX1043, FX1066, FX1231, FX1232, FX1233, FX6107, FX6157, FX6311, FX7061, FX7246, FX7268, FX8128, FX9012, FX9311, FX9329, FX9566, FX9593. We have also identified the following additional relevant batches: F20789, F20897, F20453, F40624, F40615, F40618, F90165, F80453, F80463, F90105, F90443, FX9274, FX0323, FX90458, FX9566, FX1066, FX9329, FX8212, FX8213, FX7341, FX6346, FX31213, FX31214, FX31215. These batch numbers were easily identified from a review of Dexcel's NDA and other Dexcel production and Cipla's DMF production. We ask again that you immediately produce these documents, or identify by bates number where they are in the production.

**XRPD and Raman Data (Dexcel Request Nos. 36, 40, 88; Cipla Request Nos. 53-55):** You said you did not know if this data existed. We ask again that you check to see whether Cipla has any such analytical testing, including XRPD, Raman and solid state NMR testing of omeprazole, including the omeprazole Cipla and Dexcel batches used in the research and development of NDA 22-032 and/or DMF 12827. Such data would include the data referred to in the Cipla DMF at CIP0000552 and in DPT136715-136749. This information is directly relevant to whether Form A or Form B is produced by any particular process. We explained that these requests include any documents relating to the crystal structure of the omeprazole made by Cipla. You agreed to take a closer look at these requests and get back to us. Please immediately produce **all** such data and testing in the possession of Dexcel or Cipla. In addition, please immediately produce any electronic copies of such data, in any format.

**FDA Correspondence (Dexcel Request Nos. 1-8, 76-78):** You promised to check on whether there were any communications with the FDA relating to NDA 22-032, including any communications sent or received after December 2006.

Robert F. Green, Esq.
April 5, 2007
Page Three

**Importation of NDA Product (Dexcel Request Nos. 12, 48):**  You promised to promptly produce all chain of custody documents for Dexcel NDA products imported into the U.S., including but not limited to the samples that have been provided to AstraZeneca. You also promised to check to see whether Dexcel had imported any other NDA product into the U.S. Please produce the chain of custody documents immediately and verify that we have received all documents relating to the importation into the U.S. of the Dexcel NDA product.

**Completeness of Cipla DMF (Dexcel Request Nos. 17-18, Cipla Request Nos. 5-7):** Please immediately produce a complete copy of DMF 12827, including any supplements, annual reports or other communications with the FDA regarding the DMF. You said at the meet and confer you thought that a complete copy has been produced, but that is plainly not the case. For example, many documents in the DMF indicate that they  supercede earlier versions of materials submitted to the FDA that have not been produced. In addition, we have located Annual Updates only from 2005 and later. We ask that you produce a complete chronological record of all communications with Byron and the FDA relating in any way to DMF 12827. You agreed in our call to produce any DMF documents you find. Please let us know when we will receive these key documents.

**Documents Exchanged with Experts (Dexcel Request Nos. 39-45):** You agreed to produce all of the documents considered by Dr. Domb in connection with his recently served "expert report." You said you expected to receive these documents in "short order." Please immediately produce these documents.

**Attempts to Design Around Patents-in-suit (Dexcel Request No. 57):** We asked that you gather and identify all documents relating to the development of the Dexcel NDA product, including any documents relating to an alleged design-around of the patents in suit. You said you have produced all of the "background" documents, but we have not located any such documents (as we understand that term) in Dexcel's production. You agreed to take our request for production of all design around and development documents under advisement. Please immediately produce these documents, or identify by bates number where they are in the production.

**Multiple Dosages (Dexcel Request No. 82):** You said you were not aware of any such documents. Taking your representation as confirmation that you have performed a reasonable search for such documents, AstraZeneca agrees that this request has been adequately answered.

**Cipla General Objections:** We asked that Cipla produce documents showing its corporate structure, so we could understand the scope of Cipla's general objection to producing any documents from its affiliates. We explained that we wanted the information to assess whether relevant documents may found in entities controlled by or otherwise affiliated with Cipla. You refused to provide this information.  Please let us know whether you intend to inform us as to which Cipla facilities and companies will be searched for responsive documents.

Robert F. Green, Esq.
April 5, 2007
Page Four

We also asked that you state whether Cipla was withholding documents based on a general objection to documents relevant to AstraZeneca's allegation that Cipla has induced Dexcel's infringement. You said you hadn't reviewed any documents that might be subject to this objection, as Cipla had produced only documents from its DMF. You said that if you did withhold any documents based on this objection, you would so inform AstraZeneca.

**Communications Relating To Cipla's DMF (Cipla Request Nos. 5-7) and with Byron and Andrx (Cipla Requests Nos. 14-15):** You said Cipla would produce communications relating to the DMF only to the extent they relate to "prior art issues." We explained that this restriction is unacceptable, as any communications with a third party relating to this DMF, including Byron Chemical and Andrx are relevant and important to issues of infringement, and willful infringement, not just validity. You agreed to check with Cipla on producing all communications with Andrx and other third parties. Please immediately produce all documents responsive to these requests.

**Communications Relating to Omeprazole (Cipla Request No. 10):** You said that Cipla intends to respond in accordance with its objections, and narrow the scope of its production to communications only concerning omeprazole used in NDA 22-032. We explained that any communication regarding any omeprazole is relevant to the issues of Dexcel's infringement and the validity of the '380 patent. Moreover, AstraZeneca has alleged infringement under 35 U.S.C. § 271(a), and is entitled to all such communications relating to any potential infringement of the patent by Cipla and Dexcel . We ask again that you produce all relevant documents without further narrowing of the request. Also, *please inform us immediately if you intend to limit Cipla's (or Dexcel's) discovery based on an interpretation of the Amended Complaint that does not include AstraZeneca's § 271(a), (b), (c) and (g) infringement allegations.*

**Complete Production re Omeprazole Process (Cipla Request Nos. 26-27):** We explained that Cipla must produce all documents relating to the development of the omeprazole manufacturing processes reflected in its DMF. You said you intended to limit your production to the objections in your written responses, i.e., to "representative" batches made since 1996. This restriction is unacceptable and unreasonable. We request that you produce all documents relevant to these requests.

Very truly yours,

Robert J. Koch

cc:    David M. Airan, Esq.
       Edgar H. Haug, Esq.
       Richard D. Kirk, Esq.
       Jack B. Blumenfeld, Esq.

# EXHIBIT 23

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ASTRAZENECA AB,                          )
AKTIEBOLAGET HÄSSLE,                     )
KBI-E, INC., KBI INC., and              )
ASTRAZENECA LP,                          )
                        Plaintiffs,      )     C.A. No. 06-358 (SLR)
                                         )
            v.                           )
                                         )
DEXCEL LTD., DEXXON LTD.,                )
DEXCEL PHARMA TECHNOLOGIES              )
LTD., and DEXCEL PHARMA                  )
TECHNOLOGIES,                            )
                        Defendants.      )

### PLAINTIFF ASTRAZENECA'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS ON THE MERITS (NOS. 1-75)

Plaintiffs, AstraZeneca AB, Aktiebolaget Hässle, KBI Inc., KBI-E Inc. and AstraZeneca LP (collectively "AstraZeneca"), in accordance with Rule 34 of the Federal Rules of Civil Procedure and the Joint Scheduling Order, request that Defendants Dexcel, Ltd., Dexxon, Ltd., Dexcel Pharma Technologies Ltd., and Dexcel Pharma Technologies (collectively "Dexcel") provide written responses and produce documents and things corresponding to these Requests for inspection and copying by AstraZeneca, within thirty days of service, at the Office of Milbank, Tweed, Hadley & McCloy LLP, 1850 K Street, N.W., Washington, D.C., 2006.

**A.**         **Instructions**

A.         Electronic records and computerized information must be produced in an intelligible format or together with a description of the system from which it was derived sufficient to render the materials intelligible.

and transported under said proper conditions from the date of manufacture to the date of production.

## DOCUMENT REQUEST NO. 31

50 grams (10 samples, 5 grams each) of each of the ingredients used to make the Dexcel NDA Product, including documents sufficient to establish the chain of custody of said ingredients from the date of manufacture to the date of production; including also documents detailing the proper conditions for storage and transportation of said ingredients and documents certifying that said ingredients have been stored and transported under said proper conditions from the date of manufacture to the date of production.

## DOCUMENT REQUEST NO. 32

240 tablets certified by Dexcel as being representative of the Dexcel NDA Product in final form including documents sufficient to establish the chain of custody of said tablets from the date of manufacture to the date of production; including also documents detailing the proper conditions for storage and transportation of said tablets and documents certifying that said tablets have been stored and transported under said proper conditions from the date of manufacture to the date of production.

## DOCUMENT REQUEST NO. 33

All batch records for each Dexcel NDA Product manufactured to date by or on behalf of Dexcel.

**DOCUMENT REQUEST NO. 34**

All documents and things Relating to each component, solvent, catalyst, ingredient and each step in any process for the manufacture of omeprazole by or on behalf of Dexcel.

**DOCUMENT REQUEST NO. 35**

All documents and things Relating to each step in any process for the manufacture of the Dexcel NDA Product by or on behalf of Dexcel.

**DOCUMENT REQUEST NO. 36**

All documents and things Related to results or data (including electronic results and data) concerning any testing, studies or analyses of the structure, identity or solid state properties of any omeprazole used in the Dexcel NDA Product, including but not limited to any testing, studies or analyses of the crystallinity, crystal form or crystal structure of said omeprazole; the chemical purity of said omeprazole; and any testing, studies or analyses using or relying on fourier transform infrared spectroscopy, Raman spectroscopy, x-ray powder diffraction and the like of said omeprazole.

**DOCUMENT REQUEST NO. 37**

All documents and things Related to the validation, testing and quality assurance of any omeprazole and all other ingredients used in the Dexcel NDA Product.

**DOCUMENT REQUEST NO. 38**

All documents and things Relating to any bioequivalence of a Dexcel NDA Product and any PRILOSEC® formulation disclosed in the NDA for PRILOSEC® (NDA No. 019810) and any PRILOSEC OTC® formulation disclosed in the NDA for PRILOSEC OTC® (NDA No. 021229).

**DOCUMENT REQUEST NO. 39**

All documents and things Relating to any comparison between or among: i) PRILOSEC®; ii) PRILOSEC OTC®; iii) any Prior Art formulation or disclosure relied upon by Dexcel; iv) and any actual or contemplated formulation of omeprazole, including but not limited to comparisons of chemical, physical, optical, pharmaceutical, and/or pharmacological properties, including without limitation physical structure, crystallinity, crystal structure, tautomeric content, chemical composition, efficacy, potency, toxicity, storage stability, dissolution, coloration, discoloration, density, particle size, moisture content, degradation profile, release profile, resistance to dissolution, and bioavailability.

**DOCUMENT REQUEST NO. 40**

All documents and things Relating to any testing or analysis conducted on omeprazole by Dexcel or on behalf of Dexcel or otherwise available to Dexcel.

**DOCUMENT REQUEST NO. 41**

All documents and things Relating to any testing or analysis conducted on PRILOSEC®, PRILOSEC OTC®, or any alleged prior art formulation of omeprazole.

**DOCUMENT REQUEST NO. 42**

All documents and things Relating to any testing or analysis of the Dexcel NDA Product by Dexcel or on behalf of Dexcel or otherwise available to Dexcel.

**DOCUMENT REQUEST NO. 43**

All documents and things Relating to any testing or analysis of the Dexcel NDA Product, or any material or intermediate Relating to the Dexcel NDA Product that addresses any issue Relating to infringement of any Patent-in-Suit.

18

**DOCUMENT REQUEST NO. 44**

All documents and things Relating to any core, separating layer and/or enteric layer of the Dexcel NDA Product.

**DOCUMENT REQUEST NO. 45**

All documents and things Relating to any testing or analysis establishing whether the Dexcel NDA Product does or does not contain a subcoating.

**DOCUMENT REQUEST NO. 46**

All documents and things Relating to any property of omeprazole, including but not limited to the physical structure, chemical purity, optical purity, chemical composition and structure of any omeprazole formulation, solid state properties, crystallinity, water content, solvent content, potency, and bioavailability.

**DOCUMENT REQUEST NO. 47**

All documents and things Relating to any property of the Dexcel NDA Product, including but not limited to the physical structure, chemical purity, optical purity, chemical composition and structure of any omeprazole formulation, solid state properties, crystallinity, water content, solvent content, potency, and bioavailability.

**DOCUMENT REQUEST NO. 48**

All documents and things Relating to the importation into the United States; use, sale, offer for sale; purchase and preparation of any omeprazole product or material by or on behalf of Dexcel.

**DOCUMENT REQUEST NO. 49**

All documents and things Relating to any communication with any actual, expected or potential vendors or suppliers of omeprazole.

19

**DOCUMENT REQUEST NO. 44**

All documents and things Relating to any core, separating layer and/or enteric layer of the Dexcel NDA Product.

**DOCUMENT REQUEST NO. 45**

All documents and things Relating to any testing or analysis establishing whether the Dexcel NDA Product does or does not contain a subcoating.

**DOCUMENT REQUEST NO. 46**

All documents and things Relating to any property of omeprazole, including but not limited to the physical structure, chemical purity, optical purity, chemical composition and structure of any omeprazole formulation, solid state properties, crystallinity, water content, solvent content, potency, and bioavailability.

**DOCUMENT REQUEST NO. 47**

All documents and things Relating to any property of the Dexcel NDA Product, including but not limited to the physical structure, chemical purity, optical purity, chemical composition and structure of any omeprazole formulation, solid state properties, crystallinity, water content, solvent content, potency, and bioavailability.

**DOCUMENT REQUEST NO. 48**

All documents and things Relating to the importation into the United States; use, sale, offer for sale; purchase and preparation of any omeprazole product or material by or on behalf of Dexcel.

**DOCUMENT REQUEST NO. 49**

All documents and things Relating to any communication with any actual, expected or potential vendors or suppliers of omeprazole.

**DOCUMENT REQUEST NO. 56**

All documents and things Relating to the decision by Dexcel to file an NDA for the Dexcel NDA Product, and documents and things considered in that decision.

**DOCUMENT REQUEST NO. 57**

All documents and things Relating to any attempt by Dexcel to design around or to otherwise avoid any claim of one or more of any Patent-in-Suit or any foreign counterpart to any Patent-in-Suit.

**DOCUMENT REQUEST NO. 58**

All documents and things Relating to the meaning of any claim limitation of any Patent-in-Suit or any foreign counterpart to any Patent-in-Suit.

**DOCUMENT REQUEST NO. 59**

All documents and things Relating to any patent, patent application, supplemental protection certificate, and patent term extension disclosing, claiming or Relating to omeprazole owned by or licensed to Dexcel.

**DOCUMENT REQUEST NO. 60**

All documents and things Relating to the patentability or validity of any patent disclosing, claiming or Relating to omeprazole owned by or licensed to Dexcel.

**DOCUMENT REQUEST NO. 61**

All documents and things Relating to any prior public use or sale within the meaning of 35 U.S.C. §102(b) that may constitute Prior Art to any Patent-in-Suit.

**DOCUMENT REQUEST NO. 62**

All documents and things relating to any Prior Art to any Patent-in-Suit.

## DOCUMENT REQUEST NO. 74

All documents Relating to Dexcel's policies for maintaining, destroying, updating, or retaining documents or files, whether in its computer system, email system, telephone system, or paper copies.

## DOCUMENT REQUEST NO. 75

All documents and things identified, referred to, or relied upon in providing Fed. R. Civ. P. 26(a)(1) disclosure and in responding to AstraZeneca's interrogatories served in this action.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_Karen Jacobs Louden_

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
*Attorney for Plaintiffs AstraZeneca AB,
Aktiebolaget Hässle, KBI-E, Inc., KBI Inc., and
AstraZeneca LP*

OF COUNSEL:

Errol B. Taylor
Robert J. Koch
Jay I. Alexander
Enrique D. Longton
MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street NW
Washington, DC 20006
(202) 835-7500

August 17, 2006
533289

24

# EXHIBIT 24

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ASTRAZENECA AB,                          )
AKTIEBOLAGET HÄSSLE,                      )
KBI-E, INC., KBI INC., and               )
ASTRAZENECA LP,                          )
                                         )
                    Plaintiffs,          )
                                         )
        v.                               )    C.A. No. 06-358 (SLR)
                                         )
DEXCEL LTD., DEXXON LTD.,                 )
DEXCEL PHARMA TECHNOLOGIES               )
LTD.,  and DEXCEL PHARMA                  )
TECHNOLOGIES,                            )
                                         )
                    Defendants.          )

**PLAINTIFF ASTRAZENECA'S THIRD SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS ON THE MERITS (NOS. 92-95)**

Plaintiffs, AstraZeneca AB, Aktiebolaget Hässle, KBI Inc., KBI-E Inc. and AstraZeneca

LP (collectively "AstraZeneca"), in accordance with Rule 34 of the Federal Rules of Civil

Procedure and the Joint Scheduling Order, request that Defendants Dexcel, Ltd., Dexxon, Ltd.,

Dexcel Pharma Technologies Ltd., and Dexcel Pharma Technologies (collectively "Dexcel")

provide written responses and produce the requested documents and things for inspection and

copying by AstraZeneca, within thirty days of service, at the Office of Milbank, Tweed, Hadley

& McCloy LLP, 1850 K Street, N.W., Washington, D.C., 2006.  Documents and things in the

custody or possession of any counsel to Dexcel are deemed to be in the custody, possession or

control of Dexcel.

N.    "Omeprazole component" means any omeprazole-containing layer, zone, sublayer, subcoating, core, constituent or portion of an omeprazole formulation.

O.    "Dexcel NDA Product" means any drug product described in Dexcel's New Drug Application No. 22-032, including but not limited to the 20 mg omeprazole delayed-release tablets described therein.

P.    "Prilosec®" means any Omeprazole product sold in the United States under approved New Drug Application No. 019810.

Q.    "Prilosec OTC®" means any Omeprazole magnesium product sold in the United States under approved New Drug Application No. 021229.

R.    "Cipla" means Cipla, Ltd. and its past or present officers, directors, employees, shareholders, representatives, agents, attorneys and outside consultants, as well as any past or present predecessors, successors, parents, subsidiaries, or affiliates thereof, whether domestic or foreign and whether owned in whole or in part.

## REQUESTS

### DOCUMENT REQUEST NO. 92:

All documents and things relating to any testing or analysis of any omeprazole formulation or product containing omeprazole sold or distributed by or on behalf of Dexcel anywhere in the world after June 22,1999, including but not limited to any testing or analysis relating to the presence or absence of a subcoating, an enteric coating, any excipients, and/or the crystalline or chemical form of omeprazole contained in such formulation or product.

### DOCUMENT REQUEST NO. 93:

All documents and things relating to any product, process, or formulation described or claimed or attempted to be claimed in PCT Publication No. WO 2000/78284, including but not

limited to any correspondence, testing or analyses related to such product, process or formulation.

**DOCUMENT REQUEST NO. 94:**

All documents and things relating to any testing or analysis of any product or formulation described or claimed or attempted to be claimed in PCT Publication No. WO 2000/78284 that was made, sold or distributed by or on behalf of Dexcel anywhere in the world after June 22,1999, including but not limited to any testing or analysis relating to the presence or absence of a subcoating, an enteric coating, any excipients, and/or the crystalline or chemical form of omeprazole contained in such formulation or product.

**DOCUMENT REQUEST NO. 95:**

All documents and things relating to any opposition proceedings brought against AstraZeneca's  Israeli Patent Nos. 82911 and 82910, including but not limited to any correspondence, testing or analyses related to such proceedings.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_Jack B. Blumenfeld_

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
PO Box 1347
Wilmington, DE 19899
(302) 658-9200

*Attorneys for Plaintiffs,*
*AstraZeneca AB, Aktiebolaget Hässle,*
*KBI-E, Inc., KBI Inc., and AstraZeneca LP.*

8

# EXHIBIT 25

# MILBANK, TWEED, HADLEY & McCLOY LLP

### INTERNATIONAL SQUARE BUILDING

### 1850 K STREET, NW, SUITE 1100

### WASHINGTON, D.C. 20006

———

202-835-7500

FAX: 202-835-7586

NEW YORK
212-530-5000
FAX: 212-530-5219

LOS ANGELES
213-892-4000
FAX: 213-629-5063

PALO ALTO
650-739-7000
FAX: 650-739-7100

LONDON
44-207-448-3000
FAX: 44-207-448-3029

MUNICH
49-89-25559-3600
FAX: 49-89-25559-3700

FRANKFURT
49-69-7593-7170
FAX: 49-69-7593-8303

TOKYO
813-3504-1050
FAX: 813-3595-2790

HONG KONG
852-2971-4888
FAX: 852-2840-0792

SINGAPORE
65-6428-2400
FAX: 65-6428-2500

ROBERT J. KOCH
PARTNER
DIRECT DIAL NUMBER
202-835-7520
FAX
202-263-7520
E-MAIL: rkoch@milbank.com

December 20, 2006

**VIA ELECTRONIC MAIL**

David M. Airan
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, Illinois  60601-6780

Re: ***AstraZeneca AB, et. al v. Dexcel, Ltd. et. al***, C.A. No. 06-358 (SLR)

Dear David:

        We write to follow up on the parties' discussions that occurred at the discovery conference on December 6, 2006.  We note that we have not received the following information from you as specifically discussed at the conference.  The absence from this letter of any material discussed in our October 24, 2006 letter to you should not be construed as a waiver of the demands made in that letter:

        1. A list of the analytical tests that Dexcel has conducted on omeprazole.  The agreement reached at the conference was that Dexcel would supply such a list, or in the alternative, make available a Rule 30(b)(6) witness prepared to discuss such tests.  Please also include, as part of your disclosures, an estimate of the amount of documents or other materials associated with each such category of tests so that AstraZeneca will be able to determine what materials to identify to Dexcel for production, in accordance with the parties' agreement.

        2. The documents and information associated with Dexcel's design of its omeprazole formulation during and after the Israeli litigation in 1998-1999 and documents relating to analytical testing of Dexcel's European and Israeli products.  As we discussed, it appears that Dexcel embarked on a research and development program to design a new coating system for its omeprazole formulation at about the time of this litigation and that the product subsequently developed has been sold in Europe and Israel and is substantially similar to the

David M. Airan, Esq.
December 20, 2006
Page Two

product that is the subject of NDA 22-032.  Consequently, AstraZeneca is entitled to all of the documentation relating to this project and the European and Israeli formulations.

        In addition, this is to confirm our conversation in which you stated categorically that Dexcel is unable to procure information relating to Cipla's production of bulk omeprazole beyond that included in NDA 22-032.  Specifically, you stated that Dexcel is unable to procure the Drug Master File maintained by Cipla for its bulk omeprazole.  In addition, you refused to produce any agreements between Cipla and Dexcel from which Dexcel's ability to procure this information from Cipla might be ascertained.

        Finally, we have yet to hear back from you regarding our revised proposed Stipulated Protective Order, which was emailed to you on December 12.


                                Very truly yours,


                                Robert J. Koch


Enclosure
cc:  Richard D. Kirk, Esq. (w/o encl.)
     Jack B. Blumenfeld, Esq. (w/o encl.)
     Saumil S. Mehta, Esq. (w/o encl.)
     Robert F. Green, Esq. (w/o encl.)

# EXHIBIT 26

# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

JACK B. BLUMENFELD
302 351 9291
302 425 3012 FAX
jblumenfeld@mnat.com

January 31, 2007

BY E-FILING

The Honorable Sue L. Robinson
United States District Court
844 King Street
Wilmington, DE 19801

Re:    AstraZeneca AB, et. al v. Dexcel, Ltd. et. al, C.A. No. 06-358 (SLR)

Dear Chief Judge Robinson:

We write to suggest an agenda for the discovery conference at 4:30 tomorrow:

1.    Dexcel's non-compliance with the Court's order.

On January 12, the Court ordered Dexcel to produce, by January 19, "a list [of analytical tests performed during research and development so that AstraZeneca could identify documents it wished to receive], a 30(b)(6) witness or actual documents that relate to the research and development surrounding the reformulated product being sold outside the United States." (1/12/07 Hrg Tr. at 32). Dexcel still has not complied with this Order.

As it has explained to Dexcel, AstraZeneca believes that the design of the coating layers that will be used on the accused product (Dexcel's coated omeprazole tablets) in the United States if approved by the FDA originated before June 22, 1999, when Dexcel filed a patent application in Israel that describes a very similar coated tablet. Hence, AstraZeneca has sought information relating to the research and development project that resulted in the Israeli patent application, as well as information pertinent to the modifications of the coated tablet made between 1999 and 2006, when Dexcel filed for approval in the United States. AstraZeneca believes that at least some of those modifications are reflected in the coated tablets that Dexcel has been selling in Europe and Israel during that time.

The Honorable Sue L. Robinson
January 31, 2007
Page 2

Nevertheless, by January 19 (when AstraZeneca received Dexcel's latest production), Dexcel had not produced a single document that bears a date earlier than November 1999, even though it is certain that critical research and development activity must have occurred prior to the June 1999 filing of the Israeli patent application. Dexcel did produce approximately 1,400 pages of material on January 19, but none of those documents relate to research and development regarding the Dexcel products in the critical time period. Dexcel's counsel informed us today it had just received "additional documents" from Dexcel, but we do not know whether they are fully compliant with the Court's Order or when they will be produced. We again seek the Court's assistance in resolving this matter.

2.     Plaintiffs' additional discovery issues.

3.     Defendants' discovery issues.

4.     Participation in the case by Cipla.

5.     Entry of a Protective Order.

6.     Location of Depositions.

Respectfully,

Jack B. Blumenfeld (#1014)

Enclosure

cc:     Peter T. Dalleo, Clerk (By hand)
       Richard D. Kirk, Esquire (By hand)
       David Airan, Esquire (By email)
       Robert Koch, Esquire (By email)
       Edgar Haug, Esquire (By email)

EXHIBIT 27

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ASTRAZENECA AB, | ) | |
| AKTIEBOLAGET HÄSSLE, | ) | |
| KBI-E, INC., KBI INC., and | ) | |
| ASTRAZENECA LP, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-358 (SLR) |
| | ) | |
| DEXCEL LTD., DEXXON LTD., | ) | |
| DEXCEL PHARMA TECHNOLOGIES | ) | |
| LTD., and DEXCEL PHARMA | ) | |
| TECHNOLOGIES, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF ASTRAZENECA'S SECOND SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS ON THE MERITS (NOS. 76-91)**

Plaintiffs, AstraZeneca AB, Aktiebolaget Hässle, KBI Inc., KBI-E Inc. and AstraZeneca LP (collectively "AstraZeneca"), in accordance with Rule 34 of the Federal Rules of Civil Procedure and the Joint Scheduling Order, request that Defendants Dexcel, Ltd., Dexxon, Ltd., Dexcel Pharma Technologies Ltd., and Dexcel Pharma Technologies (collectively "Dexcel") provide written responses and produce the requested documents and things for inspection and copying by AstraZeneca, within thirty days of service, at the Office of Milbank, Tweed, Hadley & McCloy LLP, 1850 K Street, N.W., Washington, D.C., 2006. Documents and things in the custody or possession of any counsel to Dexcel are deemed to be in the custody, possession or control of Dexcel.

**DOCUMENT REQUEST NO. 85:**

All documents and things relating to any modifications made to the formulation of any omeprazole product sold by Dexcel outside the United States for the purpose of designing around any of the Patents-in-suit.

**DOCUMENT REQUEST NO. 86:**

All documents and things relating to the differences, if any, between the formulation of the Dexcel NDA Product and any product sold by Dexcel outside the United States.

**DOCUMENT REQUEST NO. 87:**

All documents and things relating to any agreements or communications with Cipla relating to omeprazole.

**DOCUMENT REQUEST NO. 88:**

All documents and things relating to any omeprazole made by Cipla, including tests on omeprazole such as x-ray crystal or powder diffraction.

**DOCUMENT REQUEST NO. 89:**

All documents and things relating to the processes used by Cipla to make omeprazole, including any changes that Cipla has made to omeprazole in the Dexcel NDA Product or processes used to make such omeprazole.

**DOCUMENT REQUEST NO. 90:**

All documents and things relating to any omeprazole used or evaluated by Dexcel, other than omeprazole made by Cipla.

**DOCUMENT REQUEST NO. 91:**

All documents and things relating to any testing or analyses of omeprazole, other

than omeprazole made by Cipla, as compared to omeprazole made by Cipla, Prilosec® or

Prilosec OTC®.

Date: November 3, 2006

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_Jack Blumenfeld (#1014)_
Karen Jacobs Louden (#2881)
1201 N. Market Street
PO Box 1347
Wilmington, DE  19899
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Attorneys for Plaintiffs,*
AstraZeneca AB, Aktiebolaget Hässle,
KBI-E, Inc., KBI Inc., and AstraZeneca LP.

*Of Counsel*:
Errol B. Taylor
Robert J. Koch
Jay I. Alexander
Enrique D. Longton
MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street, NW
Washington, DC  20006
Telephone: (202) 835-7520
Facsimile: (202) 835-7586

EXHIBIT 28

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

|  |  |
|---|---|
| ASTRAZENECA AB, AKTIEBOLAGET HÄSSLE, KBI-E, INC., KBI INC., and ASTRAZENECA LP, <br><br>         Plaintiffs, <br><br>      v. <br><br> DEXCEL, LTD., DEXXON, LTD., DEXCEL PHARMA TECHNOLOGIES LTD., AND DEXCEL PHARMA TECHNOLOGIES, <br><br>        Defendants. | Case No. 1:06cv634 (CMH/BRP) |
| DEXCEL PHARMA TECHNOLOGIES LTD., <br><br>        Counterclaim-Plaintiff, <br><br>      v. <br><br> ASTRAZENECA AB, AKTIEBOLAGET HÄSSLE, and ASTRAZENECA LP, <br>             Counterclaim-Defendants. |  |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS'
## MOTION FOR STAY OR TRANSFER

Plaintiffs' misnamed Motion For Stay or Transfer is actually a motion for reconsideration of the Court's August 10, 2006 Order, the entry of which Defendants requested and Plaintiffs opposed. *See* Docket Items 11-12, 16 and 17. Plaintiffs' current motion offers no new argument, facts, or change in the law that would necessitate reconsideration of the Court's issuance of a Scheduling Order. Their request for reconsideration, couched as a request for a "stay" of the proceedings, should be denied on procedural grounds alone.

As to the substance of their request, Plaintiffs themselves caused the duplication about which they now complain. They chose to file identical lawsuits in two different forums, and they

Ultimately, the public must pay the hefty tab for this exclusivity. This payment might be warranted if the products at issue actually infringed the asserted patents. They do not.[2] But, even to the extent that there is a legitimate dispute on this point, the public will pay for exclusivity by default unless this Court acts promptly.

Evidently recognizing this concern, the Court issued a Scheduling Order setting the final pretrial conference for December 21, 2006 and a trial 4-8 weeks thereafter. The Court will thus preside over a trial as early as January 2007, well before the April 2007 expiration of the '505 and '230 patents. In contrast, the Delaware court's docket and trial calendar is so crowded that the *first* available date for trial was the week of November 5, 2007, well after the April 2007 expiration of the '505 and '230 patents. *See* Ex. 10. Plaintiffs suggest that because any court decision will likely be appealed, the choice of forum doesn't matter (p. 12). However when a district court renders a decision finding a patent invalid, unenforceable or not infringed, the FDA may approve an NDA as of the date the *district court* enters its decision. *See Mylan Labs., Inc. v. Thompson*, 389 F.3d 1272, 1276 (Fed. Cir. 2004).

Plaintiffs appear to be counting on the congestion in Delaware to avoid addressing the merits of its own charge of infringement of two of the three patents at issue. That is why they prefer Delaware over this Court. Plaintiffs filed its duplicative action in Delaware with full knowledge that its schedule could not possibly tolerate an adjudication of the dispute in the same

---

[2] The generic version of omeprazole tablets that Dexcel Pharma Technologies Ltd. ("DPT Ltd.") seeks to introduce to the U.S. market (which are already on sale in Europe despite Plaintiffs' foreign counterpart patents) must be made in accordance with a New Drug Application ("NDA"). This NDA, which Plaintiffs have had in their possession since May 2006, conclusively establishes the absence of infringement of the two patents expiring in April, 2007. Plaintiffs thus *already know* that there is no infringement of these patents. DPT Ltd. also provided Plaintiffs with samples of the products at issue. Plaintiffs' testing of Defendants products could easily confirm non-infringement in a matter of days.

6

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that copies of the forgoing

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR STAY OR TRANSFER

were served on the following counsel of record as noted:

by hand:

> Robert J. Koch
> Jay I. Alexander
> Enrique D. Longton
> MILBANK, TWEED, HADLEY & McCLOY, LLP
> 1850 K Street NW
> Washington, D.C.  20006

and by email and first class mail to:

> Errol B. Taylor
> MILBANK, TWEED, HADLEY & McCLOY, LLP
> 1 Chase Manhattan Plaza
> New York, New York  10005-1413
> Counsel for Plaintiffs

on August 29, 2006.

_____
Jeremy M. Jay